LEIGH GODDARD, NV Bar #6315
JOHN FRANKOVICH, NV Bar #667
McDonald Carano LLP
100 West Liberty Street, Tenth Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
lgoddard@mcdonaldcarano.com
jfrankovich@mcdonaldcarano.com

KEVIN JOHNSON (*pro hac vice*)
RAY ZADO (*pro hac vice*)
SAM STAKE (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
Email: kevinjohnson@quinnemanuel.com
rayzado@quinnemanuel.com
samstake@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SALESFORCE.COM, INC.,<br><br>Defendant. | No. 3:13-CV-00628-RCJ-VPC<br><br>SALESFORCE'S OPPOSITION TO AIT'S MOTION TO COMPEL DISCOVERY |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD ...................................................................................... 1

III.    AIT'S MOTION TO COMPEL SHOULD BE DENIED ................................. 2

        A.      Salesforce Should Not Be Compelled to Provide Additional Discovery on
                Marketing Cloud or B2B Commerce ...................................................... 2

                1.      AIT Failed to Provide Particularized Infringement Allegations
                        Against Marketing Cloud in Its Final Contentions ...................... 3

                2.      AIT's Requested Discovery About B2B Commerce Is Improper in
                        Light of AIT's Operative Infringement Contentions and Discovery
                        Requests ........................................................................................ 7

                3.      AIT's Requested Relief Should Be Denied Because It Goes Far
                        Beyond Marketing Cloud or B2B Commerce ............................... 9

        B.      AIT Fails to Show Discovery Into Foreign Sales Data Is Relevant or
                Proportional to the Needs of the Case .................................................. 11

                1.      Foreign Sales Data Is Not Relevant to Damages Because AIT Fails
                        to Identify any United States-Based Infringing Activity ........... 12

                2.      Foreign Sales Data Is Not Needed to Show That Salesforce Is
                        Commercially Successful ............................................................ 14

                3.      Salesforce Did Not Waive Its Objections to the Production of
                        Foreign Sales Data ..................................................................... 14

        C.      AIT's Request for Information About the Number of Seats Per License Is
                Moot Because Salesforce Has Produced the Requested Information .... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple Inc. v. Samsung Elecs. Co.,*
No. C 11-CV-1846 LHK PSG, 2012 WL 952254 (N.D. Cal. Mar. 20, 2012)...................6

*AstraZeneca AB v. Apotex Corp.,*
782 F.3d 1324 (Fed. Cir. 2015) ........................................................................12

*Belavilas v. KKW Trucking, Inc./Furniture Transp. Sys., Inc.,*
No. 207CV01161LDJRJJ, 2008 WL 11389217 (D. Nev. Sept. 26, 2008) .........................2

*Blumhorst v. Pierce Mfg., Inc.,*
No. 4:10-cv-00573-REB, 2014 WL 12593989 (D. Id. Oct. 6, 2014) ...............................11

*Castro v. Poulton,*
No. 2:15-CV-1908, 2017 WL 3723651 (D. Nev. Aug. 29, 2017) ......................................2

*Cervantes v. Time, Inc.,*
464 F.2d 986 (8th Cir. 1972)...........................................................................2

*Drone Techs., Inc. v. Parrot S.A.,*
838 F.3d 1283 (Fed. Cir. 2016) ........................................................................2

*EVS Codec Techs., LLC v.OnePlus Tech. (Shenzhen) Co.,*
No. 46 2020 WL 6365514(E.D. Tex. Apr. 9, 2020) ..................................................13, 14

*Finjan, Inc. v. Qualys Inc.,*
No. 18-cv-07229-YGR(TSH), 2020 WL 5569704 (N.D. Cal. Sept. 17, 2020) ................12

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.,*
No. 15-cv-1879-BEN(BLM), 2016 WL 6522808 (S.D. Cal. Nov. 3, 2016) ..............12, 14

*Freescale Semiconductor, Inc. v. Promos Techs.,*
No. 4:06cv491, 2007 WL 4368057 (E.D. Tex. Dec. 13, 2007) ........................................10

*GE Healthcare Bio-Sciences AB v. Bio-Rad Laboratories, Inc.,*
No. 1:14-CV-07080-LTS-SN, 2015 WL 7582967 (S.D.N.Y. Nov. 25, 2015) .................13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
831 F.3d 1369 (Fed. Cir. 2016)........................................................................12

*Hologram USA, Inc. v. Pulse Evolution Corp.,*
No. 2:14-cv-00772-GMN-NJK, 2016 WL 3353935 (D. Nev. June 10, 2016) .............7, 10

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,*
No. 12-cv-03844-JST(MEJ), 2014 WL 4593338 (N.D. Cal. Sept. 15, 2014) ...................3

*Infineon Techs. AG v. Volterra Semiconductor Corp.*,
        No. C 11-6239 MMC(DMR), 2012 WL 6184394 (N.D. Cal. Dec. 11, 2012)................ 2, 3

*Johnson v. Northwest Airlines, Inc.*,
        No. C 08-02272 VRW, 2009 WL 839044 (C.D. Cal. Mar. 30, 2009) ................................ 2

*Kajeet, Inc. v. Qustodio, LLC*,
        No. SA CV 18-1519-JAK(PLAx), 2019 WL 8060078 (C.D. Cal. Oct. 22, 2019) ........... 12

*Linksmart Wireless Tech., LLC v. Golden Nugget, Inc.*,
        No. 2:18-cv-00862-MMD-NJK, 2021 WL 1150065 (D. Nev. Mar. 21, 2021) .............. 3, 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
        580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................... 15

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
        No. 11-5341 YGR(JSC), 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) .......................... 5, 6

*Microsoft Corp. v. AT & T Corp.*,
        550 U.S. 437 (2007) ................................................................................................. 12, 13

*Oracle Am., Inc. v. Google, Inc.*,
        798 F. Supp.2d 1111 (N.D. Cal. 2011) ............................................................................ 12

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
        No. CV 16-00300 CJC(RAOx), 2017 WL 3275615 (C.D. Cal. Feb. 14, 2017) .............. 13

*Powell v. Home Depot U.S.A., Inc.*,
        663 F.3d 1221, 1237–41 (Fed. Cir. 2011) ...................................................................... 15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
        711 F.3d 1348 (Fed. Cir. 2013) ...................................................................................... 12

*Sarnowski v. Peters*,
        2017 WL 4467542 (D. Or. Mar. 4, 2014) ........................................................................ 2

*Sattari v. Citi Mortgage*,
        No. 2:09-cv-00769-RLH-GWF, 2010 WL 4782133 (D. Nev. Nov. 17, 2010)................. 11

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,
        No. 18-cv-05194, 2019 WL 570758 (N.D. Cal. Feb. 12, 2019) ........................................ 5

*Tesseron, ltd. V. R.R. Donnelley & Sons Co.*,
        No. 1:06 CV 2909, 2007 WL 2034286 (N.D. Ohio. July 10, 2007)................................... 3

*V5 Techs v. Switch, Ltd.*,
        334 F.R.D. 306 (D. Nev. 2019) ...................................................................................... 15

*V5 Techs., LLC v. Switch, LTD.*,
        No. 2:17-CV-2349-KJD-NJK, 2019 WL 1042515 (D. Nev. Mar. 3, 2020) ..................... 15

-iii-

*Weaving v. City of Hillsboro,*
    No. CV-10-1432-HZ, 2011 WL 1938128 (D. Or. May 20, 2011)....................................... 2

*Ziptronix, Inc. v. OmniVision Techs., Inc.,*
    71 F. Supp. 3d 1090 (N.D. Cal. 2014) ............................................................................. 13

### **Statutory Authorities**

35 U.S.C. §§ 271(a)-(b)................................................................................................................. 12

35 U.S.C. § 284 .......................................................................................................................... 12

### **Rules and Regulations**

Fed. R. Civ. P. 26(b)(1)................................................................................................................. 2

Fed. R. Civ. P. 37(a)(3) ................................................................................................................ 9

## I.   __INTRODUCTION__

AIT's motion to compel should be denied.  First, at this late date—just prior to the close of fact discovery—AIT seeks financial discovery and other information about products that it chose to omit from its final infringement contentions.  AIT had every opportunity to accuse these products with detailed infringement contentions prior to the Patent Local Rule 1-18a deadline, but elected not to.  Despite having full technical discovery into the operation of Marketing Cloud, AIT failed to chart it.  AIT also seeks to add a product, B2B Commerce, that it has not mentioned in any discovery or in its contentions.  And AIT seeks unbounded discovery into unspecified other products without naming them or justifying its expansive requests.  It is too late for AIT to expand the scope of accused products, particularly without seeking to amend its infringement contentions, as AIT itself argued to the Court in its recent motion to strike.  *E.g.*, Dkt. 185 at 1 ("[T]he Court's Local Rules of Practice for Patent Cases . . . prohibit amendments to a party's disclosures absent a showing of good cause.")

Second, AIT seeks foreign sales data, even though it is black letter law that only domestic activity can infringe a United States patent and AIT has made no showing that any of Salesforce's international sales are relevant to damages or any other issue in the case.  Put simply, foreign sales are not infringing, and thus are not properly included in any damages calculation in this case.

Third, AIT demands financial information about the number of "seats" sold or licensed for the accused Salesforce products.  Despite the marginal relevance of this discovery, Salesforce has produced it for every accused product for the entire damages period.  Accordingly this request is moot.

Because AIT's motion lacks merit, it should be denied and this case should proceed under the case schedule to expert discovery and then summary judgment.

## II.   __LEGAL STANDARD__

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits.  Discovery is permitted only regarding matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Additionally, "[t]he party seeking to compel discovery has the burden of demonstrating it has satisfied the relevancy requirement."

SALESFORCE'S OPPOSITION TO AIT'S MOTION TO COMPEL

*Belavilas v. KKW Trucking, Inc./Furniture Transp. Sys., Inc.*, No. 2:07-CV-01161-LDJ-RJJ, 2008 WL 11389217, at *2 (D. Nev. Sept. 26, 2008).  Moreover, "[i]n general, the party seeking to compel discovery must inform the court which discovery requests are the subject of the motion to compel, and, for each disputed request, inform the court why the information sought is relevant and why the objections are not meritorious.  *Sarnowski v. Peters*, No. 2:16-CV-00176-SU, 2017 WL 4467542, at *1 (D. Or. Oct. 6, 2017) (citing *Weaving v. City of Hillsboro*, No. CV-10-1432-HZ, 2011 WL 1938128, at *1 (D. Or. May 20, 2011)).  On a motion to compel, "the moving party bears the burden of showing good cause."  *Castro v. Poulton*, No. 2:15-CV-1908, 2017 WL 3723651, at *9 (D. Nev. Aug. 29, 2017) (citing Fed. R. Civ. P. 26(b)(1)).  "[L]itigants seeking to compel discovery must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case."  *Johnson v. Northwest Airlines, Inc.*, No. C 08-02272 VRW, 2009 WL 839044, *2 (N.D. Cal. Mar. 30, 2009) (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)).

## III.   AIT'S MOTION TO COMPEL SHOULD BE DENIED

### A.   Salesforce Should Not Be Compelled to Provide Additional Discovery on Marketing Cloud or B2B Commerce

The deadline for final infringement contention passed on January 10, 2022—more than three months ago.  At this late stage of the case, several years into the fact discovery period, the scope of accused products (and discovery) is bounded by the contentions that AIT has ***charted*** in its final infringement contentions.  LPR 1-6(c) (requiring "***a chart identifying specifically where each limitation of each asserted claim is found*** within each Accused Instrumentality") (emphasis added); *see also Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1299-300 (Fed. Cir. 2016) (Products were not properly accused in infringement contentions by a summary statement that the products "may also be Accused Instrumentalities.");  *Infineon Techs. AG v. Volterra Semiconductor Corp.*, No. C 11-6239 MMC (DMR), 2012 WL 6184394, at *3 (N.D. Cal. Dec. 11, 2012) (Patent Local Rules generally require "specific identification of particular accused products" and do not tolerate "broad categorical identification of the use of mere representative

examples.");[1] *Tesseron, ltd. V. R.R. Donnelley & Sons Co.*, No. 1:06 CV 2909, 2007 WL 2034286, at *3 (N.D. Ohio. July 10, 2007) (Discovery into products requires the requesting party to "identify with specificity the component, characteristic, or element of the product or system that the claimants believe will render the product or system infringing.").

AIT's gambit to obtain discovery about Salesforce products it elected not to chart in its final infringement contentions would thwart the entire purpose of the Patent Local Rules' deadlines for infringement contentions. *See Linksmart Wireless Tech., LLC v. Golden Nugget, Inc.*, No. 2:18-cv-00862-MMD-NJK, 2021 WL 1150065, at *3 (D. Nev. Mar. 25, 2021) (The "purpose of requiring parties to disclose the basis for their contentions is to make them explicit and streamline patent litigation."). And, as explained further below, that is exactly what AIT is trying to do with respect to Salesforce's Marketing Cloud and B2B Commerce products.[2]

## 1. AIT Failed to Provide Particularized Infringement Allegations Against Marketing Cloud in Its Final Contentions

AIT elected not to provide element-by-element contentions against Marketing Cloud in its initial and final infringement contentions. Rather, AIT's contentions are based on the purported operation of "the Force.com platform and Salesforce1 platform." *E.g.*, Stake Ex.[3] A ('482 patent claim chart) at 1 ("███████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████"); Stake Ex. B ('111 patent claim chart) ("███████████████ ████████████████████████████████████████████████████

---

[1]  *See also Linksmart Wireless Tech., LLC v. Golden Nugget, Inc.*, No. 2:18-cv-00862-MMD-NJK, 2021 WL 1150065, at *3 n.6 (D. Nev. Mar. 25, 2021) ("Courts in this District often rely on decisions interpreting the local patent rules of the Northern District of California when interpreting the Local Patent Rules . . . .").

[2]  To the extent AIT legitimately seeks discovery on these products, it would need to first seek leave to amend its final infringement contentions   *E.g.*, *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-03844-JST (MEJ), 2014 WL 4593338, at *2-4 (N.D. Cal. Sept. 15, 2014) (denying patentee's motion to compel accused infringer to produce discovery on unaccused models of its products and requiring patentee to amend its infringement contentions).

[3]  Here and throughout the Opposition, "Stake Decl." and "Stake Ex." refer to the declaration and exhibits attached to the Declaration of Sam Stake In Support Of Salesforce's Opposition To AIT's Motion To Compel, filed concurrently herewith.

1  ███████████████████████████████████████  AIT also states that "████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████")． Stake Ex. B ('111 patent claim chart) at 2; *see also* Stake Ex.

4  B ('482 patent claim chart) at 23 (similar).  Moreover, for claim limitations concerning "layers"

5  and "portions" required by all asserted claims, AIT's infringement allegations are specifically

6  directed to █████████████████████████████████████████████

7  ██████████  Stake Ex. A ('482 patent claim chart) at 29-33, 37, 95-99, 104; Stake Ex. B ('111

8  patent claim chart) at 13-17, 24, 40.  And for claim limitations about "automatic detect[ing]" using

9  "intelligent agents" (also required by all asserted independent claims), AIT's infringement

10  allegations are limited to ████████████████████████████████████

11  ██████████████  in these alleged platforms.  Stake Ex. A ('482 patent claim chart) at 58-63, 125-

12  30; Stake Ex. B ('111 patent claim chart) at 58-63.  Thus, AIT's infringement allegations against

13  Marketing Cloud in its final infringement contentions charts are explicitly tied, not to any

14  particular functionality in Marketing Cloud, but to alleged features of the "the Force.com platform

15  and Salesforce1 platform."

16      These contentions are insufficient—and simply incorrect—because, as Salesforce has

17  repeatedly explained to AIT, Marketing Cloud *is not built on the "the Force.com platform and*

18  *Salesforce1 platform."*  Declaration of Tod Karpinski filed concurrently ("Karpinski Decl.") ¶¶ 7,

19  13.  To the contrary, as Salesforce has repeatedly told AIT, Marketing Cloud is a separate

20  collection of products, all of which originated outside of Salesforce and were obtained via

21  acquisitions of other companies.  Karpinski Decl. ¶¶ 8-12; Ex.[4] 17 (Judah 3/24/2022 email) at 1

22  █████████████████████████████████████████████████████████

23  █████████████████████████████████████████████████████████

24  ████████████████████.  This point was also confirmed at the deposition of Ian Varley,

25  Principal Architect at Salesforce.  Stake Ex. C (Varley Dep. Tr.) at 50:21-51:2; 52:7-53:5.  Thus,

26  AIT's infringement allegations against "the Force.com platform and Salesforce1 platform" *are*

27  ───────────────
    [4]  Here and throughout the Opposition, "Ex." refer to exhibits attached to the Declaration of

28  Andrea Pacelli In Support of AIT's Motion, at Dkt. 190.

SALESFORCE'S OPPOSITION TO AIT'S MOTION TO COMPEL

1    ***inapplicable to Marketing Cloud***.  As one particular example, ████████████

2    ██████████████      Stake Ex. C (Varley Dep. Tr.) at 55:11-56:7 ████████████████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████; Karpinski Decl. ¶ 14.  Because AIT's infringement

5    claim charts identify only UDD as meeting particular "layer" and "portion" claim limitations, the

6    charts do not present a *prima facie* case of infringement by Marketing Cloud.   Similarly,

7    Marketing Cloud does not use the "Metadata API."  Karpinski Decl. ¶ 15.  Because it does not

8    employ these features, Marketing Cloud is not accused of infringement under any theory charted

9    in AIT's final infringement contentions.[5]

10          Indeed, AIT does not dispute that it failed to provide the required claim-by-claim analysis

11   of Marketing Cloud in any of its infringement contentions.  Nor does AIT dispute that Salesforce

12   has produced thousands of documents—including technical architecture documents and source

13   code—regarding Marketing Cloud.  *See*, *e.g.*, Mot. at 8 ("Salesforce even made available for

14   inspection source code for Marketing Cloud"); *see also* Stake Decl. ¶ 9.  There is therefore no

15   excuse for AIT's failure to chart Marketing Cloud in its final infringement contentions, and no

16   basis to compel financial or other discovery regarding a product that AIT deliberately omitted

17   from its contentions.  *See*, *e.g.*, *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-cv-05194-LHK

18   (VKD), 2019 WL 570758, at *2 (N.D. Cal. Feb. 12, 2019) (Plaintiff "may only obtain discovery

19   that is relevant to a claim or defense" and therefore discovery into unaccused products "cannot be

20   directly relevant to [plaintiff's] infringement claims or responsive to its contentions.") (quotation

21   omitted); *MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR (JSC), 2013 WL

22   588760, at *2 (N.D. Cal. Feb. 13, 2013) ("Since the additional products on which MediaTek seeks

23   discovery have not been accused in this case, MediaTek is not entitled to discovery as to those

24   products . . . .").

25          [5]   There are other significant differences between Marketing Cloud and the accused
26   "Force.com platform and Salesforce1 platform," including that Marketing Cloud employs a
     separate data model from the accused platforms.  Karpinski Decl. ¶ 13; Stake Ex. C (Varley Dep
27   Tr.) at 61:13-62:20. ████████████████████████████████████████████████████████
     ██████████████████ take Ex. C (Varley Dep Tr.) at 198:7-199:9.
28

SALESFORCE'S OPPOSITION TO AIT'S MOTION TO COMPEL

1   AIT's reliance on *Apple v. Samsung* is misplaced.  There, Apple waived its relevance and

2   burden objections because it "offer[ed] no justification for introducing additional objection

3   arguments at a later time." *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-CV-1846 LHK (PSG),

4   2012 WL 952254, at *2 (N.D. Cal. Mar. 20, 2012).  This is not the case here, because Salesforce

5   has ample justification, as detailed above, including because of AIT's recent submission of final

6   infringement contentions.  Further, unlike Apple, Salesforce has consistently made and maintained

7   relevance and overbreadth objections with respect to unaccused products.  *See*, *e.g.*, Ex. 3

8   (Salesforce's Objections and Responses to AIT's First Set of Requests for Production) at 6

9   (objecting to the definition of "Accused Products" on grounds of relevance and overbreadth) and

10   34-35 (objecting to RFP No. 39 on grounds of relevance and overbreadth); see also Ex. 22

11   (Salesforce's Amended Contentions) at 4 (objecting that "AIT should be limited to the theories set

12   forth in its contentions.  The Accused Instrumentalities or Products should also be limited to only

13   those identified in the infringement charts in Exhibits A and B to . . . AIT's Infringement

14   Contentions.  Although AIT alleged other Salesforce and third-party applications in Exhibits A

15   and B to Infringement Contentions as alleged 'embodiments' of infringing instrumentalities, it

16   failed to provide any infringement charts or other evidence explaining how these applications

17   infringe the Patents-in-Suit.").  Salesforce also notified AIT promptly after AIT served its final

18   infringement contentions its objection that AIT's contentions did not properly accuse Marketing

19   Cloud.  Ex. 18 (2/23/2022 Stake Email) at 1 ("AIT's amended contentions are also deficient in

20   other critical respects.  For example, AIT purports to assert infringement by Marketing

21   Cloud/ExactTarget Marketing Cloud, and yet it has not charted or otherwise provided contentions

22   sufficient to put Salesforce on notice of its infringement theories for these products.").

23   Therefore, AIT's motion should be denied as to Marketing Cloud because it is not charted

24   in AIT's final infringement contentions (despite ample opportunity for AIT to have done so) and is

25   hence not relevant to a claim or defense.

26

27

28

1

2. **AIT's Requested Discovery About B2B Commerce Is Improper in Light of AIT's Operative Infringement Contentions and Discovery Requests**

2

3    AIT's request for discovery concerning B2B Commerce should be denied because AIT (i)

4  did not identify B2B Commerce as an accused product in its infringement contentions; (ii) has

5  failed to even seek leave to supplement its contentions to identify B2B Commerce as an accused

6  product; and (iii) even failed to propound any written discovery targeting B2B Commerce.  B2B

7  Commerce is therefore an unaccused product that is not at issue in this case.  AIT was required—

8  but failed—to add it to its infringement contentions and propound additional written discovery

9  directed to it, at which point Salesforce would have the opportunity to provide formal objections

10  and responses.  Only then would it be appropriate for the Court to even consider a motion to

11  compel concerning B2B Commerce.

12    First, and fatal to its motion to compel, AIT failed to include any mention of B2B

13  Commerce in any of its infringement contentions.  Ex. 4 at 1 (AIT's description of accused

14  instrumentalities in its initial infringement contentions); Stake Ex. D at 1-2 (AIT's description of

15  accused instrumentalities in its final infringement contentions).  AIT's claim to the contrary, *i.e.*,

16  that "[t]here is no need for AIT to amend its infringement contentions, because B2B Commerce is

17  already included within the scope of the Accused Products" (Mot. at 9 n.5), is without merit.

18  Indeed, AIT selectively misquotes its infringement contentions.   Rather than accusing all

19  "Salesforce.com products that depend on these platforms," as alleged in its brief, AIT's

20  contentions state: "Salesforce.com products that depend on these platforms and are embodiments

21  of infringing systems and methods are Sales Cloud, Service Cloud, Marketing Cloud, and

22  ExactTarget Marketing Cloud."  Ex. 4 at 1.  Moreover, even assuming that AIT had actually

23  accused all "Salesforce.com products that depend on these platforms," that would have been

24  impermissibly overbroad and insufficient to accuse B2B Commerce.  *E.g.*, *Hologram USA, Inc. v.*

25  *Pulse Evolution Corp.*, No. 2:14-cv-00772-GMN-NJK, 2016 WL 3353935, at *3 (D. Nev. June

26  10, 2016) (Motion to compel discovery regarding "any and all holographic systems produced,

27  marketed, sold or offered for sale" by defendant was denied as overbroad).

28

-7-

Moreover, AIT's articulated reason for discovery about B2B Commerce at this late date—at the close of fact discovery, and months after final infringement contentions were served—is that AIT only learned about a purported shared code base from a recent deposition.  Mot. at 9.[6]  As a preliminary matter, AIT elected not to conduct **any** deposition of **any** Salesforce witness until well after final infringement contentions.  Moreover, the Local Patent Rules explicitly contemplate such a scenario.  They provide AIT the opportunity to seek leave to amend its infringement contentions on a showing of "good cause" based on "recent discovery of nonpublic information" if AIT conducted an "earlier diligent search."[7]  LPR 1-12 ("Other than as provided in LPR 1-18a no other amendments to disclosures may be made other than as set forth herein absent a showing of good cause.  Non-exhaustive examples of circumstance that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: . . . (c) recent discovery of nonpublic information about the Accused Instrumentality despite earlier diligent search.").  If AIT were correct that newly-discovered information from a deposition uncovered a new, infringing product that it could not have uncovered through an earlier diligent search, then AIT should have moved for leave to amend its infringement contentions.  But it has not done so, and cannot short-circuit that process via this motion.

Next, AIT has not propounded any discovery requests to Salesforce asking for information about B2B Commerce.  For example, B2B Commerce does not fall within the definition of "Accused Products" provided by AIT in its First Set of Requests for Production, nor does AIT even contend that it does.  Ex. 2 at 5; *see also* Mot. at 2, 6.  And tellingly, AIT's motion fails to link B2B Commerce to any particular discovery request that it propounded.  Thus, there is no operative discovery request to which Salesforce could be compelled to respond to or produce

---

[6]  AIT appears to contend that counsel for Salesforce misled it about technical commonalities between B2B Commerce and other accused products in this case.  Mot. at 6.  Not so.  Commerce Cloud, including B2B Commerce, is a distinct product from Sales Cloud and Service Cloud.  Ex. 21 at 1.  Mr. Varley's testimony that ███████████████████████████████ Ex. 19 at 58:23-24, is consistent, and does not imply that infringement allegations against Sales Cloud or Service Cloud could be applicable wholesale to B2B Commerce.

[7]  Given that AIT failed to propound discovery requests directed to B2B Commerce or otherwise pursue any discovery related to it—indeed, failing to take a single deposition until after its final infringement contentions were due—AIT is unable to meet this diligence standard.

-8-

documents for.  Motions to compel under Rule 37 are specifically limited to failures to respond to discovery obligations or requests under Rules 26, 30, 31, 33, or 34.  Fed. R. Civ. P. 37(a)(3).  AIT has not identified any specific Rule 26, 30, 31, 33, or 34 discovery request or obligation in this case that relates to B2B Commerce, and there are none.  Thus, a Rule 37 motion to compel is an improper procedural mechanism given the posture of this case.

### 3. AIT's Requested Relief Should Be Denied Because It Goes Far Beyond Marketing Cloud or B2B Commerce

AIT's motion should also be denied as to any requested relief that goes beyond the specific Marketing Cloud and B2B Commerce products that AIT addresses in its brief.  Rather than seeking discovery about those products during the fact discovery period, AIT instead requests an effectively unbounded and undefined "order from this Court compelling Salesforce to provide discovery concerning the full scope of products that AIT accuses of infringement, and to which Salesforce has not timely objected, namely: (i) the Salesforce platform; (ii) end-user applications based on the Salesforce platform, including B2B Commerce; and (iii) any products specifically identified by AIT, including Sales Cloud, Service Cloud, and Marketing Cloud."  Mot. at 9; *see also id.* at 1 ("AIT seeks the Court's intervention to compel Salesforce to provide discovery with respect to ***all*** products at issue in this action and for ***all*** relevant information requested by AIT.") (emphasis original).  This request is improper for several reasons.

First, AIT's requested relief seeks to undercut the very purpose of the service of infringement contentions as required by the Local Patent Rules.  *See Linksmart Wireless Tech., LLC v. Golden Nugget, Inc.*, No. 2:18-cv-00862-MMD-NJK, 2021 WL 1150065, at *3 (D. Nev. Mar. 21, 2021) (The "purpose of requiring parties to disclose the basis for their contentions is to make them explicit and streamline patent litigation.").  AIT is not entitled to discovery about unspecified products that were not appropriately disclosed in its infringement contentions.  AIT's motion attempts an end-run around the Local Patent Rules and seeks to retroactively add new products to this case.

Second, AIT has not provided ***any*** justification in its papers for its expanded requested relief.  The only particular products that AIT discusses in its motion are Marketing Cloud and B2B

-9-

Commerce.  AIT has failed to even attempt to provide a rationale for any discovery beyond those specific products, or to identify any deficiencies in connection with Salesforce's discovery responses and productions relating to the "Salesforce platform," "Sales cloud," or "Service Cloud."  If AIT wants discovery on some other, unspecified products, it is incumbent on AIT to tell the Court **what those products are** and **why the discovery is justified**, rather than attempting to sneak in additional, unwarranted compelled discovery through this motion.  It would be highly prejudicial for Salesforce to be compelled to produce material for some other undefined scope of products, when Salesforce has not been apprised what those products even are, and has not had an opportunity to present a contrary case to the Court.

Third, AIT's requested relief is, on its face, overbroad, unduly burdensome, and not appropriately tailored as to the information requested.  Courts routinely deny motions to compel that fail to identify the information sought with specificity.  *Freescale Semiconductor, Inc. v. Promos Techs.*, No. 4:06cv491, 2007 WL 4368057, at * 1 (E.D. Tex. Dec. 13, 2007) (denying patentee's motion to compel discovery from accused infringer in part because the motion to compel was overbroad—"Freescale contends that circuit schematics and data sheets have not been produced for 'HUNDREDS OF ACCUSED INSTRUMENTALITIES.' . . .  This is nothing more than patent hyperbole and the Court won't consider such a broad and illusive request, i.e. be specific or be silent."); *see also Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-cv-00772-GMN-NJK, 2016 WL 3353935, at *3 (D. Nev. June 10, 2016) (patent plaintiff's motion to compel discovery regarding "any and all holographic systems produced, marketed, sold or offered for sale" by defendant was denied as overly broad).  Here, in addition to not specifying what other **products** it believes are the subject of this discovery dispute (besides Marketing Cloud and B2B Commerce), AIT also demands relief for a set of **unspecified discovery requests**.  Mot. at 2 n.2 ("The relief requested by AIT is relevant to other discovery requests to the extent the Court compels Salesforce to produce responsive documents and information relating to additional products.  RFP No. 39 is sufficient to exemplify the issues in dispute for purposes of this Motion.").  This is, of course, improper—Salesforce cannot effectively respond if AIT fails to identify the additional discovery requests that are purportedly at issue.

Fourth, AIT's requested relief is impermissibly vague and ambiguous.  A party "is not required to puzzle out what [another party] intended to say" in its discovery request.  *Sattari v. Citi Mort.*, No. 2:09-cv-00769-RLH-GWF, 2010 WL 4782133, at *2 (D. Nev. Nov. 17, 2010); *see also Blumhorst v. Pierce Mfg., Inc.*, No. 4:10-cv-00573-REB, 2014 WL 12593989, at *1 (D. Id. Oct. 6, 2014) (A party "has no duty to guess at what [another party] is seeking to know (or obtain).").  Here, AIT's requested relief is a mixture of undefined terms susceptible to multiple interpretations and, in effect, amounts to expansive discovery into all products ever released by Salesforce or by third parties using Salesforce's platforms  This is inappropriate, and is the precise scenario that the Local Patent Rules and submission of final infringement contentions are intended to prevent.

Thus, AIT's motion should be denied because the scope of its requested relief is not commensurate with the  issues that AIT raises.

**B.     AIT Fails to Show Discovery Into Foreign Sales Data Is Relevant or Proportional to the Needs of the Case**

AIT demands that the Court order Salesforce to produce its "financial information without regard to the geographic source of the relevant revenue"—by which it means foreign sales data, since there is no dispute that Salesforce has already produced its sales data for the US.  Mot. at 9-10.  AIT offers only two flawed bases for seeking data on Salesforce's foreign sales data.  First, AIT claims that foreign sales data is relevant to damages—specifically, to a reasonable royalty analysis.  Mot. at 10-11.  But foreign sales are only relevant to damages insofar as AIT can make its required threshold showing that those foreign sales are derived from US-based acts of infringement.  Even at this late stage of the proceedings, AIT has not and cannot make that showing, but offers only speculation that because Salesforce is headquartered in the US, it must be engaging in infringing activity in the US.  That is not sufficient.  Second, AIT claims that foreign sales data is relevant to non-obviousness as evidence of commercial success.  Mot. at 10.  But the success of Salesforce's products is not in dispute, and Salesforce has already produced ample evidence of this success through its US-based revenue.

-11-

### 1.  Foreign Sales Data Is Not Relevant to Damages Because AIT Fails to Identify any United States-Based Infringing Activity

AIT's assertion that Salesforce's foreign sales data is "highly relevant" to a reasonable royalty is simply not true.  "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284).  Under 35 U.S.C. §§ 271(a)-(b), "no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("a defendant's foreign exploitation of a patented invention . . . is not infringement at all.").  Moreover, "[e]ven indirect infringement, which can encompass conduct occurring elsewhere, . . . requires underlying direct infringement in the United States[.]"  *See id.*  "Patent infringement damages, therefore, must compensate only for the consequences of domestic activities." *Oracle Am., Inc. v. Google, Inc.*, 798 F. Supp. 2d 1111, 1118 (N.D. Cal. 2011).  If the alleged exploitation of the patented invention occurred overseas, the "information regarding defendant's foreign sales is not relevant to the hypothetical negotiation of the reasonable royalty amount because defendant would not be liable for foreign sales that do not violate U.S. patent laws." *Kajeet, Inc. v. Qustodio, LLC*, No. SA CV 18-1519-JAK (PLAx), 2019 WL 8060078, at *13 (C.D. Cal. Oct. 22, 2019); *see also Finjan, Inc. v. Qualys Inc.*, No. 18-cv-07229-YGR (TSH), 2020 WL 5569704, at *1 (N.D. Cal. Sept. 17, 2020); *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15-cv-1879-BEN (BLM), 2016 WL 6522808, at *7 (S.D. Cal. Nov. 3, 2016).

AIT concedes, as it must, that to obtain foreign sales data, it is required to make a threshold showing that Salesforce's foreign sales "occur in the United States."  Mot. at 10.  To make this determination, courts look to where the "substantial activities of a sales transaction," including the "formation of a contract for sale" and the "delivery and performance under the sales contract."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378 (Fed. Cir. 2016).  Where these substantial activities occur outside the United States, as here, "pricing and contracting

-12-

negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States for purposes of § 271(a)."  *Id.*; *see also Ziptronix, Inc. v. OmniVision Techs., Inc.*, 71 F. Supp. 3d 1090, 1096 (N.D. Cal. 2014) ("[E]ven accepting Ziptronix's position that the acts of TSMC NA and TSMC Ltd. can be considered together in determining direct infringement liability, and that the TSMC entities and OmniVision executed valid contracts in the United States for the 'sale' of the accused wafers, neither TSMC Ltd. nor TSMC NA is liable for direct infringement because the accused wafers were not sold 'within the United States.'").  The Supreme Court has explicitly held that the foreign sale of software developed in the United States does not constitute infringement because the software is not "made or sold" in the United States, and is not even a component "supplied" from the United States. *Microsoft*, 550 U.S. at 441.

AIT does not come close to making its threshold showing that Salesforce's foreign sales occur in the United States.  AIT does not claim that any contracts for the foreign sales of the Accused Products were formed or performed in the United States.  AIT does not even allege that any pricing and contract negotiations took place in the United States.  AIT argues only that Salesforce's headquarters and "many" of its employees are located in the United States.  Mot. at 11.  That does not establish or even suggest that foreign sales are relevant to any United States-based infringement activity. *See Halo*, 831 F.3d at 1378; *Ziptronix*, 71 F. Supp. 3d at 1096.

AIT relies on three cases where foreign sales data was produced, but all three of those cases involved physical products that were made in the United States or imported into the United States. *See Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. CV 16-00300 CJC (RAOx), 2017 WL 3275615, at *1, 4 (C.D. Cal. Feb. 14, 2017) (accused products were incorporated into third party products and imported into the United States); Brief of Defendant at 2, *EVS Codec Techs., LLC v.OnePlus Tech. (Shenzhen) Co.*, No. 46 (E.D. Tex. Apr. 9, 2020) 2020 WL 6365514 (accused products were contained in mobile devices sold in the United States); *GE Healthcare Bio-Sciences AB v. Bio-Rad Laboratories, Inc.*, No. 1:14-CV-07080-LTS-SN, 2015 WL 7582967, at *1 (S.D.N.Y. Nov. 25, 2015) (Accused product was a physical product "produced in the United States and subsequently sold by the manufacturer to foreign buyers.").  Those cases do not apply

-13-

here because AIT's infringement contentions do not allege that any physical product was made in or imported into the United States.  *See generally* Ex. 4 (AIT's Disclosure of Asserted Claims and Infringement Contentions).  To the contrary, as in *Microsoft*, Salesforce's foreign sales data relates to sales of software that occurred outside the United States.  Thus, Salesforce's foreign sales data is not relevant to any infringement activity.

### 2. Foreign Sales Data Is Not Needed to Show That Salesforce Is Commercially Successful

Apparently realizing it cannot make a threshold showing that foreign sales relate to infringement activity, AIT alternatively claims that it needs Salesforce's foreign sales data to show that Salesforce is commercially successful.  Mot. at 10.  But the fact that Salesforce is commercially successful is not in dispute.  Further, Salesforce has already provided "over a decade's worth of United States revenue for the accused products," (Ex. 17 (03/24/2022 Judah email) at 1-2), and SEC filings that identify its total worldwide revenue for the accused products.  This is more than sufficient to demonstrate Salesforce's commercial success.  Indeed, it is difficult to see what additional value providing more detailed foreign sales data could provide on this issue.  AIT's continued demand for foreign sales data is completely unhelpful, let alone proportional to the issues in this case.[8]  *FlowRider*, 2016 WL 6522808, at *7 (denying motion to compel foreign sales data and rejecting argument that the requested information was necessary to show commercial success as a defense to obviousness).

### 3. Salesforce Did Not Waive Its Objections to the Production of Foreign Sales Data

AIT contends Salesforce waived its objections to the production of foreign sales data.  It did not.  As explained above, Salesforce objected to the production of foreign sales data for the accused products made and sold abroad because AIT's discovery requests are overbroad as to geographical scope, not relevant to AIT's infringement claims, and not proportional to the needs

---

[8]   AIT relies on *EVS Codec Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, No. 2:19-CV-00057-JRG, 2020 WL 6365514, at *2 (E.D. Tex. Apr. 9, 2020), but that case is distinct because there was a live dispute over the commercial success of the accused products and the defendant had provided **no** information on its worldwide sales.

of this case.  Ex. 3 at 4, 35.  Unlike the defendant in the *Richmark* case cited by AIT, Salesforce included these objections in its discovery responses served within the time allotted under Federal Rule of Civil Procedure 34(b)(2)(B).  *Id.* (objecting "to the extent the information sought is ***not reasonably limited in geographic . . . scope***" and "seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence")(emphasis added).  As such, Salesforce has not waived these objections.

### C.   AIT's Request for Information About the Number of Seats Per License Is Moot Because Salesforce Has Produced the Requested Information

Finally, AIT requests information about the number of active "seats" for each product licensed by Salesforce.  Salesforce has now produced that information for the time period 2008 to the present (i.e, the entire time period relevant to this case).  *See* Stake Ex. E, F.[9]  Accordingly, AIT's request should be denied as moot.


DATED: April 21, 2022                  Repectfully submitted,

                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                          By  */s/ Ray Zado*

                                          Ray Zado
                                          Quinn Emanuel Urquhart & Sullivan, LLP
                                          555 Twin Dolphin Drive, 5th Floor
                                          Redwood Shores, CA 94065
                                          Telephone:  (650) 801-5000
                                          Facsimile:  (650) 801-5100
                                          rayzado@quinnemanuel.com

---

[9]   Salesforce produced this information in order to limit the number of disputes before the Court, despite the fact that the revenue, price, and SKU information already produced by Salesforce was more than sufficient for AIT to calculate damages based on a reasonable royalty, as demonstrated by AIT's own cases. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1339 (Fed. Cir. 2009) (reasonable royalty based on "either sale price or number of units sold"); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1237–41 (Fed. Cir. 2011) (reasonable royalty based on "per-unit" award).

**CERTIFICATE OF SERVICE**

1

2          I hereby certify, under penalty of perjury, that I am an employee of Quinn Emanuel

3   Urquhart & Sullivan LLP and that pursuant to LR 5-3 I caused to be electronically filed on this

4   date a true and correct copy of the foregoing document with the Clerk of the Court using the

5   CM/ECF system which will automatically e-serve the same on the attorney set forth below:

6       Michael A. Burke                    Andrea Pacelli
        *mburke@rssblaw.com*                Mark S. Raskin
7                                           Michael De Vincenzo
                                            Elizabeth Long
8                                           *andrea.pacelli@us.kwm.com*
                                            *mark.raskin@us.kwm.com*
9                                           *michael.devincenzo@us.kwm.com*
                                            *elizabeth.long@us.kwm.com*
10

11      Steven C. Sereboff
        *ssereboff@socalip.com*
12

13

14      DATED:  April 21, 2022.

15

16                                                    /s/ *William T. Pilon*
                                                      William T. Pilon
17

18

19

20

21

22

23

24

25

26

27

28

SALESFORCE'S OPPOSITION TO AIT'S MOTION TO COMPEL