Michael A. Burke, Esq. (NSB #11527)
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington St.
Reno, NV 89503
Telephone: (775) 329-3151
Email: mburke@rssblaw.com

Andrea Pacelli, Esq. (*pro hac vice*)
Mark S. Raskin, Esq. (*pro hac vice*)
Michael DeVincenzo, Esq. (*pro hac vice*)
Elizabeth Long, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Daniel Miller, Esq. (*pro hac vice*
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: andrea.pacelli@us.kwm.com
mark.raskin@us.kwm.com
michael.devincenzo@us.kwm.com
elizabeth.long@us.kwm.com
charles.wizenfeld@us.kwm.com
daniel.miller@us.kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC, | Civil Action No.: 3:13-CV-00628-RCJ-CLB |
| Plaintiff, | **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW** |
| v. | |
| SALESFORCE.COM, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND .....................................................................................................4

III.    LEGAL STANDARD .............................................................................................7

IV.     ARGUMENT ..........................................................................................................7

        A.      The Pluritas Documents Are Protected by Work Product and/or
                Attorney-Client Privilege .............................................................................7

                1.      The Pluritas Agreement and Related 2012 Communications Were
                        Prepared in Anticipation of Litigation..............................................7

                2.      AIT Has Not Waived Work Product Protection by Sharing Documents
                        with Pluritas...................................................................................10

                3.      Salesforce Does Not Have a Substantial Need for the Pluritas
                        Documents ......................................................................................15

                4.      AIT Has Not Waived Attorney-Client Privilege with Its Communications
                        with Pluritas...................................................................................19

        B.      Anthony Sziklai's Documents Are Privileged ...........................................19

        C.      AIT Is Not Withholding Responsive Documents That Were Disclosed to
                A Litigation Funder ....................................................................................22

V.      CONCLUSION .....................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   2018 WL 798731 (D. Del. Feb. 9, 2018) ................................................................. 18 n.9

*Admiral Ins. Co. v. U.S. Dist. Ct.*,
   881 F.2d 1486 (9th Cir. 1989) ............................................................................................ 7

*AVM Techs., LLC v. Intel Corp.*,
   15–33–RGA, 2017 WL 1787562 (D. Del. May 1, 2017) .................................................. 17

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
   408 F.3d 1142 (9th Cir. 2005) .......................................................................................... 12

*Conner Peripherals, Inc. v. W. Digital Corp.*,
   1993 WL 726815 (N.D. Cal. June 8, 1993) .................................................................. 8, 10

*Cont'l Circuits LLC v. Intel Corp.*
   435 F. Supp. 3d 1014 (D. Ariz. 2020) .............................................................................. 15

*Devon It, Inc. v. IBM Corp.*,
   Civil Action No. 10–2899, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ...................... 19

*Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11–cv–02518, 2014 WL 1715376, at *3 (N.D. Ill.
   May 1, 2014) ..................................................................................................................... 18

*Emps. Committed for Justice v. Eastman Kodak Co.*,
   251 F.R.D. 101 (W.D.N.Y. 2008) .................................................................................... 19

*Fidelity and Deposit Company of Maryland v. Travelers Casualty and Surety Company of Am.*,
   No. 2:13-cv-00380-JAD-GWF, 2017 WL 2380167 (D. Nev. May 31, 2017) .......... 14 n.8

*Finjan, Inc. v. SonicWall, Inc.*,
   17-cv-04467-BLF (VKD), 2020 WL 4192285 (N.D. Cal. July 21, 2020) ...................... 11

*Fulton v. Foley*,
   17-CV-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ............................................... 17

*In re ChanBond, LLC Patent Litig.*,
   C.A. No. 15-842-RGA, 2020 WL 550786 (D. Del. Feb. 4, 2020) ................................... 17

*In re Com. Money Center, Inc.*,
   248 F.R.D. 532 (N.D. Ohio 2008) .................................................................................... 19

*In re Copper Mkt. Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) ...................................................................................... 21

*In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*,
   357 F.3d 900 (9th Cir. 2004) .............................................................................................. 7

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
   Civil Action Nos. 2:07–CV–565–TJW–CE, 2:08–CV–478–TJW, 2011 WL 1714304
   (E.D. Tex. May 4, 2011) ................................................................................................... 18

*Nevada v. J-M Mfg. Co.*,
   555 F. App'x 782 (10th Cir. 2014) ................................................................................... 15

*Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*,
   3:15-cv-01738-H (RBB), 3:15-cv-01743-H (RBB), 3:15-cv-01735-H (RBB), 2016 WL 7665898,
   (S.D. Cal. Sept. 20, 2016) ......................................................................................... 18 n.10

*Phillips v. C.R. Bard, Inc.*,
   290 F.R.D. 615 (D. Nev. 2013) ........................................................................................ 14

*RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*,
   No.: 2:14–cv–01232–APG–GWF, Case No.: 2:15–cv–01446–APG–GWF, 2017 WL 2292818
   (D. Nev. May 25, 2017) .................................................................................................... 11

*Schanfield v. Sojitz Corp. of Am.*,
   258 F.R.D. 211 (S.D.N.Y. 2009) ...................................................................................... 21

*Smith v. McCormick*,
   914 F.2d 1153 (9th Cir. 1990) ............................................................................................ 7

*United Access Techs., LLC v. AT&T Corp.*,
   11-338-LPS, 2020 WL 3128269 (D. Del. June 12, 2020) ................................................ 17

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ........................................................................................... 10

*United States v. Bauer*,
   132 F.3d 504 (9th Cir. 1997) .............................................................................................. 7

*United States v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003) ..................................................................................... 11

*United States v. Homeward Residential, Inc.*,
   4:12-CV-461, 2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) .......................................... 18

*United States v. Nobles*,
   422 U.S. 225 (1975) ............................................................................................................ 7

*United States v. Richey*,
   632 F.3d 559 (9th Cir. 2011) ......................................................................................... 8, 10

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) ....................................................................................... 11, 20, 21, 22

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ............................................................................................................ 7

*USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*,
   No. 2:10-CV-001513-RLH-L, 2011 WL 2457655 (D. Nev. June 16, 2011) ................... 2, 14

*V5 Techs. v. Switch, Ltd.*,
   334 F.R.D. 306 (D. Nev. 2019) ..................................................................................... 17

*V5 Techs. v. Switch, Ltd.*,
   No. 2:17-cv-02349-KJD-NJK, 2019 WL 13157472 (D. Nev. Dec. 20, 2019) ............................. 14

**Rules**

Fed. R. Civ. P. 26 ................................................................................................. 7, 8, 15

## I.     INTRODUCTION

Plaintiff Applications in Internet Time, LLC ("AIT") hereby opposes Defendant Salesforce, Inc.'s ("Salesforce") motion to compel the production of documents protected by the work product doctrine and the attorney-client privilege.  Salesforce's belated motion, filed after the deadline for fact discovery, requests the production of various categories of documents that were prepared specifically for the purpose of litigating the Asserted Patents.  Salesforce fails to demonstrate that AIT improperly withheld these documents.

Pluritas Pre████ Documents:  Salesforce first argues that documents from around June 2012 cannot be protected by the work product doctrine because AIT was not anticipating potential litigation in June 2012.  Yet, the evidence conclusory establishes that AIT was aware of and investigating potential infringement claims with respect to the Asserted Patents, including claims against Salesforce, at least as early as November 2011.  At that time, AIT compared Salesforce's products to the claims of the Asserted Patents.  Additionally, AIT contacted an attorney, Timothy Lohse of DLA Piper LLP, with respect to the investigation of infringement at that time.  Following its initial investigation, AIT engaged a consultant, Pluritas, LLC ("Pluritas").  Once engaged, in June 2012, Pluritas assisted AIT in retaining litigation counsel.  Salesforce's contention that AIT was not contemplating litigation in June 2012 is inconsistent with the sworn testimony and documentary evidence.

All Documents Shared With Pluritas Based on Waiver:  Salesforce next argues that work product protection and attorney-client privilege over materials prepared for the purpose of litigation shared with Pluritas, AIT's consultant hired for the purpose of retaining legal counsel, has been waived because Pluritas does not have a "common interest" with AIT.  Salesforce's waiver argument ignores that waiver of work product immunity is different from waiver of attorney-client privilege.  Waiver of work product immunity requires that a disclosure substantially increases the opportunity that an adversary will acquire the disclosed materials.  Salesforce never addresses this standard and it cannot meet it.  Indeed, all withheld materials communicated with Pluritas were from after AIT and Pluritas' June 2012 Agreement ("Pluritas Agreement").  The Pluritas Agreement provides for the confidentiality of disclosed information and entitles Pluritas to ████████████

1   ███████████████████.  Given these circumstances, the work product immunity was not

2   waived when AIT shared documents with Pluritas.  Similarly, as the withheld documents are all

3   dated after June 2012, all documents shared with Pluritas are separately protected by attorney-client

4   privilege which has not been waived.

5       Alternatively, Salesforce claims waiver for all documents because AIT served its privilege

6   log on April 15, 2022 (the parties' agreed-upon date for exchanging privilege logs) and subsequently

7   provided amendments thereto between April 15, 2022 and May 20, 2022 in an effort to address

8   questions and concerns raised by Salesforce.  AIT's amendments reflect its diligent attempts to

9   resolve discovery disputes amicably and promptly as they arose toward the end of discovery and not

10  an attempt to hide any proverbial ball.  Salesforce requested the amendments based on the parties'

11  discussions and asked AIT to search for additional responsive documents as late as May 16, 2022.

12  AIT promptly conducted an additional search and amended its privilege log within days of

13  Salesforce's first request.  There was no unjustified delay, improper conduct or bad faith that could

14  possibly justify the "harsh sanction" associated with the large-scale waiver sought by Salesforce.

15  *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, No. 2:10-CV-001513-RLH-L, 2011 WL 2457655,

16  at *3 (D. Nev. June 16, 2011).

17      Salesforce's Illusory "Substantial Need" for Pluritas Documents:  Salesforce speculates that

18  the work product protected material is so critical to its case that all work product protection should

19  be waived.  Yet, Salesforce fails to establish that the requested documents are likely to be relevant let

20  alone crucial or have great probative value.  Salesforce makes a conclusory statement that the

21  withheld documents, including the redacted pages of the Pluritas Agreement, are "highly relevant to

22  damages" and speculates that such redactions could show "the valuation of the patents."  (Dkt.

23  217.04, Salesforce's Mem. of Points and Authorities ("Mot.") at 14.)  Yet, Salesforce has no basis to

24  suggest that the Pluritas Agreement itself or any Pluritas related documents concern highly relevant

25  "valuations."  To the contrary, AIT's 30(b)(6) witness testified that ████████████████████

26  ████████████████████████.  Further, Salesforce's actions throughout this litigation

27  reflect that the Pluritas Agreement, its redactions, and other Pluritas Documents are not critical

28  evidence.  Salesforce has known of the Pluritas Agreement (as redacted) since June 2021 and AIT's

basis for redactions from that document since July of 2021.  (Salesforce Ex. H[1] (7/2/2021 Pacelli letter).)  Yet Salesforce never subpoenaed Pluritas for documents and recently chose to forgo taking a Pluritas deposition despite having served a deposition subpoena on Pluritas.

As a legal matter, the evidence sought about Pluritas and supposed valuations based on funding agreements is not the type of information that is typically relevant, let alone critical, to damages in a patent case.  This Court, as well as many others, have found valuations represented by funding agreements and communications to have no probative value, such that they were not required for production, even in the absence of work product protection.  Simply put, the type of materials sought by Salesforce falls far short of critical information that would be sufficient to invade work product protection.

Documents Shared with Anthony Sziklai:  Mr. Sziklai is one of the inventors of the Asserted Patents, a former employee of AIT's predecessor in interest, a former advisor for the company, and the son of Beverly Nelson, one of the two principal owners of AIT.  During its investigation into potential claims of infringement against Salesforce, Mr. Sziklai assisted in preparing an ███████ ███████████████████████████████████████████.  Salesforce contends the documents in question are not privileged because: 1) they were not prepared in anticipation of litigation; and 2) Mr. Sziklai did not have a "common interest" with AIT in 2012.  With respect to the first issue, Salesforce simply ignores the evidence by suggesting that AIT did not contemplate litigation prior to 2012.  With respect to the second issue, Salesforce fails to address the work product standard and/or articulate why a disclosure to Mr. Sziklai would substantially increase the opportunity that an adversary would acquire the disclosed materials.

Documents Disclosed to Litigation Funders:  Salesforce seeks documents disclosed to litigation funders prior to the execution of a funding agreement.  AIT is not withholding such documents.  AIT confirmed this fact with Salesforce.  Salesforce moved to compel anyway.  There is simply nothing to compel as AIT was not the entity responsible for communicating with funders,

---

[1] Citations to "Salesforce Ex." refer to the exhibits attached to the Declaration of James Judah in Support of Salesforce's Motion to Compel Document Production or, in the Alternative, for In Camera Review.  (Dkt. 217.02 & Dkt. 217.03.)

1   Salesforce subpoenaed each funder but not for documents, and, despite knowing of Pluritas since

2   July 2021, Salesforce never subpoenaed Pluritas for documents.

3   **II.      BACKGROUND**

4          <u>Salesforce's Discovery Requests and The Parties' Discussions</u>: Document Request No. 66 is

5   the only Salesforce document request directly seeking information concerning funding and/or

6   communications with funders.  (Mot. at 20–24.)  In 2014, in response to Salesforce Document

7   Request No. 66, AIT refused to produce any documents based on claims of relevance and privilege.

8   (*Id.* at 24.)

9          Between 2014 and 2021, Salesforce did not press AIT on its objection.  On June 21, 2021,

10  Salesforce first raised AIT's response to Document Request No. 66, urging that all documents related

11  to funding agreements and funders were required to be produced.  (Salesforce Ex. G (6/10/2021

12  Judah letter).)  On July 2, 2021, in response to Salesforce, AIT explained that it would produce

13  "relevant agreements with Pluritas, LLC and ███████████" in response to Document Request

14  No. 66 and nothing more.  (Salesforce Ex. H (7/2/2021 Pacelli letter).)  On August 4, 2021,

15  Salesforce again requested AIT to agree to search for and produce all documents and not just signed

16  agreements.  (Salesforce Ex. K (8/4/2021 Judah letter).)  Similarly, on that date, Salesforce asked

17  AIT to produce an unredacted version of the Pluritas Agreement.  (*Id.*)  On August 16, 2021, AIT

18  confirmed that it would only be producing signed agreements and confirmed that it would not be

19  producing an unredacted version of the Pluritas Agreement.  (Salesforce Ex. M (8/16/2021 Pacelli

20  letter).)

21         On August 26, 2021, the parties conferred regarding Document Request No. 66, the

22  redactions in the Pluritas Agreement and various other issues.  With respect to the Pluritas

23  Agreement, the parties discussed the assertion of work product protection, did not reach agreement

24  and Salesforce asked AIT to include the redaction in its eventual privilege log.  (AIT Ex. A[2]

25  (9/8/2021 Judah email & 8/30/2021 Pacelli email).)  With respect to Document Request No. 66, AIT

26  _____

27         [2] Citations to "AIT Ex." refer to exhibits attached to the Declaration of Michael DeVincenzo in
    Support of AIT's Opposition to Salesforce's Motion to Compel Document Production or, in the
28  Alternative, for In Camera Review.

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO
COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW

1   indicated that, at best, funding agreements themselves are relevant and it agreed to produce funding

2   agreements only.  The parties did not discuss funding agreements or funding related documents

3   concerning any other document request at that time.  Following the parties' conference, Salesforce's

4   September 8, 2021 letter identifies several document requests where agreements were reached but

5   nowhere mentions Document Request No. 66, other than to confirm the parties' discussion regarding

6   the Pluritas Agreement redactions.  (*Id.* (9/8/2021 Judah email).)

7           The Parties' Privilege Log Agreements:  On October 8, 2021, Salesforce first broached the

8   topic of exchanging privilege logs.  (Salesforce Ex. N (10/8/2021 Judah email).)  Salesforce

9   proposed October 22, 2021.  (*Id.*)  On October 18, 2021, AIT informed Salesforce that it was

10  working on the production of documents and that it would be willing to "discuss[] this issue again in

11  a few weeks."  (*Id.* (10/18/2021 Pacelli email).)  On November 15, 2021, as part of a larger

12  correspondence, Salesforce proposed November 19, 2021 to exchange privilege logs.  (Salesforce

13  Ex. O (11/15/2021 Judah letter).)  Thereafter, the parties met and conferred regarding various issues

14  but neither party broached the issue again for months.

15          On April 6, 2022, Salesforce wrote to AIT suggesting the "parties should exchange privilege

16  logs soon" and proposing "April 15, 2022."  (Salesforce Ex. P (4/6/2022 Judah letter).)  AIT agreed

17  to exchange privilege logs on April 15, 2022.  (Salesforce Ex. Q (4/12/22 Long email).)  Salesforce

18  did not "repeatedly propose[]" dates while "AIT repeatedly refused to agree."  (Mot. at 5.)  Instead,

19  after some brief correspondence in October and November 2021, the issue was put aside until April

20  2022 when AIT agreed to exchange on the first date proposed by Salesforce.

21          On April 15, 2022, AIT served its initial privilege log.  (Salesforce Ex. S (4/15/2022 Long

22  email).)  That privilege log identified documents authored by Pluritas and documents authored by

23  Mr. Sziklai.  (Salesforce Ex. R (AIT Privilege Log at Doc. Nos. 1 and 2).)  On April 24, 2022,

24  Salesforce requested a supplemental privilege log.  (Salesforce Ex. S (4/24/2022 Wang email).)  At

25  that time, Salesforce did not ask for more detail concerning any of the entries or dispute the validity

26  of AIT's privilege and work product claims.  (*Id.*)  Instead, Salesforce only asked for AIT to include

27  the redactions regarding the Pluritas Agreement, discussed in August 2021.  (*Id.*)  On May 4, 2022,

28  AIT provided its first supplemental privilege log including the entry for the redacted portions of the

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO
COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW

Pluritas Agreement.  (*Id.* (5/4/2022 Long email).)  That entry was originally listed as work product only but was amended to include attorney-client privilege protection on May 11, 2022.  (*Compare* Salesforce Ex. R (AIT's First Am. Privilege Log at 19, Entry #388) *with* Salesforce Ex. W (AIT's Second Am. Privilege Log at 17, Entry #388).)  The basis for that amendment was Mr. Sturgeon's deposition testimony where he explained that documents prepared by Pluritas contained privileged information from Mr. Lohse, AIT's counsel advising with respect to the prospective litigation at that time.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 157:16–160:9).)  That deposition began on May 4, 2022 and concluded on May 10, 2022.

      <u>AIT's Amicable Attempts to Resolve Discovery Dispute</u>: On May 8, 2022, Salesforce demanded production of "all documents relating to Pluritas," despite the parties' discussion and agreement on August 26, 2021.  (Salesforce Ex. T (5/6/2022 Pilon email).)  On May 8, 2022 and May 11, 2022, AIT responded accusing Salesforce of delay and provided details regarding its attorney-client privilege and work product claims.  (*Id.* (5/8/2022 DeVincenzo email & 5/11/2022 DeVincenzo email).)  Between May 8, 2022 and May 16, 2022, the parties corresponded numerous times with AIT providing more details regarding its privilege and work product claims.  (*See id.*)  On May 17, 2022, the parties conferred and vigorously disputed the content and context of the parties' discussion in August 2021.  On May 18, 2022, the parties discussed a compromise proposal that would avoid the need to address whether Salesforce waived its rights to documents regarding funders based on the parties' discussion regarding Document Request No. 66.  AIT proposed, and ultimately the parties agreed, that AIT would not be required to produce "drafts of the funding agreements" and "term sheets, where term sheets are documents that set forth proposed provisions for potential inclusion in a final agreement; however, to the extent a document includes, e.g., substantive discussion about the valuation of the patents or the litigation, such documents don't fall within the term sheet exception."  (Salesforce Ex. U (5/19/2022 Zado email).)  AIT further agreed that it would search to ensure that other documents that did not fall into the agreement would be promptly provided on a supplemental privilege log.  (*Id.*)  On May 20, 2022, AIT provided a third amended privilege log identifying additional documents based on the parties' agreement.  On Sunday, May 22, 2022, despite two previous discussions concerning privilege and correspondence addressing the issue

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW

- 6 -

1    (*see, id.* (5/20/2022 DeVincenzo email & 5/20/2022 Judah email)), Salesforce requested additional

2    information.  (*Id.* (5/22/2022 Judah email).)  That same day, AIT responded and offered to provide

3    additional information and requested a meet and confer.  The parties conferred on May 23, 2022.  At

4    that time, AIT agreed to provide additional information and referred Salesforce to Mr. Sturgeon's

5    deposition testimony.  On May 24, 2022, pursuant to Salesforce's request, AIT provided a fourth

6    supplemental privilege log.  (Salesforce Ex. L (5/24/2022 Long email).)

7    **III.    LEGAL STANDARD**

8         The attorney-client privilege protects confidential communications between attorneys and

9    clients, which are made for the purpose of giving legal advice.  *Upjohn Co. v. United States*, 449

10   U.S. 383, 389 (1981).  The party asserting the attorney-client privilege has the burden of establishing

11   the relationship and privileged nature of the communication.  *United States v. Bauer*, 132 F.3d 504,

12   507 (9th Cir. 1997).  The attorney-client privilege may extend to communications with third parties

13   who have been engaged to assist the attorney in providing legal advice.  *See Smith v. McCormick*,

14   914 F.2d 1153, 1159–60 (9th Cir. 1990).

15        The work-product doctrine protects "from discovery documents and tangible things prepared

16   by a party or his representative in anticipation of litigation."  *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881

17   F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)).  The work-product doctrine covers

18   documents or the compilation of materials prepared by agents of the attorney in preparation for

19   litigation.  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  To qualify for work-product

20   protection, documents must: (1) be "prepared in anticipation of litigation or for trial" and (2) be

21   prepared "by or for another party or by or for that other party's representative."  *In re Grand Jury*

22   *Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004).

23   **IV.    ARGUMENT**

24   **A.    The Pluritas Documents Are Protected by Work Product and/or Attorney-Client**
         **Privilege**

25

26        **1.    The Pluritas Agreement and Related 2012 Communications Were Prepared in**
               **Anticipation of Litigation**

27        A *prima facie* case of work product protection is established where: 1) a document or

28

tangible thing; 2) is prepared in anticipation of litigation; and 3) is prepared by or for the party asserting the privilege.  Fed. R. Civ. P. 26(b)(3)(A).  Salesforce only disputes the applicability of this test with respect to five documents, the Pluritas Agreement and "June and July 2012 communications with Pluritas"[3] (collectively, "Pluritas 2012 Documents").  Salesforce argues that such documents could not have been prepared in anticipation of litigation solely because this litigation was not filed until November 2013.  Yet, as Salesforce is aware, by "June and July 2012," AIT had begun investigating asserting a claim of patent infringement (including against Salesforce), AIT had sought and received legal advice regarding such litigation prospects, and AIT had retained Pluritas for the purpose of assisting with its efforts of enforcing its infringement claims.  Put simply, as demonstrated herein, the Pluritas 2012 Documents were prepared in anticipation of litigation and *prima facie* work product protection therefore applies to each such document.

The parties do not dispute that a document is produced in anticipation of litigation if the document is "prepared or obtained because of the prospect of litigation" or the document "would not have been created in substantially similar form but for the prospect of litigation."  *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011), *see also* Mot. at 10–11.  Indeed, as conceded by Salesforce, the prospect of litigation is identifiable where a party is aware of "specific claims that have already arisen."  (Mot. at 11 (*quoting Conner Peripherals, Inc. v. W. Digital Corp.*, 1993 WL 726815, at *4 (N.D. Cal. June 8, 1993).)  Here, each document in question was prepared because of the prospect of litigation with respect to claims of infringement that AIT was aware of and knowledgeable about.

There should be no dispute that there was the prospect of litigation and AIT had specific claims of infringement by "June 2012."  Mr. Sturgeon testified that AIT first became aware of the specific claims of infringement in the "████████████████████████████."  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 31:11–14; *see id.* at 29:17–29:19) ████████████ ████████████████████████████████████████.)  Mr. Sturgeon testified that at that time, well before "June 2012," he noticed similarities between Salesforce's

---

[3] The only "June and July 2012" communications with Pluritas are Privilege Log Entry Nos. 389, 391, 392 and 393.  (*See* Mot. at 12.)

1   materials and the Asserted Patents.  Mr. Sturgeon explained that he contacted Mr. Sziklai and

2   discussed "███████████████████████████" in comparison to the "████████."

3   (*Id.* at 29:21; 29:24.)  At that time, Mr. Sturgeon testified that they both realized that the Salesforce

4   accused platform in this case "████████████" to the claimed invention.  (*Id.* at 30:5.)  Mr.

5   Sturgeon explained that he did some further searching and contacted counsel regarding the potential

6   claim and "████████████████."  (*Id.* at 33:6–22.)  Following Mr. Sturgeon's initial discussion

7   with counsel, Mr. Sturgeon explained that he performed "████████" diligence in early 2012.

8   (AIT Ex. C (Sturgeon 5/5/2022 Dep. Tr. at 266:4–22.))  He further explained that this investigation

9   was performed at the direction of and for the benefit of counsel, Mr. Lohse, and included several

10   meetings with Mr. Lohse.   (*Id.* at 265:23–266:15.)  Following AIT's initial decision to contact

11   counsel regarding potential litigation concerning the Asserted Patents, AIT has asserted work

12   product protection over documents prepared in furtherance of AIT's investigation of infringement.

13   This occurred well before "June 2012."

14          Further, as explained by Mr. Sturgeon, AIT's early communications concerning potential

15   infringement claims and its work with Pluritas were overseen by counsel.  Mr. Lohse, who was

16   identified in AIT's initial disclosures but never subpoenaed, advised AIT regarding the potential

17   litigation as AIT was seeking to hire formal litigation counsel.  Salesforce correctly notes that formal

18   litigation counsel was hired in ████████, (Salesforce Ex. L (5/24/2022 Long email)), however, as

19   explained by Mr. Sturgeon, Mr. Lohse was providing legal advice with respect to the potential

20   litigation and related pitch materials at that time.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 157:16–

21   160:9).)  As Salesforce knows, Mr. Lohse advised AIT with respect to "the litigation and obtaining

22   litigation counsel."  (Salesforce Ex. T (5/14/2022 DeVincenzo email).)  As evidenced by Mr.

23   Sturgeon's testimony Mr. Lohse provided advice with respect to the early phases of patent

24   enforcement, *i.e.*, until formal litigation counsel was hired.  (*Id.*[4])  In particular, Mr. Lohse provided

25

26          [4] Salesforce mentions that Mr. Lohse did not himself "provide information to Pluritas."  (Mot. at
    8.)  Yet, that has no bearing on whether Mr. Lohse was advising AIT with respect to a prospective
27   litigation.  As explained by Mr. Sturgeon, AIT provided information to Pluritas based on the advice
    of Mr. Lohse.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 157:5–158:20; 159:16–160:9).)
28

advice with respect to the materials prepared by AIT and Pluritas.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 157:5–158:20; 159:16–160:9).)  Indeed, work product protection applies equally to all attorneys providing litigation advice, it is not limited to the ultimate trial counsel or formally retained litigation counsel, and Salesforce identifies no case law urging it should be so limited.

Additionally, the documentary evidence is consistent with the testimony.  Following AIT's awareness of potential infringement claims with respect to the Asserted Patents and its initial infringement investigation, AIT needed help to "████████████" that would be ████████████ ████████████."  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 153:18–20).)  In June 2012, AIT entered into the Pluritas Agreement—a consulting agreement with Pluritas—so it could receive help with the anticipated litigation.  (*Id.*)  The Pluritas Agreement concerned assisting in hiring litigation counsel and negotiating agreements with litigation counsel.  (*Id.* at 154:1–20.)  As such, the Pluritas Agreement and the 2012 Pluritas Documents were "prepared or obtained because of the prospect of litigation" and "would not have been created in substantially similar form but for the prospect of litigation."   *Richey*, 632 F.3d at 568; *see also Conner Peripherals,* 1993 WL 726815 at *4.  Documents prepared for the purpose of retaining litigation counsel are prepared for the purpose of an anticipated litigation.  *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (recognizing that "where a party faces the choice of whether to engage in a particular course of conduct virtually certain to result in litigation and prepares documents analyzing whether to engage in the conduct based on its assessment of the likely result of the anticipated litigation," the "preparatory documents" are work product).

Lastly, to the extent requested by the Court, the Pluritas Agreement and the 2012 Pluritas Documents are available for in camera review to confirm the accuracy of AIT's representations. However, Salesforce has failed to provide a credible basis for doubting Mr. Sturgeon's testimony and such review should not be required in the absence of some credible explanation for Salesforce's position.

### 2.  AIT Has Not Waived Work Product Protection by Sharing Documents with Pluritas

Documents prepared by AIT and/or Pluritas for the express purpose of preparing for and

funding this litigation are a textbook example of work product protected from discovery.  Salesforce sets forth two arguments for waiver, both of which fail.

First, Salesforce argues that disclosure of information to Pluritas waived work product protection because AIT disclosed materials to a third party, Pluritas, without a "common interest." (Mot. at 12.)  Salesforce applies the wrong standard.  Work product waiver does not turn on whether a "common interest" between AIT and Pluritas exists.[5]  Indeed, "[u]nlike the attorney-client privilege, attorney work-product protection is not automatically waived upon disclosure to third parties." *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc*., No.: 2:14–cv–01232–APG–GWF, Case No.: 2:15–cv–01446–APG–GWF, 2017 WL 2292818, at *6 (D. Nev. May 25, 2017) (citations and internal quotation marks omitted).  This is so because "the purpose of the work product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials." *Id.*  As such, as reflected in the cases relied on by Salesforce, work product protection waiver occurs where "disclosure of the otherwise privileged documents is made to a third party, ***and that disclosure enables an adversary to gain access to the information***." *United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003) (emphasis added); *see also Finjan, Inc. v. SonicWall, Inc.,* 17-cv-04467-BLF (VKD), 2020 WL 4192285, at *5 (N.D. Cal. July 21, 2020) (finding that plaintiff did not waive "the attorney work product protection when it disclosed the materials to [a third party]" and "[e]ven in the absence of a common legal interest between [plaintiff and the third party], 'the disclosure [of work product] to a third party does not necessarily constitute a waiver'" (citations and internal quotation marks omitted)).  As explained by the Ninth Circuit, "disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or ***has substantially increased the opportunities*** for potential adversaries to obtain the information." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th

---

[5] A disclosure with a lack of "common interest" could result in a waiver of attorney-client privilege.  However, as further discussed in Section IV.A.4 below, Pluritas has an interest in the proceeds of this litigation, which has been repeatedly found to be a sufficient "common interest" to avoid waiver.

Cir. 2020) (citations and internal quotation marks omitted) (emphasis added).  These circumstances do not apply here.

AIT has never disclosed the disputed materials to Salesforce and any argument that AIT's disclosure to Pluritas likely increased the opportunity of a disclosure to Salesforce is not credible. As an initial matter, in June 2012, AIT and Pluritas agreed ███████████████████ ███████████████████████████" the Pluritas Agreement.  (Salesforce Ex. A (Pluritas Agreement at 2).)  AIT is not withholding materials dated prior to June 2012.  Further, Pluritas retains a financial interest in this litigation and any recoveries received by AIT.  It defies credibility for Salesforce to suggest that materials shared with Pluritas dated after June 2012 "substantially increased" the opportunity for Salesforce, or any other potential adversary, to obtain the materials when Pluritas was █████████████████████████ █████████████████████████.[6]

Next, Salesforce argues that AIT waived work product protection by failing to timely assert it. (Mot. at 13.)  Not so.  Whether a delay may result in waiver of privileges should be considered under "a holistic reasonableness analysis . . . subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  Here, the parties had initial correspondence regarding the disclosure of privilege logs in October and November 2021. (*See* Salesforce Ex. N (10/18/2021 Pacelli email) & Salesforce Ex. O (11/15/2021 Judah letter).)  On October 18, 2021, AIT informed Salesforce that it was working on the production of documents and that it would be willing to "discuss[] this issue again in a few weeks."  (Salesforce Ex. N (10/18/2021 Pacelli email).)  On November 15, 2021, Salesforce proposed November 18, 2021 to exchange privilege logs and nothing was discussed, finalized, or agreed to at that time.  (Salesforce Ex. O (11/15/2021 Judah letter).)  Five months later, on April 6, 2022, Salesforce wrote to AIT suggesting the "parties should exchange privilege logs soon" and proposing "April 15, 2022."  (Salesforce Ex. P

---

[6] Salesforce's contention that "████████████████████████████████ (and significantly has failed to produce any such agreement in this litigation)," (Mot. at 12), is at best disingenuous.

(4/6/2022 Judah letter).)  AIT agreed to exchange privilege logs on April 15, 2022.  ( Salesforce Ex. Q (4/12/22 Long email).)  The parties exchanged privilege logs on April 15, 2022.  (Salesforce Ex. S (4/15/2022 Long email).)

Contrary to Salesforce's implications, AIT has not been hiding its claims of privilege with respect to either Pluritas, the Pluritas Agreement, and/or the redactions contained therein.  Instead, as reflected in the parties' correspondence, Salesforce received AIT's privilege log on April 15, 2022.  (Salesforce Ex. S (4/15/2022 Long email).)  The first two amendment were made concerning the Pluritas Agreement discussed in August 2021, on April 27, 2021, Salesforce pointed this out and AIT provided an entry for the redactions to the Pluritas Agreement on May 4, 2022.[7]  (Id. (5/4/2022 Long email).)  The above amendments do not arguably justify a waiver as Salesforce was aware of the redacted Pluritas document and the basis for the redactions since July 2021.

The additional two amendments were timely made pursuant to the parties' agreements and Salesforce's request for additional clarifying information.  As detailed above, on May 17 and May 18, 2022, the parties engaged in two meet and confers regarding this issue.  Salesforce requested AIT to reconfirm its discovery efforts to ensure that it had either produced or logged all communications concerning Pluritas (and/or litigation funders).  (Salesforce Ex. U (5/19/2022 Zado email (reflecting Salesforce request for AIT to reconfirm that all previously unproduced funding related documents be logged to the extent not already done so)).)  AIT agreed to provide such information.  On May 20, 2022, three days after meeting and conferring, AIT completed its investigation, provided a Third Amended Privilege Log, confirmed that all withheld documents were prepared in anticipation of litigation and that no further documents were being withheld.  (Id. (5/20/2022 DeVincenzo email).)  On May 22, 2022, Salesforce requested AIT to include additional information in its privilege log and AIT supplemented again, pursuant to Salesforce's final request, on May 24, 2022.  (Id. (5/22/2022 Judah email) & Salesforce Ex. L (5/24/2022 Long email).)

_____

[7] That entry was originally listed as work product only but was amended to include attorney-client privilege protection on May 11, 2022 following Mr. Sturgeon's deposition.  (Compare Salesforce Ex. R (AIT's First Am. Privilege Log at 19, Entry #388) with Salesforce Ex. W (AIT's Second Am. Privilege Log at 17, Entry #388).)

1    The above circumstances do not support a waiver.  To the contrary, a waiver does not apply

2    where the objecting party attempts in good faith to address a purported deficiency by providing

3    supplemental privilege logs, even where, unlike here, such supplementation may require a

4    considerable period of time.  *V5 Techs. v. Switch, Ltd.*, No. 2:17-cv-02349-KJD-NJK, 2019 WL

5    13157472, at *2 (D. Nev. Dec. 20, 2019); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 638 (D. Nev.

6    2013).  Here, Salesforce was on notice of AIT's claim of work product protection for the Pluritas

7    Documents as early as August 2021.  (*See* Salesforce Ex. M (08/16/2021 Pacelli letter at 3 ("AIT

8    redacted certain portions of the Pluritas, LLC [agreement] on the ground that such portions are

9    protected by the work product doctrine as they relate to AIT's ████████████.")).)  Despite

10   such early notice, Salesforce never raised the issue of Pluritas again until April 24, 2022.  (*See*

11   Salesforce Ex. S (04/24/2022 Wang email).)  Afterwards, AIT both searched for additional

12   potentially responsive documents to ensure its privilege log was complete and timely supplemented

13   its privilege logs in response to each of Salesforce's requests.  (*See* Salesforce Ex. L (05/24/2022

14   Long email); Salesforce Ex. Q (05/20/2022 DeVincenzo email); Salesforce Ex. S (05/04/20 Long

15   email & 04/15/2022 Long email).)  Not only did AIT not delay, but the fact that AIT prepared four

16   different amendments in a little over a month demonstrates its continued attempt to address

17   Salesforce's requests for further investigation and additional detail promptly and amicably.[8]  (*See*

18   Salesforce Ex. L (05/24/2022 Long email); Salesforce Ex. Q (05/20/2022 DeVincenzo email);

19   Salesforce Ex. S (05/04/20 Long email & 04/15/2022 Long email).)

20       "[W]aiver of the attorney-client privilege is a harsh sanction reserved generally for

21   unjustified, inexcusable, or bad faith conduct."  *USF Ins. Co.,* WL 2457655, at *3 (internal citations

22   omitted).  AIT's amendments reflect its diligent attempts to resolve discovery disputes amicably and

23   promptly as they arose toward the end of discovery and not any efforts to hide any proverbial ball.

24

25   ───────────────────

26   [8] *Fidelity and Deposit Company of Maryland v. Travelers Casualty and Surety Company of America*, No. 2:13-cv-00380-JAD-GWF, 2017 WL 2380167 (D. Nev. May 31, 2017), cited by Salesforce, (Mot. at 13), is representative of the high bar required for a delay to lead to waiver of

27   privilege.  The delay in that case was extensive (over three years), there were no agreements, and there were no prompt amendments.  *Id.* at *4.

28

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW
- 14 -

**3.      Salesforce Does Not Have a Substantial Need for the Pluritas Documents**

Salesforce argues that AIT's work product immunity does not matter because the documents requested are so relevant that the immunity must be set aside under Rule 26(b)(3)(A)(ii).  (Mot. at 13–15.)  Federal Rule of Civil Procedure 26(b)(3)(A)(ii) is an exception to the production of work product information with stringent requirements.  Salesforce must demonstrate that it "has substantial need for the materials to prepare its case;" and it "cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Salesforce cannot meet the exacting standard required to invade work product protection.

To meet its burden, Salesforce must make a "special showing" establishing the facts contained in the requested documents are "essential elements" to its case.  As explained in *Continental Circuits LLC v. Intel Corporation*, the Advisory Committee Note to Rule 26(b)(3) "makes clear that a 'special showing' must be made to overcome work product protection'" and "[t]hat showing requires more than mere relevancy."  435 F. Supp. 3d 1014, 1023 (D. Ariz. 2020).  "Substantial need for material otherwise protected by the work product doctrine is demonstrated by establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case."  *Id.*  A substantial need exists where "the information sought . . . is crucial . . . or carries great probative value on contested issues."  *Nevada v. J-M Mfg. Co.*, 555 F. App'x 782, 785 (10th Cir. 2014) (citations and internal quotation marks omitted).

Salesforce fails to establish that the requested documents are likely to be relevant, let alone crucial or have great probative value.  Salesforce argues that the "redacted pages of the Pluritas Agreement" are "highly relevant to damages" speculating that such redactions could show "the valuation of the patents."  (Mot. at 14.)  Yet, as detailed above, Salesforce has no basis to suggest that the Pluritas Agreement itself or any Pluritas Documents concern highly relevant "valuations."  To the contrary, AIT's Rule 30(b)(6) witness testified that a ███████████████ was never discussed with Pluritas.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 146:12–147:2).)  Salesforce's rank speculation that the redacted portion of the Pluritas Agreement and/or the other withheld Pluritas Documents concern "valuation" does not make it so.  Indeed, a reasonable person

1  looking at the Pluritas Agreement would not expect the redacted portions to contain "critical"

2  evidence regarding anything, let alone critical evidence regarding a supposed patent valuation.

3       Salesforce's actions throughout this litigation are inconsistent with its claim that the Pluritas

4  Documents are "critical" evidence.  The Pluritas redactions and AIT's bases for its privilege and

5  work product claims were discussed in August 2021.  (Salesforce Ex. K (8/4/2021 Judah letter).)

6  Salesforce claims, based on the agreement alone, that Pluritas documents are highly relevant.  Yet,

7  Salesforce never subpoenaed Pluritas for documents.  Similarly, Salesforce did not subpoena Pluritas

8  for a deposition until May 6, 2022 before eventually dropping its deposition request a mere days

9  before filing the instant motion.  (AIT Ex. D (Notice of Subpoena to Third Party Pluritas LLC) &

10  Salesforce Ex. U (5/19/2022 Zado email).)

11       Salesforce's claim that the Pluritas Agreement and/or any discussions with litigation funders

12  represent critically valuable information is also inconsistent with Salesforce's discovery responses.

13  AIT propounded interrogatories seeking Salesforce's contentions regarding infringement, invalidity,

14  and damages.  Salesforce's responses concerning infringement and invalidity unsurprisingly do not

15  mention funders, funding agreements, or Pluritas.  Salesforce's naked assertion that the requested

16  documents could be relevant to infringement and invalidity plainly fails to meet the exacting

17  requirements of Rule 26(b)(3)(A)(ii).  With respect to damages, at the time it filed its motion,

18  Salesforce's interrogatory responses concerning damages were ████████████████████████

19  ███████████████████████.  (AIT Ex. E (Salesforce's Second Supp. Resp. to AIT's

20  Third Set of Interrogs., No. 11 at 5–24).)  Salesforce's most recent responses urge that ███

21  ████████████████████████████████████████████████████████████████

22  ██████.  Of course, Salesforce's vague claims of relevance ignores the evidence.  Put simply, ██

23  ████████████████████████████████████████████.  (AIT Ex. B (Sturgeon

24  5/4/2022 Dep. Tr. at 146:12–147:2).)  Further, as explained by Mr. Sturgeon, and not disputed by

25  Salesforce, ██████████████████████████████████████████████████████

26  ██████████████████████████████████.  (*Id.* (Sturgeon 5/4/2022 Dep. Tr. at

27  147:3–149:9 (████████████████████████████████████████████)).)

28  Here, the documents withheld as work product are highly unlikely to be relevant, let alone critically

1   so, to any issue in this case.

2           As a legal matter, the evidence sought about Pluritas and supposed valuations based on

3   litigation funding agreements is not the type of information that is typically relevant, let alone

4   critical, to damages in a patent case.  Generally, "[a]n agreement between two parties who want to be

5   on one side of either a litigation-influenced settlement or a trial" is not "reliable as an input" for

6   damages in a patent case.  *In re ChanBond, LLC Patent Litig.*, C.A. No. 15-842-RGA, 2020 WL

7   550786, at *2 (D. Del. Feb. 4, 2020).  Any "marginal relevance" related to funding agreements is

8   typically outweighed by "the danger of unfair prejudice and confusion of issues inherent in bringing

9   into the litigation how trials are financed."  *Id.*  As otherwise stated, litigation funding agreements

10  "are not patent licensing agreements and are not otherwise relevant to the hypothetical negotiation

11  between the parties" and "[t]he best that can be said about litigation funding agreements is that they

12  are informed gambling on the outcome of litigation."  *AVM Techs., LLC v. Intel Corp.*, No. 15-33-

13  RGA, 2017 WL 1787562, at *3 (D. Del. May 1, 2017) (finding valuations based on funding

14  agreements to be "so far removed from the hypothetical negotiation that they have no relevance").

15  These are not isolated cases.  This Court as well as many others have found valuations represented

16  by funding agreements and communications to have no probative value, such that they were not

17  required for production even in the absence of work product protection.  *V5 Techs. v. Switch, Ltd.*,

18  334 F.R.D. 306, 312 (D. Nev. 2019) ("In short, the Court agrees with Plaintiff that its litigation

19  funding is not relevant to the claims or defenses in this case."); *Fulton v. Foley*, 17-CV-8696, 2019

20  WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) ("Courts across the country that have addressed the issue

21  have held that litigation funding information is generally irrelevant to proving the claims and

22  defenses in a case.") (collecting cases); *United Access Techs., LLC v. AT&T Corp.*, 11-338-LPS,

23  2020 WL 3128269, at *1 (D. Del. June 12, 2020) (articulating how funding related documents,

24  including funder solicitations and communications with funders, are generally irrelevant).

25          The cases relied on by Salesforce are no different.  Instead, they stand for the proposition that

26

27

28

funding agreement related documents may be discoverable in certain circumstances.[9]  Salesforce

does not dispute that, as a rule, the work product doctrine almost without exception is enforceable in

the context of funding agreement related valuations.  *United States v. Homeward Residential, Inc.*,

4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) ("The Court finds that the

litigation funding information is protected by the work product doctrine.  The litigation funding

documents were between Fisher and actual or potential litigation funders and were used to possibly

aid in future or ongoing litigation."); *Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-cv-

02518, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) ("[T]he Financing Materials identified by

Plaintiff in his privilege log constitute opinion work product.  These materials incorporate opinions

by Plaintiff's counsel regarding the strength of Plaintiff's claims, the existence and merit of certain

of Defendants' defenses, and other observations and impressions regarding issues that have arisen in

this litigation."); *Mondis Tech., Ltd. v. LG Elecs., Inc.*, Civil Action Nos. 2:07-CV-565-TJW-CE,

2:08-CV-478-TJW, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) ("All of the documents were

prepared . . . with the intention of coordinating potential investors to aid in future possible litigation.

The Court holds that these documents are protected by the work product protection.").[10]

Salesforce speculates that the redacted pages of the Pluritas Agreement are relevant to the

valuation of the Asserted Patents.  That is false.  The redacted information concerns █████████

███████████████████████████████████████████.  The redacted

information reflects work product because it reflects the specific tasks performed by AIT's retained

litigation consultant in furtherance of AIT's efforts to pursue litigation.  These tasks were identified

and the litigation consultant was hired based on AIT's discussions with its counsel at the time, Mr.

Lohse.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 157:16–160:9).)

---

[9] *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (granting motion to compel non-work product communications); *Cobra Int'l Inc. v. BCNY Int'l Inc.*, 2013 WL 11311345 (S.D. Fla. Nov. 4, 2013) (same).

[10] In *Odyssey Wireless, Inc. v. Samsung Electronics Company, Ltd*, the Court compelled production of funding agreements because such agreements are "the only evidence of the particular deals and negotiations at issue."  3:15-cv-01738-H (RBB), 3:15-cv-01743-H (RBB), 3:15-cv-01735-H (RBB), 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016).  Here, as Salesforce is aware, Salesforce has all the evidence about the litigation funding deals in question and AIT is not withholding any additional documents reflecting deal terms.

1    Lastly, the "substantial need" exception only applies where the withheld materials do not

2    disclose the mental impressions of an attorney concerning potential litigation.  Here, Mr. Lohse

3    provided advice with respect to the materials prepared by AIT and the materials prepared by AIT

4    jointly with Pluritas.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 157:5–158:20; 159:16–160:9).)

5    Salesforce simply ignores the testimony evidencing that the prepared materials contain the mental

6    impressions of Mr. Lohse.

7         **4.      AIT Has Not Waived Attorney-Client Privilege with Its Communications with Pluritas**

8

9    AIT has not waived attorney-client privilege over its communications with Pluritas.  First,

10   Salesforce asserts that AIT did not have a common interest with Pluritas.  (Mot. at 15–16.)  Not true.

11   AIT did not withhold any communications with Pluritas based on privilege prior to the execution of

12   the Pluritas Agreement.  After execution of the agreement, AIT and Pluritas had a common interest

13   in ███████████████████████ which AIT may not have been able to pursue without the

14   assistance of Pluritas.  *See Devon It, Inc. v. IBM Corp.*, No. 10–2899, 2012 WL 4748160, at *1 (E.D.

15   Pa. Sept. 27, 2012).  That agreement provides Pluritas a ████████████████████

16   ████████████████ .  "Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure provides

17   that a litigation consultant is 'generally immune from discovery.'"  *In re Com. Money Center, Inc.*,

18   248 F.R.D. 532, 538 (N.D. Ohio 2008).  Consistent with the rule, courts generally find that

19   communications with an entity consulting with respect to an anticipated litigation are generally

20   privileged absent special circumstances.  *See, e.g., Id.*; *Emps. Committed for Justice v. Eastman*

21   *Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008) (recognizing general rule that "litigation

22   consultant" work is typically privileged).

23   Otherwise, Salesforce asserts (Mot. at 16) that AIT has waived attorney-client privilege by

24   asserting it in later versions of its privilege log.  As discussed in detail in § IV.A.2 above, this Court

25   has found that waiver does not apply where the objecting party attempts in good faith to address a

26   deficiency by providing supplemental privilege logs.

     **B.    Anthony Sziklai's Documents Are Privileged**

27   With respect to documents shared with Mr. Sziklai, without citing a single case, much less

28

1  any evidence, Salesforce makes three conclusory arguments directed to why documents shared with

2  Mr. Sziklai are not privileged and not work product.  (Mot. at 16–17.)

3       First, Salesforce argues that documents created in "May and July of 2012" are not protected

4  work product because such documents were prepared "months before AIT anticipated litigation."

5  (Mot. at 16.)  As detailed above in § IV.A.1, by May 2012 AIT was already anticipating litigation,

6  including litigation with Salesforce.  Consistent with the above cited evidence, Mr. Sziklai testified

7  ███████████████████████████████████████████████████████████████████

8  ██████."  (AIT Ex. F (Sziklai 5/19/2022 Dep. Tr. at 57:2–22).)  It strains credibility for Salesforce

9  to argue that AIT was not contemplating litigation at the same time it was preparing documents for

10  the purposes of acquiring litigation counsel and/or litigation funding.

11       Second, Salesforce asserts that it has a "substantial need" to "patent monetization-related

12  documents" related to damages or valuation.  (Mot. at 17.)  As detailed above, as a general matter,

13  Salesforce has failed to demonstrate that work product protection can be overcome based on a

14  substantial need for patent monetization-related documents.  Further, as explained by Mr. Sziklai, the

15  █████████████████████████████████████████████████████████████████.

16  (AIT Ex. F (Sziklai 5/19/2022 Dep. Tr. at 187:24–188:1).)  Salesforce simply ignores that testimony

17  and has identified no evidence supporting its presumption that Mr. Sziklai was involved in

18  valuations.

19       Third, Salesforce complains about the timing of AIT's privilege log.  However, as detailed

20  above, the timing of AIT's privilege log is not a basis for waiver.  As also detailed above, given the

21  parties' discussion and agreement reflected in the parties' correspondence, Salesforce's waiver

22  position is unsupportable.  AIT was not hiding the fact that Mr. Sziklai was a recipient of pre-suit

23  communications.  Document number two on AIT's April 15, 2022 privilege log identified Mr.

24  Sziklai as the author of such documents.  (Salesforce Ex. R (Apr. 15, 2022 AIT Privilege Log at 1).)

25       Salesforce also urges that attorney-client privilege was waived but does not address work

26  product protection, or urge that work product protection was waived.  Salesforce fails to explain how

27  "disclosure of work product" to Mr. Sziklai "has substantially increased the opportunities for

28  potential adversaries to obtain the information."  *Sanmina Corp.*, 968 F.3d at 1121 (citations and

internal quotation marks omitted).  Mr. Sziklai is an inventor of the Asserted Patents, a co-founder of Alternative Systems, Inc., was an officer of LFR Technologies, LLC, and a member of the GreenSuite advisory board which was overseen by AIT.  Mr. Sziklai's mother, Beverly Nelson, is one of two members of AIT.  Mr. Sziklai assisted with certain AIT tasks and attended various meetings as part of his role on the advisory board.  (AIT Ex. F (Sziklai 5/19/2022 Dep. Tr. at 127:21–128:6).)  Importantly, Mr. Sziklai himself considered ██████████████████████

███████████████████████████████████████.  (*Id.* (Sziklai 5/19/2022 Dep. Tr. at 116:19–117:8).)  Salesforce appears to be fixated on Mr. Sziklai's lack of a formal consulting agreement or role with the company.  However, waiver of work product protection requires disclosure to someone that "substantially increase[s]" the chance of disclosure.  *Sanmina Corp.*, 968 F.3d at 1121 (citations and internal quotation marks omitted).

The assistance provided by Mr. Sziklai, an inventor of the Asserted Patents, an advisor on an AIT advisory board, and the son of one of the two AIT members, does not waive such protection. Indeed, disclosure to a family member is not a waiver of work product protection because it does not generally increase the likelihood that an opposing party will receive the communication.  *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 216  (S.D.N.Y. 2009) (finding disclosure to non-attorney sister did not waive work product); *United States v. Martha Stewart*, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003) (finding that plaintiff did not waive work product by sending copy of an email addressed to her attorneys, detailing sale of securities which was allegedly fraudulent, to her daughter); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) ("[D]ocuments prepared in anticipation of litigation need not be created at the request of an attorney.  Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects documents prepared by or for a representative of a party, including his or her agent.") (citations and internal quotation marks omitted).

1
2

**C.   AIT Is Not Withholding Responsive Documents That Were Disclosed to A Litigation Funder**

3

AIT is not withholding responsive documents that were disclosed to a litigation funder.[11]

4

AIT confirmed this fact to Salesforce on May 23, 2022.  (Salesforce Ex. U (5/23/2022 DeVincenzo

5

email ("AIT can confirm that it is not withholding responsive documents (subject to the parties'

6

agreements) that have not been logged.")).)  AIT's Rule 30(b)(6) witness explained in detail the

7

extensive document collection efforts and repositories searched by AIT in its effort to collect

8

responsive documents.  (AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 112:25–122:25).)

9

AIT has informed Salesforce that it is not withholding responsive documents.  Further, AIT is

10

aware of no documents sent to any litigation funders in the absence of an obligation of

11

confidentiality.  The testimony of AIT and each ███████████ is consistent with AIT's document

12

collection and production.  (AIT Ex. G (Dattani 5/24/2022 Dep. Tr. at 27:8–30:9 (████████

13

██████████████████████████████████████████████████

14

████████████ )); AIT Ex. H (Knuettel 5/31/2022 Dep. Tr. at 35:24–37:20 (████████

15

███████████ )); AIT Ex. B (Sturgeon 5/4/2022 Dep. Tr. at 145:17–146:5

16

(██████████████████████ ) & 170:6–15 (██████████████████

17

███████████████████ ).))  Notably, Salesforce did not subpoena any litigation

18

funders for documents.  Salesforce does not articulate a basis for its belief that any litigation funders

19

received responsive, relevant information prior to entering into their funding agreement with

20

AIT.  Of course, mere disclosure to a funder or potential funder would not effectuate a

21

waiver.  Instead, Salesforce must demonstrate that a disclosure occurred in a manner that

22

"***substantially increase[ed] the opportunities*** for potential adversaries to obtain the

23

information."  *Sanmina Corp.*, 968 F.3d at 1121 (citations and internal quotation marks

24

omitted).  Salesforce speculates that AIT is withholding responsive communications with potential

25

funders—AIT is not—and Salesforce further speculates without basis or reason that any materials

26

27

[11] This statement does not apply to the parties' agreement not to produce draft funding agreements and term sheets with respect to the same.  (*See* Salesforce Ex. U (5/19/2022 Zado email).)

28

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW

1    withheld were disclosed to potential litigation funders without the benefit of a confidential agreement

2    or understanding.  Such bald speculation does not support an argument for waiver.

3           Lastly, Salesforce speculates that some unidentified email custodian at AIT may have emails

4    attaching relevant, responsive information.  Mot. at 17–18.  Salesforce's speculation regarding an

5    email search is a non-starter.[12]   The ESI order governing email searches in this case was entered on

6    May 7, 2014.  (Dkt. 42, Ex. A at 5.)  That ESI order provides that the "parties will meet and confer to

7    discuss the necessity of ***searching e-mail***," and requires specific e-mail production requests.  (*Id.*

8    (emphasis added).)  To this day, Salesforce has never requested a meet and confer regarding

9    searching emails, proposed a specific email request, and/or suggested that emails must be searched

10   for attachments only.  A detailed custodian email search for both parties would likely take weeks, if

11   not months and it is simply too late now for the parties to discuss email custodian searches.

12   Salesforce has not sent email production requests which the parties agreed would be required for

13   email searching.[13]

14   **V.       CONCLUSION**

15          For the foregoing reasons, AIT respectfully requests that the Court deny Salesforce's motion

16   to compel.

---

26          [12] Salesforce itself has indicated that its failure to produce relevant, responsive ██████

27   ████████████████████████████ is based on the parties' agreement not to conduct email

searches.  (DeVincenzo Decl. at ¶ 2.)

28          [13] Salesforce did not seek all communications with litigation funders.

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO
COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW

1

2   Dated:  June 16, 2022                           /s/ Andrea Pacelli

3                                                   Michael A. Burke, Esq.
                                                    ROBISON, SHARP, SULLIVAN & BRUST
4                                                   (Resident Counsel)
                                                    71 Washington Street
5                                                   Reno, Nevada  89503

6                                                   Andrea Pacelli, Esq. (*pro hac vice*)
                                                    Mark S. Raskin, Esq. (*pro hac vice*)
7                                                   Michael DeVincenzo, Esq. (*pro hac vice*)
                                                    Elizabeth Long, Esq. (*pro hac vice*)
8                                                   Charles Wizenfeld, Esq. (*pro hac vice*)
                                                    Daniel Miller, Esq. (*pro hac vice*)
9                                                   KING & WOOD MALLESONS LLP
                                                    500 Fifth Ave., 50th Floor
10                                                  New York, New York 10110
                                                    Telephone: (212) 319-4755
11                                                  Email: andrea.pacelli@us.kwm.com
                                                    mark.raskin@us.kwm.com
12                                                  michael.devincenzo@us.kwm.com
                                                    elizabeth.long@us.kwm.com
13                                                  charles.wizenfeld@us.kwm.com
                                                    daniel.miller@us.kwm.coom
14
                                                    Steven C. Sereboff, Esq. (*pro hac vice*)
15                                                  SoCAL IP LAW GROUP LLP
                                                    1332 Anacapa, Suite 201
16                                                  Santa Barbara, CA 93101
                                                    Telephone: (805) 230-1356
17                                                  Email: ssereboff@socalip.com

18                                                  *Attorneys for Plaintiff*
                                                    *Applications in Internet Time, LLC*
19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 16, 2022 I caused the foregoing **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE, INC.'S MOTION TO COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW** to be filed with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Leigh T. Goddard
lgoddard@mcdonaldcarano.com

John J. Frankovich
jfrankovich@mcdonaldcarano.com

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com

Ray R. Zado
rayzado@quinnemanuel.com

Sam S. Stake
samstake@quinnemanuel.com

*Attorneys for Defendant salesforce.com, Inc.*

Dated: June 16, 2022                    */s/ Andrea Pacelli*
                                       Andrea Pacelli