JOHN FRANKOVICH, NV Bar #667
LEIGH GODDARD, NV Bar #6315
PHILIP MANELLY, NV Bar #14236
McDonald Carano LLP
100 West Liberty Street, Tenth Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
Email: jfrankovich@mcdonaldcarano.com
lgoddard@mcdonaldcarano.com
pmanelly@mcdonaldcarano.com

KEVIN JOHNSON (*pro hac vice*)
RAY ZADO (*pro hac vice*)
SAM STAKE (*pro hac vice*)
JAMES JUDAH (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
Email: kevinjohnson@quinnemanuel.com
rayzado@quinnemanuel.com
samstake@quinnemanuel.com
jamesjudah@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC,<br><br>    Plaintiff,<br><br>   v.<br><br>SALESFORCE.COM, INC.,<br><br>    Defendant. | No. 3:13-CV-00628-RCJ-CLB<br><br>**REPLY IN SUPPORT OF SALESFORCE, INC.'S MOTION TO COMPEL DOCUMENT PRODUCTION OR, IN THE ALTERNATIVE, FOR IN CAMERA REVIEW**<br><br>**ORAL ARGUMENT REQUESTED** |

-i-

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION..................................................................................................1

II. ARGUMENT.........................................................................................................2

    A. The Pluritas Documents Are Not Privileged or Work Product................................2

        1. AIT Prepared the Pluritas Documents to Try to Monetize Its Patents, Not Because of Any Specific Litigation.......................................................2

        2. AIT's Disclosures to Pluritas And Potential Litigation Funders During Negotiations Waived Privilege And Work Product Protection....................................................................................................4

        3. Salesforce Has Substantial Need for the Pluritas Documents as Evidence of the Valuation Implied by the Pluritas Agreement ...................6

    B. AIT Fails to Show That Documents Shared With Anthony Sziklai Are Protected Work Product Or Attorney-Client Privilege ...........................................8

    C. AIT Must Straightforwardly Disclose and Produce Any Documents Shared With Potential Litigation Funders Before Execution of an Agreement...................9

    D. AIT's Untimely Assertion of its Claims Waived Privilege and Work Product..............................................................................................................11

III. CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Page**

### Cases

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
  2018 WL 798731 (D. Del. Feb. 9, 2018) ............................................................................ 7

*AVM Techs., LLC v. Intel Corp.*,
  2017 WL 1787562 (D. Del. May 1, 2017) ......................................................................... 7

*Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*,
  271 F.R.D. 643 (D. Nev. 2010) ........................................................................................ 11

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
  408 F.3d 1142 (9th Cir. 2005) .............................................................................. 2, 11, 12

*Cobra Int'l Inc. v. BCNY Int'l Inc.*,
  2013 WL 11311345 (S.D. Fla. Nov. 4, 2013) .................................................................... 7

*Conner Peripherals, Inc. v. W. Digital Corp.*,
  1993 WL 726815 (N.D. Cal. June 8, 1993) ....................................................................... 3

*Cont'l Cirs. LLC v. Intel Corp.*,
  435 F. Supp. 3d 1014 (D. Ariz. 2020) ............................................................................... 7

*Cung Le v. Zuffa, LLC*,
  321 F.R.D. 636 (D. Nev. 2017) ......................................................................................... 3

*Datel Holdings Ltd. v. Microsoft Corp.*,
  2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ..................................................................... 4

*Devon It, Inc. v. IBM Corp.*,
  2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) .................................................................... 6

*Doe v. Soc'y of Missionaries of Sacred Heart*,
  2014 WL 1715376 (N.D. Ill. May 1, 2014) ....................................................................... 8

*Emps. Committed for Justice v. Eastman Kodak Co.*,
  251 F.R.D. 101 (W.D.N.Y. 2008) ..................................................................................... 6

*Fid. & Dep. Co. of Md. v. Travelers Cas. & Sur. Co. of Am.*,
  2017 WL 2380167 (D. Nev. May 31, 2017) .................................................................... 12

*Finjan, Inc. v. SonicWall, Inc.*,
  2020 WL 4192285 (N.D. Cal. July 21, 2020) .................................................................... 4

*Fulton v. Foley*,
  2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ....................................................................... 8

*In re Andre*,
  2020 WL 1976473 (N.D. Cal. Apr. 24, 2020) .................................................................... 3

*In re ChanBond, LLC Patent Litig.*,
  2020 WL 550786 (D. Del. Feb. 4, 2020) ........................................................................... 7

*In re Com. Money Center, Inc.*,
    248 F.R.D. 532 (N.D. Ohio 2008) .................................................................................... 6

*In re Copper Mkt. Antitrust Litig.*,
    200 F.R.D. 213 (S.D.N.Y. 2001) ...................................................................................... 9

*In re Lidoderm Antitrust Litig.*,
    2016 WL 861019 (N.D. Cal. Mar. 7, 2016) ..................................................................... 5

*Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*,
    2019 WL 9096048 (D. Mass. Dec. 6, 2019) .................................................................... 4

*Longitude Licensing Ltd. v. Apple Inc.*,
    2015 WL 7272667 (N.D. Cal. Nov. 17, 2015) ................................................................. 3

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
    2011 WL 1714304 (E.D. Tex. May 4, 2011) ................................................................... 7

*Neilson v. Union Bank of California, N.A.*,
    2003 WL 27374179 (C.D. Cal. Dec. 23, 2003) ............................................................... 5

*Nevada v. J-M Mfg. Co.*,
    555 F. App'x 782 (10th Cir. 2014) ................................................................................... 8

*Odyssey Wireless, Inc. v. Samsung Elec. Co. Ltd.*,
    2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ........................................................ 6, 7, 9

*Phillips v. C.R. Bard, Inc.*,
    290 F.R.D. 615 (D. Nev. 2013) ...................................................................................... 12

*RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*,
    2017 WL 2292818 (D. Nev. May 25, 2017) .................................................................... 5

*Schanfield v. Sojitz Corp. of Am.*,
    258 F.R.D. 211 (S.D.N.Y. 2009) ...................................................................................... 9

*U.S. v. Homeward Residential, Inc.*,
    2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) ................................................................. 8

*U.S. v. Stewart*,
    287 F. Supp. 2d 461 (S.D.N.Y. 2003) .............................................................................. 9

*United Access Techs., LLC v. AT&T Corp.*,
    2020 WL 3128269 (D. Del. June 12, 2020) ..................................................................... 7

*United States v. Adlman*,
    134 F.3d 1194 (2d Cir. 1998) ........................................................................................... 3

*United States v. Bergonzi*,
    216 F.R.D. 487 (N.D. Cal. 2003) ..................................................................................... 4

*United States v. Richey*,
    632 F.3d 559 (9th Cir. 2011) ............................................................................................ 3

-iii-
Case No. 3:13-CV-00628-RCJ-CLB
REPLY IN SUPPORT OF SALESFORCE'S MOTION TO COMPEL

*United States v. Sanmina Corp.*,
   968 F.3d 1107 (9th Cir. 2020) .................................................................................... 5

*V5 Techs. v. Switch, Ltd.*,
   2019 WL 13157472 (D. Nev. Dec. 20, 2019) ............................................................ 8, 12

*Visa U.S.A., Inc. v. First Data Corp.*,
   No. C–02–1786JSW(EMC), 2004 WL 1878209 (N.D.Cal. Aug. 23, 2004) ................... 4, 8

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(5) ................................................................................................ 11

## I. INTRODUCTION

AIT's opposition brief confirms that Salesforce's Motion should be granted. AIT does not (and indeed cannot) carry its burden to support the belated claims of privilege and work product over documents that it shared with its patent monetization consultant, Pluritas; its former employee and independent inventor, Anthony Sziklai; and its litigation funders.

<u>Pluritas Documents</u>. AIT fails to show that it prepared the Pluritas Agreement and related communications based on anticipation of specific claims against Salesforce or at the direction of counsel. Rather, the evidence confirms that AIT, not lawyers (litigation or otherwise), prepared these documents as part of its general efforts to monetize its patents. That is not work product. Further, AIT waived any work product or attorney-client privilege by disclosing information to Pluritas and potential contingency counsel while it was actively negotiating against them. AIT argues this disclosure did not increase the likelihood of disclosure to *Salesforce*, but that misses the point—disclosure to any adverse party waives work product.

AIT also fails to rebut Salesforce's showing of substantial need. AIT argues the Pluritas documents do not *contain* any formal valuations of the patents, but ignores that Pluritas Agreement and documents are themselves evidence of the value of the patents. AIT gave Pluritas ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in exchange for certain services. Evidence regarding the scope of those services – which AIT redacted from the Pluritas Agreement – is relevant to show the value AIT assessed ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬.

<u>Sziklai Documents</u>. AIT also fails to show that work product protection applies to its withheld communications with Mr. Sziklai. AIT does not demonstrate that these documents were prepared by or at the direction of counsel, or because of anticipated litigation against Salesforce (or anyone else). Moreover, the documents were prepared for disclosure to third parties (i.e., potential contingency lawyers or litigation funders) and in fact shared with third parties (including at least Mr. Sziklai). Salesforce has a substantial need for documents reflecting actual or offered transactions involving the patent rights at issue or purported infringement analyses. And AIT does

not even attempt to show any common interest with Mr. Sziklai, apparently electing not to defend the attorney-client privilege claims belatedly asserted in its privilege log.

<u>Litigation Funding Documents</u>.  AIT suggests that it is "not withholding" documents with litigation funders, but it dilutes that representation with a number of caveats that render it meaningless.  For example, AIT argues that it is not withholding any "responsive" documents shared "in the absence of an obligation of confidentiality"—suggesting that AIT is withholding documents based on undisclosed responsiveness and confidentiality positions.  Similarly, AIT claims (for the first time) that it "was not the entity responsible for communicating with funders"—even though its 30(b)(6) witness testified to the opposite.  The Court, not AIT, determines the scope of discovery, and should compel AIT to produce all documents disclosed to any actual or potential litigation funder prior to the date of an executed funding agreement.

<u>AIT's Belated Assertion of Its Claims Waives Them.</u>  Finally, an independent reason to grant Salesforce's Motion is AIT's failure to timely claim or substantiate the aggressive privilege and work product assertions it is now using to withhold relevant discovery.  AIT offers no excuse for leaving its privilege and work product claims off its initial privilege log, and failing to assert them until weeks or days before the close of fact discovery.  All four of the factors set out in the Ninth Circuit's decision in *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) lead to the same conclusion: AIT's failure to timely log these documents alone waives privilege and work product over them.

## II.   ARGUMENT

### A.   The Pluritas Documents Are Not Privileged or Work Product

#### 1.   AIT Prepared the Pluritas Documents to Try to Monetize Its Patents, Not Because of Any Specific Litigation

The evidence shows that AIT prepared the Pluritas Agreement and related communications in support of its efforts to monetize its patents generally, not because it anticipated specific claims against Salesforce (or anyone else).  As AIT concedes, to establish work product protection, it must show that it was aware of "***specific claims*** that have already arisen," and the document must have been "prepared or obtained ***because of*** the prospect of litigation."  Opp. at 8 (emphasis

-2-

added). AIT also does not dispute that it must show "more than a remote possibility of litigation;" rather it must establish that "the prospect of litigation is identifiable because of specific claims that have already arisen." *Conner Peripherals, Inc. v. W. Digital Corp*., 1993 WL 726815, *4 (N.D. Cal. June 8, 1993); *see also Cung Le v. Zuffa*, LLC, 321 F.R.D. 636, 648 (D. Nev. 2017) (documents "created many months before the complaint in this case was filed" were not work product); *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (holding district court clearly erred in holding documents prepared for a separate independent purpose were work product).

AIT fails to show that it prepared the Pluritas Documents because it anticipated bringing specific claims against Salesforce. AIT relies heavily on its own counsel's speaking objections and Mr. Sturgeon's testimony ██████████████████████████████████████████ ██████████████████████████████████ Opp. at 10; ECF No. 229-2 (Sturgeon 5/4/2022 Dep. Tr.) at 153:14-154:6. But Mr. Sturgeon did not testify that ████████████████ ████████████████████████████████████████████████████████████████████.[1] AIT also points to Mr. Sturgeon's testimony that he ████████████████ between Salesforce's products and AIT's patents in November 2011. Opp. at 8-9. But far more is needed to show anticipation of litigation. Even detailed claim charts are not work product when prepared while the party is still considering monetizing its patents through licensing or sales (as AIT was here). *See In re Andre*, 2020 WL 1976473, at *3 (N.D. Cal. Apr. 24, 2020) (infringement claim charts were not work product because the plaintiff "wished only to sell the asserted patents and that it had no intention or plan to enforce them in litigation"); *Longitude Licensing Ltd. v. Apple Inc.*, 2015 WL 7272667, at *4 (N.D. Cal. Nov. 17, 2015) (infringement analysis "prepared to aid in the licensing

---

[1] This distinguishes *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998), where the defendant engaged counsel to advise it on its decision to claim a loss and tax refund from a merger, which it expected the IRS would challenge. 34 F.3d at 1195. Here, AIT's engagement of Pluritas was not "virtually certain to result in litigation" (*Id.* at 1196) because, as reflected in the plain language of the agreement, Pluritas was engaged to provide ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████ ECF No. 216-3 (Ex. A) at AIT000002670. Further, AIT admits that it did not engage litigation counsel until ████████████████████████████████████████, and did not file this action for almost ████████████ after that. Opp. at 9; *see also* Mot. at 11.

-3-

negotiations" was not work product "[e]ven if future litigation is contemplated"); *Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, 2019 WL 9096048, at *4–5 (D. Mass. Dec. 6, 2019) (claim charts created three years before litigation for licensing negotiations were not work product).

AIT's argument that its "early communications" were "overseen" by Tim Lohse of DLA Piper does not establish that the Pluritas Agreement and related communications are protected attorney work product. Opp. at 9. AIT's corporate designee testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[2] Ex. A (Sturgeon 5/5/2022 Depo Tr.) at 246:18-26; 250:2-21. Moreover, AIT does not identify what, if any work product of Mr. Lohse (or any other attorney) was contained in its communications with Pluritas. AIT's log states only that they "reflect[] litigation due diligence . . . overseen by and reflecting legal advice" of counsel. *E.g.* ECF No. 216-3 (Ex. Z, AIT's May 24, 2022 Fourth Amended Privilege Log) at 389, 391-93, 397-99, 402-406. But "the fact that the documents were reviewed and subject to revisions by counsel does not necessarily make them privileged or protected by the work product doctrine." *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *7 (N.D. Cal. Aug. 23, 2004). Rather, the communications must be made "in preparation for litigation" – which AIT has not shown here. *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *7 (N.D. Cal. Mar. 11, 2011).

### 2. AIT's Disclosures to Pluritas And Potential Litigation Funders During Negotiations Waived Privilege And Work Product Protection

**Work Product.** AIT argues that there was no waiver because disclosure to Pluritas did not "increase[] the opportunity of a disclosure *to Salesforce*" Opp. at 12 (emphasis added) – but that misses the point. As AIT's own cases confirm, a party waives work product protection by disclosing it to ***any adversary***. *Finjan, Inc. v. SonicWall, Inc.*, 2020 WL 4192285, at *5 (N.D. Cal. July 21, 2020) (holding work product waived by disclosure to adversary in separate litigation); *United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003) (holding work product

---

[2] AIT makes much of the fact that Salesforce never subpoenaed Mr. Lohse, but fails to identify any information that Mr. Lohse could have provided that AIT does not also have. AIT cannot sidestep its own discovery obligations by claiming Salesforce should have subpoenaed its counsel.

waived by disclosure to government); *see also Neilson v. Union Bank of California, N.A.*, 2003 WL 27374179, at *4 (C.D. Cal. Dec. 23, 2003) ("Once a party has disclosed work product to one adversary, it waives work product protection as to all adversaries." (citation omitted)). As discussed in Salesforce's opening brief, AIT waived work product protection by disclosing information to Pluritas before the Pluritas Agreement was signed because at that time AIT and Pluritas had interests adverse to one another. Mot. at 12; *In re Lidoderm Antitrust Litig.*, 2016 WL 861019, at *3 (N.D. Cal. Mar. 7, 2016). That includes the information redacted from the Pluritas Agreement itself, which AIT does not dispute was shared prior to execution.[3]

Further, AIT admits that its communications with Pluritas after the agreement was signed were prepared, at least in part, to assist in hiring and "negotiating agreements with litigation counsel." Opp. at 10. Like Pluritas, AIT hired litigation counsel in this case ▮▮▮▮▮ ▮▮▮▮▮ Ex. B (AIT000147748). In negotiating ▮▮▮▮▮ AIT's interests were adverse to the potential ▮▮▮▮▮, and thus it waived work product over information (such as Pluritas documents) shared during that time. *In re Lidoderm Antitrust Litig.*, 2016 WL 861019, at *3. Nor is such information confidential in the absence of non-disclosure agreements (of which there is no evidence whatsoever) and thus it would not be covered by Section 5 of the Pluritas Agreement, which provides only that the parties will ▮▮▮▮▮ ▮▮▮▮▮ ECF No. 216-3 (Ex. A) at 2. Finally, and significantly, AIT and Pluritas ▮▮▮▮▮ ▮▮▮▮▮ *Id.*; ECF No. 216-3 (Ex. J, 5/4/2022 Sturgeon Depo. Tr.) at 160:11-13.

**Attorney-Client Privilege.** As AIT notes, waiver of attorney-client privilege requires a lesser showing than waiver of work product. Opp. at 11. Since AIT waived any work product contained in the Pluritas Documents by disclosing it to parties with adverse interests, as discussed

---

[3] None of AIT's cases involved pre-litigation disclosure to an adverse party in an ongoing negotiation over rights to the proceeds from the patents at issue. *See* Opp. at 11; *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2017 WL 2292818, at *6 (D. Nev. May 25, 2017) (disclosure to acquirer in merger negotiations during litigation); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020) (disclosure to government partially waived work product).

above, it also waived attorney-client privilege. AIT does not dispute that it had no common interest with Pluritas before the agreement was signed. Opp. at 19. And AIT admits that its related communications with Pluritas were intended for use in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, whose interests were adverse – rendering any alleged common interest with Pluritas after the agreement was signed irrelevant.[4] Opp. at 10. Further, AIT fails to show that the Pluritas Documents are covered by attorney-client privilege in the first instance – no attorney sent or received them, and they were prepared for a third party, with no expectation of privacy.

### 3. Salesforce Has Substantial Need for the Pluritas Documents as Evidence of the Valuation Implied by the Pluritas Agreement

AIT argues Salesforce has not shown a substantial need for the Pluritas documents because AIT never prepared or shared valuations of the patents with Pluritas (Opp. at 15-17), but ignores the fact that the Pluritas Agreement *is itself* evidence of the value of AIT's patents in an arm's length transaction. Under the Pluritas Agreement, AIT agreed to give Pluritas ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in exchange for certain consulting services by Pluritas. ECF No. 216-3 (Ex. A) at 10. The specific "services and deliverables" Pluritas provided – which AIT redacted (Opp. at 18) – would show what Pluritas provided in consideration for its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. at 14-15; *Odyssey Wireless, Inc. v. Samsung Elec. Co. Ltd.*, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016). Similarly, the pitch materials and related communications with Pluritas are relevant to show the value of Pluritas's consideration (in addition to any valuation-related information they may contain). As in *Odyssey*, the Pluritas Agreement and related documents are "the only evidence" of the valuation implied by the Pluritas Agreement. Simply put, without the specific services provided by Pluritas and their value, Salesforce cannot analyze the value bargained for by that transaction.

---

[4] AIT's cases on waiver of attorney-client privilege are inapposite. In *Devon It, Inc. v. IBM Corp.*, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012), unlike here, the parties shared information pursuant to confidentiality agreement. *In re Com. Money Center, Inc.*, 248 F.R.D. 532, 538 (N.D. Ohio 2008) (finding waiver) and *Emps. Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008) addressed documents provided to a consulting expert during litigation, not pre-litigation negotiations over contingency agreements.

1 AIT largely ignores the cases Salesforce cited in its opening brief holding that litigation funding transactions are highly relevant to patent damages. *See* Mot. at 14; *Odyssey*, 2016 WL 7665898; *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018); *Cobra Int'l Inc. v. BCNY Int'l Inc.*, 2013 WL 11311345 (S.D. Fla. Nov. 4, 2013) (granting motion to compel litigation funding agreement). And AIT overstates the holdings of its own cases. *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269, at *2 (D. Del. June 12, 2020) and *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1023 (D. Ariz. 2020) **rejected** arguments that litigation funding documents are "generally irrelevant," and held only that the requesting parties had failed to articulate their need for litigation funding documents in those specific cases. Neither party apparently argued that funding documents were needed for valuation, as they are here. *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) did not address relevance or substantial need at all, and involved potential litigation investors, not actual contingency holders like Pluritas. *In re ChanBond, LLC Patent Litig.*, 2020 WL 550786, at *2 (D. Del. Feb. 4, 2020) and *AVM Techs., LLC v. Intel Corp.*, 2017 WL 1787562, at *3 (D. Del. May 1, 2017) are opinions excluding experts, which were decided with the benefit of fully developed expert reports, under the *Daubert* standard of reliability. They do not support AIT's argument that Salesforce should be deprived of the evidence and opportunity to have an expert examine the valuations implied by the Pluritas Agreement. Moreover, in both cases, the parties had other information going to the valuation of the patents – data points that are scarce in this litigation because AIT never managed to successfully license the patents. *See ChanBond*, 2020 WL 550786 at *1 (noting that challenge is to only one of the expert's three methodologies); *AVM Techs*, 2017 WL 1787562, at *2, *4 (permitting expert testimony regarding offers to license and comparable patents). Further, unlike in *AVM Techs.*, AIT represented that this litigation was not ███████████████████████████████████████████████████ Ex. B (AIT000147748). AIT cannot now contend that the implied valuations from its funding agreements and related communications are unreliable because it made false representations.

Finally, AIT disingenuously argues that Salesforce did not depose Pluritas and only lately identified AIT's litigation funding documents in interrogatory responses. Opp. at 16. Of course

-7-

Salesforce only recently identified these documents – AIT withheld them and did not even log them until the week before the close of fact discovery. And Salesforce is not required to depose a third party to obtain relevant (but improperly withheld) discovery from a party. AIT cannot now use its own obstruction to claim Salesforce lacks interest in the Pluritas documents.[5]

### B. AIT Fails to Show That Documents Shared With Anthony Sziklai Are Protected Work Product Or Attorney-Client Privilege

AIT claims that the documents it shared with Anthony Sziklai are both work product and attorney-client privileged, but fails to establish the basic elements of either claim. And in any event, AIT waived any objections by its belated assertion of those claims.

With respect to work product, AIT does not show that the documents shared with Mr. Sziklai contain any work product prepared by or for an attorney. *See Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *7 (N.D. Cal. Aug. 23, 2004) (finding documents prepared by consultant not retained by counsel were not work product). As with the Pluritas Documents, AIT's privilege log states that the documents shared with Mr. Sziklai "reflect[] diligence . . . overseen by and reflecting legal advice" of counsel. ECF No. 216-3 (Ex. Z, AIT's 4th Amended Privilege Log) at 2, 390, 394, 448. And Mr. Sziklai testified ECF No. 229-6 (Sziklai Dep. Tr.) at 57:23-25. These documents – twice removed from any advice of counsel and edited by a third party – cannot possibly be called work product. Moreover, AIT fails to show that it anticipated litigation against Salesforce in May and July 2012, and in any case Salesforce has a substantial need for the documents, as discussed above. *See supra* §§ II.A.1, II.A.3. Mr. Sziklai did not, as AIT argues, definitively testify that the documents were prepared for "this case in particular" (Opp. at 20) – he stated that he ECF No. 229-6 at

---

[5] AIT's remaining cases are non-patent cases, which do not present the damages issues in this case. Opp. at 17-18; *V5 Techs.*, 334 F.R.D. at 312 (antitrust case noting that "courts have been more receptive to allowing [litigation funding] discovery in the context of patent cases."); *Fulton v. Foley*, 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) (wrongful imprisonment); *Nevada v. J-M Mfg. Co.*, 555 F. App'x 782, 783 (10th Cir. 2014) (False Claims Act); *U.S. v. Homeward Residential, Inc.*, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) (Truth In Lending Act); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) (personal injury).

57:14-22. Mr. Sziklai's hazy recollection is contradicted by the Pluritas Agreement itself, the express language of which shows AIT was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[6] ECF No. 216-3 (Ex. A).

AIT overstates Mr. Sziklai's testimony again when it asserts that these documents have "nothing to do with the valuation of the Asserted Patents." Opp. at 20. Mr. Sziklai actually testified that he was not aware of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. ECF No. 229-6 (Sziklai Dep. Tr.) at 187:24-188:1. But AIT prepared the documents sent to Mr. Sziklai for the purpose of litigation ▇▇▇▇▇▇▇▇. Thus, as discussed above, the documents are themselves evidence of the value of the patents (and could very well contain "informal" representations about valuation), in addition to being relevant to infringement and other claims and/or defenses. *See supra* § II.A.3. Salesforce has a substantial need for these documents, particularly given the lack of evidence bearing on damages here. *See Odyssey*, 2016 WL 7665898, at *7.

With respect to attorney-client privilege, AIT entirely fails to show that any document was sent or received by a lawyer, or that there was any expectation of privacy in communications sent to Mr. Sziklai. AIT also does not dispute that it lacked a common legal interest with Mr. Sziklai, and thus it waived any privilege that may have applied. AIT's own cases hold that disclosure to a family member waives the attorney-client privilege absent a common legal interest. *See Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 216 (S.D.N.Y. 2009); *U.S. v. Stewart*, 287 F. Supp. 2d 461, 464 (S.D.N.Y. 2003).[7] And Mr. Sziklai himself admitted that he had no legal interest in this litigation. Ex. C (Sziklai Dep. Tr.) at 117:11-19.

### C. AIT Must Straightforwardly Disclose and Produce Any Documents Shared With Potential Litigation Funders Before Execution of an Agreement

Salesforce has repeatedly requested that AIT confirm it is not withholding any documents responsive to Salesforce's RFPs that were disclosed to potential litigation funders. Mot. at 17.

---

[6] The Court can determine for itself whether AIT prepared the documents for this case with an *in camera* review.

[7] AIT's remaining case, *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001), held that disclosure to a public relations consultant did not waive privilege, which has no bearing on whether disclosure to a family member who admits no legal interest in the litigation waives privilege.

AIT still refuses to provide an unqualified confirmation in its opposition brief, offering instead a string of varying explanations for why it may be withholding relevant, non-privileged documents.

First, AIT states that it does not have any such documents because "AIT was not the entity responsible for communicating with funders." Opp. at 3. This is the first Salesforce has heard about another "entity." AIT points to no evidence to support its attorney argument that it outsourced communications with its funders to some other entity. Indeed, Mr. Sturgeon, AIT's 30(b)(6) witness, testified on behalf of AIT that he ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. D (Sturgeon 5/4/2022 Dep. Tr.) at 136:1-150:4, 168:14-170:15; Ex. E (Dattani Dep. Tr.) at 22:13-31:10; Ex. F (Kneuttel Dep. Tr.) at 29:23-30:8. AIT must be held to its corporate admission. AIT has possession, custody, or control over communications with its funders; it cannot play shell games now to avoid producing them.

Second, AIT states that it "is not withholding *responsive* documents that were disclosed to a litigation funder," and takes the odd position that "Salesforce did not seek *all* communications with litigation funders. Opp. at 22-23 & n.13 (emphasis added). However, Salesforce requested (and AIT agreed to produce) all documents relating to the patents and covered technology (RFP Nos. 3, 5, 49); the infringement or non-infringement of any patent (RFP No. 37-38); AIT's allegations against Salesforce (RFP No. 42); damages, including any of the *Georgia-Pacific* factors (RFP Nos. 44-45); AIT's financial condition (RFP No. 55); this litigation (RFP No. 69); and every person with a financial interest in this litigation (RFP No. 65), as well as non-draft documents that show "any sources of funding for this litigation" (RFP No. 66). Ex. G (AIT's Responses and Objections to Salesforce's Requests for Production). It is hard to imagine any documents between AIT and its litigation funders that are *not* responsive to one of these RFPs.

Third, AIT states that it is "aware of no documents sent to any litigation funders in the absence of an obligation of confidentiality." Opp. at 22. But the question is not one of confidentiality, which is addressed by the Protective Order, but responsiveness (and privilege, if any). AIT must specifically disclose any responsive documents that it has withheld despite sharing them with litigation funders – regardless of the purported presence of an "obligation of confidentiality" – so that Salesforce and the Court can assess AIT's privilege claims. As

-10-

1  discussed in Salesforce's opening brief and above, AIT's privilege claims are groundless – AIT's
2  interests were adverse to its litigation funders while it was negotiating the funding agreements, and
3  thus it waived work product and privilege over any documents or information shared with its
4  funders before the execution of a funding agreement.  *See* Mot. at 17; *supra* § II.A.2.

### D. AIT's Untimely Assertion of its Claims Waived Privilege and Work Product

As explained in Salesforce's opening brief, AIT waived privilege and work product over the Pluritas Agreement and 66 other documents by failing to assert these claims in its privilege log served April 15.  Mot. at 16.  Indeed, AIT did not assert an attorney-client privilege claim over the Pluritas Agreement until its **Second** Amended Privilege Log on May 9, 2022, and did not log the remaining documents at all until its Third Amended Privilege Log on May 20, 2022 – a week before the close of fact discovery.  *Compare* ECF No. 216-3 (Ex. X, AIT's May 20, 2022 Third Amended Privilege Log) at Nos. 389-454 *with* ECF No. 216-3 (Ex. W, AIT's May 9 Second Amended Privilege Log).  AIT does not dispute that its privilege logs were untimely, but argues its delay should not be held against it under a "holistic reasonableness analysis" under *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Opp. at 12-14.  But the *Burlington* factors all support waiver, and AIT fails to show otherwise.

*First*, AIT's privilege logs lacked sufficient detail for Salesforce or the Court to evaluate its work product claims, and AIT does not argue otherwise.  *See Burlington*, 408 F.3d at 1148 (quoting Fed. R. Civ. P. 26(b)(5)).  AIT's initial privilege log failed to assert privilege or work product at all.  AIT's belated amended logs still fail to include basic facts, such as the specific anticipated litigation, the withheld subject matter, or all recipients.  ECF No. 216-3 (Ex. Z, AIT's May 24, 2022 Fourth Amended Privilege Log).  The time for AIT to resolve its issues has come and gone; it cannot continue to hold up this case for lack of basic facts about its objections that it should have provided long ago.  *See Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 649 (D. Nev. 2010) (holding privilege waived where "gross untimeliness of privilege log "completely nullifies" the ability to "meaningfully engage" in privilege analysis).

*Second*, AIT admits that its privilege log was untimely.  AIT never explains why it did not assert its privilege claims earlier, and simply ignores the prejudice that its belated logs imposed on

1  Salesforce.  *See* Mot. at 13; *Fid. & Dep. Co. of Md. v. Travelers Cas. & Sur. Co. of Am.*, 2017 WL
2  2380167 (D. Nev. May 31, 2017).[8]  Neither of AIT's cases involved privilege logs served a week
3  before the close of fact discovery.  *See V5 Techs. v. Switch, Ltd*., 2019 WL 13157472 (D. Nev.
4  Dec. 20, 2019); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615 (D. Nev. 2013).

   AIT's assertion that Salesforce was on notice of its work product claims as of July 2021 is not accurate.  Opp. at 13-14.  AIT simply made a conclusory assertion that it redacted the Pluritas Agreement as "work product," and did not disclose that it was also withholding the other documents.  Judah Decl., Ex. v. (AIT's May 4, 2022 First Amended Privilege log).  Salesforce had to ask AIT's 30(b)(6) witness about basic facts about AIT's work product claims, such as the attorneys involved, what litigation AIT allegedly anticipated, and the nature of the redacted information.  ECF 229-2 (Sturgeon 5/4/2022 Dep. Tr.) at 153:3-162:21.  AIT's assertion that it served privilege logs according to the parties' agreements is also incorrect.  Salesforce agreed to exchange logs in April 15, 2022 – only after AIT refused to agree to (or even respond to) Salesforce's repeated requests to serve earlier, in October and November 2021 – but AIT did not log the Pluritas Agreement or any of the other documents on that date.  Instead, AIT's repeatedly added claims and 66 new documents to its privilege log in the last month of fact discovery, exacerbating the delay and prejudice by forcing Salesforce to assess entirely new privilege claims in the last few days of fact discovery.  *Id.*

   ***Third,*** AIT does not claim that discovery was so voluminous that it was unable to timely assert its claims, which further distinguishes *V5 Techs* and *Phillips*.  Indeed, AIT's entire document production is less than the 24,910 privilege log entries in *V5 Techs*, 2019 WL 13157472, at *2.

   ***Fourth,*** AIT does not claim that there are any other circumstances that make discovery particularly challenging.  Thus, AIT's objections should be overruled for its untimeliness alone.

---

[8]  AIT cannot distinguish *Fed & Dep. Co. of Maryland*.  It argues only that there was "over three years" of delay in that case, but AIT served its privilege logs ***eight years*** after its responses to Salesforce's document requests in April 2014.  AIT does not try to distinguish *Burlington*, where a 5-month delay in providing a privilege log waived privilege.  408 F.3d at 1149.

## III. CONCLUSION

Salesforce respectfully requests that the Court grant its motion to compel.

DATED: June 23, 2022

Repectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Ray Zado

Ray Zado
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
rayzado@quinnemanuel.com

**CERTIFICATE OF SERVICE**

I hereby certify, under penalty of perjury, that I am an employee of Quinn Emanuel Urquhart & Sullivan LLP and that pursuant to LR 5-3 I caused to be electronically filed on this date a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically e-serve the same on the attorney set forth below:

| | |
|---|---|
| Michael A. Burke<br>*mburke@rssblaw.com* | Andrea Pacelli<br>Mark S. Raskin<br>Michael De Vincenzo<br>Elizabeth Long<br>*andrea.pacelli@us.kwm.com*<br>*mark.raskin@us.kwm.com*<br>*michael.devincenzo@us.kwm.com*<br>*elizabeth.long@us.kwm.com* |
| Steven C. Sereboff<br>*ssereboff@socalip.com* | |

DATED: June 23, 2022

*/s/ Zachary Furcolo*
Zachary Furcolo

-14-

Case No. 3:13-CV-00628-RCJ-CLB
REPLY IN SUPPORT OF SALESFORCE'S MOTION TO COMPEL