JOHN FRANKOVICH, NV Bar #667
LEIGH GODDARD, NV Bar #6315
PHILIP MANNELLY, NV Bar #14236
McDonald Carano LLP
100 West Liberty Street, Tenth Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
Email: jfrankovich@mcdonaldcarano.com
lgoddard@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com

KEVIN JOHNSON (*pro hac vice*)
RAY ZADO (*pro hac vice*)
SAM STAKE (*pro hac vice*)
JAMES JUDAH (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
Email: kevinjohnson@quinnemanuel.com
rayzado@quinnemanuel.com
samstake@quinnemanuel.com
jamesjudah@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

APPLICATIONS IN INTERNET TIME, LLC,

Plaintiff,

v.

SALESFORCE, INC.,

Defendant.

No. 3:13-CV-00628-RCJ-CLB

**SALESFORCE'S OPPOSITION TO AIT'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     RESPONSE TO AIT'S CONCISE STATEMENT OF MATERIAL FACTS .................... 2

III.    CONCISE STATEMENT OF MATERIAL FACTS ............................................................. 5

IV.     LEGAL STANDARD ................................................................................................. 8

V.      ARGUMENT ........................................................................................................... 8

    A.      AIT's Motion Fails on the Merits, as It Is Premised on an Incorrect Understanding of Dr. Bederson's Invalidity Opinions ............................................... 8

        1.      Dr. Bederson Consistently Applied the Court's Claim Constructions .......... 9

        2.      Dr. Bederson Is Permitted to Opine that the Prior Art Anticipates the Asserted Claims Under AIT's Interpretation of the Court's Claim Constructions ........................................................................................... 11

        3.      Mr. Zatkovich's Validity Opinions Confirm the Propriety of Dr. Bederson's Analysis ............................................................................... 18

    B.      Whether Dr. Bederson Purportedly Failed to Properly Apply the Court's Claim Constructions Is Not a Matter for Summary Judgment ................................ 19

    C.      Mr. Zatkovich's Opinions Alone Dictate Denial of AIT's Motion ........................ 20

VI.     CONCLUSION .......................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
 889 F.3d 735 (Fed. Cir. 2018)................................................................ 11, 12

*AVM Techs., LLC v. Intel Corp.*,
 No. 15-33-RGA, 2017 WL 1753416 (D. Del. Apr. 28, 2017) .......................... 20

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
 246 F.3d 1368 (Fed. Cir. 2001)................................................................. 8

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
 No. 16-cv-118-H-KSC, 2017 WL 6946641 (S.D. Cal. Mar. 2, 2017) ......................... 13, 14

*Cordance Corp. v. Amazon.com, Inc.*,
 658 F.3d 1330 (Fed. Cir. 2011)................................................................ 15

*Creative Compounds, LLC v. Starmark Labs.*,
 651 F.3d 1303 (Fed. Cir. 2011)................................................................ 14

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993).............................................................................. 20

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
 No. 11-CV-5973-PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) .......................... 16

*Gonzalez v. Infostream Grp., Inc.*,
 No. 2:14-CV-906-JRG-RSP, 2016 WL 475172 (E.D. Tex. Feb. 7, 2016) ..................... 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
 579 U.S. 93 (2016)............................................................................... 13

*HSM Portfolio LLC v. Elpida Memory Inc.*,
 160 F. Supp. 3d 708 (D. Del. 2016)............................................................ 13

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
 87 F. Supp. 3d 928 (N.D. Cal. 2015) ......................................................... 13

*Int'l Bus. Machs. Corp. v. Priceline Grp.*,
 271 F. Supp. 3d 667 (D. Del. 2017) ..................................................... 14, 15

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
 589 F.3d 1233 (Fed. Cir. 2009)................................................................. 8

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
 430 F.3d 1377 (Fed. Cir. 2005)................................................................. 8

*Jones v. Williams*,
 791 F.3d 1023 (9th Cir. 2015).................................................................. 8

SALESFORCE'S OPPOSITION TO AIT'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    481 F.3d 1371 (Fed. Cir. 2007) ................................................................................ 11

*Med. Instrumentation and Diagnostics Corp. v. Elektra* AB,
    344 F.3d 1205 (Fed. Cir. 2003) .................................................................................. 9

*Metaswitch Networks Ltd. v. Genband US LLC*,
    No. 2:14-CV-744-JRG-RSP, 2016 WL 3618831 (E.D. Tex. Mar. 1, 2016) ..................... 18

*Multimedia Patent Trust v. Apple Inc.*,
    No. 10-CV-2618-H (KSC), 2012 WL 12868264 (S.D. Cal. Nov. 20, 2012) ..................... 16

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 13818 (Fed. Cir. 2008) ........................................................................ 10, 16

*Network-1 Techs., Inc. v. Hewlett-Packard* Co.,
    No. 6:13-CV-00072-RWS, 2021 WL 1941693 (E.D. Tex. May 7, 2021) ..................... 12

*Nobelbiz, Inc. v. Glob. Connect, L.L.C.*,
    No. 6:12-CV-244-RWS, 2015 WL 11089488 (E.D. Tex. July 16, 2015) ..................... 13

*Peters v. Active Mfg. Co.*,
    129 U.S. 530 (1889) .................................................................................................. 8

*Realtime Data LLC v. EchoStar Corp.*,
    No. 6:17-CV-00084-JDL, 2018 WL 6271807 (E.D. Tex. Nov. 29, 2018) ..................... 17

*Realtime Data, LLC v. Actian Corp.*,
    No. 6:15-CV-463 RWS-JDL, 2017 WL 11662040 (E.D. Tex. Apr. 3, 2017) ..................... 15

*Smith v. Owens*,
    No. 3:07-CV-396-ECR-RAM, 2009 WL 10644499 (D. Nev. Nov. 9, 2009) ..................... 20

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .............................................................................. 2, 8

*Stryker Corp. v. Zimmer, Inc.*,
    782 F.3d 649 (Fed. Cir. 2015) .......................................................................... 13, 14

*TruePosition, Inc. v. Andrew Corp.*,
    No. 05-CV-747, 2007 WL 2429415 (D. Del. Aug. 23, 2007) .................................. 17

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) .............................................................................. 17

*Zoslaw v. MCA Distrib. Corp.*,
    693 F.2d 870 (9th Cir. 1982) ..................................................................................... 8

<u>No table of authorities entries found.</u>

# I.     INTRODUCTION

AIT's motion for summary judgment is premised on a fundamental misrepresentation of the opinions set forth by Salesforce's invalidity expert, Dr. Bederson.  Specifically, AIT incorrectly asserts that Dr. Bederson failed to "contend that a skilled artisan would find any [prior art] reference discloses claim limitations directed to using an intelligent agent to detect changes that affect an application under the Court's construction."  Dkt. 285 ("Mot.") at 1.  To the contrary, Dr. Bederson expressly set forth opinions regarding anticipation that map the prior art to AIT's asserted claims based on the scope with which AIT itself is applying those claims.  Indeed, Salesforce moved for summary judgment of invalidity because there is no genuine dispute that the prior art anticipates the asserted claims under AIT's and its expert's application of the claims.  *See* Dkt. 278 at 21-30.

Despite these facts, AIT incorrectly alleges in its motion that Dr. Bederson failed to consistently apply the Court's claim constructions[1] and that no "single reference discloses every claim limitation under the Court's construction."  Mot. at 1.  These arguments misconstrue Dr. Bederson's opinions, which present anticipation based on how AIT applied the claim language and the Court's constructions.

AIT is not entitled to foreclose the argument that its own overbroad application of the asserted claims renders those claims invalid.  Indeed, AIT wants to have its cake and eat it too.  On one hand, for infringement it advocates an exceedingly broad interpretation of "intelligent agent," an element of the Court's construction of the Change Detection Limitations.  And AIT argues (contrary to its prior statements made during *inter partes* review in attempting to circumvent prior art) that changes to an application itself constitute changes that "affect" an application.  But on the other hand, it seeks to preclude any argument that such interpretations of "intelligent agent" and "affect" render the claims invalid as being anticipated by prior art.

---

[1]   AIT contends that Dr. Bederson incorrectly applied the Court's construction of "a change management layer for automatically detecting changes that affect an application" in claim 1 of the '482 patent, "automatically detecting changes that affect a particular application" in claim 21 of the '482 patent, and "the fourth portion of the server being configured to automatically detect changes that affect the information in the first portion of the server or the information in the second portion of the server" in claim 13 of the '111 patent (collectively, the "Change Detection Limitations").  Mot. at 3.

1    If, according to AIT's infringement theories, an "intelligent agent" can be virtually any

2  software program, and changes that "affect" an application include changes to the application itself,

3  then those interpretations should apply for invalidity as well, and Dr. Bederson should be free to

4  explain that the claims are anticipated as a result.  Granting AIT's Motion would improperly allow it

5  to confuse the jury by foreclosing anticipation arguments based on the established maxim "[t]hat

6  which infringes if later, anticipates if earlier." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d

7  1312 (Fed. Cir. 2006).  AIT's motion for summary judgment should be denied for this reason alone.

8    Moreover, to the extent AIT believes that Dr. Bederson's opinions under AIT's interpretation

9  of the Court's claim construction were somehow based on unreliable methodology or should be

10  excluded, any such challenge should have been brought under *Daubert* and not summary judgment.

11  And to the extent AIT believes that Dr. Bederson's opinions are based on an incorrect understanding

12  of AIT and Mr. Zatkovich's infringement theories, then that is a factual dispute for the jury and a

13  subject for cross examination of Dr. Bederson at trial.

14    Even setting Dr. Bederson's opinions aside, Salesforce could still prove anticipation at trial,

15  including through the cross examination of Mr. Zatkovich.  There is substantial evidence, including

16  the disclosures of the prior art references themselves and testimony from Mr. Zatkovich, that a

17  reasonable jury could rely on to find anticipation.  Indeed, as explained in Salesforce's motion for

18  summary judgment, no reasonable jury could find the asserted patents both infringed and valid

19  because AIT and Mr. Zatkovich have read the claims and the Court's claim constructions so broadly

20  for purposes of infringement that they have swept in the prior art.  AIT's motion fails for this reason

21  as well.

## II.    RESPONSE TO AIT'S CONCISE STATEMENT OF MATERIAL FACTS

23    For purposes of resolving this Motion only, Salesforce does not dispute AIT's statement of

24  facts ("SOF") 1-8, 10, 17, and 19-20.  To the extent necessary, Salesforce disputes the headings in the

25  SOF, which are argumentative and do not reflect the factual record (*i.e.*, Dr. Bederson's anticipation

26  opinions ***are*** based on the Court's claim construction, and there ***is*** evidence that a skilled artisan would

27  find that the primary references disclose the Change Detection Limitations).

28    With respect to AIT's SOF 9, Salesforce disputes that Dr. Bederson's June 30, 2022 report

"contains the expert opinions concerning invalidity that Salesforce intends to offer in this matter," in view of recent disputes between the parties relating to a supplemental expert report served by Dr. Bederson on October 19, 2022 that provides clarifying corrections to his June 30th report.

Salesforce disputes AIT's SOF 11-14, as AIT's description of Dr. Bederson's methodology is misleading and incomplete.  With respect to SOF 11, Dr. Bederson did not provide "an invalidity analysis under two different claim understandings."  Rather, he provided an invalidity analysis under the proper application of the Court's claim constructions and an alternative anticipation theory under AIT's broad application of the Court's construction for purposes of infringement.

With respect to SOF 12, Dr. Bederson did apply "what he deemed a proper or correct understanding of the claim language and the Court's constructions" for the opinions in his report.  But specifically with respect to the Change Detection Limitations, he opined on and applied the Court's claim constructions.  *See, e.g.*, Dkt. 271-3 (Bederson Invalidity Report) at ¶ 224.

With respect to SOF 13, Dr. Bederson did not offer "additional opinions based on a different understanding of the claim language and the Court's construction."  Instead, he provided an alternative invalidity analysis under AIT's broad application of the Court's construction for purposes of infringement.

Similarly, with respect to SOF 14, Dr. Bederson did not apply "a construction that was at odds with how he believed a skilled artisan would understand the claim language and the Court's constructions."  As previously discussed, he applied the Court's construction, but through the lens of AIT's infringement theories.

In the same vein, with respect to SOF 15, Dr. Bederson did not say that he "does not believe a skilled artisan would apply the claim language and the Court's construction in that manner."  Rather, he provided an opinion that AIT's application of the claims for infringement purposes read out a part of the Court's claim construction.  *See, e.g.*, Dkt. 271-3 (Bederson Invalidity Report) at ¶ 154.

Accordingly, Dr. Bederson provided opinions in the alternative under AIT's interpretation of the Court's construction of the Change Detection Limitations, as well as under Salesforce's interpretation of the Court's constructions.  Salesforce describes Dr. Bederson's methodology more accurately in the next section.

1    Salesforce disputes AIT's SOF 16 and 18, which mischaracterize Dr. Bederson's opinions

2    concerning the claim term "affect." AIT cites to and conflates Dr. Bederson's **claim construction**

3    **declaration** provided **before** the Court's constructions with Dr. Bederson's post-claim construction

4    invalidity report, thereby implying that his invalidity opinions conflict with the Court's constructions

5    based on prior statements in his claim construction declaration. Mot. at 7-8 (falsely implying

6    statements from "Ex. 6, Bederson CC Decl." are indicative of Dr. Bederson's claim interpretations

7    from his invalidity report); Mot. at 25 (improperly citing back to Mot. at 6-7 to argue Dr. Bederson is

8    not applying the correct claim interpretations).[2] But Dr. Bederson was clear in his report that he was

9    applying **the Court's claim constructions** and not any of the prior opinions from his claim

10    construction declaration. *See, e.g.*, Dkt. 271-3 (Bederson Invalidity Report) ¶ 162 ("I applied [the

11    Court's] claim constructions in performing my analyses and rendering my opinions in this report.").

12    Salesforce disputes AIT's SOF 21 and 22, in particular the implication that Mr. Zatkovich

13    faithfully applied the Court's claim constructions. As detailed in Salesforce's co-pending *Daubert*

14    and summary judgment motions, Mr. Zatkovich did not. *See generally* Dkts. 275 and 278. On the

15    same basis, Salesforce disputes that Mr. Zatkovich "applied the Court's construction in a manner

16    consistent with the specification of the Asserted Patents, as would have been understood by one of

17    ordinary skill in the art, as of the priority date of the Asserted Patents." Mot. at 9.

18    Salesforce disputes AIT's SOF 23-24, 26-27, 29-30, 32-33, 35-36, 38-39, and 41-42. Each set

19    of SOFs for each of the prior art references uses the same boilerplate assertions concerning how Dr.

20    Bederson allegedly approached the Change Detection Limitations. Contrary to AIT's SOFs, Dr.

21    Bederson provided opinions in the alternative under AIT's interpretation of the Court's construction of

22    the Change Detection Limitations, as well as under Salesforce's interpretation of the Court's

23    constructions. Under Salesforce's interpretation, the prior art would render the asserted claims

24    obvious. Under AIT's interpretation, the prior art anticipates the asserted claims.

---

[2]    AIT also cites portions of Dr. Bederson's deposition testimony in which he explains that he still agrees with the opinions in his claim construction declaration (Dkt. 271-4 (Bederson Tr.) at 69:8-71:23), but that does not mean that he applied those opinions over the Court's claim constructions in rendering the opinions in his invalidity report.

Salesforce disputes AIT's SOF 25, 28, 31, 34, 37, 40, and 43, each containing similar language concerning Mr. Zatkovich's opinions about particular prior art references.  In particular, Salesforce disputes that Mr. Zatkovich properly "opined that a skilled artisan applying the Court's construction and the claim language would find that" the prior art references "fail[] disclose each of the Change Detection Limitations."  Mr. Zatkovich did not properly apply the Court's claim constructions and has not established that the prior art references fail to invalidate the asserted claims.  Some examples of the deficiencies in Mr. Zatkovich's analyses are detailed in Salesforce's co-pending *Daubert* and summary judgment motions.  *See generally* Dkts. 275 and 278.

III.    **CONCISE STATEMENT OF MATERIAL FACTS**

1.  In his report, Dr. Bederson reviewed the Court's construction of the Change Detection Limitations.  Dkt. 271-3 (Bederson Invalidity Report) ¶¶ 152-55.

2.  Dr. Bederson stated that "[t]he Court construed this term as 'detecting without human intervention through the use of one or more intelligent agents.'"  *Id.* ¶ 152 (citing Dkt. 172 (Claim Construction Order) at 12); *see also id.* ¶ 222 ("I understand that the Court construed the term 'automatically detect[ing]' in these claim limitations to require 'detecting without human intervention through the use of one or more intelligent agents.'").  Dr. Bederson further stated: "With respect to 'human intervention,' the Court clarified that such a construction may involve a human to 'start and stop the process' but cannot involve 'human involvement of the supposedly automatic process itself."  *Id.* ¶ 152 (citing Dkt. 172 (Claim Construction Order) at 13).

3.  Dr. Bederson highlighted the dispute between the parties concerning the interpretation of the term "intelligent agent":  "Although the Court adopted Salesforce's narrower construction of 'automatically detect' that requires an intelligent agent, I understand that AIT has continued to take a broad infringement read of 'intelligent agent' that is essentially no different than AIT's rejected construction."  *Id.* ¶ 153.

4.  To further illustrate the dispute between the parties, Dr. Bederson described AIT's apparent interpretation of "intelligent agent":  "For example, I understand that AIT contends that intelligent agents are merely 'software programs that automatically detect changes,' which would render the term 'automatically detect' to be 'detecting without human intervention through the use of one or more

software program[s] that automatically detect changes.'" *Id.* (citing AIT's Amended Infringement Contentions at 58).

5. Dr. Bederson opined that AIT's interpretation was incorrect because it did not ascribe any meaning to the term "intelligent agent." *Id.* ¶ 154 ("However, in my opinion, AIT's interpretation is circular and essentially reads out 'intelligent agent,' contrary to the Court's construction."); *id.* ¶ 167 ("AIT also does not seem to attribute any substantive significance to the Court's requirement that these components use 'intelligent agents,' giving the circular ration[ale] that '[i]ntelligent agents are software programs that automatically detect changes.'"); *id.* ¶ 278 ("As discussed previously, the 'change management' and 'fourth portion' claim limitation[s] require using 'intelligent agents' (separate, specialized programs) to detect changes other than manual changes to a particular application. Thus, I disagree with the broad scope AIT seems to attribute to these claim limitations.").

6. Dr. Bederson then clarified that, although he disagreed with AIT's interpretation of "intelligent agent," he would address how the prior art invalidated the asserted claims under AIT's interpretation. *Id.* ¶ 155 ("The prior art invalidity grounds I present in this report clearly address AIT's overly-broad interpretation of 'intelligent agent.'"); *id.* ¶ 279 ("But to the extent AIT is allowed to pursue its broad interpretation of the 'change management' and 'fourth portion' claim limitation[s], numerous prior art references disclose and render this limitation obvious under AIT's interpretation.").

7. Dr. Bederson opined that the elected prior art (except for the combination of Balderrama and Java Complete) would anticipate the asserted claims under AIT's interpretation of the Change Detection Limitations. *E.g.*, Dkt. 271-3 (Bederson Invalidity Report) ¶¶ 353, 368, 1010, 1028 (anticipation opinions for the Oracle reference, including identification of what the "intelligent agent" would be); 398, 406-07, 1039, 1051-53 (same for Popp); 436, 444, 1073, 1083-84 (same for Kovacevic); 515, 522-23, 1138, 1149-51 (same for Haverstock); 561, 570, 1171, 1178 (same for Bederson); 660, 669 (same for Yeager), 759, 779-84, 1232, 1250-53 (same for Bancroft).

8. At deposition, Dr. Bederson reiterated that he was following the Court's claim constructions. Dkt. 271-4 (Bederson Dep. Tr.) at 39:22-40:5 ("So in this case, there were a number of court-ordered claim constructions that provided constructions for certain terms in various claims. There were also some agreed-upon constructions of terms between the parties. And so I – so the

1  'properly construed claim' language is the claims where those terms are understood by the – those

2  various constructions."). Even where he considered AIT's claim interpretations, the starting point was

3  the Court's claim constructions. *Id.* at 42:16-24 ("[I]n your report, did you try and apply the properly

4  construed claims to the – certain prior art references? A. I certainly did. I also – because I think that

5  there's a disagreement on what some of that – what the properly construed claim language is, I also, in

6  certain cases, did by best to analyze the art under AIT's apparent construction-of-claim language.");

7  Ex. 1[3] (Bederson Dep. Tr.) at 65:17-21 ("I believe what I said about Palinski, and which also applies

8  to Oracle, is that I applied AIT's understanding of the court's construction of a change management

9  layer and, thus, intelligent agent in this analysis.").

10      9.  AIT's expert, Mr. Zatkovich, did not provide in his validity report any specific description

11  of how he was interpreting the term "intelligent agent." *E.g.*, Dkt. 271-5 (Zatkovich Validity Report)

12  ¶¶ 52, 60 (asserting he and AIT are not "read[ing] out a requirement for intelligent agents" but

13  providing no explanation of how that requirement is interpreted).

14      10.  Mr. Zatkovich contends that he applied the description of "intelligent agent" from the

15  specification: "a specialized program that makes decisions and performs tasks based on predefined

16  rules and objectives." *Id.* ¶¶ 80, 1110 (quoting '482 patent at 20:1-3).

17      11.  Under Mr. Zatkovich's interpretation of "intelligent agent," however, any and all software

18  qualifies as "a specialized program" and any software that branches to different functions based on

19  conditions and returns a result necessarily "performs tasks based on predefined rules and objectives."

20  Ex. 2 (August 21, 2022 Zatkovich Dep. Tr.) at 264:2-5 (Q: "Well, can you think, sitting right now, of

21  any program that would not qualify as a specialized program?" A: "Not as I sit here at the moment."),

22  267:23-268:12, 270:18-271:2.

23      12.  Mr. Zatkovich does not dispute that each one of the primary references analyzed by Dr.

24  Bederson discloses an "intelligent agent" under AIT's interpretation. Zatkovich Rebuttal Rpt. ¶ 1105

25  ("my opinions rely on the base references' failure to teach the claimed automatic detection

26  functionality, and ***not whether such functionality is performed by an 'intelligent agent.'***").

---

[3]  All exhibits are attached to the declaration of Gavin Snyder filed with this Opposition.

## IV.   LEGAL STANDARD

In a motion for summary judgment, the moving party bears the burden of showing that there are no genuine issues of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  The moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015) (quotation omitted).

"[A] claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference."  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) (alteration in original).  Whether a patent claim is invalid as anticipated is a question of fact.  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005).

It is well-established that "the same test must be used for both infringement and anticipation." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009).  To use the Supreme Court's century-old maxim, "[t]hat which infringes, if later, would anticipate if earlier."  *Id.* (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)).

## V.   ARGUMENT

### A.   AIT's Motion Fails on the Merits, as It Is Premised on an Incorrect Understanding of Dr. Bederson's Invalidity Opinions

AIT's Motion seeks an end-run around the well-settled maxim that "the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988).  If AIT intends to present an infringement case that effectively reads out the Court's requirement for an "intelligent agent" and interprets "changes that affect" overbroadly, then AIT must also be held to those same interpretations for purposes of invalidity.  Dr. Bederson did exactly that by opining that the asserted claims are anticipated by the prior art under AIT's interpretations of the Court's claim constructions.  Indeed, to the extent the Court does not strike Mr. Zatkovich's improper opinions, there is a clear factual dispute between the parties as to whether Mr. Zatkovich's interpretation of the claims and Court's constructions sweeps in the prior art and results in anticipation, thereby precluding

1   summary judgment.

2       Moreover, AIT does not contend that Dr. Bederson failed to address and analyze all claim

3   limitations at least under AIT's claim interpretations.  Nor does AIT dispute in its motion that Dr.

4   Bederson demonstrated that the Change Detection Limitations were present in all of the challenged

5   prior art references at least under AIT's interpretation.  *E.g.*, Mot. at 25 (criticizing Dr. Bederson for

6   disagreeing with AIT's interpretations, but never arguing that any limitation was not present in a prior

7   art reference), 9-14 (AIT's SOF 23-43 reviewing the prior art references without arguing that any

8   limitation is not disclosed by any reference).  That is sufficient to withstand summary judgment. *Med.*

9   *Instrumentation and Diagnostics Corp. v. Elektra* AB, 344 F.3d 1205, 1221 (Fed. Cir. 2003)

10  (reversing summary judgment that claims were not shown to be anticipated or obvious where accused

11  infringer presented expert testimony that quoted specific portions of the prior art reference that were

12  relevant to each claim limitation, and therefore raised a genuine issue of fact as to whether the

13  reference was anticipatory).  Unable to respond to Dr. Bederson's analysis on the merits, AIT resorts

14  to misconstruing Dr. Bederson's analysis and the arguments raised by its expert, Mr. Zatkovich.

15              **1.    Dr. Bederson Consistently Applied the Court's Claim Constructions**

16      A fundamental error in AIT's motion is that it mischaracterizes Dr. Bederson's disagreement

17  with ***AIT's interpretation*** of the Court's construction as allegedly being a disagreement with the

18  Court's claim construction itself.  *E.g.*, Mot. at 24 ("Dr Bederson's opinions based on 'AIT's

19  interpretations' cannot raise a question of fact because they disregard express language of the claims

20  and the Court's construction."); *see also, generally, id.* at 24-27.  But the two are separate concepts.

21  Disagreement with AIT's interpretation of the construction is not a disagreement with the construction

22  itself.  Indeed, Dr. Bederson faithfully applied the Court's constructions in his analyses and nowhere

23  indicated that he had any disagreement with those constructions.  That Dr. Bederson and Salesforce

24  believe AIT's interpretation is inconsistent with the Court's construction should not bar them from

25  presenting invalidity arguments premised on AIT's interpretation.

26      The Court construed the Change Detection Limitations as requiring "detecting without human

27  intervention through the use of one or more intelligent agents."  Dkt. 172 at 24.  The Court also held

28  that "changes that affect" should have its plain meaning and is not limited to "modifications to

1    regulatory, technological, or social requirements stored in a third-party repository." *Id.* at 14-17.  Dr.

2    Bederson adopted and applied both of those constructions.  Dkt. 271-3 (Bederson Invalidity Report)

3    ¶¶ 152, 156, 162 ("I applied these claim constructions in performing my analyses and rendering my

4    opinions in third report.").[4]

5            Notwithstanding the Court's guidance, AIT in its infringement contentions and Mr. Zatkovich

6    in his expert report applied an unduly broad interpretation to "intelligent agent" and "changes that

7    affect" in an effort to show infringement where there is none.  As Dr. Bederson explains in his report,

8    AIT contends that the Change Detection Limitations are met when "using developer tools (such as

9    sandbox or IDE) to manually make changes to an alleged application," and "[u]nder AIT's

10   interpretation, any software (including any feature or function of software cited by AIT for the

11   'change management' and 'fourth portion' claim limitation) capable of automatically detecting

12   changes qualifies as an 'intelligent agent.'"  *Id.* ¶ 167.  Both AIT and its expert, Mr. Zatkovich,

13   purport to apply the Court's claim constructions, but Dr. Bederson disagreed with their interpretation

14   of those constructions.  *Id.* ¶ 224.

15           In light of AIT's interpretation of the Court's claim constructions, Dr. Bederson presented

16   alternative invalidity opinions under (1) AIT's interpretation of those constructions; and (2)

17   Salesforce's interpretation of those constructions.  But in both cases, Dr. Bederson faithfully applied

18   the Court's claim constructions at least to the same extent as AIT and its expert, Mr. Zatkovich.  In

19   such circumstances, disputed issues of fact remain and therefore summary judgment is not

20   appropriate.  *E.g.*, *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods.*, LLC, No. 1:09-CV-

21   1685, 2013 WL 4053230, at *3 (M.D. Pa. Aug. 12, 2013) (denying patentee's motion for summary

22   judgment that a prior art reference did not anticipate the asserted claims, the court finding that there

23   were disputed issues of fact concerning how the disclosures of the reference should be interpreted).

24

25

26   ———————————————
     [4]  Thus, AIT's citations to *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 13818, 1325 (Fed. Cir.
27   2008) and similar cases for the proposition that "an expert must compare the construed claims to the
     prior art" are inapposite.  Dr. Bederson did just that.
28

2.      **Dr. Bederson Is Permitted to Opine that the Prior Art Anticipates the Asserted Claims Under AIT's Interpretation of the Court's Claim Constructions**

Despite disagreeing with AIT's interpretation of the Court's claim constructions, Dr. Bederson presented arguments and rationales in the alternative for why the prior art nevertheless anticipates the asserted claims under AIT's interpretation of those constructions.   AIT's contention that "Dr. Bederson offered no opinions concerning whether a skilled artisan applying the claim language and the Court's constructions in the proper manner would find the Change Detection Limitations disclosed," Mot. at 17, presupposes that Dr. Bederson is not allowed to present anticipation opinions under claim interpretations that he disagrees with.  *See also, generally, id.* at 16-27 (many similar statements).[5]  But that premise is nonsensical and contradicted by the weight of legal authority.

In particular, it is well-established that a defendant may take an invalidity position that assumes, for the sake of argument, that the plaintiff's (erroneous) interpretation of the Court's claim construction is correct, and demonstrates how each element of the claims is found in the prior art under that interpretation.  A recent Federal Circuit case considered this very issue.  *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735 (Fed. Cir. 2018).  In that case, the defendant "presented an alternative invalidity defense that focused on its prior art BuddyHelp product."  *Id.* at 741.  The defendant "argued that under the trial court's claim construction [the] claims were valid, but not infringed, but that if [the plaintiff] attempted to expand the scope of its claims" then "the claims would be invalid in light of the prior art."  *Id.* at 741-72 (citations omitted).  The *01 Communique* court concluded that "[t]here was nothing improper about this argument."  *Id.* at 742.  The court noted that there was nothing "preclud[ing] a litigant from arguing that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art."  *Id.* (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) for the proposition that "an infringement plaintiff must beware of what it asks for since a broad claim

---

[5]   AIT divides its arguments into several subheadings in Section IV of its brief, but the common thread running throughout is that Salesforce and Dr. Bederson may not present invalidity arguments in the alternative under AIT's interpretation of the Court's claim constructions.  *See generally* Mot. at 16-27.

1    construction for infringement purposes may ultimately result in a determination of patent invalidity"). The *01 Communique* court further recognized that "claim terms must be construed the same way for both invalidity and infringement." *Id.*

4           This case is on all fours with *01 Communique*. Indeed, even AIT acknowledges that, under *01 Communique* and other Federal Circuit precedent, "if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art." Mot. at 23 (citing *01 Communique*, 889 F.3d at 742.[6] That is the case here: AIT has advanced an overbroad application of the Court's constructions for purposes of infringement—as it must because, otherwise, there would be no alleged infringement—and Dr. Bederson is entitled to apply, in the alternative, that same broad application in his invalidity analysis. AIT attempts to distinguish *01 Communique* on the basis that "Dr. Bederson did not consider how the accused products perform the Change Detection Limitation and he offered no comparison of the accused products to any aspect of the Allegedly Anticipatory References." Mot. at 23-24. AIT's argument ignores that Dr. Bederson did, in fact, analyze AIT's infringement contentions to ascertain the scope AIT attributes to the Change Detection Limitation. *See*, *e.g.*, Dkt. 271-3 (Bederson Invalidity Report) ¶¶ 153, 167, 277. And under *01 Communique*, he was then permitted to then opine on invalidity under the scope of the claim interpretation that results from the plaintiff's infringement allegations. *01 Communique*, 889 F.3d at 741-42 ("[I]f Communique attempted to expand the scope of its claims to include systems in which a location facility merely 'directs' other components, such as the end point computers, to create the communication channel, then the claims would be invalid in light of the prior art. There was nothing improper about this argument.") (citations omitted).

22          Numerous other cases are in accord with *01 Communique* and mandate the denial of AIT's Motion. *E.g.*, *Network-1 Techs., Inc. v. Hewlett-Packard* Co., No. 6:13-CV-00072-RWS, 2021 WL 1941693, at *7 (E.D. Tex. May 7, 2021) ("[Defendant's expert's] position was essentially that under his interpretation, HP wins on infringement but loses on validity. But [he] was also adamant that if

---

[6]   AIT additionally concedes that it "is not urging that a party's infringement evidence or expert testimony on the issue of infringement is always irrelevant to anticipation or invalidity." Mot. at 23.

the jury disagreed and instead applied the Court's claim construction in the same way that [plaintiff's expert] applied them on infringement, then the patent was invalid.  Based on this 'argument in the alternative,' the jury had a sufficient basis for its invalidity determination.") (citation omitted); *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244-RWS, 2015 WL 11089488, at *3 (E.D. Tex. July 16, 2015) ("[Defendant's expert] is permitted to analyze the 2004 prior art systems in accordance with the claim interpretations put forth by [plaintiff], subject to the claim constructions adopted by this Court."); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 943 (N.D. Cal. 2015) ("[Defendant's expert] does not argue that the [asserted patent] is invalid because the prior art is identical to an infringing product. . . .  Rather, he assumes that [plaintiff's] understanding of the construed claims is correct, and then proceeds to demonstrate how, in his opinion, each element of the claims is found in the prior art."); *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 725-26 (D. Del. 2016) (Parties are not precluded "from arguing that if a claim limitation must be interpreted in a certain fashion to read on the accused products, then—if interpreted that same way—the claim reads on the prior art."); *id.* at 726 ("[Defendant's expert] has performed a limitation-by-limitation anticipation analysis that merely relies on the claim interpretations that follow from Plaintiff's infringement theory.  This amounts to prima facie showing that each element of the claim at issue is found in a single prior art reference, rather than simply an argument that the prior art is identical, in all material respects, to an allegedly infringing product.") (quotation omitted).

It is also clear under Federal Circuit precedent that defendants may argue invalidity in the alternative based on the plaintiff's interpretation of the claims for purposes of infringement.  *Stryker Corp. v. Zimmer, Inc.*, 782 F.3d 649, 658 n.4 (Fed. Cir. 2015) (vacated on other grounds by *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)) ("We note, however, that nothing precludes [defendant] from arguing for a narrower application of the limitation on the infringement context, while also arguing, in the alternative, that—if the district court were to disagree—the patent claim would be so broad as to be invalid.").  The reasoning in *Stryker* was applied in *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, No. 16-cv-118-H-KSC, 2017 WL 6946641 (S.D. Cal. Mar. 2, 2017).  The plaintiff argued that portions of defendants' expert's noninfringement and invalidity opinions should

1  be excluded at trial because he impermissibly used inconsistent interpretations of the Court's

2  construction for an "adapted to/configured to" claim limitation. *Carucel*, 2017 WL 6946641, at *3.

3  Specifically, plaintiff argued that the defendants' expert used a broader meaning for that limitation in

4  his invalidity opinions and a narrower meaning for that limitation in his noninfringement opinions. *Id.*

5  In response, defendants argued that their expert's analysis was proper because, according to

6  defendants, their expert was permitted to apply his own (narrow) interpretation of the Court's claim

7  construction when performing his infringement analysis, and then apply plaintiff's (broader)

8  interpretation, with which the expert disagreed, when performing his invalidity analysis. *Id.* The

9  *Carucel* court agreed with defendants, holding that, while a district court's constructions govern, "the

10  Federal Circuit has explained that 'nothing precludes [an accused infringer] from arguing for a

11  narrower application of the limitation on the infringement context, while also arguing, in the

12  alternative, that—if the district court were to disagree—the patent claim would be so broad as to be

13  invalid." *Id.* (quoting *Stryker*, 782 F.3d at 658 n.4).

14      Thus, the significant weight of authority supports Salesforce's position, including cases

15  addressing the ***exact*** issue here: a defendant's expert can present invalidity opinions under a plaintiff's

16  interpretation of the terms contained in a Court's issued claim construction even where the

17  defendant's expert disagrees with the plaintiff's claim interpretation.

18      By contrast, the cases cited by AIT fail to support its argument.   AIT cites *Creative*

19  *Compounds, LLC v. Starmark Laboratories*, 651 F.3d 1303, 1131 (Fed. Cir. 2011) for the proposition

20  that summary judgment of invalidity should be granted where an accused infringer "failed to provide

21  any testimony from one skilled in the art identifying each claim element and explaining how each

22  element is disclosed in the prior art reference." Mot. at 18.  But in that case, the accused infringer's

23  expert testimony was entirely excluded "for failure to comply with the court's scheduling order."

24  *Creative Compounds*, 651 F.3d at 1311.  Thus, the issue was complete absence of expert testimony,

25  not purported deficiencies in an expert's analysis.

26      AIT cites *International Business Machines Corp. v. Priceline Group*, 271 F. Supp. 3d 667, 687

27  (D. Del. 2017) for the proposition that summary judgment of no invalidity should be granted "where

28  the patent challenger failed to show that the prior art discloses every limitation of an asserted claim

1   when one applies (as the parties and their experts must) the Court's construction." Mot. at 18.

2   However, that case involved a contention that the expert's "methodology is incorrect and fails to show

3   that [the prior art] can meet the claim limitations." *IBM*, 271 F. Supp. 3d at 686.

4        AIT cites *TiVo, Inc. v. EchoStar Communications Corp.*, 516 F.3d 1290, 1311 (Fed. Cir. 2008)

5   for the proposition that "testimony directed to [an] alternative construction [is] not germane to issue of

6   anticipation." Mot. at 21. Unlike the expert in *TiVo*, Dr. Bederson does not intend to testify "that the

7   infringement analysis provided by [the other side's expert], if accepted, would compel a finding of

8   invalidity." *TiVo*, 516 F.3d at 1311. Nor does Dr. Bederson intend to present "criticism of [Mr.

9   Zatkovich's] report or previous testimony," with respect to this particular issue. Rather, Dr. Bederson

10  intends to present testimony that the prior art teaches the claim limitations based on AIT's application

11  of the Court's construction. He does not intend to delve into the infringement analysis because, as

12  even AIT has noted, Dr. Bederson has not provided opinions on the accused products. In addition,

13  AIT's requested relief here goes far beyond that endorsed in *TiVo*. Here, AIT seeks blanket summary

14  judgment of no anticipation. But in *TiVo*, only discussion of the other side's infringement opinions

15  was excluded. Additionally, *TiVo* did not concern a motion for summary judgment.

16       Indeed, *TiVo* was explicitly distinguished in *Realtime Data, LLC v. Actian Corp.*, No. 6:15-

17  CV-463 RWS-JDL, 2017 WL 11662040 (E.D. Tex. Apr. 3, 2017). In that case, the defendant's

18  invalidity expert relied on the plaintiff's "interpretation of the claims in conducting his analysis,

19  despite stating that he does not necessarily agree with those interpretations." *Realtime Data*, 2017 WL

20  11662040, at *1. The *Realtime Data* court found that despite incorporating plaintiff's interpretation of

21  the court's claim constructions, defendant's expert "applied the Court's claim constructions." *Id.* at

22  *3. Additionally, the *Realtime Data* court noted that the Federal Circuit in *TiVo* only "analyzed the

23  district court's determination solely for abuse of discretion." *Id.* And the *Realtime Data* court pointed

24  to a contrary Federal Circuit decision where "the defendant's expert had mapped each element of the

25  asserted claims to the functionality of the accused product in a manner that mirrored plaintiff's

26  infringement theory." *Id.* (internal quotations and brackets omitted) (citing *Cordance Corp. v.

27  Amazon.com, Inc.*, 658 F.3d 1330, 1335 (Fed. Cir. 2011)).

28       AIT cites *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. 11-CV-5973-PSG, 2013 WL

1   4537838, at *4 (N.D. Cal. Aug. 22, 2013) for the proposition that "expert testimony must adhere to the

2   court's claim constructions and must not apply alternative claim constructions." Mot. at 21. But as

3   described in the previous section, that is what Dr. Bederson did. All of his opinions concerning the

4   Change Detection Limitations used the Court's claim construction as a starting point. *Dynetix* was

5   also not in the context of a motion for summary judgment.

6       AIT cites *Multimedia Patent Trust v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL

7   12868264, at *5 (S.D. Cal. Nov. 20, 2012) for the proposition that an expert's opinion "that is based

8   on the opposing expert's interpretation of the Court's claim construction order [is] not germane to

9   [the] issue of invalidity." Mot. at 21. However, the *Multimedia* case simply cited to *TiVo* and had no

10  independent analysis; all of the defects of *TiVo* reviewed above apply to *Multimedia*. Moreover,

11  *Multimedia* was not in the context of a motion for summary judgment, but instead in the context of an

12  attempt to exclude expert testimony.

13      AIT cites *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1325 (Fed. Cir. 2008) for the

14  proposition that "testifying on invalidity, an expert must compare the construed claims to the prior

15  art." Mot at 22. But *Muniauction* concerned a non-infringement expert's opinion that the accused

16  products lacked a limitation that had already explicitly been determined during claim construction to

17  not be a requirement of the claims. *Muniauction*, 532 F.3d at 1325. It did not concern the propriety of

18  one expert exploring the implications of another expert's interpretation of the claims.

19      AIT cites *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 2:14-CV-911-JRG-RSP,

20  2016 WL 4718963 (E.D. Tex. July 12, 2016) for the proposition that "it is improper for an expert to

21  provide an opinion based on a claim understanding that he or she considers unreliable." Mot. at 26.

22  However, the *Core Wireless* decision was based on Fed. R. Evid. 702 concerns—which AIT is not

23  raising here—and was in the procedural posture of a motion *in limine*, not a motion for summary

24  judgment. *Core Wireless,* 2016 WL 4718963, at *3. Additionally, the *Core Wireless* finding was that

25  "Defendant's expert may not ***propound*** a theory he or she considers unreliable." *Id.* (emphasis added)

26  Here, Dr. Bederson is not advocating for (*i.e.*, "propounding") AIT's misguided interpretations of the

27  Court's claim construction. Rather, Dr. Bederson provides opinions on the validity implications of

28  AIT's claim interpretations. Moreover, *Core Wireless* expressly acknowledged that the defendant

1   could still "identify apparent contradictions or inconsistencies between [plaintiff's] infringement

2   theories and [its] validity theories as a means of cross-examination or impeachment."  Similarly, as

3   explained above in Section V.B, Salesforce's ability to cross examine Mr. Zatkovich to prove

4   anticipation is reason alone to deny AIT's motion.

5        AIT cites *Gonzalez v. Infostream Grp., Inc.*, No. 2:14-CV-906-JRG-RSP, 2016 WL 475172, at

6   *3 (E.D. Tex. Feb. 7, 2016) for the proposition that an expert cannot apply the opposing side's

7   supposed claim interpretation.  Mot. at 26.  But *Gonzalez* was in the context of a *Daubert* motion, not

8   a motion for summary judgment and, like *Core Wireless*, was based primarily on Fed. R. Evid. 702.

9        Separately, AIT cites case law for the proposition  "comparing an accused product to the prior

10  art for purposes of anticipation 'cannot constitute clear and convincing evidence of invalidity."  Mot.

11  at 22; *see also id.* at 21 (citing *Zenith Electronics Corp. v. PDI Communication Systems, Inc.*, 522

12  F.3d 1348, 1363 (Fed. Cir. 2008) for the proposition that "anticipation cannot be proved by merely

13  establishing that one 'practices the prior art'"); *id.* at 23 (citing *Realtime Data LLC v. EchoStar Corp.*,

14  No. 6:17-CV-00084-JDL, 2018 WL 6271807, at *4 (E.D. Tex. Nov. 29, 2018) for the proposition that

15  an invalidity opinion should be excluded when it "(i) identified accused features; (ii) compared the

16  prior art to those accused features; and (iii) concluded therefore that the claim was invalid").  But

17  those citations are irrelevant, since even AIT admits that Dr. Bederson did no such thing.  Mot. at 8

18  (AIT's statement of facts #19: "Dr. Bederson's report ***does not*** contain opinions directed to the

19  accused products and the aspects of the accused products particularly alleged to perform the Change

20  Detection Limitations. . . .  Dr. Bederson's Report ***does not*** contain opinions comparing the manner in

21  which the accused products allegedly perform the Change Detection Limitations and the manner in

22  which the Allegedly Anticipatory References perform the Change Detection Limitations.") (emphasis

23  added); *id.* at 23 ("Further, Dr. Bederson ***does not*** actually compare any of the accused products or

24  any features of the accused products to the prior art or any features of the prior art . . . .") (emphasis

25  added).  Hence, it is undisputed that neither Dr. Bederson nor Salesforce have presented any improper

26  "practicing the prior art" argument.  In turn, AIT's cited case *TruePosition, Inc. v. Andrew Corp.*, No.

27  05-CV-747, 2007 WL 2429415, at *1 (D. Del. Aug. 23, 2007) is inapposite because it presupposed an

28  attempt to present a "practicing the prior art" defense.  And AIT's other cited case here, *Metaswitch*

*Networks Ltd. v. Genband US LLC*, No. 2:14-CV-744-JRG-RSP, 2016 WL 3618831, at *7 (E.D. Tex. Mar. 1, 2016), is inapplicable because it concerned an attempt to support an invalidity opinion under the *Vanmoor* exception that would allow aspects of the products accused of infringement to be used to show invalidity.  Neither party contends that the *Vanmoor* exception is relevant here.

Thus, the overwhelming weight of authority finds it proper for an invalidity expert to offer alternative opinions, including opinions that compare the prior art to the asserted claims, under the opposing expert's claim interpretations.  There is nothing wrong with such analysis.  AIT is advancing its overbroad interpretations of "intelligent agent" and "affect" for purposes of infringement.  But if the jury sides with AIT on infringement, then the jury should also agree with Salesforce and Dr. Bederson that the prior art discloses the Change Detection Limitations.[7]  Given that Dr. Bederson's alternative analysis is admissible, disputed issues of material fact prevent summary judgment of no anticipation.

### 3.    Mr. Zatkovich's Validity Opinions Confirm the Propriety of Dr. Bederson's Analysis

Mr. Zatkovich rebuttal on validity only confirms the correctness of Dr. Bederson's anticipation analysis.  First, Mr. Zatkovich asserts he "did not disregard the Court's inclusion of an 'intelligent agent' in its construction in [his] infringement report" and that he "do[es] not disregard that language in this report," Dkt. 271-5 (Zatkovich Validity Report) ¶ 52, but he never challenges Dr. Bederson's observation that, in AIT's infringement theory, "intelligent agents" are any "software programs that automatically detect changes," *id.* ¶ 153 (quoting AIT's Amended Infringement Contentions at 58).

Second, Mr. Zatkovich does not disagree with Dr. Bederson's invalidity analysis that each of the prior art references discloses an "intelligent agent" under at least AIT's interpretation of that term. *Id.* ¶ 1105 ("[M]y opinions rely on the base references' failure to teach the claimed automatic detection functionality, and ***not whether such functionality is performed by an 'intelligent agent.'***").  That is significant: AIT is seeking summary judgment of no anticipation based on Dr. Bederson's

---

[7]   Hence, AIT's contention that "Plainly, a fact finder cannot rely on opinions that Dr. Bederson himself disagrees with to find a reference discloses changes that 'affect' an application," *id.* at 20, is incorrect.

1    analysis of a claim term that AIT and its expert do not dispute is disclosed by the prior art.

2          Third, as to the "change that affects" language, Mr. Zatkovich's only challenge to Dr.

3    Bederson's invalidity analyses under AIT's interpretation of that term is based on his interpretation of

4    "changes that affect an application" to require "changes that affect ***the functionality of*** an

5    application." Ex. 3 (August 24, 2022 Zatkovich Dep. Tr.) at 593:20-24. Mr. Zatkovich cannot ignore

6    the plain language of the claims and the Court's claim construction order, fabricate an additional

7    requirement ("the functionality of"), and then attempt to distinguish the prior art by arguing that this

8    non-existent requirement is not met. *See* Dkt. 283-1 (Salesforce's Motion to Exclude) at 10-12. AIT

9    agrees that an expert cannot testify in a manner that contradicts the court's claim construction. Mot. at

10   26. Thus, AIT's own case law confirms the Court should grant Salesforce's motion to exclude Mr.

11   Zatkovich's validity opinions on the Change Detection Limitations (Dkt. 283-1). Once that motion is

12   granted, there is no dispute that Dr. Bederson correctly applied AIT's interpretation of the Court's

13   constructions when opining that the prior art discloses the Change Detection Limitations under AIT's

14   interpretation.

15         Accordingly, Mr. Zatkovich's rebuttal report confirms that Dr. Bederson correctly understood

16   AIT's infringement contentions and that, aside from Mr. Zatkovich's attempt to import an additional

17   requirement into the claim language, there is no dispute that the prior art discloses the Change

18   Detection Limitations under AIT's interpretation of the Court's constructions.

19         **B.    Whether Dr. Bederson Purportedly Failed to Properly Apply the Court's
                   Claim Constructions Is Not a Matter for Summary Judgment**

20

21         As noted above, AIT's motion is premised on alleged failures by Dr. Bederson to apply the

22   Court's claim constructions. *E.g.*, Mot. at 1 ("Dr. Bederson's opinions on anticipation with respect to

23   the change detection limitations are based on a set of understandings admittedly at odds with how a

24   skilled artisan would view the claim language and the Court's constructions."). Not only is that

25   premise wrong (*see* Section V.A above), it is also not a valid basis for granting summary judgment.

26   Rather, it is an (ultimately and unfounded) attack on the reliability of Dr. Bederson's expert opinions.

27   Yet AIT did not move to exclude or to challenge the sufficiency or reliability of Dr. Bederson's

28   opinions. If AIT believed that Dr. Bederson did not properly apply the Court's claim constructions, it

1    could and should have moved to strike or exclude Dr. Bederson's opinions under *Daubert*, just as

2    Salesforce did for the opinions of Mr. Zatkovich that are based on improper claim interpretations. *See*

3    *generally* Dkts. 275 and 278.  AIT did not and, thus, Dr. Bederson's opinions cannot be discarded on

4    summary judgment as AIT advocates.  AIT's specific criticisms of Dr. Bederson's opinions set forth

5    in its motion therefore go to the weight of the opinions, not their admissibility, and AIT is free to

6    cross-examine Dr. Bederson concerning them at trial.  *See Smith v. Owens*, No. 3:07-CV-396-ECR-

7    RAM, 2009 WL 10644499, at *1 (D. Nev. Nov. 9, 2009) ("Generally, questions relating to the bases

8    and sources of an expert's opinion affect the weight of the expert's opinion and not its admissibility.");

9    *AVM Techs., LLC v. Intel Corp.*, No. 15-33-RGA, 2017 WL 1753416, at *1-3 (D. Del. Apr. 28, 2017)

10   (where defendant's invalidity expert's opinions were supported by element-by-element analysis,

11   plaintiff's "objections appear to be about the weight of the evidence, a topic appropriate for cross-

12   examination rather than summary judgment" and therefore the expert's opinions were "sufficient to

13   create a genuine dispute of material fact" precluding summary judgment).  AIT will have the

14   opportunity to address any outstanding concerns through "[v]igorous cross-examination" and

15   "presentation of contrary evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595

16   (1993).

17          **C.      Mr. Zatkovich's Opinions Alone Dictate Denial of AIT's Motion**

18          Even assuming for the sake of argument that Dr. Bederson's anticipation opinions are

19   disregarded, Salesforce can still explore and prove anticipation through cross-examination of Mr.

20   Zatkovich, who provided his own opinions on anticipation in this case—namely, that the prior art

21   references do not anticipate the asserted claims. *E.g.*, Mot. at 10-14 (SOF 25, 28, 31, 34, 37, 40, 43).

22   In particular, because Mr. Zatkovich does not dispute that the prior art discloses "intelligent agents,"

23   there is, at bare minimum, a genuine issue of material fact that Salesforce can explore on cross-

24   examination of Mr. Zatkovich, precluding summary judgment.  Similarly, Salesforce is entitled to

25   cross-examine Mr. Zatkovich on the existence of claim limitations in the prior art based on his

26   application of the same claim limitations for infringement. *E.g.*, *Core Wireless Licensing S.A.R.L. v.*

27   *LG Electronics, Inc.*, 2:14-CV-911-JRG-RSP, 2016 WL 4718963, at *3 (E.D. Tex. July 12, 2016)

28   (finding, in a case cited by AIT, that even where defendant's invalidity expert's opinions were

excluded, the defendant could still "identify apparent contradictions or inconsistencies between [plaintiff's] infringement theories and [its] validity theories as a means of cross-examination or impeachment").  The jury should then be free to decide whether his infringement read of the claims is correct and, if it is, whether that results in anticipation in view of the prior art and his own testimony regarding what is disclosed in the prior art.  Thus, even crediting for the sake of argument AIT's criticisms of Dr. Bederson's opinions, that would still not justify summary judgment of no anticipation.

## VI.  CONCLUSION

AIT seeks to disregard the Court's claim constructions of the Change Detection Limitations. Salesforce asks only to be able to demonstrate the implications of that position to the validity of the asserted patents.  Fairness demands that Salesforce be able to do so.  Salesforce respectfully requests that the Court deny AIT's motion for summary judgment.

DATED: October 21, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Ray Zado

Ray Zado
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
rayzado@quinnemanuel.com

**CERTIFICATE OF SERVICE**

I hereby certify, under penalty of perjury, that I am an employee of Quinn Emanuel Urquhart & Sullivan LLP and that pursuant to LR 5-3 I caused to be electronically filed on this date a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system. A copy will be served via email upon the following:

Michael A. Burke
*mburke@rssblaw.com*

Andrea Pacelli
Charles Wizenfeld
Mark S. Raskin
Michael De Vincenzo
Daniel Miller
*andrea.pacelli@us.kwm.com*
*charles.wizenfeld@us.kwm.com*
*mark.raskin@us.kwm.com*
*michael.devincenzo@us.kwm.com*
*daniel.miller@us.kwm.com*

Steven C. Sereboff
*ssereboff@socalip.com*

DATED:  October 21, 2022.

/s/ *Zachary Furcolo*
Zachary Furcolo