Michael A. Burke, Esq. (NSB #11527)
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington St.
Reno, NV 89503
Telephone: (775) 329-3151
Email: mburke@rssblaw.com

Mark S. Raskin, Esq. (*pro hac vice*)
Michael DeVincenzo, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Andrea Pacelli, Esq. (*pro hac vice*)
Daniel Miller, Esq. (*pro hac vice*)
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com
charles.wizenfeld@us.kwm.com
mark.raskin@us.kwm.com
daniel.miller@us.kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC, | Civil Action No.: 3:13-CV-00628-RCJ-CLB |
| Plaintiff, | **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION** |
| v. | |
| SALESFORCE, INC., | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

1

## TABLE OF CONTENTS

2

**I.**    INTRODUCTION ............................................................................................. 1

3

**II.**   CONCISE STATEMENT OF MATERIAL FACTS ........................................ 2

4

**III.**  RESPONSE TO SALESFORCE'S COUNTERSTATEMENT OF MATERIAL FACTS .... 5

5

**IV.**   ARGUMENT .................................................................................................. 5

6

7
        A.    Salesforce Must Adduce "Evidence" Supporting a Finding of Anticipation ............. 5

8
        B.    The Undisputed Expert Testimony Establishes the Alleged Anticipatory References Do Not Disclose the Change Detection Limitations ...................................... 8

9
        C.    Salesforce's Admissibility Arguments Do Not Raise a Question of Material Fact .. 11

10

11
        D.    Salesforce's Unrealistic Hope for Cross-Examination Evidence is Not a Sufficient Basis to Deny Summary Judgment of No Anticipation ............................. 14

12

**V.**    CONCLUSION .............................................................................................. 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Laboratory, Inv. v. Citrix Systems, Inc.*,
 889 F.3d 735 (Fed. Cir. 2018) ....................................................... 11, 12, 13

*Belcher-Bey v. City of Las Vegas*,
 No. 2:12-CV-01829-JAD, 2015 WL 1344790 (D. Nev. Mar. 20, 2015) ................................. 4

*Carucel Invs., L.P. v. Novatel Wieless, Inc.*,
 No. 16-CV-118-H-KSC, 2017 WL 6946641 (S.D. Cal. Mar 2, 2017) ................................. 14

*Core Wireless Licensing S. A. R. L. v. LG Electronics, Inc.*,
 No. 2:14-CV-911-JRG-RSP, 2016 WL 471963 (E.D. Tex. July 12, 2016) ........................... 15

*Heinemann v. Satterberg*,
 731 F.3d 914 (9th Cir. 2013) ................................................................. 4

*HSM Portfolio LLC v. Elpida Memory Inc.*,
 160 F. Supp. 3d 708 (D. Del. 2016) ........................................................ 14

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
 87 F. Supp. 3d 928 (N. D. Cal. 2015) ...................................................... 14

*Julian v. Swift Transportation Co. Inc.*,
 No. CV-16-00576-PHX-ROS, 2019 WL 7282025 (D. Ariz. Dec. 27, 2019) ....................... 15

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
 No. 1:09-CV-1685, 2013 WL 4053230 (M.D. Pa. Aug. 12, 2013).................................. 6

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
 No. 1:CV-09-1685, 2010 WL 4537002 (M.D. Pa. Nov. 3, 2010).................................... 8

*Med. Instrumentation and Diagnostics Corp. v. Elektra AB*,
 344 F.3d 1205 (Fed. Cir. 2003) .............................................................. 6

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
 No. 11-CV-5341, 2014 WL 2859280 (N.D. Cal. Jun. 20, 2014) ................................. 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*,
 701 F.2d 95 (9th Cir. 1983) ................................................................ 15

*Nobelbiz, Inc. v. Glob. Connect, LLC*,
 No. 6:12-CV-244, 2015 WL 11089488 (E.D. Tex. July 16, 2015) .............................. 13

*Nomadix, Inc. v. Hewlett-Packard Co.*,
 838 F. Supp. 2d 962 (C.D. Cal. 2012)........................................................ 8

*RealTime Data, LLC v. Actian Corp.*,
    No. 6:15-CV-463-RWS-JDL, 2017 WL 11662040 (E.D. Tex. Apr. 3, 2017) ........................ 13

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
    516 F.3d 1290 (Fed. Cir. 2008) ........................................................................................ 12, 13

**Other Authorities**

Fed. R. Civ. P. 56(e) ..................................................................................................................... 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Applications in Internet Time, LLC ("AIT") respectfully submits this reply in further support of summary judgment in its favor with respect to Salesforce, Inc.'s ("Salesforce") defense of anticipation.

Salesforce asserts that seven different Allegedly Anticipatory References (Dkt. 285 ("Mot.") at 4) anticipate the asserted claims.  Salesforce bears the burden to prove invalidity by clear and convincing evidence.  AIT moved for judgment because a reasonable juror could not find that any of the Allegedly Anticipatory References disclose the Change Detection Limitations, which include requirements for both an "intelligent agent" and detecting "changes that affect" an application.  Salesforce's response is long on invective but short on evidence.

First, Salesforce has no evidence that a skilled artisan would find the Change Detection Limitations disclosed in any of the Allegedly Anticipatory References.  Mot. at 16–18.  Salesforce urges that it may prove anticipation under an interpretation of the phrases "intelligent agent" and "changes that affect" used by AIT for infringement.   It is not Salesforce's theory of anticipation that is lacking.  Salesforce's problem is the lack of *evidence* supporting its theory.  In particular, there is no *evidence* supporting the conclusion that a skilled person would interpret or apply the phrase "changes that affect" an application in a manner consistent with AIT's alleged interpretation, such that all of the disparate changes disclosed in the seven Allegedly Anticipatory References would be considered "changes that affect" an application.  Salesforce urges that when Dr. Bederson's opinions are considered in light of the expansive discussion of "intelligent agent" in the specification and Mr. Zatkovich's deposition testimony, a question of fact exists with respect to whether each Allegedly Anticipatory References discloses an "intelligent agent."   Yet, anticipation requires Salesforce to establish that each reference discloses both an "intelligent agent" *and* that such agent automatically detects "changes that affect" an application.  Salesforce has identified *no evidence* to support that conclusion with respect to the requirement of detecting "changes that affect" an application.

In the absence of *evidence* that a skilled artisan would interpret the phrase "changes that affect" in the manner Dr. Bederson did for each of the Allegedly Anticipatory References, Salesforce is missing an essential element of its case.  This evidence is not merely absent, but also contradicted by

the only evidence in the record regarding this issue.  Indeed, the affirmative evidence establishes that both Salesforce's expert, Dr. Bederson, and AIT's expert, Mr. Zatkovich, would **not** interpret the "changes that affect" limitation in the expansive manner Dr. Bederson does for anticipation, *i.e.*, what Salesforce calls "AIT's interpretation" of the claims.

With no evidence supporting the broad claim interpretation Dr. Bederson takes for anticipation, Salesforce's response is mostly addressed to the admissibility of Dr. Bederson's opinions.  However, the admissibility of Dr. Bederson's opinions and the sufficiency of such opinions to meet the clear and convincing evidentiary burden of anticipation are two completely different things.  As recognized by Salesforce, there is a split of authority with respect to whether opinions addressed to opposing parties' interpretations of the claims are admissible. However, there is no such split with respect to the sufficiency of evidence.  As reflected in the case law relied on by both parties, Salesforce must adduce evidence that a skilled artisan would interpret the requirement for detecting "changes that affect" an application in a manner that supports anticipation.  In the absence of such evidence, regardless of the admissibility of Dr. Bederson's opinions, such opinions are insufficient to raise a question of fact.  It is not the name applied to a claim interpretation that makes it sufficient (or insufficient) to support summary judgment, it is the evidence supporting that interpretation.

Lastly, Salesforce urges AIT's motion should be denied because it could acquire impeachment evidence at trial.  Yet, Salesforce's hope to later acquire evidence to support the anticipation arguments that it has been pursuing for a decade is not a sufficient basis to deny summary judgment.

## II.   CONCISE STATEMENT OF MATERIAL FACTS

To the extent Salesforce responds to AIT's statements of material fact, Salesforce's responses fail to raise a genuine dispute of material fact precluding summary judgment.

With respect to SOF 11, Salesforce admits that Dr. Bederson provided an invalidity analysis under two different claim applications, a "proper application" and what Salesforce calls "AIT's broad application," the remaining disputes are not germane to the present motion.  Dkt. 298 ("Opp.") at 3.

With respect to SOF 12 and SOF 13, Salesforce admits that Dr. Bederson used the "proper … understanding" for certain opinions and what Salesforce calls "AIT's broad application" for other opinions.  *Id.*

1
2
3
4
5
6
7
8
9

SOF 14 states: "When Dr. Bederson applied AIT's interpretation of the claim language, Dr. Bederson applied a construction that was at odds with how he believed a skilled artisan would understand the claim language and Court's constructions." Mot. at 6. This statement was supported by record evidence including Dr. Bederson's admissions contained in his report and his deposition testimony. *Id.* In response, Salesforce states that "Dr. Bederson applied the Court's construction." Opp. at 3. Yet, Salesforce does not dispute and cites no evidence disputing that when Dr. Bederson used "AIT's interpretation," or "AIT's broad application," he was offering opinions at odds with how believed a skilled artisan would understand the claim language.  Mot. at 6–7 (citing Ex. 1, Bederson Rpt. at ¶¶164, 170, 224-276, 277-298; Ex. 5, Bederson Tr. at 43:17-44:11, 51:5-20; 52:12-18).[1]

10
11
12
13
14
15
16
17

SOF 15 states: "Dr. Bederson understood AIT to be applying the Court's construction of 'automatically detect[]' in a way that fails to account for the portion of the Court's construction requiring an 'intelligent agent.'"  Mot. at 7. Salesforce does not dispute that fact, and indeed concedes that AIT's purported application of the claims adopted by Dr. Bederson in forming his opinions on anticipation "read[s] out a part of the Court's claim construction."  Opp. at 3. SOF 15 further states: "Dr. Bederson does not believe a skilled artisan would apply the claim language and the Court's construction in that manner." Mot. at 7. Salesforce does not dispute that fact materially and identifies no contrary evidence.  *See* Opp. at 3 (indicating statement was not a direct quote).

18
19
20
21
22
23
24
25
26

SOF 16 states: "Dr. Bederson understood AIT to be applying an overly broad understanding of the term 'affect' as it appears in the Change Detection Limitations."  Mot. at 7 (relying on Ex. 1, Bederson Rpt. at ¶¶224, 278.)  Salesforce's response does not address or dispute this fact.  SOF 16 further states: "Dr. Bederson understands that AIT's interpretation of 'changes that affect' an application 'encompass[es] any changes of any type' …." Mot. at 7 (citing Ex. 6, Bederson CC Decl. at ¶131); *see* Ex. 1, Bederson Rpt. at ¶¶224, 278.  Salesforce does not dispute this fact.  Instead, Salesforce urges that AIT is wrongly implying that Dr. Bederson failed to use the Court's construction. Opp. at 4.  AIT is implying no such thing.  Instead, AIT merely sought to establish that Dr. Bederson understood AIT's interpretation of "affect" to encompass "any changes of any type."

27
28

---

[1] "Ex. 1" through "Ex. 8" refer to the Exhibits to the Declaration of Michael DeVincenzo in support of this Motion (Dkt. 270).

SOF 18 states: "In Dr. Bederson's opinion a skilled artisan would recognize that the ordinary meaning of the term 'affecting' in the context of the Change Detection Limitations requires that the source of any change is one step removed from the claimed system." Mot. at 8.  In support, AIT relied on various opinions offered by Dr. Bederson both at his deposition and during claim construction regarding the ordinary or plain meaning of the phrase "changes that affect" an application to a skilled artisan.  *Id.* (relying on Ex. 6, Bederson CC Decl. at ¶¶109, 125; Ex. 5, Bederson Tr. at 69:8-70:1; 71:14-23).  Salesforce's response does not dispute that Dr. Bederson gave those opinions.  Salesforce's response identifies no contrary evidence.

SOF 21 states: "All of the opinions contained in the Zatkovich Invalidity Report apply the claim language and the Court's construction in the manner in which Mr. Zatkovich understands a skilled artisan would apply the claim language and the Court's constructions." Mot. at 9. Salesforce's response does not dispute this fact as written. Opp. at 4.

SOF 22 states: "With respect to the claim language directed to 'automatically detecting,' changes that 'affect an application,' and the claim construction requirement of an 'intelligent agent,' Mr. Zatkovich applied the claim language and Court's construction for both infringement and invalidity in the manner he believes those terms would have been applied and understood by a person of ordinary skill in the art." Mot. at 9. Salesforce does not dispute this fact as written. Opp. at 4.

SOFs 23, 26, 29, 32, 35, 38, and 41 seek to establish as an undisputed fact that Dr. Bederson did not provide an opinion with respect to whether each Alleged Anticipatory Reference discloses the Change Detection Limitations as he believes a skilled artisan would understand the ordinary or plain meaning of the Change Detection Limitations. Mot. at 9-14. For each Alleged Anticipatory Reference, AIT cited evidence supporting that fact. *Id.* Salesforce's response fails to substantively address any of the undisputed facts themselves and the evidence identified in support thereof, and further fails to identify any contrary evidence.  Opp. at 4.  These facts should be deemed admitted.  Fed. R. Civ. P. 56(e); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013); *Belcher-Bey v. City of Las Vegas*, No. 2:12-CV-01829-JAD, 2015 WL 1344790, at *2 (D. Nev. Mar. 20, 2015).

SOFs 24, 27, 30, 33, 36, 39, and 42 seek to establish as an undisputed fact that Dr. Bederson did not consider whether each Alleged Anticipatory Reference disclosed the Change Detection

Limitations as he believes a skilled artisan would understand the phrase.  Mot. at 9-14.  For each Alleged Anticipatory Reference, AIT cited evidence supporting that fact.  *Id.* Salesforce's response fails to address these statements and the evidence identified in support thereof, and further fails to identify any contrary evidence. Opp. at 4. These facts should be deemed admitted.

SOFs 25, 28, 31, 34, 37, 40, and 43 seeks to establish as an undisputed fact that Mr. Zatkovich opined that a skilled artisan would find that each Alleged Anticipatory Reference fails to disclose the Change Detection Limitations as he believes a skilled artisan would understand the phrase.  Mot. at 10-14.  AIT cited evidence supporting this contention.  *Id.*  Salesforce does not dispute that Mr. Zatkovich offered the identified opinions.  Opp. at 5.

### III.   RESPONSE TO SALESFORCE'S COUNTERSTATEMENT OF MATERIAL FACTS

Salesforce has provided a counterstatement of material facts ("CSOF"; Opp. at 5–7).  With respect to CSOFs 1-12, the alleged facts in dispute do not preclude summary judgement in AIT's favor.  Indeed, Salesforce's cited evidence is merely directed to the scope of "intelligent agents" that could be applied by a finder of fact.  *Id.* Yet, the Change Detection Limitations require intelligent agents to be used for the detection of "changes that affect" an application.  The CSOFs, and the evidence cited therein, do not concern the claim requirement for the detection of "changes that affect" an application.  Salesforce cannot ignore any part of the claim language if it intends to establish anticipation.

### IV.   ARGUMENT

### A.   Salesforce Must Adduce "Evidence" Supporting a Finding of Anticipation

Salesforce must adduce evidence from which a reasonable juror could conclude the Allegedly Anticipatory References disclose the Change Detection Limitations, as those limitations would be understood by a skilled artisan.  As previously demonstrated, Salesforce has failed to present evidence from which a reasonable juror could find clearly and convincingly that any of the seven disparate Allegedly Anticipatory References discloses the Change Detection Limitations.  Mot. at 16-18.

Salesforce's response fails to identify any evidence supporting the expansive interpretation of the "Change Detection Limitations" applied by its expert.  As Salesforce recognizes, the Change Detection Limitations include two requirements, for both of which Dr. Bederson has applied AIT's purported interpretation: (i) "intelligent agents" and (ii) "changes that affect" an application.  *See, e.g.*,

Opp. at 8 ("If AIT intends to present an infringement case that effectively reads out the Court's requirement for an "intelligent agent" and interprets 'changes that affect' overbroadly ...."), 18 ("AIT is advancing its overbroad interpretations of 'intelligent agent' and 'affect' for purposes of infringement."). However, Salesforce largely only addresses the requirement of an "intelligent agent," neglecting the "changes that affect" requirement. *See* Opp. at 19–21. Yet, the Change Detection Limitations require more than merely an intelligent agent. Contrary to Salesforce's argument, Dr. Bederson's opinion that the "Change Detection Limitations were present ... at least under AIT's interpretation" does not raise a question of fact merely because Salesforce calls it "AIT's interpretation." Opp. at 9. Instead, Salesforce must adduce evidence ***supporting*** the interpretation it applies for anticipation, like any interpretation applied by either party for infringement or invalidity.

As reflected in the case law cited by Salesforce, anticipation may only be established based on a claim interpretation supported by the evidence. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:09-CV-1685, 2013 WL 4053230, at *3 (M.D. Pa. Aug. 12, 2013) (finding evidence sufficient to overcome summary judgment where "the parties adopt two different interpretations of the [asserted] claims, and each party has presented some evidence supporting its interpretation"); *Med. Instrumentation and Diagnostics Corp. v. Elektra AB*, 344 F.3d 1205, 1221 (Fed. Cir. 2003) (finding evidence supporting anticipation where "[Defendant] presented expert testimony that [the prior art] does teach the recalling and displaying limitation, and one of the authors of the reference also testified that [Defendant's] expert interpreted it correctly."). In other words, the cases relied on by Salesforce establish that any interpretation ***supported by the evidence*** may be relied on to establish anticipation (or infringement for that matter). Those cases do not stand for the proposition that calling an application of the claim language one's own expert disagrees with (SOF 14, 16-18) the "other side's interpretation" is sufficient to survive summary judgment where there is no supporting evidence for that interpretation from the "other side" or its expert.

Salesforce has no evidence that a person of skill in the art would broadly interpret the Change Detection Limitations in a manner to encompass the type of purported "change detection" performed by any of the Alleged Anticipatory References. SOF 14, 16-18 (reflecting that Dr. Bederson would not interpret the claims consistently with AIT's supposed interpretation); SOF 21-22 (reflecting that

1    Mr. Zatkovich would not interpret the claims consistently with AIT's supposed interpretation).  There

2    is no dispute that the Change Detection Limitations require an "intelligent agent" to be used for the

3    automatic detection of "changes that affect" an application.   SOF 3-7. With respect to the term

4    "intelligent agent," Salesforce urges a reasonable juror could find "intelligent agents" should be

5    afforded a broad meaning in light of Mr. Zatkovich's testimony and the specification's expansive

6    discussion of that term.  Opp. at 18-19; *see also* Opp. at 5-7 (CSOF 10-12).  The sufficiency of such

7    evidence with respect to the term "intelligent agent" is debatable.  However, it is not debatable that

8    Salesforce has failed to come forward with evidence supporting an expansive reading of automatically

9    detecting "changes that affect" an application that could encompass the disparate types of changes

10   reflected in each of the Allegedly Anticipatory References.  *Id.*

11       Salesforce urges that "[i]f AIT intends to present an infringement case that … interprets

12   'changes that affect' overbroadly, then AIT must also be held to those same interpretations for purposes

13   of invalidity."  Opp. at 8.  Salesforce, however, fails to identify ***any evidence*** in AIT's expert reports

14   or the deposition testimony of AIT's expert supporting that alleged interpretation.  Indeed, with respect

15   to "intelligent agents" Salesforce identified ***evidence***, such as Mr. Zatkovich's opinions concerning the

16   broad definition of "intelligent agents" in the Asserted Patents, and Mr. Zatkovich's failure to dispute

17   the existence of an "intelligent agent" in the Allegedly Anticipatory References.  Opp. at 18-19.  In

18   contrast, Salesforce cites ***no opinions*** from Mr. Zatkovich's expert reports, his deposition, or anywhere

19   applying an interpretation of the "changes that affect" requirement that is broad enough to encompass

20   a single one of the Allegedly Anticipatory References.  *Id.* at 10 (stating, without citation, "Mr.

21   Zatkovich in his expert report applied an unduly broad interpretation to … 'changes that affect' in an

22   effort to show infringement ….").  Mr. Zatkovich offered no such opinions.  As such, the ***evidence***

23   supporting AIT's supposed overbroad interpretation of detecting "changes that affect" an application

24   applied by Dr. Bederson is absent.  SOF 14, 16-18, 21-22. The insinuation that Mr. Zatkovich has

25   taken inconsistent positions on "changes that affect" is not ***evidence*** sufficient to survive summary

26   judgment.

27       Lastly, in addressing "changes that affect," Salesforce urges that if its motion to exclude Mr.

28   Zatkovich's opinions is granted then "there is no dispute that Dr. Bederson correctly applied AIT's

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION

1   interpretation [of] the Change Detection Limitations ….."  Opp. at 19.  Salesforce's argument is

2   preposterous.  Salesforce bears the burden of proving invalidity by clear and convincing evidence.

3   Salesforce must convince a jury that a skilled artisan would interpret the Change Detection Limitations

4   to encompass the alleged changes disclosed in the seven different Allegedly Anticipatory References.

5   Salesforce has an absence of evidence *regardless* of the admissibility of Mr. Zatkovich's opinions.

6   Indeed, Salesforce's own expert (like AIT's) disagrees with the impossibly broad interpretation of

7   "affect" that Salesforce urges could be adopted by a finder of fact.  SOF 16-18.

8   **B.     The Undisputed Expert Testimony Establishes the Alleged Anticipatory References Do
        Not Disclose the Change Detection Limitations**

9

10           The undisputed expert testimony establishes that a skilled artisan would not understand

11   automatically detecting "changes that affect" an application in the manner Salesforce urges for

12   anticipation.  As recognized in Salesforce's response, with respect to the detection of "changes that

13   affect" an application, the ordinary or plain meaning of that phrase to a person of skill in the art should

14   apply.  Opp. at 8-9. In other words, for anticipation Salesforce must prove by clear and convincing

15   evidence that one or more of the Allegedly Anticipatory References disclose automatically detecting

16   "changes that affect" an application, as that term would be ordinarily understood by a skilled artisan.

17   Not only is there a lack of evidence supporting what Salesforce calls "AIT's interpretation," there is

18   undisputed expert testimony inconsistent with that "interpretation."

19           AIT made its position crystal clear regarding the manner in which a skilled artisan would

20   understand the requirement of automatically detecting "changes that affect" an application.  AIT

21   submitted expert reports on both infringement and invalidity from the same expert, Mr. Zatkovich.[2]

22   Mr. Zatkovich opined that a skilled artisan would find the Change Detection Limitations absent from

23   ───────────────

24           [2] The parties agreed to treat the respective expert reports concerning infringement and validity as
     incorporated into their contentions. Dkt. 265 at 3. Otherwise, contentions themselves are not evidence,

25   "they are written by attorneys, and not based on personal knowledge or signed under penalty of
     perjury." *Nomadix, Inc. v. Hewlett-Packard Co.*, 838 F. Supp. 2d 962, 966 (C.D. Cal. 2012) (citing

26   *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:CV-09-1685, 2010 WL
     4537002, at *2 (M.D. Pa. Nov. 3, 2010) ("[I]nfringement contentions provide notice of the accusing

27   party's specific infringement theories, and are not considered evidence."); *MediaTek Inc. v. Freescale
     Semiconductor, Inc.*, No. 11-CV-5341, 2014 WL 2859280, at *8 (N.D. Cal. Jun. 20, 2014) ("The

28   infringement contentions, plainly, are not evidence standing on their own.").

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION

each of the Allegedly Anticipatory References.  These opinions are only "disputed" when Dr. Bederson applies AIT's interpretations of the claims (which he concedes are wrong). SOF 14-18.

Each Allegedly Anticipatory Reference is different.  For each reference, Mr. Zatkovich explained why he believed a skilled artisan would find such reference fails to disclose the Change Detection Limitations, including the requirement for automatically detecting "changes that affect" an application.  SOF 25, 28, 31, 34, 37, 40, 43.  Mr. Zatkovich's opinions were not directed to the "intelligent agent" requirement, but rather to the "changes that affect" requirement of the Change Detection Limitations.  *See* SOF 25 (citing Ex. 7, Zatkovich Inv. Rpt. at ¶¶ 253–257, 271, 280–281), 28 (citing Ex. 7 at ¶¶ 322–326, 338, 349), 31 (citing Ex. 7 at ¶¶ 473–479, 491, 514–516), 34 (citing Ex. 7 at ¶¶ 127–134, 147, 171–173), 37 (citing Ex. 7 at ¶¶ 825–828, 848, 874–876 ), 40 (citing Ex. 7 at ¶¶ 690–692, 702–706), 453 (citing Ex. 7 at ¶¶ 554–556, 571, 599–601).

For example, with respect to Popp, Mr. Zatkovich explained why a skilled artisan would not find that Popp discloses "changes that affect" an application.  SOF 25. Mr. Zatkovich explained:

> Second, "changes in field 632" are not "changes that affect an application." Rather, field 632 includes data such as an employee's name. Object inputControl 664 simply "pushes and pulls data."  Such data does not "affect an application," but rather is the data on which the application operates. ***The application itself is entirely unaffected by a change of an employee's name in the database***, for example.
>
> …
>
> To the extent Dr. Bederson refers to what he opined is the "second layer," i.e., objects 216 and HTML elements, Popp does not teach that changes in field 632 affect in any way those objects and elements. Rather, as already explained, ***changes in field 632 are changes in the data that Popp's application operates on***.

Ex. 7, Zatkovich Inv. Rpt. at ¶¶ 255–56; *see also id.* at ¶ 281.  Mr. Zatkovich believes a skilled artisan would not interpret the plain and ordinary claim language in a way to find Popp discloses the Change Detection Limitations.  SOF 25. Salesforce presents no evidence that a skilled artisan would consider a "change" to a name in a database that leaves an application completely unaffected, to be a change that "affects" an application.  SOF 23-25.  Salesforce presents no impeachment evidence or any other evidence supporting the contention that a skilled artisan would find a change to "field 632" to "affect" an application. *Id.* Summary judgment is therefore appropriate.

The issue is the same with respect to every other Allegedly Anticipatory Reference.  With

1

2

3

respect to Kovacevic, Mr. Zatkovich explained that that reference discloses "[a]llowing the user to select an item from a menu, with the consequent activation of an 'OK' button." Ex. 7, Zatkovich Inv. Rpt. at ¶ 325.  Mr. Zatkovich further explained that:

4

5

6

> Such user input is not a "change" that "affects" the user interface or functionality of the application, as would be for example adding a "Cancel" button in addition to an "OK" button, or changing the number of items in a menu. … This cannot be so since **the application functionality and behavior remain the same from one user to the next, regardless of what menus and buttons the previous user has selected**.

7

8

9

10

11

*Id.* Salesforce has presented no evidence that a skilled artisan would consider a change to an application which leaves an application unaffected is a change that "affects" an application. Summary judgment cannot be avoided based on a mere allegation that AIT's infringement theory is based on an interpretation of "changes that affect" an application that is so broad that it would encompass something that does not "affect" an application in any appreciable manner.

12

13

14

15

16

17

18

With respect to Bancroft, Dr. Bederson urges AIT interprets the Change Detection Limitations broadly enough to encompass changes to data merely operated on by an application.  Mr. Zatkovich explained that the alleged changes affecting an application were "[c]hanges in data regarding 'pricing, promotions, availability, and shipping options,'" that "do not 'affect an application'; the application simply operates on changed data."  Ex. 7, Zatkovich Inv. Rpt. at ¶ 826.  Mr. Zatkovich's opinion regarding how a skilled artisan would understand the limitations at issue are unimpeached and unrebutted.  Salesforce has no contrary evidence. SOF 14-18.

19

20

21

22

23

24

25

26

Rather than address the references, Salesforce alleges that Mr. Zatkovich took inconsistent positions with respect to infringement and validity.  *See* Opp. at 20 ("Salesforce is entitled to cross-examine Mr. Zatkovich on the existence of claim limitations in the prior art based on his application of the same claim limitations for infringement."); *see also id.* at 2, 8, 18.  Yet, Salesforce cites no statements from either Mr. Zatkovich's infringement expert report or his two-day deposition[3] inconsistent with the opinions he expressed concerning each Allegedly Anticipatory Reference.  Salesforce's invalidity expert, similarly, identified no inconsistencies between Mr. Zatkovich's

27

28

---

[3] The only deposition testimony cited by Salesforce concerning "changes that affect" does not support Salesforce's broad interpretation.  *See* Opp. at 19 (citing Dkt. 298-4).

opinions on infringement and his opinions on invalidity.  Dkt. 297-9 (Ex. I, Bederson Tr.) at 56:15-57:3.  There being no issues of impeachment, and no contrary evidence from a skilled artisan,[4] Mr. Zatkovich's testimony regarding the failure of each Allegedly Anticipatory Reference to disclose the Change Detection Limitations compels judgment in AIT's favor.

**C.    Salesforce's Admissibility Arguments Do Not Raise a Question of Material Fact**

With no evidence supporting an expansive reading of automatically detecting "changes that affect" an application, Salesforce urges that Dr. Bederson's anticipation opinions are admissible and oddly criticizes AIT for failing to file a *Daubert* motion.  Opp. at 19–20.  However, AIT does not seek to strike Dr. Bederson's testimony.  Instead, AIT seeks summary judgment because Dr. Bederson's opinions are insufficient to raise a question of fact in the absence of additional evidence.  The case law relied on by Salesforce does not stand for the proposition that opinions directed to another's alleged interpretation of the claims are sufficient to establish anticipation, in the absence of any evidence supporting that interpretation.

Salesforce urges that *01 Communique Laboratory, Inv. v. Citrix Systems, Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) is "on all fours."  Opp. at 12.  Not so.  In that case, a jury found an asserted patent not anticipated but also not infringed.  On appeal, the patentee urged that it was improper as a matter of law for the accused infringer to rely on an application of the claim language the patentee relied on for infringement.  At the time, the concern was that a defendant could use such arguments to skirt the higher evidentiary hurdles associated with invalidity.  889 F.3d at 742.  The court indicated that invalidity cannot be established by merely "pointing to similarities between an accused product and the prior art."  *Id.*  However, the *01 Communique* court recognized this did not "preclude a litigant from arguing that if a claim term ***must be broadly interpreted to read on an accused device***," then an accused infringer can use that interpretation for invalidity.  *Id.* (emphasis added).

Here, there are seven different Alleged Anticipatory References, each of which allegedly

---

[4] Dr. Bederson did not consider whether the references disclose the Change Management Limitations under a proper understanding of the claim language.  SOF 23-24, 26-27, 29-30, 32-33, 35-36, 38-39, and 41-42.  However, his opinions regarding the ordinary and plain meaning of automatically detecting "changes that affect" an application are narrower than the understanding applied by Mr. Zatkovich.  SOF 14-18.

1    "automatically detect[s]" different things in different ways, and there is no evidence comparing any of

2    the Allegedly Anticipatory References to the claims as Mr. Zatkovich applied them to the Accused

3    Products.  To the contrary, Salesforce concedes "Dr. Bederson does not intend to testify 'that the

4    infringement analysis … if accepted, would compel a finding of invalidity.'"  Opp. at 15 (quoting

5    *TiVo, Inc. v. EchoStar Communications Corp.*, 516 F.3d 1290, 1311 (Fed. Cir. 2008)).  However, that

6    is precisely the rationale that *01 Communique* says could be used to establish invalidity.  889 F.3d at

7    742 (a litigant may "argu[e] that if a claim term ***must be broadly interpreted to read on an accused***

8    ***device***, then" the same interpretation can be used for invalidity).  Here, Salesforce concedes that its

9    expert did not compare the accused products to the disparate manner in which each of the Allegedly

10   Anticipatory References is alleged to automatically detect changes in any way.  Opp. at 15. That

11   admission is damning.  *01 Communique* recognizes that merely "pointing to similarities between an

12   accused product and the prior art" is insufficient to establish invalidity as a matter of law.  889 F.3d

13   at 742.  Here, Salesforce's expert did even less than that, and as such his testimony cannot be sufficient

14   to establish invalidity.[5]

15        The *01 Communique* decision, relied on heavily by Salesforce, is consistent with *TiVo*, where

16   the Federal Circuit addressed an expert's testimony regarding invalidity that was based on an opposing

17   party's expert's "view of the claims." *TiVo*, 516 F.3d at 1311. The court explained that such testimony

18   was not germane to "the issue of invalidity." *Id.*  The court therefore affirmed a district court's ruling

19   precluding such testimony because it "did not deprive [accused infringer] the benefit of … testimony

20   on the issue of invalidity." *Id.* Salesforce's attempts to distinguish *TiVo* are not helpful to its cause.

21   Instead, Salesforce's concessions demonstrate that Dr. Bederson's opinions are less relevant than those

22   found "not germane" to invalidity in *TiVo*.  As conceded by Salesforce, Dr. Bederson's opinions do

23   not account for the accused products or Mr. Zatkovich's opinions on infringement, and he has not

24

25        [5] Salesforce asserts that Dr. Bederson "analyzed AIT's infringement contentions," Opp. at 12
26   (citing Ex. 1, Bederson Rpt. at ¶¶ 153, 167, 277), and that he surmised from those contentions that AIT
     was broadly interpreting "changes that affect" an application.  Yet, those contentions are not evidence
27   and Mr. Zatkovich's opinions do not support Dr. Bederson's broad interpretations.  Dr. Bederson's
     attempt to surmise AIT's interpretations is not evidence that a skilled artisan would broadly interpret
28   the "changes that affect" requirement.

considered whether a finding of infringement would compel a finding of invalidity.  Opp. at 15; SOF

19. As such, Dr. Bederson's opinions appear less germane to invalidity than those found irrelevant in

*TiVo*.  Of course, regardless of the admissibility of Dr. Bederson's opinions directed to AIT's supposed

interpretation, such opinions cannot possibly be sufficient to establish anticipation in the absence of

evidence supporting that interpretation.[6]

      After discussing *01 Communique*, Salesforce relies on a litany of cases for "the ***exact*** issue

here: a defendant's expert can present invalidity opinions under a plaintiff's interpretation of the terms

…. even where the defendant's expert disagrees with the plaintiff's claim interpretation."  Opp. at 14.

Of course, Salesforce simply gets the issue wrong.  The issue is not the admissibility of Dr. Bederson's

testimony or Salesforce's arguments.   Instead, the issue is the lack of evidence supporting the

interpretation of the claims Salesforce relies on for invalidity.  In *Nobelbiz, Inc. v. Glob. Connect, LLC*,

No. 6:12-CV-244, 2015 WL 11089488, at *3 (E.D. Tex. July 16, 2015), the court recognized that an

accused infringer's expert may be "permitted to analyze … prior art systems in accordance with the

claim interpretations put forth by [the opposing party]."   Nonetheless, the court found such evidence

insufficient to establish invalidity on summary judgment and went on to explain, consistent with *01

Communique* and *TiVo*, that for such evidence to be sufficient "to establish invalidity, Defendants must

do more than merely compare the prior art and the accused products," and concluded that "Defendants

[could not] show clear and convincing evidence of anticipation" based on that evidence.  *Id.*  Here, Dr.

Bederson did even less than "merely compare the prior art and the accused product"; he did not look

at the accused products, and made no comparison between the products and the prior art.  SOF 19.

      The cases relied on by Salesforce do not support the position that Dr. Bederson's opinions are

sufficient to establish anticipation ***in the absence of additional evidence***.  Instead, the cases relied on

by Salesforce almost exclusively address admissibility.  *See* Opp. at 12-13; *RealTime Data, LLC v.

Actian Corp.*, No. 6:15-CV-463-RWS-JDL, 2017 WL 11662040 (E.D. Tex. Apr. 3, 2017) (finding

testimony admissible where "defendant's expert had 'mapped each element of the asserted claims to

---

[6] Salesforce argues that AIT's challenge to Dr. Bederson should have been brought more properly
under *Daubert*.  Opp. at 20.  Yet, Salesforce lacks evidence supporting the interpretation of "changes"
as encompassing all changes of any type, that Dr. Bederson applied for invalidity.

the functionality of the [accused products] in a manner that mirrored [plaintiff's] infringement theories)"); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 943 (N. D. Cal. 2015) (recognizing plaintiff may "assume[] … [plaintiff's] understanding of the construed claim is correct"); *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 725-726 (D. Del. 2016) (finding party may rely on argument that if "a claim limitation must be interpreted in a certain fashion to read on the accused products" then the same interpretation may be used for anticipation); *Carucel Invs., L.P. v. Novatel Wieless, Inc.*, No. 16-CV-118-H-KSC, 2017 WL 6946641 (S.D. Cal. Mar 2, 2017) (finding testimony directed to an interpretation an expert disagreed with admissible).

Salesforce concludes "the overwhelming weight of authority finds it proper for an invalidity expert to offer alternative opinions … under the opposing expert's claim interpretations." Opp. at 18. The fact is many courts recognize the type of opinions offered by Dr. Bederson are inadmissible as confusing, prejudicial and not generally germane to invalidity. Mot. at 20-22. Other Courts find differently. Opp. at 14-16. No court has found anticipation based on an interpretation of the claims not supported by evidence. Otherwise, the allegation that an opponents' expert has broadly interpreted a term to encompass a particular prior art reference would be sufficient to avoid summary judgment.

Lastly, Salesforce urges that AIT's motion directed to Salesforce's failure of proof should be rejected because it is not a matter for summary judgment. Opp. at 19. Salesforce is simply wrong. Salesforce and its expert have proffered a theory of anticipation based on an application of the claims that is unsupported by any evidence. Salesforce's expert, Dr. Bederson, does not believe what he refers to as "AIT's interpretation" is proper or correct. SOF 13-14. AIT's expert, Mr. Zatkovich, does not believe it is correct either. SOF 22. There is no expert witness to "vigorous[ly] cross-examin[e]." Opp. at 20. The experts agree the ordinary and plain meaning of the claim language should not be interpreted to encompass the Allegedly Anticipatory References. Opp. at 20.

**D.    Salesforce's Unrealistic Hope for Cross-Examination Evidence is Not a Sufficient Basis to Deny Summary Judgment of No Anticipation**

Salesforce urges that it should be able to prove anticipation "through cross-examination of Mr. Zatkovich … [who opined] the prior art references do not anticipate the asserted claims." Opp. at 20. To be clear, Mr. Zatkovich explained that in his opinion a skilled artisan would find each of the

Allegedly Anticipatory References fails to disclose the Change Detection Limitations.  SOF 25, 28, 31, 34, 37, 40, 43.  Salesforce urges the jury should be permitted to decide if Mr. Zatkovich's allegedly overbroad "infringement read of the claim is correct."  Opp. at 20-21.  Salesforce has received Mr. Zatkovich's expert report on infringement and deposed Mr. Zatkovich for two days.  Despite this, Salesforce has presented no evidence of Mr. Zatkovich applying an overbroad claim reading for infringement that is inconsistent with Mr. Zatkovich's opinions concerning the Allegedly Anticipatory References.  Instead, Salesforce only addresses the "intelligent agent" requirement of the Change Detection Limitations.  *Id.*  Salesforce's hope that Mr. Zatkovich will reverse his position at trial, walk back his detailed analysis, and support the unduly broad and unreasonable positions taken by Dr. Bederson for purposes of anticipation is not evidence sufficient to satisfy its burden on summary judgment.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (upholding grant of summary judgment where the thrust of opposition was that much of the evidence the trial court relied on came from movant's employees, stating that "neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment").  "Once the party seeking summary judgment has come forward with sufficient evidence, a party cannot avoid summary judgment merely by claiming it wishes to cross-examine a witness."  *Julian v. Swift Transportation Co. Inc.*, No. CV-16-00576-PHX-ROS, 2019 WL 7282025, at *4 (D. Ariz. Dec. 27, 2019).

Salesforce's reliance on *Core Wireless Licensing S. A. R. L. v. LG Electronics, Inc.*, No. 2:14-CV-911-JRG-RSP, 2016 WL 471963 (E.D. Tex. July 12, 2016) is misplaced.  In that case, the Court granted a motion in limine precluding defendants' invalidity opinions but permitting invalidity to be proven through impeachment evidence.  Far from counseling against summary judgment, that case simply recognizes Salesforce may prove invalidity based on impeachment evidence.  AIT moves for summary judgment because Salesforce has no evidence (affirmative, impeachment, or otherwise) supporting the overbroad reading of the Change Detection Limitations used by Dr. Bederson.

## V.      CONCLUSION

For the foregoing reasons, AIT respectfully requests that the Court grant its request for summary judgment of no anticipation.

1     Dated:  November 4, 2022        *s/ Andrea Pacelli*

2

3                             Michael A. Burke, Esq.
                            ROBISON, SHARP, SULLIVAN & BRUST

4                             (Resident Counsel)
                            71 Washington Street

5                             Reno, Nevada 89503

6                             Mark S. Raskin, Esq. (*pro hac vice*)
                            Michael DeVincenzo, Esq. (*pro hac vice*)

7                             Charles Wizenfeld, Esq. (*pro hac vice*)
                            Andrea Pacelli, Esq. (*pro hac vice*)

8                             Daniel Miller, Esq. (*pro hac vice*)
                            KING & WOOD MALLESONS LLP

9                             500 Fifth Ave., 50th Floor
                            New York, New York 10110

10                           Telephone: (212) 319-4755
                          Email: mark.raskin@us.kwm.com

11                           michael.devincenzo@us.kwm.com
                          charles.wizenfeld@us.kwm.com

12                           andrea.pacelli@us.kwm.com
                          daniel.miller@us,kwm.com

13                           Steven C. Sereboff, Esq. (*pro hac vice*)
                          SoCAL IP LAW GROUP LLP

14                           1332 Anacapa, Suite 201
                          Santa Barbara, CA 93101

15                           Telephone: (805) 230-1356
                          Email: ssereboff@socalip.com

16

17                           *Attorneys for Plaintiff*
                          *Applications in Internet Time, LLC*

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 4, 2022 I caused the foregoing **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION**  to be filed with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:


Leigh T. Goddard
lgoddard@mcdonaldcarano.com

John J. Frankovich
jfrankovich@mcdonaldcarano.com

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com

Ray R. Zado
rayzado@quinnemanuel.com

Sam S. Stake
samstake@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*


Dated: November 4, 2022                    *s/ Andrea Pacelli*_____
                                           Andrea Pacelli