Michael A. Burke, Esq. (NSB #11527)
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington St.
Reno, NV 89503
Telephone: (775) 329-3151
Email: mburke@rssblaw.com

Mark S. Raskin, Esq. (*pro hac vice*)
Michael DeVincenzo, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Andrea Pacelli, Esq. (*pro hac vice*)
Daniel Miller, Esq. (*pro hac vice)*
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com
charles.wizenfeld@us.kwm.com
mark.raskin@us.kwm.com
daniel.miller@us,kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SALESFORCE, INC.,<br><br>Defendant. | Civil Action No.: 3:13-CV-00628-RCJ-CLB<br><br>**PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY PRODUCTION OF DOCUMENTS PENDING THE COURT'S RULING ON OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON MOTION TO COMPEL** |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. AIT Is Likely to Succeed on the Merits ...................................................................1

    B. The Balance of Hardships Tips Sharply in AIT's Favor ...........................................4

        1. AIT Will Be Irreparably Harmed Without a Stay .........................................4

        2. Salesforce Will Not Be Harmed by a Stay ....................................................7

    C. The Public Interest Favors a Stay ..............................................................................8

III. CONCLUSION ......................................................................................................................8

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ............................................................................................... 7

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 5:11-CV-01846-LHK-PSG, 2015 WL 13711858 (N.D. Cal. Apr. 7, 2015) ................. 5, 7

*Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*,
    584 F.2d 308 (9th Cir. 1978) ................................................................................................. 2

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007) ............................................................................................... 7

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ...................................................................................... 1, 2, 8

*In re Grand Jury Subpoena*,
    357 F.3d 900 (9th Cir. 2004) ................................................................................................. 1

*Hernandez v. Tanninen*,
    604 F.3d 1095 (9th Cir. 2010) ............................................................................................... 4

*PlayUp, Inc. v. Mintas*,
    No. 2:21-cv-02129-GMN-NJK, 2022 WL 10967692 (D. Nev. Oct. 18, 2022) ..................... 2

*In re Search Warrant Issued June 13, 2019*,
    942 F.3d 159 (4th Cir. 2019) ................................................................................................. 4

*Shimada v. 711 NC Prop. Tr. for 711 Bass LV Prop. Tr.*,
    No. 2:18-cv-00527-APG-CWH, 2018 WL 2245156 (D. Nev. Apr. 18, 2018) ..................... 2

*U.S. Commodity Futures Trading Comm'n v. Banc De Binary, Ltd.*,
    No. 2:13-CV-992-MMD-VCF, 2015 WL 3454412 (D. Nev. June 1, 2015) .......................... 6

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ............................................................................................................... 8

**Other Authorities**

LR 7-4(b) ........................................................................................................................................ 6

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Email Chain between AIT counsel Andrea Pacelli and Salesforce counsel James Judah dated November 28, 2022 |

## I.   INTRODUCTION

Despite Salesforce's efforts to deny the obvious, the balance of hardships in this case tilts overwhelmingly in AIT's favor.  AIT is facing disclosure of work product relating to its pre-litigation due diligence and has worked diligently to prevent such disclosure.  Salesforce, instead, would suffer *no* harm from a short delay in production of the disputed documents.  Indeed, Salesforce is not in a rush to adjudicate any of the issues in this case, since it has attempted to stay the entire case indefinitely.  Under these circumstances the Court should grant a stay of execution of its Order since AIT's objections raise, at the very minimum, serious legal questions, and the public interest also counsels in favor of a stay.

## II.   ARGUMENT

### A.   AIT Is Likely to Succeed on the Merits

As explained in AIT's opening brief, AIT believes that the Order was clearly erroneous and contrary to law in multiple respects, including the application of an incorrect legal standard for work product protection; a failure to account for the totality of the circumstances relating to preparation of the disputed documents; and a failure to consider the documents themselves, which are the best evidence available to determine whether work product protection applies.  Dkt. 341 ("Mot.") at 2–4.  Contrary to Salesforce's contention that "AIT has failed to cite any controlling authority" in its Objections (Dkt. 348 ("Opp.") at 4), AIT believes that the Magistrate Judge's decision runs contrary to controlling precedent in the Ninth Circuit, including *In re Grand Jury Subpoena*, 357 F.3d 900 (9th Cir. 2004), which requires a court to consider "the totality of the circumstances." *Id.* at 908.

Realistically, at this stage AIT is not asking this Court to reverse its own decision as clearly erroneous, and it would not be a good use of the Court's time to relitigate the merits of Salesforce's motion to compel while Judge Jones considers AIT's Objections.  Salesforce presents a detailed summary of its opposition to AIT's Objections, apparently believing that the mere assertion of counter-arguments defeats the merits of AIT's case.  Opp. at 4–7.  Salesforce, however, fails to consider that "if the balance of hardships tips sharply in favor of the party seeking the stay, a relatively low standard of likelihood of success on the merits is sufficient." *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1119 (9th Cir. 2008) (internal quotation marks and alterations omitted).

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY
- 1 -

1  Under this test, it is sufficient that "serious legal questions are raised" by the movant.  *Id.* at 1116
2  (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)); *see also* Mot. at 2 (citing *Flores v.*
3  *Barr*, 977 F.3d 742, 748 (9th Cir. 2020) for the same proposition).  This test is controlling in the Ninth
4  Circuit and has been applied in this District as well.  *See, e.g.*, *Shimada v. 711 NC Prop. Tr. for 711*
5  *Bass LV Prop. Tr.*, No. 2:18-cv-00527-APG-CWH, 2018 WL 2245156, at *1–2 (D. Nev. Apr. 18,
6  2018).

7  AIT's objections raise serious legal questions.  A "serious question" is one as to which the
8  moving party has a "fair chance of success on the merits," or a question "serious enough to require
9  litigation."  *See Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d
10 308, 315 (9th Cir. 1978).  AIT believes the Court failed to consider the totality of the circumstances as
11 mandated by Ninth Circuit precedent and applied an incorrect legal standard as requiring involvement
12 of litigation counsel as a pre-condition for work product protection.  The documents at issue relate to
13 AIT's pre-litigation due diligence, which is a textbook example of protected work product.  The issue
14 raised here will potentially affect other parties in a similar position, *i.e.*, small companies that lack
15 resources to immediately retain litigation counsel as soon as litigation is foreseen.  As such, the
16 sensitivity of these documents and the potential impact on future litigants certainly raise questions
17 "serious enough to require litigation."  The critical factor in this Motion is thus the balance of hardships
18 which, as detailed below, "tips sharply" in favor of AIT.

19 Salesforce cites *PlayUp, Inc. v. Mintas*, No. 2:21-cv-02129-GMN-NJK, 2022 WL 10967692,
20 at *8 (D. Nev. Oct. 18, 2022) for the proposition that failure to show a substantial case for relief on the
21 merits "dooms the motion to stay the operation of the Court's order."  Opp. at 2.  *PlayUp*, however,
22 involved a party's request to stay all discovery pending a motion to dismiss.  *PlayUp*, 2022 WL
23 10967692, at *1.  As such, the only alleged harm was "the 'expense' of engaging in discovery … but
24 such discovery expense does not generally constitute irreparable harm."  *Id.* at *9.  Indeed, the *PlayUp*
25 court acknowledged that "[a] sufficient showing of irreparable harm arising out of complying with a
26 discovery order is generally limited to instances in which the required disclosure involves 'arguably
27 privileged information, trade secrets to a competitor, or the like.'"  *Id.* at *9 n.15 (quoting *Granato v.*
28 *City & Cnty. of Denver*, No. 11-CV-0-304-MSK-BNB, 2011 WL 1335854, at *2 (D. Colo. Apr. 7,

2011)). But that is exactly the kind of harm AIT would suffer here should the disputed documents, which AIT alleges are protected by work product immunity, be produced to Salesforce.

Further, AIT respectfully recognizes the difficulty of arguing likelihood of success to this Court. However, if the direct involvement or supervision by litigation counsel is not required for work-product protection, a point Salesforce does not dispute in its response to AIT's Objections (*see* Dkt. 345 at 5–11), then AIT's claims of work product protection are on more than solid ground. As recognized by Salesforce, "to establish work product protection" AIT was required to show that it was aware of "**specific claims** that have already arisen," and the documents must have been "prepared or obtained **because of** the prospect of litigation." Dkt. 242 at 2 (emphasis in original). Here, the undisputed evidence establishes that by late 2011 AIT was aware that claims of patent infringement had arisen against Salesforce. *See* AIT Ex. B[1] (Sturgeon 5/4/2022 Tr.) at 29:9–31:14, 33:6–22. Thereafter, the undisputed evidence establishes that in early 2012 AIT hired a consulting company called Pluritas, LLC ("Pluritas") to help AIT find a law firm to assert the patents-in-suit. *Id.* at 153:9–154:6, 157:5–160:9; AIT Ex. C (Sturgeon 5/5/2022 Tr.) at 265:18–266:22. Mr. Sturgeon explained this was the only task performed by Pluritas. AIT Ex. B (Sturgeon 5/4/2022 Tr.) at 153:9–154:20. Documents prepared in furtherance of AIT's attempts to retain litigation counsel to assert the patents are work product because such documents would not have been "prepared or obtained" but for the "prospect of litigation." Thus, AIT established a *prima facie* case of work product protection. Salesforce argues that the documents could have been related to licensing or other monetization efforts unrelated to the assertion of the patents in litigation. Opp. at 6. However, there is no evidence that AIT or Pluritas ever engaged in any tasks related to licensing or anything other than AIT's efforts to assert the patents-in-suit against Salesforce.

Lastly, AIT recognizes its role in relying on deposition testimony spread over a number of pages and a number of exhibits in lieu of a declaration. In the future, AIT will ensure that it files a declaration more succinctly and clearly addressing the issues. The fact remains, however, that the

---

[1] Citations to "AIT Ex." refer to exhibits attached to the Declaration of Michael DeVincenzo in Support of AIT's Opposition to Salesforce's Motion to Compel Document Production or, in the Alternative, for *In Camera* Review (Dkt. 230 & Dkt. 231).

deposition testimony in the record clearly establishes AIT's claim of work product protection for the disputed documents.

**B.     The Balance of Hardships Tips Sharply in AIT's Favor**

The imbalance between the hardships potentially suffered by the parties could not be starker. AIT is trying to avoid disclosure of litigation work product to the very adversary against which AIT was preparing to litigate a decade ago. On the other hand, Salesforce would suffer no hardship from a brief delay in production of the disputed documents, especially when Salesforce itself has asked the Court to stay the entire case indefinitely.

**1.     AIT Will Be Irreparably Harmed Without a Stay**

As explained in AIT's opening brief, AIT would suffer harm from disclosure of the disputed documents. Mot. at 4. Salesforce cannot, and does not, dispute the basic proposition that such harm is irreparable because it could not be undone by a later reversal of the Order pursuant to AIT's Objections.[2] Unable to dispute AIT's irreparable harm, Salesforce attempts to argue that "AIT's own actions show that the likelihood of irreparable harm is remote," citing a purported lack of urgency in AIT's conduct. Opp. at 8; *see also id.* at 3. This argument suffers from several flaws.

*First*, AIT prepared and filed both its Objections and the present Motion to Stay in a very short, and certainly reasonable time given the circumstances. The Court heard argument on Salesforce's motion to dismiss on Wednesday, November 16, 2022, and a written Order was served on the parties on Friday, November 18, 2022. Dkt. 331. The transcript of the hearing was received on Monday, November 21, 2022. Dkt. 335. On Tuesday, November 22, 2022, AIT requested a meet and confer and on Wednesday, November 23, 2022, the day before Thanksgiving, AIT again requested a meet and confer, indicating it was available all day. Ex. 1[3] (11/28/2022 Email Chain) at 2, 3. On Monday,

---

[2] Oddly, Salesforce spends nearly two pages of its opposition brief attempting to distinguish on the facts each of the cases that AIT cites for this basic proposition. Opp. at 9–11. Despite its efforts to distract from the real issues in this Motion, Salesforce cannot dispute that there is "irreparable harm" where "a party [is] erroneously required to disclose privileged materials or communications." *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010). This basic principle is widely recognized. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) (collecting cases).

[3] "Ex. " refers to the Exhibits attached to the Declaration of Andrea Pacelli filed herewith.

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY
- 4 -

November 28, 2022, Salesforce indicated it was available to confer on Tuesday, November 29, 2022. *Id.* at 1.  AIT filed both the Objections and this Motion on Wednesday, November 30, 2022, one day after the parties conferred.  Accordingly, Salesforce's allegations that AIT delayed the filing of this Motion are simply unsupported by the facts.  It took AIT only six business days (counting the Friday after Thanksgiving as a business day) after receiving the hearing transcript to prepare both filings.[4]

*Second*, Salesforce's argument is entirely predicated on the assumption that AIT was faced with Hobson's choice of violating the Court's Order or suffering irreparable harm.  *See* Opp. at 8 ("[T]he purported irreparable harm … would come from production of the four documents on December 7 ***as ordered***.") (emphasis added).  AIT filed this motion precisely to avoid such irreparable harm.  AIT further notes that Salesforce asserts that AIT was required to produce the four documents at issue by December 7, 2022.  *Id.* at 1 ("The deadline for AIT to produce the four documents at issue … was December 7, 2022.").  AIT understood that the December 7, 2022 deadline related to an entirely different task to be carried out by AIT under the Order.  Specifically, by December 7 AIT was to "re-review all the entries that have been identified by the Defendant in their motion with the guidance and information provided by the Court" and produce documents "to the extent that Plaintiff has identified documents as work product protected or attorney client protected, but in light of the Court's guidance at this hearing, find that they do not actually qualify."  Order at 2.[5]

In the absence of a precise deadline for production of the four disputed documents, it was AIT's understanding that it was not required to file the present Motion as an emergency motion or to expedite briefing, as Salesforce contends.  Opp. at 3, 8.  The Court's Local Rules state that "[e]mergency

---

[4] Salesforce attempts to distinguish *Apple Inc. v. Samsung Elecs. Co.*, No. 5:11-CV-01846-LHK-PSG, 2015 WL 13711858 (N.D. Cal. Apr. 7, 2015) based on the fact that in that case the defendant "immediately sought to stay an April 3, 2015 order from the magistrate judge who issued the order." Opp. at 8.  However, unlike here, in *Apple* the defendant was facing "a seven-day deadline for compliance." *Id.* at *1.  Moreover, the timing of defendant's motion did not enter the court's reasoning in granting the stay.  *See id.*

[5] In support of its reading of the Order, Salesforce cites a passage in the Order providing that AIT "shall complete ***this work*** by December 7, 2022."  Opp. at 3 (quoting Order at 2) (emphasis added). However, the phrase "this work" clearly refers to the preceding task of re-reviewing and re-assessing the remaining disputed documents, not to production of the four documents, which is provided for in the preceding paragraph.

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY
- 5 -

motions should be rare." LR 7-4(b).  Here, an emergency motion did not appear necessary and, as explained below, Salesforce did not argue otherwise until *after* AIT filed its present motion.  Having not been provided a reason to file an emergency motion, AIT tried to avoid the considerable burden on the parties and the Court, considering that the briefing period included the Thanksgiving holiday.

AIT has complied and will comply with all orders of this Court and will produce the four disputed documents unless AIT's stay is granted or AIT's Objections to the Order are sustained. However, in the absence of an explicit deadline, AIT assumed a reasonable timeline consistent with the local rules, the circumstances of the case, and the sensitivity of the documents at issue.  As it stands, AIT took the safest route available to protect the disputed documents from disclosure to the extent possible while avoiding the possibility of a violation of the Court's Order.  *See U.S. Commodity Futures Trading Comm'n v. Banc De Binary, Ltd.*, No. 2:13-CV-992-MMD-VCF, 2015 WL 3454412, at *1–2 (D. Nev. June 1, 2015) (outlining "two options" available to "a party [who] disputes the validity of a discovery order," where the safer option is to "appeal the order (or move for reconsideration) and seek a stay of the order pending appeal").

Moreover, AIT has been fully cooperating with Salesforce to resolve this issue quickly and without burdening the Court with additional briefing.  When the parties met and conferred regarding this motion on November 29, 2022, Salesforce did not indicate that it believed the four documents had to be produced by December 7, or that AIT's approach would be in violation of the Court's order. Indeed, Salesforce first requested production of the four documents at issue on December 6, 2022, one day before the supposed December 7 deadline, and a full week after the parties conferred about staying the Court's order.   Dkt. 348-2, Ex. 1 (12/08/2022 Email Chain) at 1, 3.  AIT immediately offered to expedite the present Motion and suggested that the parties jointly seek the Court's guidance on whether AIT should produce the documents immediately.  *Id.* at 1.  Salesforce's decision to ignore AIT's offer to request an expedited decision from this Court and engage in expedited briefing undermines Salesforce's allegations of delay.

***Third***, Salesforce does not explain how any conduct of AIT somehow negates the concrete and actual harm AIT would suffer if the disputed documents were improperly disclosed.  Salesforce attempts to inject a diligence requirement into the "irreparable harm" factor but cites no authority in

support of that proposition. And even if diligence were a prerequisite to irreparable harm, AIT was more than diligent in view of Salesforce's availability for a meet and confer, the tight timeline (over the Thanksgiving holiday), and the absence of a set production date in the Order.[6]

### 2. Salesforce Will Not Be Harmed by a Stay

As AIT explained in its opening brief (Mot. at 5), Salesforce will suffer no harm if a stay is granted, because at worst, Salesforce will experience a "short delay" of the sort "occasioned by almost all interlocutory appeals," which "does not constitute substantial harm." *Apple*, 2015 WL 13711858, at *1.

In response, Salesforce vaguely alleges that "a stay will continue the prejudice Salesforce suffers by the delay in producing these documents to which it is entitled," but is unable to articulate a specific harm other than a short delay. Opp. at 11. The most Salesforce can allege is that the disputed documents "are **likely** to contain information that is highly relevant to issues of liability and damages" and that "the information in these documents **may** necessitate re-opening of fact and/or expert discovery." *Id.* As such, Salesforce's purported "harm" is only of a speculative nature, and in any event Salesforce will receive the documents as soon as the Court rules on AIT's Objections, so that any harm will be nullified. As the very case law cited by Salesforce holds, "[s]peculative injury" is not a cognizable harm. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) (cited in Opp. at 9); *see also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (finding balance of hardships to be in the movant's favor where non-movant's alleged harm was "speculative").

Moreover, Salesforce urged that the entire case should be stayed pursuant to its own motion filed shortly after its motion to compel, indicating that a brief additional delay will not harm Salesforce's interest in the case. Dkt. 223 (filed June 15, 2022). Salesforce does not even attempt to reconcile this contradiction, arguing that the Court should "enforce the immediate production of the documents (or otherwise stay the entire case consistent with Salesforce's pending motion to stay)."

---

[6] Salesforce also urges that "AIT knew full well when it filed its motion to stay that, under the Local Rules, briefing on its motion would not be completed until after the deadline to comply." Opp. at 1. That is not true. Salesforce first provided its position that expedited briefing was required ***after*** AIT filed the present motion. AIT immediately indicated that it would expedite briefing and request expedited treatment if Salesforce believed it was necessary. Salesforce did not respond.

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY
- 7 -

Opp. at 11.  Notably, Salesforce is requesting the Court to stay the case pending *ex parte* reexamination, which has no statutory deadline and is likely to take several years.  Dkt. 246 at 20.  If Salesforce is willing (indeed, seeking) to stay the case for a few more ***years***, certainly it will not be harmed by a few ***weeks'*** delay in the production of four documents.[7]

*       *       *

In sum, "the balance of hardships tips sharply in favor of [AIT]" and therefore counsels in favor of granting a stay.  *Golden Gate*, 512 F.3d at 1119.

**C.     The Public Interest Favors a Stay**

As AIT explained in its opening brief, there is a "strong public policy" in favor of safeguarding work product protection.  *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981).  Further, the Court's ruling on the scope of the work product doctrine will be important to both businesses and individuals that lack the means to engage litigation counsel as soon as litigation is anticipated, and therefore perform pre-litigation diligence using in-house resources.  Accordingly, a stay will serve the public interest by protecting confidentiality of the disputed documents while AIT seeks review of an important ruling.  Salesforce does not attempt to respond to this argument, only alleging that "magistrate judges should be given great deference" and that "[a] [magistrate judge's] order will not determine anything if it can be automatically stayed by filing an objection." Opp. at 12 (quoting *Garity v. Donahoe*, No. 2:11-CV-01805-RFB, 2014 WL 4402499, at *2 (D. Nev. Sept. 5, 2014)).  AIT does not dispute either statement, but such considerations would be relevant, at best, to the merits of AIT's Objections, not to AIT's motion to stay, which is just a procedural mechanism to preserve the status quo during pendency of the Objections.

**III.    CONCLUSION**

For the foregoing reasons, AIT respectfully requests this Court to stay enforcement of the Order until AIT's Objections have been resolved.

---

[7] Salesforce's lack of urgency is further evidenced by its refusal to engage with AIT's offer to expedite briefing in this Motion.  *See* Dkt. 348-2, Ex. 1 at 1.

| | |
|---|---|
| Dated:  December 20, 2022 | <u>s/ Andrea Pacelli</u> |
| | |
| | Michael A. Burke, Esq. |
| | ROBISON, SHARP, SULLIVAN & BRUST |
| | (Resident Counsel) |
| | 71 Washington Street |
| | Reno, Nevada 89503 |
| | |
| | Mark S. Raskin, Esq. (*pro hac vice*) |
| | Michael DeVincenzo, Esq. (*pro hac vice*) |
| | Charles Wizenfeld, Esq. (*pro hac vice*) |
| | Andrea Pacelli, Esq. (*pro hac vice*) |
| | Daniel Miller, Esq. (*pro hac vice)* |
| | KING & WOOD MALLESONS LLP |
| | 500 Fifth Ave., 50th Floor |
| | New York, New York 10110 |
| | Telephone: (212) 319-4755 |
| | Email: mark.raskin@us.kwm.com |
| | michael.devincenzo@us.kwm.com |
| | charles.wizenfeld@us.kwm.com |
| | andrea.pacelli@us.kwm.com |
| | daniel.miller@us,kwm.com |
| | |
| | Steven C. Sereboff, Esq. (*pro hac vice*) |
| | SoCAL IP LAW GROUP LLP |
| | 1332 Anacapa, Suite 201 |
| | Santa Barbara, CA 93101 |
| | Telephone: (805) 230-1356 |
| | Email: ssereboff@socalip.com |
| | |
| | *Attorneys for Plaintiff* |
| | *Applications in Internet Time, LLC* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 20, 2022 I caused the foregoing **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY PRODUCTION OF DOCUMENTS PENDING THE COURT'S RULING ON OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER ON MOTION TO COMPEL** to be filed with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Leigh T. Goddard
lgoddard@mcdonaldcarano.com

John J. Frankovich
jfrankovich@mcdonaldcarano.com

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com

Ray R. Zado
rayzado@quinnemanuel.com

Sam S. Stake
samstake@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

Dated: December 20, 2022                         *s/ Andrea Pacelli*
                                                 Andrea Pacelli