Michael A. Burke, Esq. (NSB #11527)
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington St.
Reno, NV 89503
Telephone: (775) 329-3151
Email: mburke@rssblaw.com

Mark S. Raskin, Esq. (*pro hac vice*)
Michael DeVincenzo, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Andrea Pacelli, Esq. (*pro hac vice*)
Daniel Miller, Esq. (*pro hac vice*)
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com
charles.wizenfeld@us.kwm.com
mark.raskin@us.kwm.com
daniel.miller@us,kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC, | Civil Action No.: 3:13-CV-00628-RCJ-CLB |
| Plaintiff, | **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE'S MOTION TO RESOLVE DISCOVERY DISPUTE REGARDING CORRECTED EXPERT REPORT** |
| v. | |
| SALESFORCE, INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 3

    A.  The Asserted Claims ................................................................................ 3

    B.  Salesforce Urges Good Cause and Diligence Is Not Required to Supplement Invalidity Contentions with Respect to Popp, Kovacevic, and Balderrama ............. 3

    C.  The Parties' Opening and Rebuttal Expert Reports ................................... 4

    D.  Dr. Bederson Copies Dr. Schmidt's Declaration but Cannot Copy Dr. Schmidt's Opinions with Respect to Claims 23–26 of the '482 Patent over the XPR References 5

    E.  The Parties Agree to Narrow the Case ...................................................... 6

    F.  Salesforce Waits Until After the Summary Judgment Deadline to Inform AIT of Its Supposed Error ............................................................................... 7

    G.  Salesforce's Initial Excuses and the Parties' Correspondence Regarding the Supplemental Bederson Report ............................................................. 8

III.  LEGAL STANDARD ......................................................................................... 8

IV.  ARGUMENT ...................................................................................................... 9

    A.  Dr. Bederson's New Opinions Are Untimely Under Rule 26 ...................... 9

    B.  The Exceptions of Rule 37(c)(1) Do Not Excuse the Belated Disclosure of Dr. Bederson's Opinions ........................................................................... 12

        1.  Salesforce's Attempt to Expand Its Invalidity Case Prejudices AIT ........... 13

        2.  Additional Expert Reports and Depositions Will Exacerbate, Rather than Cure, AIT's Prejudice ......................................................................... 19

        3.  Additional Expert Discovery Will Disrupt the Trial Schedule ................... 20

        4.  Salesforce Has Failed to Come Forth with an Explanation for Its Belated Amendment .......................................................................... 21

V.  CONCLUSION .................................................................................................. 24

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Allstate Ins. Co. v. Balle*,
    No. 2:10-CV-02205-APG-NJK, 2013 WL 5797848 (D. Nev. Oct. 28, 2013) ......11, 12, 15, 19

5

*Carrillo v. B & J Andrews Enters., LLC*,
    No. 2:11-CV-01450-RCJ-CWH, 2013 WL 420401 (D. Nev. Jan. 31, 2013) ................. 10, 11

6

7

*Corning Optical Commc'ns RF LLC v. PPC Broadband Inc.*,
    No. CV-12-02208-PHX-SMM, 2015 WL 11718120 (D. Ariz. Sept. 18, 2015) ....................21

8

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
    No. W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022) .........................11

9

10

*Droplets, Inc. v. Yahoo! Inc.*,
    No. 12-CV-03733-JST, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021)................................16

11

*Everlight Elecs. Co., Ltd. v. Everlight Elec. Co., Ltd.*,
    No. 12-11758, 2015 WL 1530831 (E.D. Mich. Apr. 6, 2015) ..............................................12

12

13

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
    No. 2:14-cv-00772-GMN-NJK, 2016 WL 3965190 (D. Nev. July 21, 2016) ...............*passim*

14

15

*Kraja v. Bellagio, LLC*,
    No. 2:15-cv-01983-APG-NJK, 2016 WL 1611590 (D. Nev. Apr. 22, 2016) .......................11

16

17

*Lanard Toys Ltd. v. Novelty, Inc.*,
    375 F. App'x 705 (9th Cir. 2010) ..................................................................13, 19, 20, 21

18

19

*Linksmart Wireless Technology, LLC v. Golden Nugget, Inc.*,
    No. 2:18-cv-00862-MMD-NJK, 2021 WL 1150065 (D. Nev. Mar. 25, 2021)...............11, 12

20

*Luke v. Fam. Care & Urgent Med. Clinics*,
    323 F. App'x 496 (9th Cir. 2009) ....................................................... 8, 10, 11, 12

21

22

*Nat'l Prod., Inc. v. ProClip USA, Inc.*,
    No. 20-CV-439-WMC, 2022 WL 2304114 (W.D. Wis. June 27, 2022) ..............................22

23

24

*Ojmar US, LLC v. Sec. People, Inc.*,
    No. 16-CV-04948-HSG, 2018 WL 1640126 (N.D. Cal. Apr. 5, 2018) .........................15, 16

25

26

*Promega Corp. v. Applied Biosystems, LLC*,
    No. 13-CV-2333, 2013 WL 9988881 (N.D. Ill. May 28, 2013), *aff'd sub nom.* 557
    F. App'x 1000 (Fed. Cir. 2014) ........................................................................................22

27

28

*Ridgeway v. Wal-Mart Stores, Inc.*,
No. 08-CV-05221-SI, 2016 WL 4529430 (N.D. Cal. Aug. 30, 2016)..................................20

*Ridgeway v. Wal-Mart Stores, Inc.*,
No. 08-CV-05221-SI, 2016 WL 4728668 (N.D. Cal. Sept. 12, 2016)............................ 19, 20

*Scolaro v. Vons Companies, Inc.*,
No. 2:17-cv-01979-JAD-VCF, 2019 WL 7284738 (D. Nev. Dec. 27, 2019) ......................11

*Silvagni v. Wal-Mart Stores, Inc.*,
320 F.R.D. 237 (D. Nev. 2017)..........................................................................................13

*Wong v. Regents of Univ. of California*,
410 F.3d 1052 (9th Cir. 2005) ...........................................................................................20

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ....................................................................................... 9, 21

**Statutes**

35 U.S.C. 112 .........................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 26.........................................................................................................*passim*

Fed. R. Civ. P. 37.........................................................................................................*passim*

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| 1 | Excerpts from the Expert Report of Benjamin B. Bederson, Ph.D., Regarding the Validity of U.S. Patent Nos. 7,356,482 and 8,282,111, served June 30, 2022 – **FILED UNDER SEAL** |
| 2 | Excerpts from the Declaration of Dr. Douglas C. Schmidt in Support of Salesforce.com's Request for Ex Parte Reexamination of U.S. Patent No. 8,484,111, dated March 30, 2022 |
| 3 | Excerpts from the Declaration of Dr. Douglas C. Schmidt in Support of Salesforce's Request for Ex Parte Reexamination of U.S. Patent No. 7,356,482, dated April 12, 2022 |
| 4 | Excerpts from the transcript of the deposition of Benjamin B. Bederson, Ph.D., taken on September 1, 2022 |
| 5 | August 12, 2022 email chain between counsel for AIT and counsel for Salesforce – **FILED UNDER SEAL** |
| 6 | August 19, 2022 email from Gavin Snyder, counsel for Salesforce, to counsel for AIT |
| 7 | December 19, 2022 email chain between counsel for AIT and counsel for Salesforce |
| 8 | Excerpts from the Rebuttal Expert Report of Ivan Zatkovich on Validity, served July 29, 2022 |
| 9 | Excerpts from the Opening Expert Report of Ivan Zatkovich, served June 30, 2022 – **FILED UNDER SEAL** |

# I.     INTRODUCTION

Plaintiff Applications in Internet Time, LLC ("AIT") submits this Opposition to Defendant Salesforce, Inc.'s ("Salesforce") request to reopen expert discovery to permit Salesforce's expert, Dr. Bederson, to offer the opinions contained in a supplemental expert report ("Supplemental Bederson Report").

The Court has set firm deadlines for expert discovery and dispositive motions.  Salesforce's expert opinions regarding invalidity were due June 30, 2022.  Dkt. 198 at 3.  Salesforce served the opening expert report of Dr. Bederson ("Bederson Opening Report") on that date.  Expert discovery closed on September 2, 2022. *Id.*  Summary judgment briefing was completed on November 4, 2022, and the Court has set a summary judgment hearing date of February 6, 2023. *Id.*; Dkt. 373.

On October 11, 2022, in the middle of summary judgment briefing, Salesforce served the Supplemental Bederson Report.  In that report, Dr. Bederson offered new opinions regarding three references relied on by Salesforce in parallel *ex parte* reexamination ("XPR") proceedings (known as Popp, Kovacevic, and Balderrama; collectively, the "XPR References").   In the Supplemental Bederson Report, Dr. Bederson opines for the first time that each XPR Reference discloses the limitations of four new claims (claims 23–26 of the '482 Patent) rendering those claims invalid.

Salesforce's motion comes months after the September 2, 2022 deadline for the completion of expert discovery.  Salesforce does not contend that good cause exists for relief from the scheduling order.  Instead, Salesforce urges that its supplement need not comply with the Court ordered deadline for completion of expert discovery.  Salesforce is wrong.  Rule 26(e) is not a vehicle whereby a party may disclose new opinions that could and should have been disclosed within the time limits prescribed for expert discovery.

Salesforce further urges that Dr. Bederson's new opinions should be admissible regardless of the applicability of Rule 26(e), because the timing of Salesforce's supplemental disclosure was "substantially justified or … harmless" under Rule 37(c)(1).  Salesforce does not come close to meeting its burden of establishing that the timing of the Supplemental Bederson Report is either "harmless" or "substantially justified."  With respect to harm, as detailed below, and barely addressed in Salesforce's briefing, the amendment, if allowed, would require the resetting of the Court's schedule to reopen

1    expert discovery to allow AIT to respond, take depositions, and potentially engage in dispositive

2    motion practice.  This prejudice should be undisputed.

3        In this case, the harm to AIT would be particularly acute and not readily curable.  On June 6,

4    2022, the Court granted AIT's motion to strike the XPR References from this case because Salesforce

5    failed to comply with its disclosure obligations with respect to those references.  Subsequently, as part

6    of AIT's efforts to narrow the issues in the case, AIT and Salesforce reached an agreement whereby

7    the XPR References would be allowed back into the case.  The parties completed expert depositions

8    and dispositive motion practice based on the parties' stipulation which was expressly based on the

9    anticipation theories addressed in the Bederson Opening Report.  Rewinding this case is simply not a

10   practical solution, and Salesforce does not suggest otherwise.  Instead, Salesforce's proposed solution

11   is to allow minimal discovery and force AIT to live with a stipulation it would not have otherwise

12   entered into because, according to Salesforce, AIT should have known Dr. Bederson's failure to

13   address the XPR References was a mistake.

14       It is simply not credible for Salesforce to characterize the new opinions it seeks to add as a

15   simple "non-substantive" correction of a "clerical oversight" or "copy-paste" accident.  Dkt. 351

16   ("Mot.") at 1, 15. The Bederson Opening Report was allegedly missing entire sections addressing the

17   limitations of claims 23–26 of the '482 Patent with respect to the XPR References.  Salesforce's team

18   also apparently missed corresponding omissions in the Bederson Opening Report's "Summary of

19   Opinions" section, its table of contents, its section headings, and ***everywhere else*** where particular

20   claims were identified for the XPR References.  Further, Dr. Bederson and Salesforce's team of

21   attorneys offer no excuse or explanation for their failure to realize that entire sections were missing for

22   months while Salesforce negotiated an agreement based on the XPR References, selected the XPR

23   References for reliance at trial, and prepared Dr. Bederson for deposition regarding those references.

24       This is not a case where AIT seeks to take advantage of an obvious mistake on the part of

25   Salesforce.  The Bederson Opening Report addressed 14 primary references.  For many of those

26   references, Dr. Bederson did not address all 15 asserted claims.  Further, with respect to the XPR

27   References, Dr. Bederson had good reason not to address the limitations of claims 23–26 of the '482

28   Patent.  The opinions in the Bederson Opening Report regarding the XPR References for all claims

other than claims 23–26 were copied verbatim from a declaration submitted by Dr. Schmidt, Salesforce's expert in the XPR proceedings concerning the asserted patents. Dr. Schmidt's declaration explained that the XPR References **did not** anticipate claims 23–26 of the '482 Patent because they failed to teach the limitations of those claims requiring a "database." AIT could not possibly have suspected that Dr. Bederson, who copied **verbatim** the opinions of Dr. Schmidt for all other asserted claims with respect to the XPR References, "forgot" to include his only original opinions regarding claims 23–26 of the '482 Patent and the only opinions that contradicted Dr. Schmidt.

At bottom, regardless of whether the reason for the Supplemental Bederson Report is a regrettable strategic decision or whether it was caused by Salesforce's experts, in-house counsel, and attorney team all being asleep at the switch for months, the proposed Supplemental Bederson Report is improper under Rule 26(e) and neither harmless nor justified under Rule 37(c)(1).

## II.     FACTUAL BACKGROUND

### A.     The Asserted Claims

AIT asserts infringement of U.S. Patent Nos. 7,356,482 ("the '482 Patent") and 8,282,111 ("the '111 Patent"). The asserted claims comprise 10 claims of the '482 Patent (claims 1, 10, 20, 21, 23–26, 30, and 40) and five claims of the '111 Patent (claims 13–17). Dr. Bederson's new opinions concern four claims of the '482 Patent (claims 23–26).

The Asserted Claims are all generally addressed to a "change management" system. The Supplemental Bederson Report adds sections regarding claims 23–26 of the '482 Patent urging those claims are not substantively different than claims 14–17 of the '111 Patent. Claims 23–26 of the '482 Patent require a "business content database" and a "metadata database" for the storing of particular information. Those limitations are not found in claims 14–17 of the '111 Patent. *See* Mot. at 2–3 (comparing claims). As such, a prior art reference that teaches all of the limitations of claims 14–17 of the '111 Patent, would not invalidate claims 23–26 of the '482 Patent, unless such reference also disclosed the required "business content database" and "metadata database."

### B.     Salesforce Urges Good Cause and Diligence Is Not Required to Supplement Invalidity Contentions with Respect to Popp, Kovacevic, and Balderrama

On July 18, 2014, Salesforce served its invalidity contentions under LPR 1-8. Salesforce's

invalidity contentions relied on 15 primary references, each accompanied by a claim chart.

On August 17, 2015, RPX Corporation ("RPX") filed three petitions for *Inter Partes* Review ("IPR") in the U.S. Patent and Trademark Office challenging the validity of the claims of the '482 and '111 Patents. RPX's IPR petitions relied on Popp, Kovacevic, and Balderrama as primary references. Seven years after learning of the XPR References, on January 10, 2022, Salesforce served amended invalidity contentions, expanding the number of primary references from 15 to 27, and for the first time attempting to add the Popp, Kovacevic, and Balderrama references into this action.

On March 16, 2022, AIT moved to strike portions of Salesforce's amended invalidity contentions, including the invalidity theories based on the Popp, Kovacevic, and Balderrama references. Dkt. 185.[1] On June 6, 2022, the Court granted AIT's motion to strike and rejected Salesforce's contention that "good cause" was not required for Salesforce's belated addition of Popp, Kovacevic, and Balderrama in circumvention of the scheduling order. Dkt. 261 at 2. However, at Salesforce's request, the Court gave Salesforce 14 days to show good cause for its amendments. *Id.* at 2–3. As discussed below, a later stipulation by the parties mooted such showing of cause.

**C.     The Parties' Opening and Rebuttal Expert Reports**

On June 30, 2022, after AIT's motion to strike was granted, the parties served opening expert reports. Dkt. 198. The Bederson Opening Report relied on 14 primary references, including Popp, Kovacevic, and Balderrama. Dr. Bederson, however, did not opine that each reference invalidated each asserted claim. Instead, Dr. Bederson addressed different claims for different references. For a reference known as Brunner, Dr. Bederson provided only opinions for the '482 Patent, and none for the '111 Patent. Ex. 1 (Bederson Op.) at ¶¶ 172, 612–659.[2] For a reference known as Yeager, Dr. Bederson also provided no opinions for the '111 Patent, and did not provide opinions with respect to claims 10 and 30 of the '482 Patent. *Id.* at ¶¶ 172, 660–702. For a reference known as El-Refai, Dr. Bederson did not provide opinions with respect to claims 10, 23–36 and 30 of the '482 Patent, and claims 16–17 of the '111 Patent. *Id.* at ¶¶ 172–173, 949–971, 1342–1356. For eight references (known

---

[1] In response, Salesforce cross-moved to strike AIT's amended contentions. Dkt. 187 at 16–18.
[2] Exhibits 1–9 are attached to the contemporaneously-filed Declaration of Michael DeVincenzo ("DeVincenzo Decl.").

as Palinski, Oracle, Haverstock, Bederson, Junkin, Bancroft, Gordon, and Mukherjee), Dr. Bederson alleged invalidity for all asserted claims. *See id.* at ¶¶ 172–173. In sum, Dr. Bederson provided opinions with respect to less than all claims for nearly half of the primary references (6 out of 14). The claims addressed by each reference are easily identified in Dr. Bederson's report as each reference has a separate section for each claim, and each claim/reference combination is listed in the Table of Contents, Summary of Opinions, and headings introducing each reference. *Id.* at iv–xx, ¶¶ 172–173.

On July 29, 2022, the parties served rebuttal expert reports. AIT's expert Mr. Zatkovich provided AIT's rebuttal invalidity report, responding to the Bederson Opening Report. Because the Bederson Opening Report did not address the limitations of claims 23–26 of the '482 Patent and the XPR References, Mr. Zatkovich did not offer opinions regarding those validity issues. Ex. 8 (Zatkovich Reb.) at ¶¶ 224–444. Like the Bederson Opening Report, Mr. Zatkovich's responsive report has a separate section for each claim/reference combination, and each claim/reference combination is listed in the headings introducing each reference. *See id.*

**D.   Dr. Bederson Copies Dr. Schmidt's Declaration but Cannot Copy Dr. Schmidt's Opinions with Respect to Claims 23–26 of the '482 Patent over the XPR References**

On April 1, 2022 and April 14, 2022, Salesforce filed a request to have the Patent Office find the '111 and '482 Patents invalid based on Popp, Kovacevic, and Balderrama in *ex parte* reexamination ("XPR") proceedings. The XPR requests were supported by declarations from Salesforce's expert Douglas C. Schmidt. *See* Ex. 2 (Schmidt '111 XPR Decl.); Ex. 3 (Schmidt '482 XPR Decl.).

It was revealed during expert discovery that the Bederson Opening Report copied verbatim almost all of the opinions with respect to the XPR References from Dr. Schmidt's XPR declarations. Although Dr. Bederson neglected to cite Dr. Schmidt's report for support, the fact of Dr. Bederson's copying is easily shown by a simple comparison and is not in dispute. *See* Mot. at 4 ("Dr. Bederson ***included opinions with substantially identical language from Dr. Schmidt's declaration***") (emphasis added); *see also* Ex. 4 (Bederson Tr.) at 17:18–18:13; Ex. 2 (Schmidt '111 XPR Decl.) at ¶¶ 74–154; Ex. 3 (Schmidt '482 XPR Decl.) at ¶¶ 90–116, 130–153, 161–185; Ex. 1 (Bederson Op.) at ¶¶ 399–423, 437–462, 476–502, 1040–1061, 1074–1092, 1106–1126.

With respect to the XPR References, the Bederson Opening Report copied Dr. Schmidt's

opinion for 6 claims of the '482 Patent and each claim of the '111 Patent (claims 13–17).  With respect to claims 23–26 of the '482 Patent, however, Dr. Schmidt recognized that Popp, Kovacevic, and Balderrama did *not* disclose the particulars of the "business content database" and "metadata database" limitations.  Ex. 3 (Schmidt '482 XPR Decl.) at ¶ 220.  The Bederson Opening Report offered no opinions with respect to those claims.  The Supplemental Bederson Report, however, now contends that the limitations of claims 23–26 of the '482 Patent *are disclosed* in the XPR References.

In sum, prior to October 2022 two of Salesforce's experts, Dr. Schmidt and Dr. Bederson, provided opinions on invalidity of claims 23–26 of the '482 Patent in two different forums, and neither opined that the limitations of those claims were found in Popp, Kovacevic, and Balderrama.  At issue in this Motion is Salesforce's attempt to have Dr. Bederson for the first time offer a contrary opinion – namely, that the limitations of claims 23–26 of the '482 Patent are taught by Popp, Kovacevic, and Balderrama.

**E.     The Parties Agree to Narrow the Case**

By the end of July 2022 there were numerous unresolved issues between AIT and Salesforce relating to expert discovery.  As discussed above, Salesforce needed to show good cause for its failure to comply with the Court's deadlines, otherwise Salesforce could not rely on Popp, Kovacevic, and Balderrama at all.  Similarly, Salesforce had filed a cross-motion to strike AIT's infringement contentions and had also threatened a motion to strike portions of AIT's infringement expert report. Ex. 5 (08/12/2022 Email Chain) at 26–27.  To narrow the case for trial, the parties negotiated a detailed compromise putting all those issues to rest so the case could proceed with expert depositions and summary judgment and *Daubert* briefing with certainty surrounding the theories in the case.  The three XPR References and Salesforce's desire to rely on those references were a critical part of the parties' discussion.  *See id.* at 7–8, 11; DeVincenzo Decl. at ¶¶ 6–7.

The very first clause of the parties' agreement makes plain that "Salesforce may choose up to 8 primary references addressed in Dr. Bederson's invalidity expert report," and with respect to those references, "AIT will not dispute that Salesforce has good cause to amend its contentions with respect to theories of anticipation, obviousness, and 35 U.S.C. 112 *as expressed in Dr. Bederson's report*." Ex. 5 (08/12/2022 Email Chain) at 5 (emphasis added).  As part of that agreement, on August 12, 2022,

AIT entered into a Joint Stipulation Regarding Case Narrowing.  Dkt. 265.

On August 19, 2022, Dr. Bederson and Salesforce's attorney team selected 8 of the 14 primary references addressed in the Bederson Opening Report for trial. Ex. 6 (08/19/2022 Snyder Email); Ex. 4 (Bederson Tr.) at 117:14–119:21.  Salesforce's selection included the three XPR References, for which Dr. Bederson allegedly forgot to include sections addressed to claims 23–26 of the '482 Patent. In addition, Salesforce selected the Yeager reference, which was also asserted against a subset of the claims of the '482 Patent, and none of the claims of the '111 Patent.  Finally, Salesforce selected four references (Haverstock, Oracle, Bancroft, and Bederson) which Dr. Bederson opined invalidated all asserted claims of the '482 and '111 Patents.  In sum, half of the 8 references selected by Salesforce (Haverstock, Oracle, Bancroft, and Bederson) covered all asserted claims, and the other half of the references (Popp, Kovacevic, Balderrama, and Yeager) only covered some of the claims.

Between August 19 and September 2, 2022, the parties completed expert discovery consistent with the stipulation, including the depositions of Dr. Bederson, Dr. Schmidt, and Mr. Zatkovich. Expert discovery closed September 2, 2022.

**F.      Salesforce Waits Until After the Summary Judgment Deadline to Inform AIT of Its Supposed Error**

On September 28, 2022, the parties met and conferred regarding various issues with respect to summary judgment.  At that meet and confer, AIT informed Salesforce it intended to move for summary judgment of no anticipation.  DeVincenzo Decl. at ¶ 8.  At that time, Salesforce was silent with respect to its intent to serve the Supplemental Bederson Report addressing anticipation. *Id.* On September 30, 2022, the parties filed summary judgment and *Daubert* motions.  Dkt. 198.  Salesforce filed a motion for summary judgment that Popp (one of the three XPR References) anticipated or rendered obvious all asserted claims.  Dkt. 278 at 20–30.  With respect to claims 23–26 of the '482 Patent, Salesforce urged that "Popp discloses claims 23–26 of the '482 patent" but provided no citations to supporting evidence. *Id.* at 27.  At least some unidentified person at Salesforce admittedly knew that sections of Dr. Bederson's report were supposedly missing before the deadline for summary judgment motions. *See* Dkt. 351-1 (Zivojnovic Decl.) at ¶ 5; Mot. at 4–5.  Yet, Salesforce allowed the dispositive motion and *Daubert* deadline to pass.

On October 21, 2022, AIT filed its opposition to Salesforce's motion for summary judgment. Dkt. 296.  In its opposition, AIT requested judgment based on the lack of expert opinions supporting Saleforce's position on the "database" elements of claims 23–26 with respect to Popp.  *Id.* at 21–23, 26.  The hearing for that motion is set for February 6, 2023.

**G.   Salesforce's Initial Excuses and the Parties' Correspondence Regarding the Supplemental Bederson Report**

On October 12, 2022, Salesforce's counsel blamed the error squarely on Dr. Bederson.  They claimed "[Dr.] Bederson ***believed*** he was addressing all asserted claims 1, 10, 20, 21, 23-26, 30, and 40 of the '482 patent." Ex. 7 (12/19/2022 Email Chain) at 7 (emphasis added).  On October 13, 2022, AIT explained that the contextual clues in the report were inconsistent with Salesforce's attempt to blame its gaffe on Dr. Bederson and pointing out it was not credible that Salesforce "only learned of Dr. Bederson's error *after* summary judgment motions were filed." *Id.* at 6.

The parties met and conferred on October 17, 2022.  As part of that conference, AIT asked for an explanation concerning how this alleged error could have both occurred and not been noticed throughout expert discovery and dispositive motion practice.   DeVincenzo Decl. at ¶ 9; Ex. 7 (12/19/2022 Email Chain) at 5 (requesting "explanation on the call regarding what Salesforce alleges occurred").   Despite AIT's inquiries, Salesforce's counsel refused to provide any information regarding who discovered the error and how the supposed error went unnoticed until summary judgment motions were due.  DeVincenzo Decl. at ¶ 9.

**III.   LEGAL STANDARD**

Under Rule 26(a), an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  Rule 26(e) creates a duty to "supplement or correct [a] disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).  "Supplementation … means correcting inaccuracies, or filling the interstices of an incomplete report ***based on information that was not available*** at the time of the initial disclosure." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)) (emphasis added).

"Rule 37(c)(1) gives teeth to [the] requirements [of Rule 26(a)] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). There are two exceptions to the automatic exclusionary principle of Rule 37(c)(1). The belated opinions "may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Id.* However, "the burden is on the party facing sanctions to prove harmlessness." *Id.* at 1107.

## IV.   ARGUMENT

### A.   Dr. Bederson's New Opinions Are Untimely Under Rule 26

The Supplemental Bederson Report was served over five weeks after close of expert discovery under the Court's scheduling order. *See* Dkt. 198 at 3 (setting completion of expert discovery at September 2, 2022). Dr. Bederson's Supplemental Report contains the following previously undisclosed opinions:

- First, Dr. Bederson for the first time opines that Popp, Kovacevic, and Balderrama each disclose "data about one or more different predetermined business applications" stored in a "business content database," as required by claims 23 and 24 of the '482 Patent. These new opinions are inconsistent with Dr. Schmidt's opinion regarding each of the XPR References. Ex. 3 (Schmidt '482 XPR Decl.) at ¶ 220. AIT and its expert have not had an opportunity to respond to this new substantive opinion, to move for judgment with respect to that opinion, or to depose Dr. Bederson regarding that new opinion.

- Second, Dr. Bederson for the first time opines that each of the XPR References discloses "data about the structures and functions associated with any application" stored in a "metadata database," as required by claims 25 and 26 of the '482 Patent. These new substantive opinions are inconsistent with Dr. Schmidt's opinions and AIT and AIT's expert have not had an opportunity to respond.

Prior to his Supplemental Report, Dr. Bederson offered no opinions directed to whether the XPR References met the limitations of claims 23–26 of the '482 Patent. For example, claim 23 requires a "business content database having data about one or more different predetermined business applications." Dr. Bederson's Opening Report does not address where that limitation is addressed in Popp. If Salesforce's motion is granted, Dr. Bederson will be permitted to opine that Popp discloses

the particular "business content database" required by claim 23.  That is a new substantive opinion that Dr. Bederson will be unable to offer if Salesforce's motion is denied.  Thus, Salesforce's attempt to "correct" Dr. Bederson's expert report is in violation of Rule 26(a) on expert disclosures.

Salesforce urges that it need not comply with the Court ordered deadline for completion of all expert discovery because Dr. Bederson's Supplemental Report is a proper supplement under Rule 26(e).  Salesforce contends that the Court's schedule permits supplemental expert reports any time prior to pretrial disclosures (regardless of good cause, prejudice, or bad faith) because "the Court did not set a deadline for supplementing expert reports, and thus the default deadline—'by the time the party's pretrial disclosures … are due'—applies." Mot. at 6–7.  This argument fails for two reasons.

***First***, as part of the scheduling order in this action, the Court set of a date for the close of expert discovery.  That date was September 2, 2022.  Dkt. 198.  Salesforce asserts that the Supplemental Bederson Report is timely regardless of the Court ordered deadline for all of expert discovery.  Yet, as part of the orderly schedule entered in this action, the Court set the expert discovery deadline prior to the deadline for summary judgment motions and *Daubert* motions, which has also passed, such that dispositive motion practice could occur with all expert discovery in hand.  Plainly, the Court's schedule did not contemplate additional expert discovery following the deadline for expert discovery, summary judgment and *Daubert* motions.

***Second***, Rule 26(e) does not give Salesforce the right to supplement its expert report.  To the contrary, "Rule 26(e) creates a 'duty to supplement,' not a right."  It does not "create a loophole through which a party who submits partial expert witness disclosures … can add to them to her advantage after the court's deadline for doing so has passed." *Luke*, 323 F. App'x at 500.  Rule 26(e) does not permit all supplementations.  Instead, Rule 26(e) may be used for "correcting inaccuracies, or filling the interstices of an incomplete report ***based on information that was not available at the time of the initial disclosure***." *Id.* (emphasis added).   "When considering supplemental information provided under Rule 26(e) the issues are (1) does the supplemental information correspond to a prior Rule 26(a) disclosure, and (2) was the supplemental information available at the time set for the initial disclosure." *Carrillo v. B & J Andrews Enters., LLC*, No. 2:11-CV-01450-RCJ-CWH, 2013 WL 420401, at *4 (D. Nev. Jan. 31, 2013).  Where, as here, Salesforce and Dr. Bederson had all the information they needed

at the time opening expert reports were due, June 30, 2022, a Rule 26(e) supplementation is not permissible.  In *Allstate Ins. Co. v. Balle*, No. 2:10-CV-02205-APG-NJK, 2013 WL 5797848 (D. Nev. Oct. 28, 2013) the Court granted a motion to strike supplemental expert reports served between 3 and 4 months after the expert disclosure deadline, where the supplemental reports were prepared because the expert "lacked time to complete his initial report, and not because [he] was provided with any new information."  *Id.* at *4.  Indeed, Rule 26(e) does not exist to permit experts to offer new opinions based on evidence available to an expert and the party at the time of a disclosure deadline.  *See Scolaro v. Vons Companies, Inc.* , No. 2:17-cv-01979-JAD-VCF, 2019 WL 7284738, at *5–6 (D. Nev. Dec. 27, 2019) (striking supplemental expert report that did not contain "information that was not available at the time of the initial disclosure"); *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-cv-00772-GMN-NJK, 2016 WL 3965190, at *3 (D. Nev. July 21, 2016) (striking supplemental expert report "because the supplemental information was available well before the disclosure deadline"); *Kraja v. Bellagio, LLC*, No. 2:15-cv-01983-APG-NJK, 2016 WL 1611590, at *3 (D. Nev. Apr. 22, 2016) (striking supplemental expert disclosures served "after the initial expert disclosure deadline had passed" and prepared "using information that had been initially available … and not to fill the interstices of the expert's report"); *Carrillo*, 2013 WL 420401, at *4 (excluding expert for failure to disclose information "known at the time of the initial disclosure"); *see also Luke*, 323 F. App'x at 500 (affirming exclusion of supplemental expert declaration that "did not correct an inaccuracy in the Plaintiffs' original disclosures, nor did it fill in a gap based on information previously unavailable to the Plaintiffs"); *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *4, 7 (W.D. Tex. Feb. 24, 2022) (striking supplemental expert report where the expert "had the information available to him prior to the deadline for expert disclosures," and the supplemental report "was only needed because [the expert] was unaware of law that existed prior to the filing of his initial report").

*Linksmart Wireless Technology, LLC v. Golden Nugget, Inc.*, No. 2:18-cv-00862-MMD-NJK, 2021 WL 1150065 (D. Nev. Mar. 25, 2021) provides no support for Salesforce's argument that Rule 26(e) allows amendments months after the close of expert discovery and based on evidence that a party and its expert were aware of for years.  To the contrary, in *Linksmart*, the Defendants served a

1
2
3
4
5
6
7
8
9
10
11
12
13

supplemental expert report **eight days** after serving their opening expert report, two weeks before rebuttal expert reports were due, and almost two months **before** expert discovery cutoff.  2021 WL 1150065, at *5.  Further, in *Linksmart* it was undisputed that the timing of the supplemental report was due to "a disagreement between the parties as to whether the protective order permitted [the party's expert] to view certain documents." *Id.* at *6.  As such, *Linksmart* did not create some loophole to Rule 26(e) allowing a party to freely supplement based on long-known information, without regard to Court-ordered deadlines for the close of expert discovery and summary judgment.  *See, e.g., Luke*, 323 F. App'x at 500.  At bottom, even if a mistake was made and that mistake went unnoticed by numerous in-house attorneys, litigation counsel and both of Salesforce's experts for months, that would not make Salesforce's supplementation report proper under Fed. R. Cir. P. 26(e).  *See Allstate*, 2013 WL 5797848, at *3 ("Supplementation is not appropriate simply 'because the expert did an inadequate or incomplete preparation.'") (quoting *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-cv-00705 AWI JLT, 2011 WL 4375297 (E.D. Cal. Sept. 19, 2011)).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.  The Exceptions of Rule 37(c)(1) Do Not Excuse the Belated Disclosure of Dr. Bederson's Opinions

Salesforce urges that Dr. Bederson's failure to include sections in his report addressing the validity of claims 23–26 of the '482 Patent over the XPR References was an accident, and that Dr. Bederson's new opinions do not represent material changes to his original opinions.  Mot. at 1; *see also id.* at 1 ("an oversight during assembly of the report"), 7 ("a simple oversight that occurred during preparation of an 843 page report"), 10 ("a simple, inadvertent oversight"), 15 ("a clerical oversight").  Yet, as detailed above, Rule 26(e) does not permit supplementation to correct such alleged oversights.  When a party misses a Court ordered deadline for evidence and asserts a mistake was made, a party may only present such evidence if that party can prove the mistake was "substantially justified or harmless" under Fed. R. Civ. P. 37(c)(1).  *See Allstate*, 2013 WL 5797848, at *3; *see also Everlight Elecs. Co., Ltd. v. Everlight Elec. Co., Ltd.*, No. 12-11758, 2015 WL 1530831, at *2 (E.D. Mich. Apr. 6, 2015) (granting motion to strike and rejecting argument that belated supplemental report only provided "clerical corrections" where supplementation materially changed the opinions and there was no justification for the delay).  "Several factors to guide the determination of whether substantial

justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017); *see also Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

None of the four factors set forth by the Ninth Circuit supports a finding that Salesforce's failure to disclose its new theories was justified or harmless. *Lanard Toys*, 375 F. App'x at 713.

### 1.     Salesforce's Attempt to Expand Its Invalidity Case Prejudices AIT

#### a.     Salesforce's Supplemental Report Would Substantially Harm AIT

The first factor for the Court to consider is the "prejudice or surprise to [AIT]." *Lanard Toys*, 375 F. App'x at 713.  The prejudice and surprise associated with the addition of Dr. Bederson's new opinions at this time would be substantial and incurable.

First, the addition of Dr. Bederson's opinions regarding claims 23–26 of the '482 Patent would require the parties to unwind the various agreements based on the invalidity opinions set forth in Dr. Bederson's report.  Unwinding those agreements would be exceedingly difficult and burdensome for both the parties and the Court. As explained above, on June 6, 2022, the Court granted AIT's motion to strike Salesforce's 21 new prior art references, including the three XPR References (Popp, Kovacevic and Balderrama).  Those references were out of the case.  Of the 14 primary references relied on by Dr. Bederson, only four (Popp, Kovacevic, and Balderrama, plus El-Refai) had been stricken by the Court due to a lack of good cause.  The Bederson Opening Report addressed a subset of claim limitations with respect to each of those four references (and failed to address the limitations of claims 23–26 of the '482 Patent for the three XPR References).

AIT agreed it would stipulate to good cause for the invalidity theories addressed in the Bederson Opening Report and, in exchange, Salesforce agreed to substantially narrow the number of primary references Dr. Bederson could rely on from 14 to 8, and to refrain from pursuing motion practice against AIT. Ex. 5 (08/12/2022 Email Chain) at 5 ("AIT will not dispute that Salesforce has good cause to amend its contentions with respect to theories of anticipation [and] obviousness … *as expressed in Dr. Bederson's report*.").   The parties particularly discussed that clause and the

understanding that Salesforce would only be asserting the invalidity theories addressed in Dr. Bederson's Opening Report for the XPR References.   DeVincenzo Decl. at ¶¶ 6–7.   On August 12, 2022, the parties entered into a Joint Stipulation Regarding Case Narrowing.   Dkt. 265.   AIT would not have entered into that stipulation had Dr. Bederson's new opinions been part of the Bederson Opening Report.   DeVincenzo Decl. at ¶ 6–7; Ex. 7 (12/19/2022 Email Chain) at 6.   Thus, Salesforce was able to avoid the ramifications of its original failure to comply with the scheduling order concerning invalidity contentions ***only*** because Dr. Bederson's Opening Report did not provide opinions with respect to certain claim limitations and the XPR References.

Regardless of the reason Dr. Bederson's Opening Report ultimately failed to include opinions with respect to Popp, Kovacevic, and Balderrama and the limitations of claims 23–26 of the'482 Patent, Dr. Bederson's failure to do so irreversibly altered the trajectory of this case.   The parties simply cannot unwind the entire case going back to July 2022, before the stipulation, and before expert depositions were conducted.   Presumably, Salesforce would have to go back to the Court and show cause for amending its invalidity contentions.   Afterward, the parties would have to conduct new expert depositions, as previous depositions were conducted based on the parties' narrowing stipulation and the original expert reports, and summary judgment motions (at least AIT's) were prepared without the knowledge that Salesforce would be seeking to unwind a large portion of this case.

Salesforce urges that AIT would not be harmed because AIT could not have known Salesforce would choose to rely on Popp, Kovacevic, and Balderrama.   Mot. at 12.   This argument is truly absurd. As Salesforce is well aware, the XPR References were front and center in the negotiations that led to the stipulation, and Salesforce indicated that it would not enter the stipulation unless AIT agreed to allow the XPR References back into the case.[3]   *See* Ex. 5 (08/12/2022 Email Chain) at 8 ("As I said last night, I did not think I had much wiggle room given ***Salesforce made clear that any agreement must let the XPR references back into the case.***");   DeVincenzo Decl. at ¶ 6–7.   AIT agreed as long

---

[3] Indeed, of the 21 references stricken by the Court, only ***four*** were relied on as primary references in Dr. Bederson's opening expert report: Popp, Kovacevic, Balderrama, and El-Refai, with El-Refai covering fewer claims than the XPR References, as it was not alleged to invalidate claims 10, 23–36 and 30 of the '482 Patent and claims 16–17 of the '111 Patent.   Ex. 1 (Bederson Op.) at ¶¶ 172–173, 949–971, 1342–1356.

as it was clear Salesforce only intended to address the XPR References with respect to the anticipation and obviousness opinions addressed in the Bederson Opening Report.  *Id.*

Finally, in addressing prejudice, Salesforce invokes the boilerplate argument that "public policy favor[s] the disposition of cases on their merits."  Mot. at 13 (quoting *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997)).  Here, excluding Dr. Bederson's new opinions will not preclude disposition of the case on its merits.  Salesforce has elected ***eight*** primary references, which together cover every asserted claim many times over.  Specifically, Dr. Bederson has opined that claims 23–26 of the '482 Patent are separately anticipated or rendered obvious by each of ***five*** references: Haverstock, Oracle, Bancroft, Yeager, and Bederson.  Ex. 1 (Bederson Op.) at ¶ 172.  As such, Salesforce has no shortage of defenses for claims 23–26, as it can have its expert opine at trial that those claims are invalid under ***five*** different theories.  Moreover, Dr. Bederson has testified that there is nothing special about the Popp, Kovacevic, and Balderrama references compared to the other references.  *See* Ex. 4 (Bederson Tr.) at 116:5–8 ("I have not formed any opinion about … which references a person of skill in the art might feel more strongly about."); *see also id.* at 118:6–122:12.

By contrast, allowing Salesforce's proposed supplementation would be against the efficient disposition of the case on its merits.  For example, regardless of how the parties' agreement was unwound, allowing the Supplemental Bederson Report would require the parties to redo months of expert discovery, and dispositive motion practice.  *See Hologram USA*, 2016 WL 3965190, at *4 ("[A]llowing untimely initial expert reports undermines the finality of expert reports, as each new 'supplement' would require consultation with one's own expert and the issuance of a competing 'supplemental' report, hindering disposition of this case."); *Allstate*, 2013 WL 5797848, at *6 (striking improper supplemental expert reports "promotes the public's interest in expeditious resolution of litigation as well as the court's need to manage its docket; it removes the risk of prejudice to Plaintiffs; and, because [expert's] Initial Report has not been struck, it does not obstruct the public policy favoring disposition of cases on their merits.").

The cases that Salesforce cites do not support its contention that Dr. Bederson's new opinions are harmless.  Mot. at 11–12.  In *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2018 WL 1640126 (N.D. Cal. Apr. 5, 2018) the court denied a motion to strike Defendants' expert report as

harmless because the report was served "*four months prior* to the Court's expert discovery deadline." *Id.* at \*9.  Here, Salesforce served Dr. Bederson's corrected report over *five weeks after* close of expert discovery.  The other case cited by Salesforce, *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021), does not relate to supplemental expert opinions in any way.  Instead, that case concerns an expert's reliance on different evidence than the evidence plaintiff relied on for its infringement contentions.  *Id.* at \*7.  The issue here is the exact opposite from the issue in *Droplets*, namely, here Dr. Bederson offers new opinions based on the same evidence available at the time of his original report, long after the parties completed expert discovery and entered into agreements based on the opinions contained in the Bederson Opening Report.

### b. Salesforce's Argument that AIT's Prejudice Can Be Ignored and/Or AIT Is to Blame Has No Merit

Salesforce urges that AIT's prejudice can be ignored because AIT did not notify Salesforce that Salesforce's expert failed to offer opinions addressing the XPR References and claims 23–26 of the '482 Patent.  Mot. at 13 (accusing AIT of "litigation by ambush").  That argument is meritless as Salesforce did not simply incur a word processing accident.  Indeed, Salesforce's characterization of Dr. Bederson's omissions (and the failure of Salesforce's entire team to recognize them) as a "clerical error" is itself incredible.  Further, Salesforce's argument that AIT was somehow culpable for that "error" reflects Salesforce's utter failure to take responsibility for its own decisions and conduct.

No reasonable person reading the Bederson Opening Report would believe Dr. Bederson intended to address the XPR References and claims 23–26 of the '482 Patent.  The table of contents and section headings each identify the claims addressed by Dr. Bederson for each reference.  With respect to the XPR References, those headings omit any reference to claims 23–26 of the '482 Patent, e.g., "Popp Anticipates or Renders Obvious Claims 1, 10, 20-21, 30, and 40 of the '482 Patent."  Ex. 1 (Bederson Op.) at vi; *see also id.* at vi-vii (similar headings for Kovacevic and Balderrama); *id.* at 217, 238, 260 (same headings in body of the report).  Notably, headings for *other* references do not omit those claims, e.g., "Palinski Anticipates or Renders Obvious Claims 1, 10, 20-21, *23-26*, 30, and 40 of the '482 Patent."  *Id.* at iv.

Consistent with the table of contents and section headings, Dr. Bederson provided a separate

section summarizing his opinions.  This "Summary of Opinions" section omits claims 23–26 of the '482 Patent from the list of claims allegedly invalidated by the XPR References, e.g., "Popp Anticipates or Renders Obvious Claims 1, 10, 20-21, 30, and 40 of the '482 Patent …  Kovacevic Anticipates or Renders Obvious Claims 1, 10, 20-21, 30, and 40 of the '482 Patent … The Combination of Balderrama and Java Complete Renders Claims 1, 10, 20-21, 30, and 40 of the '482 Patent Obvious."  *Id.* at ¶ 172.  Also here, the summary of opinions for *other* references does not omit those claims, e.g., "Palinski Anticipates or Renders Obvious Claims 1, 10, 20-21, **23-26**, 30, and 40 of the '482 Patent."  *Id.*  The Summary of Opinions is only a few pages long and any person reviewing this section would readily recognize that different references were asserted as invalidating different claims, and specifically that the XPR References were ***not*** asserted with respect to claims 23–26.  Thus, the Bederson Opening Report not only failed to substantively address claims 23–26 of the '482 Patent over the XPR References, but the Table of Contents, section headings, and "Summary of Opinions" all consistently reflected that Dr. Bederson did ***not*** intend to offer opinions with respect to the limitations of claims 23–26 of the '482 Patent and the XPR References.

This is not a case where the Bederson Opening Report included substantive opinions regarding the invalidity of claims 23–26 of the '482 Patent, but the report included a typographical error where those claims were not identified in the "Summary of Opinions," or the Table of Contents.  Here, Dr. Bederson **both** failed to present substantive opinions **and** failed to identify those opinions in the Summary of Opinions and Table of Contents.  In short, Dr. Bederson's original report was clear as a bell regarding the claims anticipated and/or rendered obvious over the XPR References; claims 23–26 were not included in those claims, and there has never been reason to believe a mistake was made.

Further, Salesforce had a good reason not to have Dr. Bederson opine that the limitations of claims 23–26 of the '482 Patent were disclosed in the XPR References.  As detailed above, the opinions in the Bederson Opening Report regarding the XPR references were copied from Dr. Schmidt, Salesforce's expert who provided an invalidity declaration with respect to the XPR References in parallel XPR proceedings.  The Bederson Opening Report copied Dr. Schmidt's opinion for 6 claims of the '482 Patent (claims 1, 10, 20, 21, 30, and 40) and each claim of the '111 Patent (claims 13–17) and the XPR References.  With respect to claims 23–26 of the '482 Patent, Dr. Schmidt opined the

1    XPR References did *not* disclose the particulars of the "business content database" and "metadata

2    database" limitations of those claims as required by the definitions in the '482 Patent.  Ex. 3 (Schmidt

3    '482 XPR Decl.) at ¶ 220 ("[E]ach of Popp, Kovacevic, and Balderrama (including Java Complete)

4    discloses the limitations of claims 23–26, *with the exception of explicitly specifying a database* of the

5    type meeting the specific definition given in the specification.").  The Bederson Opening Report did

6    not copy Dr. Schmidt's opinions with respect to claims 23–26 of the '482 Patent.

7            Dr. Schmidt's invalidity theories for claims 23–26 of the '482 Patent "relied on different prior

8    art," known as Codd.  Mot. at 4; Ex. 3 (Schmidt '482 XPR Decl.) at ¶¶ 218–243.  Codd was not

9    included in Salesforce's invalidity contentions and Dr. Bederson, therefore, could not copy Dr.

10   Schmidt's opinions with respect to claims 23–26 of the '482 Patent.  Thus, Salesforce and its attorney

11   team had good reason to rely on references other than the XPR References for those claims.

12   Objectively, AIT could not possibly suspect that Dr. Bederson agreed verbatim with every single

13   opinion of Dr. Schmidt with respect to the XPR References *except* for Dr. Schmidt's claims 23–26 of

14   the '482 Patent.  Of course, Dr. Bederson purportedly[4] not only forgot to include sections concerning

15   the claims where his opinions diverged from Dr. Schmidt's opinions; he also forgot to identify those

16   claims in his summary of opinions, sections headings, and table of contents.

17           Salesforce argues that Dr. Bederson's new opinions are not prejudicial because AIT's expert,

18   Mr. Zatkovich, purportedly did the same thing.  Mot. at 9–10.  Yet, a comparison between AIT's and

19   Salesforce's expert reports highlights the gamesmanship being played by Salesforce.  For example,

20   Mr. Zatkovich stated that claims 14–17 of the '111 Patent and claims 23–26 of the '482 Patent "claim[]

21   substantially similar subject matter."  Mot. at 9 (quoting Dkt. 351-10 at ¶¶ 518, 520, 522, 524).  Of

22   course, merely because some of the claims' subject matter is substantially similar, that does not mean

23   there are no substantive differences.  Indeed, Mr. Zatkovich addressed the "business content database"

24   limitation in claims 23–24 of the '482 Patent, expressly identifying "*a database* in which business-

25   related information, associated with one or more users of an application, is stored."  Ex. 9 (Zatkovich

26   Op.) at ¶ 1020.  Similarly, with respect to the "metadata database" limitation of claims 25–26, Mr.

27

28           [4] Salesforce did not provide a declaration from Dr. Bederson supporting its version of the facts.

PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE'S MOTION TO
RESOLVE DISCOVERY DISPUTE REGARDING CORRECTED EXPERT REPORT

Zatkovich opined that "information associated with user-interface elements and functions common to other multiple applications are expressed in metadata and are stored in *a database*." *Id.* at ¶ 1053. Simply put, Mr. Zatkovich's infringement report addressed the database limitations of claims 23–26 of the '482 Patent, whereas the Bederson Opening Report did not address the limitations of those claims, including the database limitations, at all. The contrast could not be starker.

### 2. Additional Expert Reports and Depositions Will Exacerbate, Rather than Cure, AIT's Prejudice

The second *Lanard Toys* factor is "the ability of [AIT] to cure the prejudice." 375 F. App'x at 713. Salesforce urges that an additional deposition of Dr. Bederson and a supplemental rebuttal expert report by Mr. Zatkovich would cure the prejudice to AIT. Mot. at 14. Neither remedy, however, would cure the prejudice resulting from a unilateral expansion of Salesforce's invalidity defenses, many months after AIT agreed to not dispute good cause for Salesforce's addition to the XPR References to its invalidity contentions.

There is no practical way to undo the prejudice to AIT. The parties cannot simply rewind the clock back to July 2022, rip up the parties' case narrowing stipulation, and require Salesforce to show good cause for the amendments to its contentions. AIT has filed its summary judgment motions, *Daubert* motion, and completed expert depositions based on the parties' stipulation and *after* Salesforce selected 8 primary references for trial. Duplicative discovery, in and of itself, is prejudicial to AIT because it would force AIT to spend time and money to relitigate the same issues a second time. *See Allstate*, 2013 WL 5797848, at *5 ("Opening the door for even more discovery … would severely prejudice Plaintiffs."); *Hologram USA*, 2016 WL 3965190, at *4 (rejecting argument that "granting Defendants leave to respond to Plaintiffs' supplement would cure any prejudice" and finding "allowing untimely initial expert reports undermines the finality of expert reports … hindering disposition of this case"). Here, requiring AIT to redo expert discovery would not put AIT in the same position it is now, because the stipulation narrowed the case substantially and removing the stipulation would potentially greatly expand the issues for trial.

Salesforce urges that under *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-CV-05221-SI, 2016 WL 4728668 (N.D. Cal. Sept. 12, 2016), AIT will not be prejudiced because a deposition will allow it

"to test" Dr. Bederson's new opinions.  Mot. at 14.  In *Ridgeway*, new information and deposition transcripts were produced after the deadline for opening expert reports.  *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-CV-05221-SI, 2016 WL 4529430, at *10 (N.D. Cal. Aug. 30, 2016).[5]  The court allowed supplemental expert reports and even set a deadline for such supplementation, which the parties complied with.  *Id.*  Accordingly, the *Ridgeway* court found that "no harm has fallen to defendant by the supplemental report" because the expert discovery schedule had been adjusted to accommodate the supplementation in advance of depositions and summary judgment motions.  *Id.* at *11.  Here, the parties' entered a case narrowing agreement months ago; expert discovery, dispositive motion practice and *Daubert* motion practice have all since passed.  A deposition and chance to respond does nothing to cure the prejudice associated with the case narrowing amendment.

### 3.    Additional Expert Discovery Will Disrupt the Trial Schedule

The third *Lanard Toys* factor is "the likelihood of disruption of the trial."  375 F. App'x at 713.  Salesforce argues that "[t]here is no likelihood of disruption of the trial" because the trial has not been scheduled.  Mot. at 14.  Yet, this case is not in its early stages.  Summary judgment and *Daubert* motions are complete, a summary judgment hearing is scheduled for February 6, and AIT is hopeful the case can proceed to trial in the first half of 2023.  If Salesforce's motion is granted, the case schedule is all but certain to be impacted.  For example, if the parties' stipulation is unwound, Salesforce will need to establish good cause for its failure to timely disclose the XPR References in its invalidity contentions, and the Court will have to rule on that issue.  The parties will then need to engage in renewed expert discovery, at which point the case can get back on track with, presumably, summary judgment and *Daubert* motion practice.

Further, the overall trial schedule will be necessarily upended.  "Disruption to the schedule of the court and other parties … is not harmless.  Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to."  *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005).  As such, the reopening of expert discovery and motion practice creates uncertainty

---

[5] The *Ridgeway* decision, 2016 WL 4728668, reaffirms a prior holding.  A complete summary of the relevant facts is found in the prior decision, 2016 WL 4529430.

and hinders the orderly prosecution of the action.  *See Hologram USA*, 2016 WL 3965190, at *4 (rejecting argument that "late disclosure was harmless because the probability is low that … late disclosure will disrupt trial" because "late supplemental disclosures are not harmless where parties disregard the Court's clear scheduling orders.").  Salesforce nowhere addresses the disruption of the Court's schedule.

**4.    Salesforce Has Failed to Come Forth with an Explanation for Its Belated Amendment**

The fourth and final factor in determining harmlessness is Salesforce's "bad faith or willfulness involved in not timely disclosing the evidence."  *Lanard Toys*, 375 F. App'x at 713.  However, "exclusion of expert testimony does not ***require*** a finding of willfulness or bad faith."  *Hologram USA*, 2016 WL 3965190, at *2 (emphasis added); *see also Yeti by Molly*, 259 F.3d at 1106 ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").  Moreover, "preclusion of untimely evidence is improper ***only*** where convincing justification exists."  *Corning Optical Commc'ns RF LLC v. PPC Broadband Inc.*, No. CV-12-02208-PHX-SMM, 2015 WL 11718120, at *4 (D. Ariz. Sept. 18, 2015) (emphasis added).  Salesforce has not provided any such "convincing justification."

Salesforce still refuses to provide a coherent explanation for the purported "oversight" and for Salesforce's failure to discover it for three months, from June 30, 2022 (date of service of Dr. Bederson's opening report) to September 30, 2022 (date of filing of Salesforce's summary judgment motion, Dkt. 278).  Salesforce urges that Dr. Bederson's new opinions are timely, and presumably not in bad faith, because AIT should have known that Dr. Bederson intended to offer the disputed opinions. Mot. at 8.  ***First***, Salesforce relies on Paragraph 172 of the Bederson Opening Report. Ex. 1 (Bederson Op.) at ¶ 172 (cited in Mot. at 8).  Paragraph 172 refers to "the asserted claims" for the "following prior art references" and the paragraph thereafter identifies the particular asserted claims for each prior art reference.   Dr. Bederson was crystal clear regarding the claims addressed for each reference, and for the XPR References those claims did not include claims 23–26 of the '482 Patent.  *See id.* ("Popp Anticipates or Renders Obvious Claims 1, 10, 20-21, 30, and 40 of the '482 Patent.").

***Second***, Salesforce urges that Dr. Bederson's errors were an obvious oversight because Dr.

Bederson references Salesforce's invalidity contentions and the claim charts for Popp, Kovacevic, and Balderrama.  Mot. at 1, 3, 4.  However, Dr. Bederson did not incorporate opinions from the claim charts.  To the contrary, Dr. Bederson relied on such incorporation by reference for purposes of providing further supporting **citations**, not **opinions**.  Ex. 1 (Bederson Op.) at ¶ 174 ("I also incorporate by reference in this report each of the claim charts … which provide **further citations supporting my opinions** regarding how the asserted claims of the asserted patents are anticipated and/or rendered obvious by the prior art references.") (emphasis added).

Dr. Bederson's reference to Salesforce's contentions for further citations is not a disclosure of Dr. Bederson's opinion that the XPR References disclose the database limitations of claims 23–26 of the '482 patent.  As recognized by Salesforce, Dr. Bederson did not include "separate sections on claims 23-26 of the '482 patent in light of Popp, Kovacevic, and Balderrama" and those sections were not "inadvertently omitted."  Indeed, as a general matter, Courts do not permit experts to simply "rubber stamp" a party's contentions.  *Promega Corp. v. Applied Biosystems, LLC.*, No. 13-CV-2333, 2013 WL 9988881, at *5 (N.D. Ill. May 28, 2013), *aff'd sub nom.* 557 F. App'x 1000 (Fed. Cir. 2014); *see also Nat'l Prod., Inc. v. ProClip USA, Inc.*, No. 20-CV-439-WMC, 2022 WL 2304114, at *2 (W.D. Wis. June 27, 2022) (denying leave to amend expert disclosure to incorporate claim charts in invalidity contentions); Fed. R. Civ. P. 26(a)(2)(B) (an expert report "must contain … a complete statement of all opinions the witness will express and the basis and reasons for them.").

Further, Salesforce has never explained how the supposed error by Dr. Bederson actually happened, and why it was not promptly discovered by Salesforce and its team of attorneys.  The declaration in support of Salesforce's motion simply states that "separate sections on claims 23-26 of the '482 patent in light of Popp, Kovacevic, and Balderrama were inadvertently omitted.  This was the result of nothing more than an oversight."  Dkt. 351-1 (Zivojnovic Decl.) at ¶ 3.  The declaration provides no specifics, apparently hoping that by simply stating that someone made a mistake or "oversight" is enough of a justification.  Indeed, assuming an "oversight" was made, Salesforce's characterization of the situation does not begin to explain the inexcusable failure of Salesforce or its attorney team to recognize that "oversight" for months as the parties completed expert discovery and dispositive motion practice.  As discussed above, a cursory review of the Table of Contents and

Summary of Opinions sections of the Bederson Opening Report readily reveals that Dr. Bederson failed to substantively address claims 23–26 of the '482 patent with respect to the XPR References.

For example, Salesforce's position that Dr. Bederson simply made an unnoticed mistake and intended to incorporate opinions from claims 14–17 of the '111 Patent into claims 23–26 of the '482 patent as part of his original report is far-fetched.  Dr. Bederson provided opinions with respect to 14 primary references in his opening report.  Dr. Bederson did not incorporate his opinions regarding claims 14–17 of the '111 patent into his opinions for claims 23–26 of the '482 Patent for ***any of the other*** 11 primary references.  Further, it is entirely illogical that Dr. Bederson would have incorporated his opinions with respect to the claims of the '111 Patent into the claims of the '482 Patent because the '482 Patent appears first chronologically.  And claims 23–26 of the '482 Patent are materially narrower than claims 14–17 of the '111 Patent due to the requirement for specific "database[s]."  In the Bederson Opening Report, for each other primary reference, Dr. Bederson addressed the fact that claims 23–26 of the '482 patent required a particular database.  *See, e.g.*, Ex. 1 (Bederson Op.) at ¶¶ 384–391, 537–544, 584–595, 805–814.  Yet, curiously, the sections Dr. Bederson "forgot" to include in his report do not address that requirement.  AIT pointed out to Salesforce these anomalies, which strongly suggest that Dr. Bederson ***did not*** originally intend to offer the disputed opinions. Ex. 7 (12/19/2022 Email Chain) at 5–6. Salesforce does not address these anomalies.

Further, Salesforce's only evidence supporting good faith simply states that "[o]n or shortly before Friday, September 30, 2022, … ***Salesforce*** discovered" that Dr. Bederson's report failed to include "a section on claims 23-26 of the '482 patent."  Dkt. 351-1 (Zivojnovic Decl.) at ¶ 5. Salesforce fails to offer any further explanation concerning the timing of the Supplemental Bederson Report. For example, the parties discussed the XPR References extensively ***after*** the service of the Bederson Opening Report.  For example, as detailed above, in August 2022, AIT and Salesforce entered into a heavily negotiated agreement pertaining to "good cause" for purposes of the XPR References based on the invalidity theories "addressed in Dr. Bederson's invalidity expert report."  Ex. 5 (08/12/2022 Email Chain) at 5.  Salesforce offers no explanation for how its attorney team could have entered into that agreement without reviewing the theories "addressed in Dr. Bederson's invalidity expert report" with respect to the XPR References.  Further, a few weeks after the parties'

agreement, on August 19, 2022, Salesforce selected for trial 8 primary references out of the 14 primary references addressed in Dr. Bederson's report.  Dr. Bederson worked with Salesforce's attorney team on these selections.  Ex. 4 (Bederson Tr.) at 117:14–119:21.  Yet, Salesforce offers no explanation for how Dr. Bederson and its attorney team could take two weeks to decide on the best references addressed in Dr. Bederson's report to assert at trial, select three XPR References, and fail to realize that Dr. Bederson did not substantively address the limitations of claims 23–26 of the '482 Patent with respect to any of the three XPR References.  The claims addressed (and not addressed) by Dr. Bederson would be an important factor in selecting a reference for trial, and such claims are readily identifiable based on a simple review of the headings, Table of Contents, and Summary of Opinions.  Further, on September 1, 2022, Dr. Bederson was deposed.  He was prepared for his deposition by several of Salesforce's attorneys, including Mr. Zado, Mr. Snyder, and Mr. Zivojnovic.  Ex. 4 (Bederson Tr.) at 6:9–22.  The Table of Contents and Summary of Opinions were used as a reference guide throughout the deposition of Dr. Bederson.  *See, e.g.*, *id.* at 114:21–115:10, 237:13–238:5, 240:2–243:20.  Yet, Salesforce offers no explanation concerning the failure of its team to realize this supposedly obvious oversight during the preparation for the deposition of Dr. Bederson.

Further, Salesforce by its own admission allowed the dispositive motion and *Daubert* deadlines to pass with knowledge that the Bederson Opening Report did not address claims 23–26 of the '482 Patent with respect to the XPR References.  Mot. at 4–5; DeVincenzo Decl. at ¶ 9.  Salesforce's knowledge of the omission **before** these deadlines is conceded**.**  Yet, the parties conferred two days before briefing was due, and Salesforce remained silent.  *Id.*  Salesforce fails to address its decision to remain silent as AIT completed its dispositive motion and *Daubert* briefs.  Nor does Salesforce explain how a team of experienced attorneys, experts and in-house counsel can allegedly complete expert discovery while being unaware of the claims addressed in the Bederson Opening Report concerning the XPR References.

## V.     CONCLUSION

For the foregoing reasons, AIT requests that the Court deny Salesforce's motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  January 17, 2023

*s/ Andrea Pacelli*

Michael A. Burke, Esq.
ROBISON, SHARP, SULLIVAN & BRUST
(Resident Counsel)
71 Washington Street
Reno, Nevada 89503

Mark S. Raskin, Esq. (*pro hac vice*)
Michael DeVincenzo, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Andrea Pacelli, Esq. (*pro hac vice*)
Daniel Miller, Esq. (*pro hac vice*)
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: mark.raskin@us.kwm.com
michael.devincenzo@us.kwm.com
charles.wizenfeld@us.kwm.com
andrea.pacelli@us.kwm.com
daniel.miller@us,kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 17, 2023 I caused the foregoing **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S OPPOSITION TO SALESFORCE'S MOTION TO RESOLVE DISCOVERY DISPUTE REGARDING CORRECTED EXPERT REPORT** to be filed with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:


Leigh T. Goddard
lgoddard@mcdonaldcarano.com

John J. Frankovich
jfrankovich@mcdonaldcarano.com

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com

Ray R. Zado
rayzado@quinnemanuel.com

Sam S. Stake
samstake@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*



Dated: January 17, 2023                    *s/ Andrea Pacelli*
                                           Andrea Pacelli