JOHN FRANKOVICH, NV Bar #667
LEIGH GODDARD, NV Bar #6315
PHILIP MANNELLY, NV Bar #14236
McDonald Carano LLP
100 West Liberty Street, Tenth Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
Email: jfrankovich@mcdonaldcarano.com
lgoddard@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com

KEVIN JOHNSON (*pro hac vice*)
RAY ZADO (*pro hac vice*)
SAM STAKE (*pro hac vice*)
JAMES JUDAH (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
Email: kevinjohnson@quinnemanuel.com
rayzado@quinnemanuel.com
samstake@quinnemanuel.com
jamesjudah@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC,<br><br>       Plaintiff,<br><br>   **v.**<br><br>SALESFORCE, INC.,<br><br>       Defendant. | No. 3:13-CV-00628-RCJ-CLB<br><br>**SALESFORCE'S REPLY IN SUPPORT OF ITS MOTION TO RESOLVE DISCOVERY DISPUTE REGARDING CORRECTED EXPERT REPORT** |

# TABLE OF CONTENTS

A. AIT's Inability to Identify Any New Opinion in Dr. Bederson's Correct Report Confirms the Corrected Report Is Timely Under Rule 26 ............................................. 2

B. Even if the Corrected Report Contains New Opinions, AIT Has Not Identified Any Basis for Striking Dr. Bederson's Corrected Report Under Rule 37 ...................... 6

    1. AIT Identifies No Prejudice that Cannot be Cured Via Another Deposition of Dr. Bederson and a Supplemental Rebuttal Report from Mr. Zatkovich ................................................................................................ 6

    2. AIT Is Unable to Dispute Salesforce's and Dr. Bederson's Good Faith ............. 8

    3. Applicable Case Law Supports Granting Salesforce's Motion ........................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allstate Ins. Co. v. Balle*,
  2013 WL 5797848 (D. Nev. Oct. 28, 2013) ............................................................. 5, 11

*CoreLogic Information Solutions, Inc. v. Fiserv, Inc.*,
  2012 WL 4761739 (E.D. Tex. Sept. 20, 2012) ................................................................ 4

*Corning Optical Commc'ns RF LLC v. PPC Broadband Inc.*,
  2015 WL 11718120 (D. Ariz. Sept. 18, 2015) .............................................................. 11

*Daedalus Blue LLC v. SZ DJI Tech. Co.*,
  2022 WL 831619 (W.D. Tex. Feb. 24, 2022) .................................................................. 6

*Droplets, Inc. v. Yahoo! Inc.*,
  2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) .............................................................. 12

*Everlight Elec. Co., Ltd. v. Nichia Corp.*,
  2015 WL 1530831 (E.D. Mich. Apr. 6, 2015) .............................................................. 11

*Finjan, Inc. v. Symantec Corp.*,
  2018 WL 620156 (N.D. Cal. Jan. 30, 2018) ................................................................... 5

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
  2016 WL 3965190 (D. Nev. July 21, 2016) ........................................................... 5-6, 11

*Kraja v. Bellagio, LLC*,
  No. 2016 WL 1611590 (D. Nev. Apr. 22, 2016) ............................................................ 6

*Linksmart Wireless Technology, LLC v. Golden Nugget, Inc.*,
  2021 WL 1150065 (D. Nev. Mar. 25, 2021) ................................................................... 2

*Luke v. Fam. Care & Urgent Med. Clinics*,
  323 F. App'x 496 (9th Cir. 2009) ................................................................................... 5

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
  2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) .............................................................. 11

*Nat'l Prod., Inc. v. ProClip USA, Inc.*,
  2022 WL 2304114 (W.D. Wis. June 27, 2022) .............................................................. 4

*Ojmar US, LLC v. Security People, Inc.*,
  2018 WL 1640126 (N.D. Cal. Apr. 5, 2018) ................................................................ 12

*Open Text S.A. v. Box, Inc.*,
  2015 WL 4940709 (N.D. Cal. Aug. 19, 2015) ............................................................... 3

*Promega Corp. v. Applied Biosystems, LLC*,
  2013 WL 9988881 (N.D. Ill. May 28, 2013) .................................................................. 4

*Ridgeway v. Wal-Mart Stores, Inc.*,
 2016 WL 4728668 (N.D. Cal. Sept. 12, 2016) .............................................................. 12

*Scolaro v. Vons Companies, Inc.*,
 2019 WL 7284738 (D. Nev. Dec. 27, 2019) ..................................................................... 5

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
 2011 WL 4079223 (N.D. Cal. Sept. 12, 2011) ................................................................. 3

*Wong v. Regents of Univ. of California*,
 410 F.3d 1052 (9th Cir. 2005) ........................................................................................ 11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
 259 F.3d 1101 (9th Cir. 2001) ........................................................................................ 11

AIT's opposition raises every conceivable argument to preclude Dr. Bederson from correcting an inadvertent oversight in his report and testifying as to the invalidity of claims 23-26 of the '482 patent based on Popp, Kovacevic, and Balderrama. Salesforce addresses each of those arguments below and demonstrates that none have merit. But it is important that the Court not lose sight of the core issues notwithstanding all the confusion AIT is attempting to sow.

*First*, it remains undisputed that Dr. Bederson's corrected report adds no expert analysis not already present in his original report and instead merely identifies where his analysis applicable to claims 23-26 of the '482 patent can be found elsewhere in his report (specifically, in his analysis of substantively identical claims 14-17 of the '111 patent).

*Second*, AIT's only gripe with Dr. Bederson's corrected report is that his original report (according to AIT) did not include an express conclusory statement that claims 23-26 are invalid in light of Popp, Kovacevic, and Balderrama. Dr. Bederson should not be precluded from presenting his timely expert analysis as appliable to claims 23-26 due solely to the alleged absence of some "magic words." But even if the presence or absence of a conclusory assertion were controlling, Dr. Bederson presented that conclusion when he expressly agreed with and incorporated by reference Salesforce's invalidity contentions, which undisputedly contend that Popp, Kovacevic, and Balderrama invalidate claims 23-26 of the '482 patent.

*Third*, there is no allegation that permitting Dr. Bederson's corrected report would require reopening claim construction or fact discovery, and AIT already moved for summary judgment of validity for claims 23-26 of the '482 patent. Thus, any minimal prejudice to AIT is easily curable by Salesforce's offer to make Dr. Bederson available for an additional deposition and to permit AIT's expert, Mr. Zatkovich, to serve a supplemental report.

All of AIT's arguments seek to detract from those core issues, which are largely undisputed. Instead, AIT misrepresents Dr. Bederson's discussion of Salesforce's invalidity contentions as allegedly limited to just incorporating additional citations (the relevant paragraph from Dr. Bederson speaks for itself and conclusively disproves AIT's characterization), attacks the merits of Dr. Bederson's supplemental report (those attacks are better addressed in the context of AIT's motion for summary judgment or at trial), seeks to manufacture prejudice out of an unrelated stipulation entered

by the parties (this stipulation does not limit what claims Dr. Bederson is permitted to address), and casts aspersions onto the credibility of Salesforce, its counsel, and Dr. Bederson (based on pure speculation and without a shred of evidence of bad faith).

Apparently, AIT thought it was going to gain a strategic advantage due to Salesforce's and Dr. Bederson's inadvertent oversight and is now presenting every conceivable argument to avoid having to rebut Dr. Bederson's invalidity analysis for claims 23-26 of the '482 patent based on Popp, Kovacevic, and Balderrama. But the facts here are straightforward: Dr. Bederson's 800+-page report included an inadvertent oversight that Salesforce and Dr. Bederson seek to remedy via a non-substantive correction. That correction is timely under Rule 26 because it does not add any new expert opinions, or at a minimum harmless and thus permissible under Rule 37.

### A. AIT's Inability to Identify Any New Opinion in Dr. Bederson's Correct Report Confirms the Corrected Report Is Timely Under Rule 26

AIT's entire argument on untimeliness under Rule 26 is based on a singular premise: that "Dr. Bederson offered new opinions regarding three references" (Popp, Kovacevic, and Balderrama). Opp. at 1. That premise is false. Dr. Bederson timely disclosed all his opinions in his opening expert report on invalidity. Once AIT's incorrect premise is disposed, there is no dispute that Dr. Bederson's corrected report is timely. *See Linksmart Wireless Technology, LLC v. Golden Nugget, Inc.*, 2021 WL 1150065 (D. Nev. Mar. 25, 2021) (finding "supplemental report is … timely under Fed. R. Civ. P. 26(a)(3)(B)" where "[t]he Court has not yet set a trial date in this case").[1]

Importantly, AIT's opposition does not dispute that Dr. Bederson's corrected report for claims 23-26 of the '482 patent only incorporates by reference analysis found elsewhere in the original report and does not add a single word of new expert analysis. Rather, AIT argues that the corrected report adds new conclusions (what AIT calls "opinions") that the Popp, Kovacevic, and Balderrama prior art references invalidate claims 23-26 of the '482 patent and from there extrapolates (by implication) that

---

[1] AIT argues that expert discovery closed before Salesforce served the corrected Bederson report (Opp. at 1) and on that basis seeks to distinguish *Linksmart* (Opp. at 11-12). Those arguments are also based on AIT's incorrect premise that Dr. Bederson's corrected report introduces new opinions (it does not). Since Salesforce timely disclosed Dr. Bederson's opinions, and the corrected report is not seeking to introduce any new opinions, Salesforce fully complied with the Court's schedule.

Dr. Bederson "for the first time opines" that those references disclose the limitations "business content database" (claims 23-24) and "metadata database" (claims 25-26). *See* Opp. at 9. AIT's argument fails for multiple reasons.

***First***, AIT is only able to point to Dr. Bederson's ultimately conclusion that Popp, Kovacevic, and Balderrama anticipate claims 23-26 of the '482 patent as allegedly new matter. All of Dr. Bederson's underlying analysis was undisputedly disclosed in Dr. Bederson's original report. It is this underlying analysis that carries weight, not Dr. Bederson's ultimate conclusory statement or other use of "magic words." *See Open Text S.A. v. Box, Inc.*, 2015 WL 4940709, at *7 (N.D. Cal. Aug. 19, 2015) ("[J]uries should not rely on an expert's conclusory statements."). If Dr. Bederson's underlying analysis is insufficient to sustain a jury verdict, then Dr. Bederson's conclusions cannot fill that gap. *See Volterra Semiconductor Corp. v. Primarion, Inc.*, 2011 WL 4079223, at *4 (N.D. Cal. Sept. 12, 2011) ("Dr. Fair's conclusory statements are not a sufficient basis to support a jury finding that Williams disclosed the claim elements listed above . . . ."). Thus, Dr. Bederson's ultimate conclusions in his corrected report on invalidity of claims 23-26 are guideposts to avoid jury confusion. These guideposts do not themselves introduce new, substantive expert opinions or render Dr. Bederson's corrected report untimely and should not prevent Dr. Bederson from presenting his (undisputedly timely) underlying expert analysis.

***Second***, Dr. Bederson "incorporate[d] by reference in [his] report each of the claim charts" from Salesforce's invalidity contentions, which includes a showing that Popp, Kovacevic, and Balderrama disclose claims 23-26 of the '482 patent. Dkt. 351-2 (Bederson Rpt.) ¶ 174. Thus, even Dr. Bederson's ultimate conclusions on invalidity of claims 23-26 were present in Dr. Bederson's original, timely served invalidity report. AIT's rebuttal to this argument is that "Dr. Bederson relied on such incorporation by reference for purposes of providing further supporting citations, not opinions." Opp. at 22. AIT's rebuttal rests on a flagrant misreading of Dr. Bederson's report, which clearly and unequivocally states that he is incorporating the "claim charts" themselves—which include contentions that the prior art meets each claim limitation—and not just the "citations" found in those charts. Dkt. 351-2 (Bederson Rpt.) ¶ 174. AIT also ignores Dr. Bederson's statement in his original report that he "independently reviewed the incorporated-by-reference charts and agree with the

relevance of the cited material to the asserted claim limitations," which confirms that Dr. Bederson agreed with Salesforce's invalidity contentions that claims 23-26 of the '482 patent were invalid in light of Popp, Kovacevic, and Balderrama. *Id.* Thus, AIT had timely notice even as to Dr. Bederson's conclusions on invalidity of claims 23-26 in light of Popp, Kovacevic, and Balderrama.

AIT cites *Promega Corp. v. Applied Biosystems, LLC*, 2013 WL 9988881 (N.D. Ill. May 28, 2013) and *Nat'l Prod., Inc. v. ProClip USA, Inc.*, 2022 WL 2304114 (W.D. Wis. June 27, 2022) for the proposition that "Courts do not permit experts to simply 'rubber stamp' a party's contentions." Opp. at 22. Dr. Bederson is not seeking to "rubber stamp" Salesforce's invalidity contentions. Dr. Bederson's analysis is set forth in his original report, and the corrected report adds no new analysis. Rather, Dr. Bederson's agreement with and incorporation of Salesforce's invalidity contentions demonstrates that Dr. Bederson always contended that Popp, Kovacevic, and Balderrama invalidate claims 23-26 of the '482 patent and that AIT was on notice of those conclusions, in addition to Dr. Bederson's express analysis of substantively identical claims 14-17 of the '111 patent in the body of Dr. Bederson's original report. *See CoreLogic Information Solutions, Inc. v. Fiserv, Inc.*, 2012 WL 4761739, at *1-2 (E.D. Tex. Sept. 20, 2012) (permitting expert to offer invalidity opinions on claims not expressly addressed in body of report based on invalidity contentions incorporated by reference).

AIT's opposition also includes arguments directed to the merits of Dr. Bederson's analysis, and the fact that claims 23-26 of the '482 patent refer to storing information in "databases," whereas claims 14-17 of the '111 patent recite the same information but do not use the term "database" to describe where the information is stored. Opp. at 2-3, 6, 8-10, 17-19, 22-23. As explained in Salesforce's motion, this recitation of a "database" is not a substantive difference, as even AIT's expert, Mr. Zatkovich, admitted that claims 23-26 of the '482 patent "claim[ed] substantially similar subject matter to" claims 14-17 of the '111 patent. Ex. 351-10 ¶¶ 518, 520, 522, 542; *see also* Mot. at 9-10 (explaining how Mr. Zatkovich's infringement analysis assigns no significance to the "database" limitations of claims 23-26). But even more fundamentally, AIT's arguments are irrelevant to the present motion. AIT filed a motion for summary judgment of no anticipation and can also cross-examine Dr. Bederson on this issue at trial. Those are the proper vehicles for deciding whether Dr. Bederson's analysis for claims 14-17 of the '111 patent is *substantively* sufficient to invalidate claims

23-26 of the '482 patent. In contrast, the only inquiry relevant to this motion is whether Dr. Bederson is **procedurally** permitted to present his analysis to the jury, independent of the merits of that analysis.

Ultimately, because Dr. Bederson's corrected report merely identifies portions of his original report already containing his invalidity analysis of claims 23-26 of the '482 patent in light of Popp, Kovacevic, and Balderrama, that fact alone renders Dr. Bederson's corrected report timely and permissible. The reasoning in *Finjan, Inc. v. Symantec Corp.*, No. 4:14-CV-02998-HSG-JSC, 2018 WL 620156 (N.D. Cal. Jan. 30, 2018) ("*Finjan*") is instructive. Defendant's expert served an invalidity report that lacked sections expressly addressing dependent claim 11 of the "'844 Patent" in light of multiple prior art references. *See Finjan*, Dkt. 312-14, at iv-viii. Defendant then served an "errata" to address "an inadvertent error in drafting the report" and "incorporate by reference" analysis found elsewhere in the report. *See Finjan*, Dkt. 312-12, at 2. The *Finjan* court further considered it significant that Defendant's "invalidity contentions chart the references purportedly invalidating Claim 11." *Finjan*, 2018 WL 620156, at *3. The *Finjan* court then concluded that the errata "does not provide any additional information or opinions that were not already disclosed in his timely served invalidity report" and that "[t]he errata falls squarely within Rule 26(e)(2)'s duty to supplement and thus no permission was required to submit the errata." *Id*. The same reasoning applies here: Dr. Bederson's report lacked sections expressly addressing claims 23-26 of the '482 patent due to an inadvertent oversight, but those claims were challenged in Salesforce's invalidity contentions, and Dr. Bederson served a corrected report identifying where in his original report his analysis for claims 23-26 can be found. Just like the errata in *Finjan*, Dr. Bederson's correct report is timely under Rule 26.

In contrast, the cases cited by AIT (Opp. at 11-12) are inapposite, as they all address attempts to supplement reports with new, substantive analysis. *See Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 499 (9th Cir. 2009) (excluding supplemental report "present[ing] a new theory as to a key element of Plaintiffs' medical negligence claim."); *Allstate Ins. Co. v. Balle*, 2013 WL 5797848, at *4 (D. Nev. Oct. 28, 2013) (excluding supplemental report that included new substantive analysis as the expert "lacked time to complete his initial report"); *Scolaro v. Vons Companies, Inc.*, 2019 WL 7284738, at *2 (D. Nev. Dec. 27, 2019) (excluding experts analysis of future damages as the initial report "lack[ed] any discussion about future damages."); *Hologram USA, Inc. v. Pulse Evolution*

*Corp.*, 2016 WL 3965190, at *3 (D. Nev. July 21, 2016) (excluding supplemental report that addressed an accused product for the first time after the "initial report completely omits discussion of the central device in this case"); *Kraja v. Bellagio, LLC*, No. 2016 WL 1611590, at *2 (D. Nev. Apr. 22, 2016) (excluding supplemental report containing new substantive analysis after initial report only contained "conclusory statement[s]" that were "wholly devoid of a summary of facts and opinions."); *Daedalus Blue LLC v. SZ DJI Tech. Co.*, 2022 WL 831619, at *4 (W.D. Tex. Feb. 24, 2022) (excluding second expert report with new substantive analysis that was "clearly meant to supersede, rather than supplement, his first report" and was "re-doing his original . . . analysis"). Unlike AIT's cases, the corrected Bederson report does not introduce any new opinions and instead only cross-cites previously disclosed opinions found elsewhere in the report. Dr. Bederson thus timely disclosed his expert opinions in his original report, and Dr. Bederson's corrected report is permissible under Rule 26 to address an inadvertent oversight.

### B. Even if the Corrected Report Contains New Opinions, AIT Has Not Identified Any Basis for Striking Dr. Bederson's Corrected Report Under Rule 37

Even if this Court decides that the corrected Bederson report is untimely because the original report lacked an express sentence stating that Popp, Kovacevic, and Balderrama disclose claims 23-26 of the '482 patent, the alleged addition of this conclusory assertion does not warrant preventing Dr. Bederson from testifying regarding the invalidity of those patent claims based on expert analysis that was undisputedly in his original report. AIT cannot identify any prejudice that cannot be cured via a short deposition and supplemental rebuttal report, and there is no evidence of any bad faith conduct.

#### 1. AIT Identifies No Prejudice that Cannot Be Cured Via Another Deposition of Dr. Bederson and a Supplemental Rebuttal Report from Mr. Zatkovich

AIT's opposition does not allege AIT has suffered any prejudice that cannot be cured. AIT's opposition does not contain a single reference to any need to serve amended pleadings, redo claim construction, or reopen claim construction. Thus, none of the prejudices usually experienced by parties faced with late disclosures are present. Instead, AIT takes a scattershot approach at identifying every other conceivable prejudice, but AIT's allegedly prejudices are all illusionary or easily curable.

***First***, AIT argues that "the overall trial schedule will be necessarily upended" if Dr. Bederson's corrected report is permitted. Opp. at 20-21; *see also* Opp. at 1-2. But there are currently

no future dates in the case calendar (Dkt. 181),[2] and thus there is no "trial schedule" that would be disrupted by permitting the corrected Bederson report.

*Second*, AIT contends it "ha[d] not had an opportunity … to move for judgment with respect to" Dr. Bederson's opinions on claims 23-26 of the '482 patent in light of Popp, Kovacevic, and Balderrama. Opp. at 9; *see also id.* at 1-2, 15. That is false: AIT did, in fact, file a motion for summary judgment ("MSJ") of no anticipation on claims 23-26 of the '482 patent. Dkt. 271-1. Moreover, Salesforce served the corrected Bederson report on October 12, 2022, before AIT filed its opposition to Salesforce's MSJ of invalidity or its reply in support of its MSJ of no anticipation. Even AIT admits it "requested judgment based on lack of expert opinions supporting Salesforce's position on the 'database' elements of claims 23-26 with respect to Popp." Opp. at 8. Thus, AIT could have and in fact did address validity of claims 23-26 of the '482 patent in its MSJ.

*Third*, AIT focuses the majority of its arguments on the parties' "Joint Stipulation Regarding Case Narrowing" (Dkt. 265) (Opp. at 6-7, 13-15), but that stipulation is irrelevant to Dr. Bederson' corrected report.[3] Significantly, AIT cites its own e-mails to argue that the stipulation allegedly limited Salesforce to invalidity theories "expressed in Dr. Bederson's report." Opp. at 6, 13 (quoting Ex. 5).[4] The actual stipulation **contains no such language**. Rather, under paragraph 1 of the stipulation, "[e]ach party stipulates that the other party had good cause to amend their January 10,

---

[2] AIT states that it "is hopeful the case can proceed to trial in the first half of 2023." Opp. at 20. AIT's "hope[]" has no basis in fact. Under the applicable local rules, the Court would not set a trial date until after deciding the pending dispositive motions (LRII 16-4, 26-1(b)(5)), and currently no hearing is scheduled on those motions. Based on comments by Magistrate Judge Baldwin, Salesforce understand that trial in this case may still be more than a year away. 2022-11-16 Hr. Tr. at 7:10-8:5.

[3] AIT contends that it "would not have entered into that stipulation had Dr. Bederson's [alleged] new opinions been part of the Bederson Opening Report." Opp. at 14. AIT never shared that understanding with Salesforce. AIT's opposition identifies no instance (nor does one exist) where AIT notified Salesforce of its position that Dr. Bederson's report did not address claims 23-26 of the '482 patent in view of Popp, Kovacevic, and Balderrama, notwithstanding the report's incorporation of Salesforce's invalidity contentions.

[4] AIT also argues that Popp, Kovacevic, and Balderrama were key to the parties' compromise and that AIT thus allegedly knew Salesforce would select those three references as part of narrowing its prior art case. Opp. at 14-15. But here, too, it is the stipulation that is controlling, not the parties' correspondence, and Salesforce was free to select references other than those three.

2022 final contentions, including any amendments thereto with respect to any invalidity … positions subject to AIT's motion to strike portions of Salesforce's amended invalidity contentions." Dkt. 265 ¶ 1. Thus, Salesforce was permitted to rely on its full invalidity contentions for Popp, Kovacevic, and Balderrama, which includes its contentions that these references invalidate claims 23-26 of the '482 patent. Under paragraph 2 of the stipulation, "[t]he parties shall not file any motions requesting the Court to strike or disregard any opinion offered in any expert's report on the basis that such opinions improperly expands a party's contentions." Dkt. 265 ¶ 2. Since there is no dispute that Salesforce's contentions claims 23-26 of the '482 patent in light of Popp, Kovacevic, and Balderrama, there also can be no dispute the subject matter of Dr. Bederson's corrected report does not expand Salesforce's contentions. Accordingly, Salesforce's serving of Dr. Bederson's corrected report does not violate the parties' joint stipulation, and granting Salesforce's motion does not require undoing that stipulation.

**Fourth**, AIT argues that it lacked "an opportunity to respond to this new substantive opinion … or to depose Bederson regarding that new opinion." Opp. at 9. This alleged prejudice is easily curable. Salesforce offered to make Dr. Bederson available for a 1.5 hour deposition and to permit Mr. Zatkovich to submit a supplemental rebuttal report on validity of claims 23-26 of the '482 patent in light of Popp, Kovacevic, and Balderrama. Dkt. 353-04 (e-mail exchange between counsel for Salesforce and counsel for AIT) at 4. Salesforce made that offer on October 12, 2022—almost 4 months ago—yet AIT has not accepted this offer or made any counterproposal. Clearly, AIT is not interested in curing any alleged prejudice. Rather, AIT prefers to double down on its litigation tactic to prevent Dr. Bederson from addressing claims 23-26 in light of Popp, Kovacevic, and Balderrama.

2. <u>AIT Is Unable to Dispute Salesforce's and Dr. Bederson's Good Faith</u>

Dr. Bederson's corrected report is a good faith correction of an inadvertent oversight. A Salesforce attorney attested to this under penalty of perjury (Zivojnovic Decl. (Dkt. 351-1) ¶ 3), and so did Dr. Bederson (Declaration of Dr. Bederson ¶ 4, filed concurrently herewith)[5]. Tellingly, AIT never expressly accuses Salesforce or Dr. Bederson of any bad faith. The clear implication is that AIT

---

[5] Dr. Bederson's declaration addresses AIT's comment that "Salesforce did not provide a declaration from Dr. Bederson supporting its version of the facts." Opp. at 18 fn.4.

lacks a basis to make such accusations. Instead, AIT resorts to indirectly attacking Salesforce's and Dr. Bederson's credibility with a scattershot approach that is full of speculation and lacking in facts.

**First**, AIT has no response to Dr. Bederson's express statement in his original invalidity report that he "independently reviewed the incorporated-by-reference charts and agree with the relevance of the cited material to the asserted claim limitations" (Dkt. 351-2 (Bederson Rpt.) ¶ 174), which includes Salesforce's contentions that Popp, Kovacevic, and Balderrama invalidate claims 23-26 of the '482 patent. This is direct evidence of good faith: Dr. Bederson expressly agreed with the conclusions and analysis in Salesforce's invalidity contentions, and his corrected report is thus entirely consistent with the positions Dr. Bederson took in his original report.

**Second**, AIT spends large parts of its opposition discussing Salesforce's *ex parte* reexamination ("XPR"). Opp. at 1-3, 5-6, 17-18. According to AIT, "Dr. Bederson had good reason not to address the limitations of claims 23-26 of the '482 Patent" in light of Popp, Kovacevic, and Balderrama because those opinions allegedly "contradicted" Salesforce's expert in the XPR. Opp. at 2. There is no contradiction. *See* Mot. at 11. Even more telling, however, AIT has no answer to the question posed in Salesforce's motion: "if Salesforce truly made such a 'tactical decision' in the first instance, why would it now seek this Court's intervention to undo that same 'tactical decision'?" Mot. at 11. The simplest answer is the right one: there was no "tactical decision," and the lack of express sections on claims 23-26 for Popp, Kovacevic, and Balderrama was just an inadvertent oversight.

**Third**, AIT accuses Salesforce of "refus[ing] to provide a coherent explanation for the purported 'oversight' and for Salesforce's failure to discover it for three months, from June 30, 2022 (date of service of Dr. Bederson's opening report) to September 30, 2022 (date of filing of Salesforce's summary judgment motion, Dkt. 278)." Opp. at 21; *see also id.* at 22-24. It is unclear what further "explanation" AIT is looking for. Dr. Bederson's report incorporated certain text from Salesforce's XPR declaration, Salesforce's invalidity contentions analyzed by Dr. Bederson diverged from the XPR declaration in connection with claims 23-26—meaning text from the XPR declaration addressing claims 23-26 could not be incorporated into Dr. Bederson's report—and due to an inadvertent oversight no alternative text addressing claims 23-26 was added to Dr. Bederson's report. *See* Opp. at 17-18. This inadvertent oversight went unnoticed until Salesforce was finalizing its

opening brief on summary judgment of invalidity because, until then, neither party submitted any briefs or asked any deposition questions on invalidity that were specific to claims 23-26 of the '482 patent in light of Popp, Kovacevic, or Balderrama. Ultimately, it should be no surprise that the absence of six paragraphs from an ~850 page / 1,500 paragraph report went unnoticed until those specific 6 paragraphs became relevant to finalizing Salesforce's opening summary judgment brief.

***Fourth***, AIT makes the point that there are additional prior art references (Brunner, Yeager, and El-Refai) for whom Dr. Bederson did not address all asserted claims of the '111 and '482 patents. Op. at 4-5, 7, 15. But Salesforce is not contending that the absence of any claims for other references was an inadvertent oversight or seeking to correct any portions of Dr. Bederson's report pertaining to those other references. Whether or not Dr. Bederson's report contains any additional oversights is irrelevant to deciding whether Dr. Bederson should be permitted to correct an inadvertent oversight pertaining to claims 23-26 of the '482 patents in light of Popp, Kovacevic, and Balderrama.

***Fifth***, AIT attempts to attack Salesforce's credibility by misstating Salesforce's position. In particular, AIT argues that "Salesforce's position that Dr. Bederson … intended to incorporate opinions from claims 14–17 of the '111 Patent into claims 23–26 of the '482 patent as part of his original report is far-fetched." Opp. at 23. This misstates the nature of the inadvertent oversight. Salesforce and Dr. Bederson do not contend the original report would have included the exact same incorporations by reference as the corrected report but for the oversight. Rather, the oversight was not including those sections—whether by incorporating or copying Dr. Bederson's analysis from claims 14-17 of the '111 patent, or writing different text—and incorporating by reference the analysis from claims 14-17 of the '111 patent was just the least intrusive solution for correcting that oversight.

***Sixth***, AIT accuses Salesforce of hiding the ball: "[a]t least some unidentified person at Salesforce admittedly knew that sections of Dr. Bederson's report were supposedly missing before the deadline for summary judgment motions," and "[y]et, Salesforce allowed the dispositive motion and Daubert deadline to pass." Opp. at 7; *see also id.* at 24. This argument is absurd. Salesforce did not discover the oversight long before the MSJ deadline and then purposely wait until after the deadline to ambush AIT. Rather, Salesforce discovered the oversight "[o]n or shortly before Friday, September 30, 2022, while preparing its motion for summary judgment." Dkt. 351-1 ¶ 5. In other words, the

inadvertent oversight was discovered either the actual day of MSJ deadline or possibly a day prior. Salesforce then informed AIT of the oversight and served the corrected Bederson report as soon as practicable and well in advance of the parties' opposition and reply deadlines.

### 3. *Applicable Case Law Supports Granting Salesforce's Motion*

None of AIT's cases support striking Dr. Bederson's corrected report. In *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3965190, at *4-5 (D. Nev. July 21, 2016), plaintiff sought to introduce "***intentionally omitted***, previously available information," whereas Salesforce is correcting an inadvertent oversight. *See also Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, 2008 WL 4601038, at *2 (N.D. Cal. Oct. 15, 2008) (permitting "supplemental report [that] merely corrects … mistakes," "does not attempt to mask inadequate preparation of the original report," and "is not an attempt by Medtronic to ambush Abbott"). *Allstate Ins. Co. v. Balle*, 2013 WL 5797848 (D. Nev. Oct. 28, 2013), *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) and *Corning Optical Commc'ns RF LLC v. PPC Broadband Inc.*, 2015 WL 11718120 (D. Ariz. Sept. 18, 2015) all involve attempts to introduce new substantive expert analysis, whereas Dr. Bederson is not seeking to introduce new, untimely analysis, and instead is merely cross-citing to existing analysis found elsewhere in his report. *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) is inapposite because there was concrete evidence in *Wong* that permitting the additional discovery would disrupt "the rest of the schedule laid out by the court months in advance, and understood by the parties," whereas here there is no "rest of the schedule" to disrupt.

Finally, the court in *Everlight Elec. Co., Ltd. v. Nichia Corp.*, 2015 WL 1530831, at *2 (E.D. Mich. Apr. 6, 2015) struck a "revised Analysis Chart" that "added infringement allegations for claim 8 of the '960 patent" for "roughly 55 accused products"; "added infringement allegations for claims 1, 2, 3, 9, and 23 of the '925 patent and claims 8-12 of the '960 patent" for "16 of the accused products." Importantly, the *Everlight* court disagreed that this "revised Analysis Chart only provides clerical corrections and does not alter the substance of Professor Schubert's opinions in his expert report." *Id.* Thus, Dr. Bederson's corrected report is distinguishable from the "revised Analysis Chart" in *Everlight* as to the type of corrections (Dr. Bederson is not adding new analysis and only expressly stating conclusions that were already apparent from his incorporation of Salesforce's invalidity

contentions) and the extent of those corrections (Dr. Bederson's correction implicates 4 claims and 3 references, whereas the "revised Analysis Chart" in *Everlight* impacted 10 claims and 55-71 products).

AIT is also unable to distinguish Salesforce's cited case law. AIT attempts to distinguish *Ojmar US, LLC v. Security People, Inc.*, 2018 WL 1640126 (N.D. Cal. Apr. 5, 2018) on the basis of the timing of the supplemental report at issue in that case. Opp. at 15-16. But the *Ojmar* court "conclude[d] that striking the opinions in this section of the report is not warranted" solely based on the "substantive[]" "overlap" between the original report and the new section, and the timing cited by defendants was just an additional factor in the court's further conclusion that, "[e]ven assuming that Defendants improperly noticed this section of the Nixon Report, Plaintiff has not been prejudiced by Defendants' disclosure." *Ojmar*, 2018 WL 1640126, at *9. AIT also attempts to distinguish *Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) and *Ridgeway v. Wal-Mart Stores, Inc.*, 2016 WL 4728668 (N.D. Cal. Sept. 12, 2016) based on their procedural postures (Opp. at 15-16, 19-20), but ignores that the key insights from those cases remain applicable regardless of procedural posture: changes that require no new analysis or defenses are "substantially harmless"; and prejudice can be cured by an "opportunity to file a supplemental expert rebuttal report and to depose" the expert.

Finally, AIT does not even attempt to distinguish Salesforce's cases finding public policy favors permitting expert opinions on invalidity. Mot. at 13-14. Rather, AIT argues that Salesforce will have an opportunity to invalidate claims 23-26 of the '482 patent based on other prior art references. Opp. at 15. This argument ignores that AIT's expert retracted at his deposition multiple validity arguments for one of the prior art references at issue in this motion—Popp—rendering it especially likely that Popp invalidates all asserted claims of the '482 patent. *See generally* Dkt. 280 (Salesforce's MSJ of invalidity based on Popp); Dkt. 323 (Salesforce's reply in support of its MSJ). For this reason, public policy favors permitting Dr. Bederson to present the portions of his invalidity analysis that are applicable to claims 23-26 of the '482 patent, and this also explains why AIT is so focused on preventing Dr. Bederson from offering that analysis by raising procedural hurdles to what ought to be a straightforward correction of an inadvertent oversight in Dr. Bederson's original report.

| | | |
|---|---|---|
| 1 | DATED: February 7, 2023 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  /s/ Ray Zado

Ray Zado
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
rayzado@quinnemanuel.com

# CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that I am an employee of Quinn Emanuel Urquhart & Sullivan LLP and that pursuant to LR 5-3 I caused to be electronically filed on this date a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system. A copy will be served via email upon the following:

| | |
|---|---|
| Michael A. Burke<br>*mburke@rssblaw.com* | Andrea Pacelli<br>Mark S. Raskin<br>Michael De Vincenzo<br>Elizabeth Long<br>*andrea.pacelli@us.kwm.com*<br>*mark.raskin@us.kwm.com*<br>*michael.devincenzo@us.kwm.com*<br>*elizabeth.long@us.kwm.com* |
| Steven C. Sereboff<br>*ssereboff@socalip.com* | |

DATED: February 7, 2023

                /s/ *Zachary Furcolo*
                Zachary Furcolo