# Exhibit 5

Trials@uspto.gov
Tel: 571-272-7822

IPR2015-01750, Paper 128
IPR2015-01751, Paper 128
IPR2015-01752, Paper 126
Entered: October 2, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

RPX CORPORATION,
Petitioner,

v.

APPLICATIONS IN INTERNET TIME, LLC,
Patent Owner.

---

Case IPR2015-01750
Patent 8,484,111 B2


Case IPR2015-01751
Case IPR2015-01752
Patent 7,356,482 B2

---

Before SCOTT R. BOALICK, *Chief Administrative Patent Judge*, JACQUELINE WRIGHT BONILLA, *Deputy Chief Administrative Patent Judge*, and SCOTT C. WEIDENFELLER, *Vice Chief Administrative Patent Judge*.

BOALICK, *Chief Administrative Patent Judge*.

JUDGMENT
Final Decision on Remand
Terminating Institution
*35 U.S.C. §§ 314, 315*

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

## I.   INTRODUCTION

We address these cases on remand after a decision by the U.S. Court of Appeals for the Federal Circuit in *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336 (Fed. Cir. 2018) ("*AIT*") (*see* Paper 110[1]).  Upon review, we follow the Federal Circuit's admonition that "Congress intended that the term 'real party in interest' have its expansive common-law meaning." *AIT*, 897 F.3d at 1351.  We approach the inquiry by focusing on the "two related purposes" of the real party in interest ("RPI") requirement set forth in the legislative history, i.e., to preclude parties from getting "two bites at the apple" by:  (1) ensuring that third parties who have sufficiently close relationships with IPR petitioners are bound by the outcome of instituted IPRs in final written decisions under 35 U.S.C. § 315(e), the IPR estoppel provision; and (2) safeguarding patent owners from having to defend their patents against belated administrative attacks by related parties via 35 U.S.C. § 315(b). *Id.* at 1350.  As stated by the Federal Circuit, "[d]etermining whether a non-party is a 'real party in interest' demands a flexible approach that takes into account both equitable and practical considerations, with an eye toward determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner." *Id.* at 1351.

As explained below, when considering the entirety of the evidentiary record, including evidence relating to RPX's business model and RPX's

---

[1] Unless otherwise indicated, citations herein are to the papers and exhibits filed in IPR2015-01750. The same or similar papers and exhibits also have been filed in IPR2015-01751 and IPR2015-01752.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

relationship with Salesforce, who would have benefited from IPRs filed by
RPX, in view of the two purposes of the RPI provision in § 315(b), as noted
above, as well as equitable and practical considerations, we determine that
Salesforce is a real party in interest of RPX.

## II.    BACKGROUND

### A.    Proceedings at PTAB

Petitioner, RPX Corporation ("RPX"), filed Petitions for *inter partes*
review of claims 13–18 of U.S. Patent No. 8,484,111 B2 (Ex. 1001,
"the '111 patent") (Paper 1); and claims 1–59 of U.S. Patent No. 7,356,482
B2 (IPR2015-01751 Ex. 1001, "the '482 patent") (IPR2015-01751, Paper 1;
IPR2015-01752, Paper 1). Patent Owner, Applications in Internet Time,
LLC ("AIT"), filed a Preliminary Response in each proceeding. Paper 21,
Paper 26 (redacted version) ("Prelim. Resp."); IPR2015-01751, Paper 20,
Paper 26 (redacted version); IPR2015-01752, Paper 20, Paper 26 (redacted
version). The Board also authorized additional briefing on RPI issues. *See*
Paper 28, Paper 29 (redacted version); Paper 38, Paper 37 (redacted version)
(the same documents also were filed in IPR2015-01751, Papers 28, 29, 38,
37 and IPR2015-01752, Papers 28, 29, 38, 37). AIT alleged Salesforce.com,
Inc. ("Salesforce") should have been named as an RPI in these proceedings,
and because Salesforce was served with a complaint alleging infringement
of the challenged patents[2] more than one year before the filing of the

---

[2] We refer to the '111 patent and the '482 patent, collectively, as "the
challenged patents."

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

petitions, the proceedings are time-barred pursuant to 35 U.S.C. § 315(b).
*See* Prelim. Resp. 2–20.

Taking into account that briefing, the Board instituted the instant *inter partes* reviews, and later issued Final Written Decisions, determining that RPX demonstrated by a preponderance of the evidence that the challenged claims were unpatentable.  Paper 51[3]; IPR2015-01751, Paper 51[4]; IPR2015-01752, Paper 51[5].  AIT appealed to the Federal Circuit the Board's determinations that these claims were unpatentable, as well as the determination that Salesforce was not an RPI and thus that the proceedings were not time-barred pursuant to § 315(b).  *See* Paper 83.

### B.  Proceedings at the Federal Circuit

In its decision on appeal, issued July 9, 2018 (unsealed July 24, 2018), the Federal Circuit determined that "the Board applied an unduly restrictive test for determining whether a person or entity is a 'real party in interest' within the meaning of § 315(b) and failed to consider the entirety of the evidentiary record in assessing whether § 315(b) barred institution of these IPRs," vacated the Final Written Decisions, and remanded for further proceedings consistent with its decision.  *AIT*, 897 F.3d at 1339.  The mandate issued on October 30, 2018.  Paper 111.

In its analysis of the term "real party in interest," the Federal Circuit noted various aspects of the AIA that suggest that the term should "sweep[]"

---

[3] A public version is available as Paper 60 in IPR2015-01750.

[4] A public version is available as Paper 62 in IPR2015-01751.

[5] A public version is available as Paper 60 in IPR2015-01752.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

broadly. *Id.* at 1346–47. It held that "the focus of the real-party-in-interest inquiry is on the patentability of the claims challenged in the IPR petition, bearing in mind who will benefit from having those claims canceled or invalidated" (*id.* at 1348), and that, ultimately, the determination of who is an RPI should consider "who, from a 'practical and equitable' standpoint, will benefit from the redress that the chosen tribunal might provide" (*id.* at 1349). It also noted that the common law of real party in interest was designed to protect parties from multiple lawsuits, and it pointed out that the purpose of the RPI provision in IPRs was to protect patent holders from multiple petitions. *Id.* at 1349–50.

Based on the foregoing, the Court concluded that the Board had applied too-narrow a definition, had failed to adequately consider the evidence that Salesforce was an RPI to RPX's IPRs, and appeared to have placed the burden on AIT rather than RPX. *Id.* at 1358. The court further stated that "the Board may authorize additional discovery relevant to whether Salesforce is *either* a real party in interest *or* a privy of RPX for purposes of § 315(b)." *Id.*

### C.    *Proceedings on Remand*

After the Federal Circuit's remand decision, the Board authorized post-remand briefing and discovery related to the question of whether Salesforce should have been identified as a real party in interest or privy. *See* Paper 84 (addressing the scope of factual and legal issues to be addressed on remand); Paper 87 (setting discovery and briefing schedule);

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

*see also AIT*, 897 F.3d at 1358.  RPX filed an Opening Brief.  Paper 98[6],
Paper 95 (redacted version) ("Pet. Remand Br.")[7].  AIT filed an Opposition.
Paper 100, Paper 104 (redacted version) ("Remand Opp.").  RPX filed a
Reply.  Paper 101, Paper 102 (redacted version) ("Remand Reply").  An oral
hearing was held on April 25, 2019.  A transcript of the hearing is included
in the record.  Paper 112, Paper 123 (redacted version) ("Remand Tr.").  In
view of the significant and broad implications on remand raised in these
cases, the cases were repaneled to the panel identified above of the most
senior administrative patent judges available.  *See* 35 U.S.C. §§ 3(a)(2)(A),
6(c) (2018); Paper 124 (order changing the panel).

### III.    LEGAL PRINCIPLES

Under 35 U.S.C. § 315(b), an *inter partes* review may not be
instituted "if the petition requesting the proceeding [wa]s filed more than 1
year after the date on which the petitioner, real party in interest, or privy of
the petitioner [wa]s served with a complaint alleging infringement of the
patent."  It is "the IPR petitioner [who] bears the burden of persuasion to
demonstrate that its petitions are not time-barred under § 315(b) based on a
complaint served on a real party in interest more than a year earlier."
*Worlds Inc. v. Bungie, Inc.*, 903 F.3d 1237, 1242 (Fed. Cir. 2018).  The same

---

[6] Petitioner's Opening Brief was filed originally as Paper 94.  Pursuant to the
Board's authorization, a corrected brief was filed as Paper 98 to add a
"PROTECTIVE ORDER MATERIAL" stamp to the document, and
Paper 94 was expunged.  *See* Paper 99.

[7] Pursuant to the panel's instructions (Paper 87, 4), the same briefs were
filed in each of the three proceedings.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

logic requires placing the burden on IPR petitioners to demonstrate that their petitions are not time-barred under § 315(b) based on a complaint served on a real party in interest or a privy more than a year before a petition is filed. *See Ventex Co., Ltd. v. Columbia Sportswear N. Am., Inc.*, IPR2017-00651, Paper 152 at 4–5 (PTAB Jan. 24, 2019) (precedential) (citing *Worlds*, 903 F.3d at 1242). RPX, therefore, bears the burden of establishing that no RPI or privy was served with a complaint alleging infringement more than one year prior to filing of RPX's Petitions on August 17, 2015. Here, on remand, we limit our analysis to whether the § 315(b) time-barred entity Salesforce should have been identified as an RPI or privy in these proceedings. *See AIT*, 897 F.3d at 1338–39, 1358; Paper 84, 5 (ordering that "the proceeding on remand is limited to the issues of whether *Salesforce* is a real party-in-interest or a privy of Petitioner" (emphasis added)).

Whether a non-party is a real party in interest is a "highly fact-dependent question." *Ventex*, Paper 152 at 6 (quoting Trial Practice Guide, 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012)); *see also* Patent Trial and Appeal Board Consolidated Trial Practice Guide 13 (Nov. 2019) ("Whether a party who is not a named participant in a given proceeding nonetheless constitutes a 'real party-in-interest' or 'privy' to that proceeding is a highly fact-dependent question."). In *AIT*, the Federal Circuit held that "Congress intended that the term 'real party in interest' have its expansive common-law meaning." *AIT*, 897 F.3d at 1351. According to the Federal Circuit:

> Determining whether a non-party is a "real party in interest" demands a flexible approach that takes into account both equitable and practical considerations, with an eye toward

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

> determining whether the non-party is a clear beneficiary that
> has a preexisting, established relationship with the petitioner.
> Indeed, the Trial Practice Guide . . . suggests that the agency
> understands the "fact-dependent" nature of this inquiry,
> explaining that the two questions lying at its heart are whether a
> non-party "desires review of the patent" and whether a petition
> has been filed at a nonparty's "behest."

*Id.* (quoting Trial Practice Guide, 77 Fed. Reg. at 48,759); *accord*
Consolidated Trial Practice Guide 13–14.

We must ask "who, from a 'practical and equitable' standpoint, will
benefit from the redress" that the *inter partes* review might provide. *AIT*,
897 F.3d at 1349 (quoting Trial Practice Guide, 77 Fed. Reg. at 48,759);
*accord* Consolidated Trial Practice Guide 14–15. In addition, we must
"inquire whether RPX can be said to be representing [Salesforce's] interest
after examining its relationship with Salesforce." *AIT*, 897 F.3d at 1353; *see
also Ventex*, Paper 152 at 8 (determining that Seirus was a real party in
interest, in part because the petitioner "Ventex represents Seirus's interests
in this proceeding").

As *AIT* explained, there is extensive support in the legislative history
for the traditional expansive common-law meaning of RPI, noting that there
is "nothing that suggests Congress intended for the term 'real party in
interest' to have a meaning that departs from its common-law origins.
Instead, it reveals that Congress intended for it to have an expansive
formulation." 897 F.3d at 1350. To that end, a 2011 House Report on the
AIA explains that the RPI and privity requirements are designed to prevent
parties "from *improperly mounting multiple challenges* to a patent or
initiating challenges after filing a civil action challenging the validity of a

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

claim in the patent." *Id.* (quoting H.R. Rep. No. 112-98, at 48

(2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 78 (emphasis added by the

Federal Circuit). The report also "makes clear that Congress 'recognizes

the importance of quiet title to patent owners to ensure continued investment

resources.'" *Id.* (quoting H.R. Rep. No. 112-98, at 48 (2011)). Likewise,

the RPI and privity requirements are designed to ensure that AIA trials

"are *not to be used as tools for harassment*" of patent owners or to permit

"*repeated litigation and administrative attacks* on the validity of a

patent." *Id.* (quoting H.R. Rep. No. 112-98, at 48 (emphases added by the

Federal Circuit)).

> *AIT* concluded that the legislative history reveals "two related
>
> purposes" for the RPI and privity requirements:

> (1) to ensure that third parties who have sufficiently close
> relationships with IPR petitioners would be bound by the
> outcome of instituted IPRs under § 315(e), the related IPR
> estoppel provision; and (2) to safeguard patent owners from
> having to defend their patents against belated administrative
> attacks by related parties via § 315(b).

*Id.* (quoting Senators Kyl and Schumer). In other words, the RPI and privity

requirements were designed to avoid harassment and preclude parties from

getting "two bites at the apple" by allowing such parties to avoid either the

estoppel provision or the time-bar. A member organization having a

business model such as RPX gives rise to both concerns. [8]

---

[8] The Federal Circuit analogized to Federal Rule of Civil Procedure 17(a),
titled "Real Party in Interest," which was codified to: "protect the defendant
against a subsequent action by the party actually entitled to recover, and to

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

## IV.    FACTUAL FINDINGS

The Federal Circuit remanded these cases to us, with the foregoing principles in mind, to (1) "consider[] the full range of relationships under § 315(b) and the common law that could make Salesforce a real party in interest with respect to this IPR"; and (2) "properly appl[y] the principles articulated in the Trial Practice Guide" regarding RPI. *AIT*, 897 F.3d at 1358. In doing so, we "consider the evidence that justifies and detracts from [our] conclusions." *Id.*

On remand, at the Federal Circuit's direction, we further examine (a) "RPX's business model," including "'the nature of' RPX as an entity"; (b) "RPX's explanation of its own interest in the IPRs"; (c) "whether, and under what circumstances, RPX takes a particular client's interests into account when determining whether to file IPR petitions"; (d) Salesforce's relationship with RPX; (e) Salesforce's "interest in" and "benefit from" the IPRs; (f) "whether RPX can be said to be representing that interest"; (g) "whether Salesforce actually 'desire[d] review of the patent[s]'"; and (h) the relevance of "the fact that Salesforce and RPX had overlapping Board members." *Id.* at 1351, 1353–54. We also address evidence regarding communications between RPX and Salesforce. *Id.* at 1355. With these things in mind, we take "into account both equitable and practical considerations, with an eye toward determining whether the non-party

_____

ensure generally that the judgment will have its proper effect as res judicata." *Id.* at 1348.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

[Salesforce] is a clear beneficiary that has a preexisting, established relationship with the petitioner." *Id.* at 1351.

The findings of fact below focus on these areas, highlighting facts relevant to our analysis of whether Salesforce should have been named as an RPI or privy in these proceedings.

## A.   RPX's Business Model

According to the Federal Circuit:

[g]iven that one of RPX's publicly stated business solutions is to file IPRs where its clients have been sued by non-practicing entities to "reduce expenses for [its] clients," J.A. 31, and that any IPR petitions Salesforce might have wanted to file would have been time-barred, this evidence at least suggests that RPX may have filed the three IPR petitions, in part, to benefit Salesforce.

*AIT*, 897 F.3d at 1353.   Because the court faulted the Board for "its decision not to examine critically . . . RPX's business model," *id.* at 1354, we do so now in light of the court's guidance.   Among other things, we consider "the nature of the entity filing the petition."   *Id.* (quoting Trial Practice Guide, 77 Fed. Reg. at 48,760; *accord* Consolidated Trial Practice Guide 17–18).

RPX states that its "mission is to transform the patent market by establishing RPX as the essential intermediary between patent owners and operating companies."   Ex. 2008[9], 4.   RPX's core service is defensive patent aggregation.   *Id.* at 3 (The RPX 2013 Annual Report stating: "The core of

---

[9] Citations to Exhibit 2008 are to the pagination at the bottom center of each page.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

our [patent risk management] solution is defensive patent aggregation . . . ."); *see also id.* at 27 ("We sell our patent risk management solution on a standalone basis as our core business product."). RPX's Form Membership Agreement is directed to these services. *See* Ex. 1074.

RPX "acquire[s] patent assets that are being or may be asserted against [its] current and prospective clients. [It] then provide[s its] clients with a license to these patent assets to protect them from potential patent infringement assertions." Ex. 2008, 3. "[E]ach client generally receives a license to the majority of [RPX's] patent assets." *Id.* at 27; *see also* Ex. 1074 § 2 ("License and Membership Rights" section of RPX's Form Membership Agreement). Mr. Chuang[10] testifies that RPX has a "vast portfolio of patent assets" and that, in a typical membership year, RPX members receive a license under "thousands of patents." Ex. 1073 ¶¶ 5, 31.

As part of the core defensive patent aggregation service, RPX "provide[s] extensive patent market intelligence and data to [its] clients." Ex. 2008, 3; *see* Ex. 1073 ¶ 8; Ex. 1090 ¶ 32; Ex. 1095, 116:6–117:1 (Chuang deposition). This market intelligence service also is referenced on

---

[10] RPX provides sworn testimony of Mr. William M. Chuang (Ex. 1019; Ex. 1073), who is Vice President of Client Relations at RPX (*see* Ex. 1019 ¶ 1), and Mr. Steve W. Chiang (Ex. 1090), who is Senior Director and IP Counsel at RPX (*see* Ex. 1090 ¶ 1). AIT argues that "[a]ttorney argument, whether in brief or in a declaration, is not evidence upon which the Board can rely." Remand Opp. 7. AIT notes that "[b]oth of the RPX witnesses – [Mr.] Chuang and [Mr.] Chiang] -- are attorneys." *Id.* at 11. We disagree that Mr. Chuang's and Mr. Chiang's testimony constitutes improper attorney argument. Both have submitted sworn fact testimony as to factual issues at play in this proceeding.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

a page titled "Client Relations" on RPX's website, which states, "[o]ur insight into the patent market allows RPX to serve as an extension of a client's in-house legal team to better inform its long-term IP strategy." Ex. 2006. As an example, RPX's website describes "client briefings to discuss [RPX's] assessments of open market opportunities, relevant litigation landscape activity, key players and trends, as well as to provide specific technical and strategic analyses on potential threats." *Id.*

RPX sells its core business solution, i.e., defensive patent aggregation, as a subscription-based service. Ex. 2008, 3. The "annual subscription fee is based on a published fee schedule applicable to all . . . clients that commence their membership while that fee schedule is in effect." *Id.* at 10. "The subscription fee is typically based on a fee schedule that is tied to a client's revenue or operating income and remains in place over the life of a membership." *Id.* at 3.

Additionally, as the Federal Circuit noted, RPX's SEC filing states that "one of [RPX's] 'strategies' for transforming the patent market is 'the facilitation of challenges to patent validity,' one intent of which is to 'reduce expenses for [its] clients.'" *AIT*, 897 F.3d at 1351.

As of the date of Mr. Chuang's testimony (January 4, 2019), RPX had filed fifty-seven IPR petitions. Ex. 1073 ¶ 32. Mr. Chuang testifies that RPX provides validity challenges on behalf of a client only if that client specifically, explicitly, and separately contracts for such services. *Id.* ¶ 10. He further testifies that "the prospect of an RPX-filed IPR in the event a client is sued by an NPE would not reasonably be a 'key reason' for the client to pay membership fees to RPX." *Id.* ¶ 32. We find that these

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

statements conflict with statements made by RPX in its marketing materials outside of litigation.   As AIT points out, RPX's website provides credible, contemporaneous evidence as to its belief that its service helps "each RPX client avoid[] more in legal costs and settlements each year than they pay RPX in subscription fees."  Remand Opp. 24 (citing Ex. 2007 (website bearing copyright date of 2008–2014)).  RPX's website describes ways in which its defensive patent aggregation services also may "help [clients] after a litigation has begun."  Ex. 2007 (RPX website page, titled "Why Join").   In particular, RPX advertises that it:

> is uniquely able to help members of our client network quickly and cost-effectively extricate themselves from [non-practicing entity ("NPE")] lawsuits.  Our central, trusted position in the market enables us to negotiate with plaintiffs, *acquire a license* to the litigated patent and *selectively clear our clients from the suit*.

*Id.* (emphases added).  The webpage further indicates that as of "June 30, 2014, [RPX] had achieved more than 575 dismissals for [its] clients in 74 litigations" by acquiring such licenses.  *Id.*; *see also* Ex. 1073 ¶ 31 (Mr. Chuang testifying that, as of the time of his testimony (January 4, 2019), "RPX has secured dismissals of 1,286 lawsuits against RPX clients, through acquisition of the patent-in-suit or a license with sublicensing rights.").

Moreover, on RPX's website, there is a statement that "RPX's interests are 100% aligned with those of our clients."  Ex. 2015 (RPX website "FAQ" page).  According to RPX's SEC filings, this "alignment of interests" results from the fixed "pricing structure and [the] guarantee never to assert [its] patent assets against" them.  Ex. 2008, 6; *see also id.*

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

("*Alignment of Interests With Our Clients* – Our business model aligns our interests with those of our clients. We have not asserted and will not assert our patents. We generate revenue from subscription fees that are based on our published fee schedule rather than the value of the patent assets we acquire or the potential costs associated with defending against assertions related to our patent assets. As a result, we have relationships with our clients that are based on trust, enabling them to communicate with us without concern that the information shared will be used against them.").

At bottom, the evidence demonstrates that patent aggregation, licensing, and filing IPRs to protect its clients work together to protect its members from the threat of patent litigation and are all important components of RPX's core subscription business. We therefore find that RPX filed these IPRs to benefit its member Salesforce, supporting a conclusion that Salesforce is an RPI in these proceedings.

### B.    RPX's Interest in the IPRs

The Federal Circuit faulted the Board's "decision to accept at face value RPX's explanation of its own interest in the IPRs." *AIT*, 897 F.3d at 1354. Therefore, we address expressly the record evidence in this regard. In doing so, we "probe the extent to which Salesforce—as RPX's client— has an interest in and will benefit from RPX's actions, and inquire whether RPX can be said to be representing that interest after examining its relationship with Salesforce." *Id.* at 1353.

According to RPX, its primary motivation for filing these IPRs was "reputational benefits to better position RPX's core patent aggregation

15

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

business by refuting accusations that RPX was 'too close to NPEs' and 'didn't have the stomach' to challenge facially invalid NPE patents like AIT's." Pet. Remand Br. 10–11 (citing Ex. 1095, 97:4–98:12; Ex. 1019 ¶¶ 10, 41; Ex. 1090 ¶¶ 23–25). RPX further contends that "[d]emonstrating a history of successfully invalidating patents via IPR also enhances RPX's leverage in negotiating reasonable acquisition fees with NPEs." *Id. at* 11 (citing Ex. 1019 ¶ 9); *see also* Ex. 1019 ¶ 9 (Mr. Chuang testifying that "RPX also files IPRs to address the irrational pricing expectations of owners of patents with serious validity issues").

We can accept RPX's representation that filing IPRs against patents it believes are weak improves its negotiating position. This fact, however, is not at odds with our finding above that it also files IPRs to protect its clients. Indeed, challenging patents asserted against its clients—as the evidence discussed above suggests—serves this objective as well. For example, RPX asserts that of the fifty-seven IPRs it has filed, at least ten have challenged patents that were not actively asserted against any RPX client. Ex. 1073 ¶ 28 (discussing these cases); *see* Pet. Remand Br. 41. But, conversely, that necessarily means that the other forty-seven IPRs were challenging patents actively asserted against its clients.[11] Moreover, we observe from RPX's mandatory disclosures that all but one of the fifty-seven IPRs challenged a patent involved in district court litigation. Even when not asserted against its clients, the evidence suggests that RPX selects patents to challenge, at

---

[11] All of RPX's fifty-seven petitions, and patents challenged therein, are a matter of public record.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

least in part, to reduce risk to existing clients. Finally, we observe that RPX makes no suggestion that it had any risk of liability for infringement of the patents at issue. As the Federal Circuit indicated in *AIT*, there is not necessarily "only one interested party in each case," and *inter partes* review may be barred "even where the petitioning party might separately have its own interest in initiating an [*inter partes* review]." *AIT*, 897 F.3d at 1347.

We therefore find that RPX filed these IPRs to benefit its existing clients, supporting a conclusion that Salesforce is an RPI in these proceedings.

### C. Whether RPX Takes Client Interests into Account when Filing IPRs

Relatedly, the Federal Circuit in *AIT* instructed us to consider "whether, and under what circumstances, RPX takes a particular client's interests into account when determining whether to file IPR petitions." *AIT*, 897 F.3d at 1353. As an initial matter, RPX contends that it "does not file IPRs in its own name to benefit *any* client(s)." Pet. Remand Br. 40 (citing Ex. 1073 ¶¶ 30, 34). Rather, when RPX does file an IPR on behalf of a particular client, RPX requires that the client be named as a co-filer of the IPR petition. *See* Ex. 1073 ¶ 11; Ex. 1019 ¶ 19; Ex. 2018 (RPX Best Practices). According to RPX, that has happened only twenty-one times, and not in this case. Ex. 1073 ¶ 30.

Even assuming these representations are true, they are of little relevance, because, as the Federal Circuit noted, even if RPX does not file IPRs to benefit a particular client, RPX admits that it takes its clients'

17

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

interests into account. *AIT*, 897 F.3d at 1351–52. The Federal Circuit also noted that there was no dispute that RPX decided to file IPR petitions challenging AIT's patents in accordance with the procedures set forth in its "Best Practices Guide," *see id.* at 1341, and not because Salesforce told it to do so. Instead, the issue is whether the Best Practices Guide is one in which RPX "intentionally operates its business to circumvent the Board's RPI case law." *Id.* at 1343 (internal quotation marks and brackets omitted). We find that it does.

RPX implemented the Best Practices Guide in 2014 as a "systematic process for identifying potential IPR candidates and preparing IPRs." Ex. 1019 ¶ 14; Ex. 2018. The selection criteria include, for example, the number of patents asserted, prior validity challenges and the likelihood of a new validity challenge by another entity, the number of current and potential RPX clients in suit, the number of other companies in suit, the likelihood of assertion against additional companies, the likely strength of invalidity arguments, and potential reputational benefits. *See* Ex. 2018.

Significantly, the Best Practices Guide was created shortly "after receiving and studying decisions denying institution in RPX's IPRs against VirnetX," where RPX had been found to be an RPI. Ex. 1090 ¶ 16. As the Federal Circuit noted, these circumstances alone "cast additional doubt on the company's motivations." *AIT*, 897 F.3d at 1353 n.4. Mr. Chiang testifies that one of the goals of the Best Practices Guide was to "ensure that RPX would accurately name all [RPIs]" (Ex. 1090 ¶ 16) and that following the Best Practices "ensur[es] that RPX would comply with the law on RPI

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

and accurately name all RPIs in all future petitions RPX filed" (*id.* ¶ 18).  In

this regard, Mr. Chiang testifies that, regarding RPIs:

> [t]he set of best practices we developed broadly (a) disallow
> RPX to take into account any suggestion for filing a validity
> challenge from any third party if that party would not agree to
> be named an RPI, (b) disallow RPX to discuss forthcoming
> validity challenges (e.g., by discussing strategy, feedback, or
> otherwise) with third parties who are not named RPIs, and
> (c) ensure that no unnamed third party could exert control over
> any aspect of RPX's validity challenge proceedings.

*Id.*

By its own admission, therefore, RPX created the Best Practices

Guide to avoid clients being found to be RPIs by circumventing the Board's

case law in the *VirnetX* decisions,[12] but nonetheless take into account the

number of current and potential RPX clients in suit.  *See* Ex. 2018.  As noted

above, the vast majority of RPX petitions, forty-seven out of fifty-seven,

have involved patents asserted against its clients in district court.

The Federal Circuit's decision in *AIT* also references statements in

RPX's SEC filing regarding "the facilitation of challenges to patent validity"

and "reduc[ing] expenses for [RPX's] clients," stating that this could "imply

that RPX can and does file IPRs to serve its clients' financial interests."

*AIT*, 897 F.3d at 1351–52 (second alteration in original).  Mr. Chuang

testifies that these statements in RPX's SEC filings (Ex. 2008, 4) refer to

aiding a ***client's own*** validity challenge, for example by providing

---

[12] *RPX Corp. v. VirnetX Inc.*, IPR2014-00171, Paper 57 (PTAB July 14,
2014); *RPX Corp. v. ParkerVision*, IPR2014-00946, Paper 25 (PTAB Jan. 8,
2015).

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

potentially relevant prior art, and does not refer to RPX filing an IPR on the client's behalf. Ex. 1073 ¶¶ 11, 34. This testimony, however, is unsupported by record evidence, even after Mr. Chuang's testimony on remand. *See AIT*, 897 F.3d at 1351 (noting that "SEC filings reveal that one of [RPX's] 'strategies' for transforming the patent market is 'the facilitation of challenges to patent validity,' one intent of which is to 'reduce expenses for [RPX's] clients.' J.A. 31" (second alteration in original)). Indeed, the statement indicates that such challenges are part of a broad suite of "solutions" and "services" that "reduce expenses for our clients."[13]  At bottom, as the Federal Circuit stated, intentionally avoiding discussion about a forthcoming IPR against its client for the sole purpose of avoiding having to name the client as an RPI, yet challenging patents asserted against its client, suggests a "willful blindness" strategy, *see id.* at 1355, supporting a conclusion that Salesforce is an RPI in these proceedings.

### D.  Salesforce Relationship with RPX

"[W]hen it comes to evaluating the relationship between a party bringing a suit and a non-party, the common law seeks to ascertain who, from a 'practical and equitable' standpoint, will benefit from the redress that the chosen tribunal might provide. *See* Trial Practice Guide, 77 Fed. Reg. at

---

[13] The SEC filing indicates that one part of RPX's strategy is: "*Providing Complementary Solutions* – We believe we can offer complementary solutions that further mitigate patent risks and expenses for operating companies, including the facilitation of challenges to patent validity, coordinating prior art searches, and other services intended to improve patent quality and reduce expenses for our clients." Ex. 2008, 4.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

48,759." *AIT*, 897 F.3d 1349. We do so here "with an eye toward determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner." *Id.* at 1351.

Salesforce executed its Membership and License Agreement with RPX on ███████████. Ex. 1020 (Salesforce membership agreement); Ex. 1073 ¶ 4. Salesforce's membership fees pursuant to the agreement are calculated annually based on the Rate Card ██████████████ ███████. Ex. 1020 § 3.1; Ex. 1073 ¶ 6.

AIT contends that Salesforce's "substantial sums" paid as membership fees, and the ████████ payment thereof, "is unusual." Remand Opp. 2. We agree the sums are substantial,[14] but there is no persuasive evidence that the payments were "unusual." Nonetheless, the substantial fees support AIT's theory that RPX's core business model is premised on taking actions that will support its clients and potential clients, which includes acting as their legal team, reducing litigation costs, and sometimes clearing them from a lawsuit. *See* Ex. 2007 ("Our central, trusted position in the market enables us to negotiate with plaintiffs, acquire a license to the litigated patent and selectively clear our clients from the suit."). In other words, the sums are paid to advance Salesforce's interests.

RPX presents evidence that Salesforce has never contracted with RPX for insurance services (Ex. 1073 ¶ 24) or for any validity challenges, such as

---

[14] Salesforce paid its initial fee of ██████████████; made additional payments of ████████████████████████████████████████ *See* Ex. 1073 ¶¶ 17–18.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

*inter partes* reviews (*id.* ¶ 16).  Even if we accept that representation, such evidence, as discussed above and below, in light of the entirety of the record before us, fails to establish that Salesforce is not a real party in interest of RPX in relation to these IPRs.

RPX argues that its relationship with Salesforce is "entirely unrelated to [these] IPRs," and that Salesforce only contracted for RPX's "core defensive patent aggregation service."  Pet. Remand Br. 1, 6–8, 23–26.  As discussed above, however, part of RPX's core service requires it to understand its clients' patent litigation risk profile.  Here, RPX was aware of the suit against Salesforce and would have understood when filing its IPR petitions that Salesforce was a time-barred defendant in relation to the same patents challenged in the IPRs.  *Id.* at 43 (citing Ex. 1019 ¶¶ 43, 47), 28–31.  One of the most important benefits of Salesforce's membership in RPX is for RPX to assist Salesforce with obtaining or clearing patent rights.  Therefore, even without knowledge of the Salesforce litigation or specific communications about the patents at issue, RPX would be aware of which patents pose a threat to its clients.

In addition, as discussed in more detail below, RPX's own arguments and evidence show that Salesforce and RPX communicated regularly regarding matters involving the patents challenged in these IPRs.  *Id.* at 28–31 (citing evidence showing communications between Salesforce and RPX regarding relevant district litigation and CBM petitions involving the challenged patents, right up until RPX filed its IPR petitions); *see also* Remand Opp. 18–26.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

In sum, evidence indicates that, from a "'practical and equitable' standpoint," *see AIT*, 897 F.3d at 1349 (quoting Trial Practice Guide, 77 Fed. Reg. at 48,759), Salesforce's relationship with RPX was based, at least in part, on efforts to address the same patents asserted against Salesforce by AIT in litigation and also challenged by RPX in these IPRs, to the benefit of Salesforce, supporting a conclusion that Salesforce is an RPI in these proceedings.

### E.   Salesforce's Interest in and Benefit from the IPRs

"[T]he focus of the real-party-in-interest inquiry is on the patentability of the claims challenged in the IPR petition, bearing in mind who will benefit from having those claims canceled or invalidated." *AIT*, 897 F.3d at 1348. As discussed above, Salesforce and other RPX members benefit from RPX's business model to "extricate themselves from [non-practicing entity ("NPE")] lawsuits," "to negotiate with plaintiffs, acquire a license to the litigated patent and selectively clear our clients from the suit," and "to file IPRs where its clients have been sued by non-practicing entities to 'reduce expenses for [its] clients.'" Ex. 2007, *AIT*, 897 F.3d at 1353. Here, Salesforce has an additional benefit, as it unsuccessfully attempted to

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

challenge the patents at issue in a prior AIA proceeding and any further challenges would be time-barred under § 315(b).

Salesforce was served with a complaint alleging infringement of the challenged patents on November 20, 2013. Ex. 2003; *Applications in Internet Time LLC v. Salesforce.com, Inc.*, No. 3:13-cv-00628 (D. Nev.)[15].

Salesforce previously filed petitions for covered business method ("CBM") patent review of the challenged patents in August 2014. *See Salesforce.com, Inc. v. Applications in Internet Time LLC*, CBM2014-00162, Paper 2 (filed Aug. 1, 2014); *Salesforce.com, Inc. v. Applications in Internet Time LLC*, CBM2014-00168, Paper 2 (filed Aug. 4, 2014). These petitions were denied on February 2, 2015. CBM2014-00162, Paper 11; CBM2014-00168, Paper 10.

Arguments and evidence submitted by RPX indicate that RPX determined on March 19, 2015, about five weeks after the Board denied Salesforce's CBM petitions, that it would file the IPR petitions. Pet. Remand Br. 30 (citing Ex. 1090 ¶¶ 33–35); *AIT*, 897 F.3d at 1355, n.6. RPX then filed the instant Petitions five months later on August 17, 2015. *See* Paper 4 (Notice of Filing Date Accorded). It is undisputed that Salesforce was time-barred under 35 U.S.C. § 315(b) from filing these Petitions as of November 2014. As discussed below, we agree with Patent Owner that, because of the pending litigation, the invalidation of the challenged patents would provide a benefit to Salesforce, supporting a conclusion that

---

[15] According to Patent Owner's counsel, the pending litigation has been stayed pending resolution of these *inter partes* review proceedings. *See* Remand Tr. 41:15–17, 64:3–5.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

Salesforce is an RPI in these proceedings.  *See* Remand Opp. 8–9; *see also*
*AIT*, 897 F.3d at 1355 ("the evidence submitted indicates [RPX]'s
understanding that the very challenges to validity included in the IPR
petitions were challenges Salesforce would like to have made if not time-
barred from doing so").

### F.    Whether RPX Is Representing Salesforce's Interest

As the Federal Circuit stated, "a nonparty to an IPR can be a real party
in interest even without entering into an express or implied agreement with
the petitioner to file an IPR petition." *AIT*, 897 F.3d at 1354.  While there is
no persuasive evidence that Salesforce paid RPX for filing these specific
petitions for *inter partes* review, *see* Ex. 1019 ¶ 20 (Mr. Chuang testifying
that "Salesforce did not fund the AIT IPRs."), for the reasons discussed
above, such payment is not necessary to create an RPI relationship, given the
significant relationship between Salesforce and RPX and the strong
economic incentives on RPX to represent Salesforce's interests.

In view of RPX's own assertions and evidence regarding its
relationship with Salesforce, it stands to reason that RPX inevitably
represented Salesforce's interests, and provided benefit to Salesforce, by
filing IPR petitions challenging the same patents asserted against Salesforce
in infringement litigation, in a manner that Salesforce itself could not do as a
§ 315(b) barred party, and previously failed to do via its own CBM petitions.
Pet. Remand Br. 1, 6–7, 28–31, 43.  RPX's own "reputational benefits"
would only materialize if RPX created a "credible validity challenge threat"
in relation to the litigation involving Salesforce, a defendant accused of

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

infringement of the patents at issue, or its other clients. *Id.* at 37. Evidence shows that RPX became such a "threat" in relation to the relevant patents by filing the current IPR petitions to Salesforce's benefit. *Id.* (citing, for example, Ex. 1019 ¶¶ 9, 43).

The Federal Circuit in *AIT* pointed to a statement on RPX's website that RPX "help[s] paying members 'extricate themselves from NPE lawsuits,'" indicating that this fact, along with others, could "imply that RPX can and does file IPRs to serve its clients' financial interests." *AIT*, 897 F.3d at 1351 (citing Ex. 2007) (brackets omitted). We agree. RPX contends that "[i]f RPX's goal had been to extricate Salesforce from litigation, RPX would have attempted to acquire rights under the AIT Patents for RPX's membership, as RPX has done in **over 1,200 other cases**." Pet. Remand Br. 42 (citing Ex. 1073 ¶ 38; Ex. 1090 ¶ 24). But that is not the only way in which RPX can extricate Salesforce from litigation. It can, as it did here, file IPR petitions and challenge the patents being asserted. That a member organization exists in part to file IPR petitions against patents being asserted or threatened to be asserted against its members is indicative of an RPI relationship between the organization and its members. That is the case here, as between RPX and Salesforce.

G.   *Whether Salesforce actually "desire[d] review of the patent[s]"*

The Federal Circuit points out that "the Trial Practice Guide, on which the Board relied, suggests that the agency understands the 'fact-dependent' nature of this inquiry, explaining that the two questions lying at its heart are

26

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

whether a non-party 'desires review of the patent' and whether a petition has been filed at a nonparty's 'behest.' Trial Practice Guide, 77 Fed. Reg. at 48,759." *AIT*, 397 F.3d at 1351.

Here, there is no direct evidence of record with respect to Salesforce's specific interest (or lack thereof) in these IPRs. *Cf.* Remand Tr. 37:3–39:11, 45:6–46:12 (discussions with counsel for AIT regarding the lack of evidence directly from Salesforce). Nonetheless, as the Federal Circuit notes, RPX did not testify that it "*actually believed* Salesforce would have reacted negatively to RPX's filing of IPR petitions challenging" the patents it was sued on. *AIT*, 397 F.3d at 1355. The communications discussed below suggest that the AIT litigation was a frequent topic of discussion between RPX and Salesforce. Even if, as RPX contends, it did not have direct knowledge of Salesforce's desire for IPRs to be filed, it appears that was in part because RPX would not let them talk about the matter. *See* Ex. 1090 ¶ 34. In any event, the patents were asserted against Salesforce, an RPX member, and Salesforce had just failed to obtain institution of CBM petitions against the same patents. This is persuasive evidence that Salesforce would have been interested in Board review of the patentability of the claims in the patents asserted against it in litigation, supporting a conclusion that Salesforce is an RPI in these proceedings.

## H.   *Overlapping Board Member*

Among the other fact inquiries, the Federal Circuit directed us to consider "that Salesforce and RPX had overlapping members on their respective boards of directors." *AIT*, 897 F.3d at 1354.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

The evidence of record shows that Mr. Sanford Robertson served as an outside and independent director of Salesforce from 2003 to present (the time of filing of the parties' briefing) and of RPX from 2011 to 2018. Ex. 1068, 8 (Salesforce 2018 annual meeting notice), Ex. 1069, 8–9, 11 (RPX 2016 proxy statement); Ex. 1066 ¶¶ 9–12 (Lipshaw declaration). According to the testimony of Jeffrey M. Lipshaw, [16] an "outside director" is "someone who is not otherwise employed by the corporation" and "would have no other role in the management" of the company. Ex. 1066 ¶ 11. Further, according to Mr. Lipshaw's testimony, an "independent director" is someone that "has no other business relationships with the corporation that would be generally understood to affect the independence of that director's judgment while serving on the board." *Id.* ¶ 12. Mr. Lipshaw testifies that "[t]o infer any kind of corporate relationship between two otherwise unrelated corporations . . . merely because one individual sits on each of their boards of directors is, quite simply, wrong." *Id.* ¶ 16.

Despite AIT's pre-institution assertion that Mr. Robertson "has the opportunity to exert significant but hidden control over this proceeding" (Prelim. Resp. 12), there is no conclusive evidence of record that supports this theory. For purposes of the analysis here, in the absence of evidence to the contrary, we find that Mr. Robertson's role on the board of RPX and

---

[16] Mr. Lipshaw was "retained by RPX . . . to render an expert opinion in the above-captioned matters on the legal and practical import, if any, of an individual sitting as a director on the boards of directors of two or more otherwise independent companies with no corporate relationship." Ex. 1066 ¶ 1; *see also* Ex. 1065 (Mr. Lipshaw's CV). AIT did not depose Mr. Lipshaw or present conflicting expert testimony.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

Salesforce does not weigh for or against finding that Salesforce is an RPI in these proceedings.

## I.   Communications between RPX and Salesforce

There is extensive record evidence of communications between RPX and Salesforce.  *See* Ex. 2022[17]; *see also* Remand Opp. 19–26.  The Federal Circuit points out that "timing and content" of these communications "indicates [RPX's] understanding that the very challenges to validity included in the IPR petitions were challenges Salesforce would like to have made if not time-barred from doing so."  *AIT*, 897 F.3d at 1355.

AIT contends that "RPX and Salesforce were in close communication from the start of the Salesforce Litigation."  Remand Opp. 19; *see also id.* at 20–25 (presenting timelines of communications).  AIT contends that "[t]he only reasonable inference is that RPX and Salesforce were communicating about RPX's progress in preparing IPR petitions."  *Id.* at 23.

Regarding communications with Salesforce, Mr. Chuang testifies that "RPX had no communication with Salesforce whatsoever regarding the filing of IPR petitions against the AIT Patents before the AIT IPRs were filed."  Ex. 1019 ¶ 20.  He continues, noting that "in the normal course of RPX's business, . . . RPX communicates with clients about NPE litigations," for example, to "share[] intelligence and insight regarding new litigations

---

[17] Exhibit 2022 is a "spreadsheet showing the names, dates, locations and times of all meetings and communications between employees of Salesforce in its capacity as an RPX client and employees of RPX in its capacity as a service provider, or their attorneys, after the Salesforce Litigation began."  Remand Opp. 22.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

with its clients." *Id.* ¶ 22. Mr. Chuang testifies that all communications between RPX and Salesforce relating to the Salesforce Litigation were this type of communication. *See id.* ¶¶ 22–28; *see also id.* ¶ 29 ("None of the communications between RPX and Salesforce regarding the AIT-Salesforce Litigation involved any discussion of the possibility of RPX filing a validity challenge to any of the AIT Patents."); *see* Pet. Remand Br. 27–33 (discussing communications).

Even if RPX did not directly discuss filing an IPR, the discussions of litigation are naturally tied to possible defenses, of which an IPR challenge is one. The discussion of pending litigation by AIT against Salesforce by RPX, who subsequently filed an IPR, weighs in favor of finding that Salesforce was an interested party. Such communications need not expressly involve a request by Salesforce for RPX to file an IPR petition: "The evidence might actually indicate that RPX worked to ascertain, with a strong degree of confidence, its client's desires, while taking last-minute efforts to avoid obtaining an express statement of such desires." *AIT*, 897 F.3d at 1355. As discussed above, RPX's business model requires RPX to ascertain patent risks to its clients. Without doing so, it could not acquire relevant patents on its clients' behalf, or, as it did here, file an IPR petition.

## V.    ANALYSIS

### A.    *Whether Salesforce Should Have Been Identified as a Real Party In Interest*

There is no dispute that RPX and Salesforce have a pre-existing relationship. *See supra* Section II.D. It also is clear that Salesforce, as a

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

defendant in the underlying litigation, has an interest in and will benefit from an invalidation of the claims of the challenged patents. *See supra* Section II.E. and F. The inquiry does not end there, however. We agree with RPX that, if these facts alone were sufficient to require a finding that Salesforce is an RPI to this proceeding, the Federal Circuit would not have remanded this case for additional fact finding. *See* Remand Reply 1 ("The Federal Circuit did not *reverse* the Board's finding that Salesforce is not an RPI.").

The Federal Circuit in *AIT* instructed that we must consider "whether RPX can be said to be representing [Salesforce's] interest [in invalidating the claims of the challenged patents] after examining its relationship with Salesforce." *AIT*, 897 F.3d at 1353. Although there is no persuasive evidence that Salesforce expressly appointed RPX as its representative regarding these specific IPRs, there is substantial evidence that RPX had a strong financial incentive to serve Salesforce's needs—expressed or not— and those of its other current and potential future clients. *See supra* Section II.D.-F.

As noted above, we also recognize that "a nonparty to an IPR can be a real party in interest even without entering into an express or implied agreement with the petitioner to file an IPR petition." *AIT*, 897 F.3d at 1354. The evidence strongly suggests that RPX was representing Salesforce's interests in filing these IPR proceedings. Most critically, Salesforce paid RPX to reduce Salesforce's patent litigation exposure, and RPX filed these IPRs despite having no apparent risk of infringement liability itself. In such circumstances, "equitable and practical considerations" point clearly towards RPX and its members sharing a

31

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

common interest in these proceedings.  To find otherwise would effectively give IPR petitioners additional chances to challenge a patent through a member organization such as RPX, which is paid with the expectation that it might initiate an IPR against a patent that poses a threat to a member, without regard to statutory bars or estoppels.  That is not to say that arrangements in which an entity would benefit from having another entity file a petition on its behalf—or on the behalf of it and other similarly-situated entities—is impermissible.  But all such entities should be named as RPIs to ensure that pertinent statutory time bars and estoppels apply.

The Federal Circuit also points us to our own Trial Practice Guide, which instructs us to consider "whether a petition has been filed at a nonparty's 'behest.'" *AIT*, 897 F.3d at 1351 (quoting Trial Practice Guide, 77 Fed. Reg. at 48,759); *accord* Consolidated Trial Practice Guide 14.  The evidence does not show that Salesforce explicitly requested that RPX file the IPR petitions or that Salesforce directly funded the IPRs.  *See* Ex. 1019 ¶ 45 (Mr. Chuang testifying that "RPX has no contractual obligation to Salesforce to file an IPR under any circumstances . . . and has no 'unwritten' or implicit understanding with Salesforce that RPX will do so." (internal citations omitted)).

Another "common consideration [in determining whether a non-party is an RPI] is whether the non-party exercised or could have exercised control over a party's participation in a proceeding."  Trial Practice Guide, 77 Fed. Reg. at 48,759 (citing *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008); Wright & Miller § 4451); *accord* Consolidated Trial Practice Guide 16.  None of the

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

record evidence shows that Salesforce directly exercised control over this proceeding.

As the Federal Circuit instructs, however, the RPI inquiry sweeps more broadly than requiring explicit evidence of request, funding, or control, instead requiring consideration of the factors discussed above. *AIT*, 897 F.3d at 1351 ("Depending on the nature of the parties' relationship, an entity can serve as an agent to a principal and file an IPR on the principal's behalf without the two formally agreeing that the agent will do so. *See* Restatement (Third) of Agency, § 1.01 cmt. c (Am. Law Inst. 2006) ('Thus, a person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment.')."). Even if Salesforce did not directly fund, control, or expressly request these IPR proceedings, the evidence regarding RPX's relationship with Salesforce indicates that RPX represented Salesforce's interests to Salesforce's benefit and, consequently, that RPX effectively acted as if Salesforce had requested action by RPX, when filing the IPR petitions. Pet. Remand Br. 1, 6–7, 28–31, 43. Evidence regarding the relationship and communications between Salesforce and RPX from January 2014 through May 2015, as well as RPX's "Best Practices" document, carry weight under the circumstances here. *Id.* at 15, 27–31 (citing, for example, Ex. 1019 ¶¶ 22–29, Ex. 1090 ¶¶ 32–34); Ex. 2018. Consistent with RPX's Best Practices Guide (Ex. 2018), for example, RPX, and presumably Salesforce, would have known that Salesforce could not directly fund, control, or expressly request the IPRs without immediately necessitating the listing of Salesforce as an RPI in the IPR cases, triggering

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

the § 315(b) bar, and derailing possible institution. Pet. Remand Br. 30–31
(citing Ex. 1090 ¶¶ 34–35). And, again, Salesforce ████████ member of
RPX for purposes that include obtaining or clearing patent rights. *See AIT*,
897 F.3d at 1357. The practical realities of such a purposeful business
relationship creates the danger of "two bites at the apple" that the statutes
were meant to prevent via the § 315(e) estoppel provisions and the § 315(b)
time bar.

When taking into account "equitable and practical considerations," we
consider Salesforce's relationship with RPX, RPX's business model, and
RPX's Best Practices Guide. *Id.* at 1351. Notably, as discussed above,
evidence of record as a whole in this regard indicates that RPX seeks to
avoid the § 315(b) bar for itself, and estoppel provisions under § 315(e) for
its members, by creating the appearance that RPX acts independently of its
clients' interests when filing IPR petitions. RPX works to create this
appearance even though interests of client members, such as Salesforce in
the instant case, are, in fact, of paramount importance to RPX and its
business. Ex. 2018; Pet. Remand Br. 14, 28–31, 37; Remand Opp. 8–10.

AIT alleges that RPX had an "apparent policy of willful blindness"
with respect to Salesforce's interest in these IPRs. Remand Opp. 2; *see AIT*,
897 F.3d at 1355–56. In this regard, AIT contends that RPX's "Best
Practices" policy is a "tool for willful blindness." Remand Opp. 10 & n.2.
We need not go so far. The policy was put in place to "ensur[e] . . .
compl[iance] with the law on RPI" (Ex. 1090 ¶ 18) immediately after RPX's
previous policies were proven not to ensure such compliance in the *VirnetX*
decisions. Even if RPX used the Board's *VirnetX* decisions as guidance to

34

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

ensure legally compliant practices going forward (*see* Ex. 1090 ¶ 16), however, the "legality" of the practice was based on the Board's "unduly restrictive" test for RPI. *See AIT*, 897 F.3d at 1339. Now, in light of the Federal Circuit's instructions, we must independently evaluate the policy that RPX put in place in an attempt to insulate its clients from being named as RPIs. We find that the significant economic incentives undergirding RPX's relationship with Salesforce and other clients suggest that it does for all of the reasons noted above. In short, as the Federal Circuit suggested, Salesforce is "a clear beneficiary that has a preexisting, established relationship with RPX," and is therefore a real party in interest. *AIT*, 897 F.3d at 1351.

AIT presents several additional arguments pursuant to which it contends Salesforce should be considered an RPI. Although the facts of this particular relationship are especially compelling given Salesforce's unsuccessful challenges to the patents at issue, it is the relationship between Salesforce as a member of RPX and the business model of RPX that primarily lead us to the result here. Thus, we need not address additional arguments in view of this and our conclusions above.

Having considered all the evidence of record and the parties' arguments, we find that RPX has not shown, by a preponderance of the evidence, that Salesforce is not an RPI in these proceedings. Accordingly, we terminate the prior Decisions instituting *inter partes* review, and deny *inter partes* review under 35 U.S.C. § 315(b).

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

B.    *Whether Salesforce and RPX are in Privity*

The Federal Circuit majority identified the pertinent issue on remand as "whether Salesforce is *either* a real party in interest *or* a privy of RPX for purposes of § 315(b)." *AIT*, 897 F.3d at 1358.  Section 315(b) explicitly imposes time bars on privies to "prevent successive challenges to a patent by those who previously have had the opportunity to make such challenges in prior litigation." *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1319 (Fed. Cir. 2018); *AIT*, 897 F.3d at 1360 (Reyna, J., concurring).  In his concurrence, Judge Reyna explained:  "privity is '[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property).'" *AIT*, 897 F.3d at 1359 (Reyna, J., concurring) (quoting Privity, Black's Law Dictionary (10th ed. 2014)).  When parties are in privity, under due process principles, "a litigant [is prohibited] from taking a second bite at the apple by relitigating the same case through the persona of another, its privy," and thus from "abusing the legal system." *Id.* (Reyna, J., concurring).  Likewise, "where privity is shown to exist between a party to a second case and a party who is bound by an earlier judgment, the party to the second case—who was not a party in the first action—is also bound by the earlier judgment. *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996)." *Id.* at 1360 (Reyna, J., concurring).

The Supreme Court has identified a number of circumstances where privity exists between two otherwise independent parties:  (1) where there is an agreement between the parties to be bound; (2) where there is a pre-existing substantive legal relationships between the parties; (3) where there

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

is adequate representation by the named party; (4) where the non-party had control of the prior litigation; (5) where the non-party acts as a proxy for the named party to relitigate the same issues; and (6) where special statutory schemes foreclose successive litigation by the non-party (e.g., bankruptcy and probate). *See Taylor*, 553 U.S. at 894–95; *AIT*, 897 F.3d at 1360 (Reyna, J., concurring). The Board explains in its Consolidated Trial Practice Guide that "privity" is even more expansive than RPI, "encompassing parties that do not necessarily need to be identified in the petition as a 'real party-in-interest.'" Consolidated Trial Practice Guide 14.

As with our RPI analysis above, the Board "evaluate[s] what parties constitute 'privies' in a manner consistent with the flexible and equitable considerations established under federal caselaw." *Id.* "This approach is consistent with the legislative history of the AIA, which indicates that Congress included 'privies' within the parties subject to the statutory estoppel provisions in an effort to capture 'the doctrine's practical and equitable nature,' in a manner akin to collateral estoppel." *Id.* at 15 (quoting 154 Cong. Rec. S9987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl)). [18] Thus, if Salesforce is an RPI, it typically will qualify as being in privity with RPX. And here, in particular, Judge Reyna writes that, "[w]hen viewed through the lens of the more expansive notion of privity, the record clearly

---

[18] As explained by the Federal Circuit, "the related concept of privity 'is an equitable rule that takes into account the "*practical situation*," and should extend to parties to transactions and other activities relating to the property in question.'" *AIT*, 897 F.3d at 1350 (emphasis added and omitted) (quoting Trial Practice Guide, 77 Fed. Reg. at 48,759 (citing 157 Cong. Rec. S1376 (Mar. 8, 2011) (statement of Sen. Kyl)).

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

suggests that RPX may have acted as a proxy on behalf of Salesforce." *AIT*, 897 F.3d at 1363.

As noted by the Federal Circuit, however, AIT only "hinted" at the issue of privity for the first time during the oral hearing at Board, and thereafter raised it in its Notices of Appeal to the Federal Circuit. *Id.* at 1344 n.1. As a general matter, the Board does not address new arguments or evidence raised by a party for the first time at an oral hearing, as explained in Board precedent, the Trial Practice Guide, and the Board's Hearings Guide. *See, e.g.*, *DePuy Synthes Prods., Inc. v. MEDIDEA, L.L.C.*, IPR2018-00315, Paper 29 at 2 (PTAB Jan. 23, 2019) (precedential) (stating "any testimony that Dr. Masini provides at the oral hearing would be new evidence and forbidden under our Trial Practice Guide."); Consolidated Trial Practice Guide 85–86. For this reason, we do not reach the question of whether Salesforce and RPX are in privity, even though our analysis of the facts regarding RPI strongly suggests that they are.

C.   *35 U.S.C. § 314*

Although not necessary to our analysis, it is worth noting that the circumstances before us also warrant exercise of our discretion under 35 U.S.C. § 314(a) to deny review of the Petitions, for the reasons discussed below. In particular, applying the analysis and reasoning set forth in *Valve Corporation v. Electronic Scripting Products, Inc.*, IPR2019-00062, Paper 11 (PTAB April 2, 2019) (precedential) and *General Plastic Industries Co. v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper 19 at 15–16 (PTAB Sept. 6, 2017) (precedential), we determine that the present Petitions are

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

follow-on petitions challenging the same claims of the same patents, they are filed by a party with a significant relationship to the original petitioner, Petitioner had the benefit of reviewing the original petitions and original Patent Owner preliminary responses, and Petitioner did not provide an adequate explanation for the extended period of time to file the Petitions. Therefore, the balance of the *General Plastic* factors weigh in favor of our denial of *inter partes* review.

Under the *General Plastic* analysis, we consider whether there is a significant relationship between the petitioners, as this factor weighs in favor of exercising discretion to deny institution of *inter partes* review. *General Plastic*, Paper 19 at 10. Salesforce previously filed petitions for CBM patent review of the '111 and '482 patents in August 2014, which were denied institution in early February 2015. Salesforce ▮ member of RPX, and has paid RPX substantial sums as membership fees ▮▮▮▮▮▮▮▮. Additionally, there were multiple communications between RPX and Salesforce employees in which the AIT-Salesforce Litigation involving these patents was mentioned or discussed.

The facts support that RPX's filings of these Petitions were strategically motivated, at least in part, to provide a second chance at invalidating the AIT patents to benefit Salesforce, which was time-barred from filing any additional petitions. RPX's insistence that it filed the Petitions only "to pursue its own interests" (Pet. Remand Br. 36; *id.* at 36–47), is insufficiently credible on this record. We consider the circumstances present here to implicate the abuse and strategic advantage concerns, between two significantly related parties, that our precedent permits us to

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

avoid by exercising our discretion to deny institution. Based on the facts presented, Salesforce and RPX are sufficiently related such that the complete overlap in the challenged claims and the significant relationship between RPX and Salesforce would favor denying institution under § 314(a) under our current precedent. *See Valve Corp.*, Paper 11 at 9.

### D.    Conclusion

For the reasons discussed above, we determine that Salesforce is an RPI in these proceedings. Accordingly, the Petitions are time-barred under 35 U.S.C. § 315(b).

## VI.    ORDER

Accordingly, it is

ORDERED that these *inter partes* reviews are *terminated*.

IPR2015-01750 (Patent 8,484,111 B2)
IPR2015-01751, IPR2015-01752 (Patent 7,356,482 B2)

PETITIONER:

Richard F. Giunta
Elisabeth H. Hunt
Randy J. Pritzker
Michael N. Rader
WOLF, GREENFIELD & SACKS, P.C.
RGiunta-PTAB@wolfgreenfield.com
EHunt-PTAB@wolfgreenfield.com
RPritzker-PTAB@wolfgreenfield.com
MRader-PTAB@wolfgreenfield.com


PATENT OWNER:

Steven C. Sereboff
Jonathan Pearce
SOCAL IP LAW GROUP LLP
ssereboff@socalip.com
jpearce@socalip.com