UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SALESFORCE, INC.,<br><br>Defendant. | Case No. 3:13-cv-00628-MMD-CLB<br><br>ORDER |

I.  **SUMMARY**

In this patent infringement action, the United States Court of Appeals for the Federal Circuit reversed and vacated in part prior dispositive rulings and remanded to this Court. (ECF Nos. 457, 459; *see also* ECF Nos. 455, 456 (Federal Circuit orders).) Before the Court is Defendant Salesforce, Inc.'s previously unresolved challenge to Plaintiff Applications in Internet Time, LLC's ("AIT") standing at the time it originally filed this case in 2013.[1] (ECF No. 281 ("Motion").)[2] The Court held a hearing on the Motion on March 4, 2025 (the "Hearing"). (ECF Nos. 464 (order setting Hearing), 469.) Because the Court finds that Alternative Systems, Inc. ("ASI") sold the patents-in-suit to Beverly G. Nelson before later purportedly assigning them to Plaintiff, and for the reasons further explained below, the Court finds Plaintiff lacked constitutional standing at the time it filed this case and accordingly dismisses the action without prejudice.

---

[1] In the order granting summary judgment in favor of Defendant, the Court denied Defendant's motion to dismiss under Rule 12(b)(1) (ECF No. 281) as moot. (ECF No. 408 at 47.)

[2] The parties filed various motions to seal that United States District Judge Robert C. Jones granted before this case was reassigned to this Court. (ECF Nos. 408 (granting motions to seal), 446 (reassigning case).) The Court cites to the sealed, unredacted versions of the Motion (ECF No. 283-1), response (ECF No. 306-2), and reply (ECF No. 334) in this order.

## II. BACKGROUND[3]

Plaintiff AIT alleges that Defendant infringes U.S. Patent Nos. 7,356,482 ("the 482 Patent") and 8,484,111 ("the 111 Patent") (collectively, "Patents-in-Suit"). (ECF No. 1.) The Patents-in-Suit claim priority to U.S. Patent Appl. No. 09/215,898, filed on December 18, 1998. (ECF No. 306-2 at 8.) On September 13, 2012, ASI assigned "the entire right, title, and interest in and to" the Patent-in-Suits to Plaintiff. (*Id.*)

Beverly Nelson is a member of AIT. (ECF No. 306-4 at 6.) Since 2012, AIT has had only two members: Nelson and Douglas H. Sturgeon. (*Id.*) In 2012, Sturgeon signed an assignment of the Patent-in-Suits to AIT in his capacity as President of ASI. (ECF No. 305-5 at 11-13.)

In June 1997, ASI and Levine-Fricke-Recon-Group, Inc. ("LFRG") entered into a joint venture and formed a new entity called LFR Technologies, LLC ("LFRT") for the purpose of, *inter alia*, the further development and marketing of the Software Technology as defined in the parties' Licensing Agreement. (ECF No. 283-8; ECF No. 306-4 at 3.)

On April 24, 2002, ASI, LFRT, LFRG and various other entities and individuals entered into an agreement—titled a "Letter Agreement Re: VerticalSuite Transfer of Assets and Related Matter"—that in part provided for the creation of a limited liability company called International Internet Partners, LLC ("IIP"). (ECF No. 283-19 ("2002 Letter Agreement").) The Letter Agreement provided that "ASI will transfer certain assets of ASI (the "ASI Assets"), and HMB "will contribute the ASI Assets to IIP, LLC" . . . in exchange for membership interests in IIP. (*Id.* at 1.) The 2002 Letter Agreement further provides for conversions of debts and liabilities and transfer of employees. (*Id.* at 1-3.) However, except for the "migration from LFR Technologies to VerticalSuite, Inc.," the actions envisioned by the parties to the 2002 Letter Agreement did not occur. (ECF No. 283-15 at 66.)

---

[3]The Motion raises two grounds to challenge Plaintiff's standing. Because the Court resolves the Motion on the second ground, the Court only recites the background as pertinent to that ground.

On November 9, 2006, the parties to the 2002 Letter Agreement and Nelson entered into "Agreement for Sale" where they agreed to sell the 2002 Letter Agreement to Nelson. (ECF No. 283-18 ("2006 Agreement for Sale").)

### III.    DISCUSSION

The Court is persuaded by the second argument Salesforce raises in its Motion—that AIS sold the Patents-in-Suit to Nelson before later reassigning them to Plaintiff. (ECF No. 283-1 at 11-13.) The Court declines to address Defendant's first argument regarding Judith Popowski's Employee Intellectual Property Rights and Confidentially Agreement with LFRT. The Court also declines to address whether Plaintiff timely raised a statutory standing argument.

A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Lack of Article III standing is a jurisdictional defect. *See* U.S. Const., Art. III, § 2 (limiting a federal court's power to "cases and controversies"); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (emphasizing that an action brought without standing does not constitute a case or controversy). A court may dismiss an action based on constitutional standing defects *sua sponte*. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). A party may also seek dismissal of a claim or action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See also* Fed. R. Civ. P. 12(h)(3) (providing that a jurisdictional defense of this type cannot be waived and may be raised at any time).

As with other jurisdictional requirements, "[t]he party invoking federal jurisdiction, [here AIT], bears the burden of establishing [the constitutional minimum of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Three elements must be met to establish standing—the plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016) (citing *Lujan*, 504 U.S. at 560-61). These elements are an indispensable part of a plaintiff's case

and therefore "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Here, Salesforce challenges the injury-in-fact element. The "irreducible constitutional minimum of an injury in fact" requires a showing "that [AIT] retained an *exclusionary* right—i.e., infringement would amount to an invasion of [AIT's] legally protected interest." *Intellectual Tech LLC v. Zebra Tech. Corp.* 101 F.4th 807, 813 (Fed. Cir. 2024) (emphasis in original) (clarifying the distinction between a constitutional injury-in-fact inquiry and the statutory standing inquiry under 35 U.S.C. § 281).[4] "In general, the question for the injury-in-fact threshold [for constitutional standing] is whether a party has *an* exclusionary right." *Id.* at 814 (emphasis in original) (citing *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021)).

Salesforce argues ASI no longer had exclusionary rights to the Patents in 2006[5] because of the sale of the 2002 Letter Agreement to Nelson, meaning its assignment of those rights to AIT in 2012 was null and void. Plaintiff counters that the 2002 Letter Agreement and the 2006 Agreement for Sale "do not operate as assignments—rather, they concern the formation of an entity and the distribution of proceeds." (ECF No. 306-2 at 22.) The Court agrees with Defendant.

The question of whether a contractual provision effectuates an assignment of a patent is a "matter of federal law" because the issue is "so intimately bound up with the question of standing in patent cases." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008). "Applying federal law, [the Federal Circuit has held] that whether an assignment of patent rights in an agreement . . . is automatic, requiring

---

[4] The briefing on the Motion was completed in 2022. AIT referenced this more recent Federal Circuit decision at the Hearing.

[5] This is assuming the Court rejects Defendant's primary argument that the inventors of the Patents-in-Suit assigned their rights to the inventions to LFRT through their respective employment agreements with LFRT executed in 1997 before the Patents-in-Suit's assignment to ASI in December 1998. (ECF No. 283-1 at 15-19.) The Court declines to address this argument because the resolution of the alternative argument is dispositive of the constitutional standing challenge.

no further act on the part of the assignee, or merely a promise to assign depends on the contractual language."[6] *Id.*

Focusing on the contractual language here, there is no dispute that at the time of the 2002 Letter Agreement, the "'ASI Assets'" [as defined in that agreement] included the Patents-in-Suit." (ECF No. 306-2 at 23.) The 2006 Agreement for Sale contains the following key paragraph:

> 1. That the April 24, 2002 Agreement is hereby sold to Nelson by the Parties (exclusive of Nelson) without reservation of any provision of the April 24, 2002 Agreement. The waiver of reservation of any provision shall be irrevocable, complete and total; all right, title, interest, and liability (including financial liability) set forth in the April 24, 2002 Agreement shall transfer in whole to Nelson. Further, Nelson shall have the sole and exclusive right to modify, terminate or otherwise discard Sections A, B and C of the April 24, 2002 Agreement.

(ECF No. 283-18 at 1.) Because the Patents-in-Suit are undisputedly ASI Assets included in the 2002 Letter Agreement, they constitute rights/title set forth in that agreement, and thus the 2006 Letter Agreement transferred ownership to Nelson. To find otherwise would, as Defendant also argues, read out the language "set forth in" from the 2006 Agreement for Sale, and the principles of contract interpretation require the Court to give effect to all the words in the agreement. *See In re Crystal Properties, Ltd., L.P.*, 268 F.3d 743, 748 (9th Cir. 2001) (noting a court should avoid interpretating a contract in a manner that "reject[s a word or term] as meaningless or surplusage") (quoting *Cree v. Waterbury*, 78 F.3d 1400, 1405 (9th Cir.1996)); *see also In re Tobacco Cases I*, 186 Cal. App. 4th 42, 49 (2010) (same). The 2006 Agreement for Sale, as Defendant argues, is an automatic present assignment, not an agreement to assign some rights in the future, in light of the statement that "all right, title, [and] interest . . . set forth in the April 24, 2002 Agreement shall transfer in whole to Nelson" (ECF No. 283-18 at 1). *See DDB Tech.*, 517 F.3d at 1290 (finding contractual language that the inventor "agrees to *and does hereby*

---

[6]The parties seem to agree that California law applies to the Court's interpretation of the 2002 Letter Agreement and the 2006 Agreement for Sale. (*See* ECF No. 306-2 at (17 (contending California law applies to interpretation of the licensing agreement between ASI and LFRT); ECF No. 283-1 at 19 (citing California law); ECF No. 334 at 15 (citing California law); *but see* ECF No. 306-2 at 23-27 (citing to federal law to support interpretation of the 2002 Letter Agreement and the 2006 Agreement for Sale).)

*grant and assign*" all rights in future inventions amounted to an express assignment of rights to future inventions, not a mere agreement to assign); *Speedplay, Inc, v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (finding contractual language automatically assigned title to the patent at issue by providing that all inventions covered by the agreement "shall belong exclusively to [employer] and [employee] hereby conveys, transfers and assigns to [employer] . . . all right, title and interest in and to Inventions"). The 2006 Agreement for Sale is unambiguous that the automatic transfer to Nelson included whatever comprised the liabilities and assets in the 2002 Letter Agreement— and the Patents-in-Suit are part of the defined ASI Assets.[7]

Plaintiff's insistence that paragraph 1 of the 2006 Agreement for Sale "is not a patent assignment and was not intended to be" fails to persuade the Court. (ECF No. 306-2 at 24.) A transfer or assignment of a patent does not require specific, pre-determined wording that a patent is being assigned. *See DDB Techs*, 517 F.3d at 1290. As Plaintiff acknowledges, the 2006 Agreement for Sale "is for the sale of the 2002 Letter Agreement." (ECF No. 306-2 at 24.) And as the Court has found, the 2002 Letter Agreement included the ASI Assets.

The parties separately point to Sturgeon's deposition testimony and declaration to support their respective interpretations as to the operation of these two agreements. Sturgeon testified in pertinent part:

> [STURGEON:] Everything in this letter agreement was transferred to Beverly. So all of the slicing of the pie, for lack of a better term, that was detailed in Exhibit 20 [2002 Letter Agreement] was sold to Beverly for a dollar.
>
> Q[:] So that's everything that is referenced in 10:50AM Exhibit 20?
>
> A[:] Correct.
>
> Q[:] And that includes what is defined as the ASI assets?

---

[7]Plaintiff points to the absence of the filing of an assignment of the Patents-in-Suit to Nelson when the 2012 assignment from ASI to AIT was filed with the USPTO (ECF No. 305-5), as evidence that no assignment occurred. But at the Hearing, Plaintiff conceded that filing with the USPTO is not required.

|   |   |
|---|---|
| 1 | MR. DeVINCENZO: Objection, form. |
| 2 | [STURGEON]: Everything. |

(ECF No. 283-15 at 70-71.) Thus, Defendant argues that as Sturgeon explained under oath, "everything" in the 2002 Letter Agreement, including the ASI Assets, was transferred to Nelson under the 2006 Agreement for Sale.

In response to the Motion, Plaintiff offered a declaration from Sturgeon in which he attempts to retreat from his deposition testimony. Sturgeon explained in this declaration that when he testified that the 2006 Agreement for Sale sold "everything" to Nelson, he "did not intend to suggest that the 2006 Agreement for Sale effected an assignment of the [Patent-in-Suits] to Ms. Nelson." (ECF No. 306-4 at 5.) This assertion clearly contradicts Sturgeon's deposition testimony. As noted, during the deposition, when asked whether everything "includes what is defined as the ASI Assets," Sturgeon responded unequivocally: "Everything." (ECF No. 283-15 at 71.) Plaintiff cannot offer Sturgeon's declaration to contradict his deposition testimony in an attempt to oppose dismissal. *See Baluma, S.A. v. Davydov*, Case No. 2:20-cv-001552-KJD-NJK, 2022 LEXIS 53006 (D. Nev. Mar. 24, 2022) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)); *see also Block v. City of Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir. 2001) (rejecting a self-serving declaration that contradicted stipulated facts).

More importantly, the Court declines Defendant and Plaintiff's invitation to consider extrinsic evidence of the parties' intent where, as here, the agreements are unambiguous. *See U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934-37 (9th Cir. 2002) (discussing parol evidence); *Ticor Title Ins. Co. v. Emps. Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995). Thus, while the Court recites the parties' argument as to Sturgeon's deposition testimony and declaration, the Court does not consider them in finding that the 2006 Agreement for Sale effectuated a transfer of the Patents-in-Suit to Nelson. For the same reason, the Court declines to consider Plaintiff's arguments about

Nelson and Sturgeon's intent as demonstrated through their actions from 2005 through 2012.[8] (ECF No. 306-2 at 26).

Plaintiff further argues that even if the Patents-in-Suit were transferred to Nelson under the 2006 Agreement for Sale, Nelson effectively transferred her rights to the Patents-in-Suit to AIT. (ECF No. 306-2 at 27-28.) Nelson and Sturgeon established AIT, and consistent with Nelson's right to modify certain sections of the 2002 Letter Agreement, as Plaintiff argues, "ASI transferred the entire 'right, title and interests'" to the Patents-in-Suit to AIT. (*Id.*) Here, Plaintiff essentially asks the Court to infer that the transfer of the Patents-in-Suit from ASI to AIT—an entity that Nelson jointly established with Sturgeon—reflects that Nelson exercised her right to modify the terms of the 2002 Letter of Agreement, because ASI assigned the Patents-in-Suit to Plaintiff. But as Salesforce aptly points out, Plaintiff offers no evidence that Nelson exercised that right or authorized ASI to assign the Patents-in-Suit to Plaintiff. (ECF No. 334 at 15.) To be clear, Plaintiff does not offer Nelson's declaration, or any admissible evidence, to show that Nelson directly modified or terminated Section A of the 2002 Letter Agreement or authorized ASI to transfer the Patents-in-Suit to AIT. Indeed, the 2012 assignment upon which Plaintiff relies was executed by Sturgeon, not Nelson; and Plaintiff offers no evidence that Sturgeon was authorized to act on Nelson's behalf. (ECF No. 305-5 at 11-13.) Plaintiff has failed to demonstrate by a preponderance of the evidence that Nelson exercised her right under the 2002 Letter Agreement and assigned her right to the Patents-in-Suit to ASI to allow ASI's assignment to Plaintiff.

In sum, the Court agrees with Defendant that ownership of the Patents-in-Suit transferred to Nelson in 2006, so the 2012 assignment from ASI to AIT (ECF No. 305-5 at 11-14) upon which AIT asserts standing (ECF No. 283-1 at 6 (citing discovery response)) was null and void.

---

[8] Plaintiff points to Nelson and Sturgeon's actions, including their formation of AIT in February 2005, the fact that they are sole members of AIT, and ASI's assignment of the Patents-in-Suit to AIT in 2012, to argue they acted in line with Plaintiff's interpretation of the 2006 Agreement for Sale. (ECF No. 306-2 at 26.)

## IV. CONCLUSION

The Court notes that the parties cited several cases and made several arguments not discussed above. The Court did not address these cases and arguments because they do not materially affect the Court's resolution of the Motion.

It is therefore ordered Defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 281) is granted.

It is further ordered that Defendant's motion to compel (ECF No. 466) is denied as moot.

It is further ordered that this case is dismissed, in its entirety, without prejudice.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 28th Day of March 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE