Michael A. Burke, Esq. (NSB #11527)
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington St.
Reno, NV 89503
Telephone: (775) 329-3151
Email: mburke@rssblaw.com

Michael DeVincenzo, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Andrea Pacelli, Esq. (*pro hac vice*)
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com
charles.wizenfeld@us.kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 120
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC, | Civil Action No.: 3:13-CV-00628-MMD-CLB |
| Plaintiff, | **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| SALESFORCE, INC., | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

1

## TABLE OF CONTENTS

**I.    INTRODUCTION** ................................................................................................1

**II.    ARGUMENT** ................................................................................................3

A.    AIT Respectfully Requests Relief Under Fed. R. Civ. P. 17(a)(3) or the Doctrine of Contract Reformation ................................................................3

    1.    The Court Should Permit AIT to Continue This Action Pursuant to Ms. Nelson's Ratification Under Rule 17(a)(3) ....................................................3

    2.    The Court Should Reform the 2006 Agreement to Reflect the Parties' Intent8

B.    AIT Respectfully Requests Reconsideration of the Court's Determination that AIT Lacks Standing ................................................................................10

    1.    Relevant Legal Standards ........................................................................10

        a.    Motions to Reconsider................................................................10

        b.    Burdens of Proof........................................................................11

    2.    AIT Respectfully Requests Reconsideration Based on Ms. Nelson's Consent to the 2012 Assignment ................................................................11

    3.    AIT Requests the Court Reconsider Its Finding that the 2006 Agreement Is a Present Assignment ................................................................................13

        a.    The "Shall Transfer" Sentence Is Not a Present Assignment of the Patents-in-Suit ..........................................................................13

        b.    The 2006 Agreement Should Be Construed Consistently with Ms. Nelson's Right to Modify, Terminate or Discard Section A of the 2002 Letter Agreement................................................................15

        c.    The 2006 Agreement Was Not Intended to Presently Assign All Right, Title and Interest to the Patents-in-Suit to Ms. Nelson ...................16

**III.    CONCLUSION** ................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*002152706 Ontario Ltd. v. Changer & Dresser, Inc.*,
    No. 1:18-CV-01228-ACA, 2019 WL 339177 (N.D. Ala. Jan. 28, 2019) ................................ 7

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) ........................................................................... 13

*Alameda Cnty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*,
    213 Cal.App.4th 1163, 152 Cal. Rptr. 3d 845 (2013) ............................................. 14

*Brown v. Kinross Gold, U.S.A.*,
    378 F. Supp. 2d 1280 (D. Nev. 2005) ................................................................... 11

*CPI Card Group, Inc. v. Multi Packing Solutions, Inc.*,
    No. 16-CV-02536-MEH, 2018 WL 3429197 (D. Colo. 2018) .................................... 6

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*,
    458 Fed. Appx. 910 (Fed. Cir. 2012) .......................................................... 11, 12

*First Hartford Corp. Pension Plan & Tr. v. United States*,
    194 F.3d 1279 (Fed. Cir. 1999) ............................................................................. 4

*Foad Consulting Group, Inc. v. Azzalino*,
    270 F.3d 821 (9th Cir. 2001) ............................................................................... 17

*Frasure v. United States*,
    256 F. Supp. 2d 1180 (D. Nev. 2003) ................................................................... 11

*Gellman v. Telular Corp.*,
    449 F. App'x 941 (Fed. Cir. 2011) ....................................................................... 13

*Goodman v. United States*,
    298 F.3d 1048 (9th Cir. 2002) ............................................................................... 3

*Hassanati v. International Lease Finance Corp.*,
    51 F. Supp.3d 887 (C.D. Cal. 2014) ...................................................................... 4

*Hess v. Ford Motor Co.*,
    27 Cal. 4th 516 (2002) .......................................................................................... 8

*Iqbal v. Ziadeh*,
    10 Cal. App. 5th 1 (2017) .................................................................................... 16

*Kaist IP US LLC v. Samsung Electronics Co., Ltd.*,
    No. 2:16-CV-01314-JRG, 2018 WL 10498168 (E.D. Tex. Sept. 6, 2018) ................... 14

iii

*Liberty Mutual Ins. Group v. Panelized Structures, Inc.*,
    No. 10-CV-01951-MMD, 2013 WL 760343 (D. Nev. Feb. 26, 2013) ............................... 5, 6

*Liu Hongwei v. Velocity V Limited Partnership*,
    No. 15-CV-5061, 2018 WL 1472502 (C.D. Cal. Mar. 26, 2018) ......................................... 3, 4

*Mutuelles Unies v. Kroll & Linstrom*,
    957 F.2d 707 (9th Cir. 1992) ........................................................................................... 3

*NWHW Holdings, Inc. v. National Union Fire Insurance Company of Pittsburgh,*
    *P.A.*, No. 22-CV-01030-CJC, 2023 WL 9375862 (C.D. Cal. Dec. 22, 2023) ..................... 8, 9

*Park B. Smith, Inc. v. CHF Indus. Inc.*,
    811 F. Supp. 2d 766 (S.D.N.Y. 2011) ........................................................................... 6

*Robertson v. McNeil-PPC Inc.*,
    No. 11-CV-09050-JAK (SSx), 2014 WL 12576817 (C.D. Cal. Jan. 13, 2014) ...................... 4

*Sch. Dist. No. 1J v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ........................................................................................... 11

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020) ....................................................................................... 8

*SiRF Technology, Inc. v. International Trade Com'n*,
    601 F.3d 1319 (Fed. Cir. 2010) ................................................................................. 11, 12

*Southern Pacific Land Co. v. Westlake Farms, Inc.*,
    188 Cal. App. 3d 807 (Ct. App. 1987) ........................................................................... 15

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*,
    No. 18-CV-11386 (VSB) (KHP), 2023 WL 7135236 (S.D.N.Y. Oct. 30, 2023) ................. 15

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
    281 F.3d 929 (9th Cir. 2002) ......................................................................................... 17

*U.S. for Use & Benefit of Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989) ....................................................................................... 4

**Statutes**

Cal. Code Civ. Proc. § 3399 ............................................................................................. 8

Cal. Code Civ. Proc. § 1859 ........................................................................................... 16

**Other Authorities**

14A Cal. Jur. 3d (2008) ................................................................................................. 14

6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d* § 1555 at 417 ................................................................................. 3

Fed. R. Civ. P. 17 ..........................................................................................*passim*

Fed. R. Civ. P. 1 .................................................................................................. 6

## I.     INTRODUCTION

Plaintiff Applications in Internet Time, LLC ("AIT") respectfully requests modification or, in the alternative, reconsideration of the Court's order dismissing AIT's claims without prejudice.

First, AIT requests modification of the Court's order of dismissal under Fed. R. Civ. P. 17(a). The Court found that one of AIT's members, Beverly Nelson, is the owner of all right, title and interest to the Patents-in-Suit. Ms. Nelson has ratified this action and the assignment to AIT and, separately, granted all residual rights in the Patents-in-Suit (including the right to past damages) to AIT. As such, AIT respectfully requests that the Court permit this action to proceed as originally filed based on Ms. Nelson's ratification and/or offer to join the action. Courts have a liberal policy to grant relief under Fed. R. Civ. P. 17(a) and consider the equities associated with dismissal. Where, as here, an understandable mistake was made and dismissal would not resolve the dispute between the parties, and instead would simply result in the waste of judicial and party resources, relief is generally granted under Fed. R. Civ. P. 17(a). The time spent on this action by the Court has unquestionably been extensive, and the resources spent by the parties have been enormous as reflected in Salesforce's prior request for nearly $7,000,000 in attorney fees for less than two years' work, out of the over eleven years this litigation has been pending.

Second, AIT respectfully requests reformation of the 2006 Agreement for Sale ("2006 Agreement") which the Court found to be a present assignment to Ms. Nelson of all right, title and interest to the Patents-in-Suit. Neither Ms. Nelson nor Alternative Systems, Inc. ("ASI") intended the 2006 Agreement to effectuate a present assignment of the Patents-in-Suit to Ms. Nelson, nor at any time believed that anyone but ASI or AIT owned the patents. Put simply, any assignment to Ms. Nelson was the result of a mistake, and reformation under California law is permitted in such circumstances. The result of reformation, like the relief requested under Fed. R. Civ. P. 17(a), allows the action to proceed as originally filed and promotes the efficient resolution of the parties' ongoing dispute.

Third, AIT requests reconsideration of the Court's decision with respect to the issue of Ms. Nelson's knowledge of, and consent to, ASI's 2012 assignment of the Patents-in-Suit to AIT ("2012 Assignment"). Ms. Nelson is over 80 years old and a grandmother. As Salesforce was aware, Ms.

1   Nelson was unable to offer testimony in 2022 due to a serious illness.  Ms. Nelson is now able to testify

2   and can confirm that she was aware of, and consented to, the transfer of the Patents-in-Suit to AIT by

3   ASI, a company of which she was a majority owner.  Ms. Nelson further explains that AIT's managing

4   member, Douglas Sturgeon, was tasked with executing the assignment documents, and she would have

5   executed any necessary approvals at that time to the extent it was necessary.  Further, the burden of

6   proof with respect to these issues should have been placed squarely on Salesforce and AIT should have

7   been given all reasonable inferences.  Salesforce cannot carry its burden of proof here.  Put simply, the

8   2012 Assignment from ASI to AIT was made with Ms. Nelson's consent, and she discarded any rights

9   she may have had to the Patents-in-Suit by agreeing to the 2012 Assignment.

10          Fourth, AIT respectfully requests the Court to reconsider the plain language of the 2006

11  Agreement.  The Court found that a "shall transfer" sentence in the 2006 Agreement represented a

12  present transfer of all rights and title to ASI's "assets," including the Patents-in-Suit, to Ms. Nelson.

13  "Shall transfer" language does not typically operate as a present assignment, and courts often

14  reasonably interpret such language as requiring a future action and not effecting a present assignment.

15  Further, the 2006 Agreement expressly granted Ms. Nelson the right to "modify", "terminate," or

16  "discard" in its entirety the provision of the 2002 Letter Agreement that defines ASI's Assets, which

17  is inconsistent with a present assignment of such assets.  At a minimum, it was not unreasonable for

18  Ms. Nelson and ASI to interpret the 2006 Agreement, and Ms. Nelson's right to discard the provisions

19  of the 2002 Letter Agreement, as not reflecting a present assignment to Ms. Nelson such that the Court

20  should have considered the conduct of Ms. Nelson and ASI.  AIT understands that requests for

21  reconsideration on the merits are not routinely granted.  However, AIT respectfully submits that a

22  further look at that language will prevent clear error and manifest injustice.

23          As it stands, Salesforce's counterclaims remain pending. Forcing AIT and/or Ms. Nelson to

24  proceed against Salesforce's counterclaims, appeal the Court's interpretation of the 2006 Agreement,

25  and/or file a new action would accomplish little but delay resolution of AIT's claims while increasing

26  the parties' costs and wasting this Court's and the Federal Circuit's resources with potentially multiple,

27  duplicative proceedings concerning the same claims.

28

At a minimum, AIT sincerely hopes the Court will consider its request for equitable relief under Fed. R. Civ. P. 17(a) and/or reformation. Either relief will allow the case to proceed as originally filed. The fits and starts over the last decade have been outside the norm. Ms. Nelson and Mr. Sturgeon are both of advanced age and this case has been pending for well over a decade. The case is nearly ready for trial. To the extent the Court does not reconsider its interpretation of the 2006 Agreement on the merits, AIT requests equitable relief to allow this case to proceed without undue and unnecessary expenditure of resources by the Court and the parties.

## II.    ARGUMENT

### A.    AIT Respectfully Requests Relief Under Fed. R. Civ. P. 17(a)(3) or the Doctrine of Contract Reformation

#### 1.    The Court Should Permit AIT to Continue This Action Pursuant to Ms. Nelson's Ratification Under Rule 17(a)(3)

Pursuant to Fed. R. Civ. P. 17(a)(3), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The purpose of the rule is "to prevent forfeiture of a claim when an honest mistake was made." *Goodman v. United States*, 298 F.3d 1048, 1054 (9th Cir. 2002) (citation omitted). This rule further provides that "[a]fter ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3); *see also Goodman*, 298 F.3d at 1053. Ratification pursuant to Rule 17(a)(3) "requires the ratifying party to: 1) authorize continuation of the action; and 2) agree to be bound by the lawsuit's result." *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712 (9th Cir. 1992); *Liu Hongwei v. Velocity V Limited Partnership*, No. 15-CV-5061, 2018 WL 1472502, *3 (C.D. Cal. Mar. 26, 2018) (collecting cases). "Formal joinder or substitution of the real party in interest will not be necessary when the real party ratifies the commencement of the action." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d* § 1555 at 417 (noting regarding ratification that "courts have interpreted the word to validate an arrangement by which the real party in interest authorizes the continuation of an action brought by another and agrees to be bound by its result, thereby eliminating any risk of multiple liability.").

As detailed in the accompanying declaration ("Nelson Dec."), Ms. Nelson has ratified the litigation, authorized continuation of this action, and agrees to be bound by the lawsuit's results. Nelson Dec. at ¶¶ 23–24. Ms. Nelson has further confirmed her consent to the 2012 Assignment from ASI to AIT and separately confirmed that she discarded any rights to the Patents-in-Suit when ASI entered the 2012 Assignment.  *Id.* at ¶¶ 15, 23–24. Accordingly, to the extent the Court declines to revisit its finding that Ms. Nelson owns the Patents-in-Suit as detailed below, AIT respectfully requests relief under Rule 17(a)(3) based on Ms. Nelson's ratification of the action, or for the Court to permit Ms. Nelson to be joined as a party to the extent the Court deems it necessary.

The Ninth Circuit and the Federal Circuit, consistent with the Advisory Committee Notes to the Federal Rules of Civil Procedure, recognize that courts should be lenient in permitting relief under Fed. R. Civ. P. 17(a) when an honest mistake is made. *Hassanati v. International Lease Finance Corp.*, 51 F. Supp. 3d 887, 901 (C.D. Cal. 2014) (recognizing courts are generally "lenient when an honest mistake has been made") (quoting Fed. R. Civ. P. 17(a), Advisory Committee Notes to the 1996 Amendments); *Liu Hongwei*, 2018 WL 1472502, at *3 (recognizing that courts in the Ninth Circuit had permitted ratification when "the failure to include the real party in interest was a mistake"); *First Hartford Corp. Pension Plan & Tr. v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999) (recognizing "courts should be lenient in permitting ratification, joinder, or substitution" under Fed. R. Civ. P. 17).

In the Ninth Circuit, courts apply the "mistake or strategic decision test" when evaluating whether to permit ratification under Rule 17.  *See Liu Hongwei*, 2018 WL 1472502, at *3 (collecting cases). This test asks "whether the failure to include the real party in interest was a mistake or was the product of tactical maneuvering." *Id.; see also Robertson v. McNeil-PPC Inc.*, No. 11-CV-09050-JAK (SSx), 2014 WL 12576817, at *3 (C.D. Cal. Jan. 13, 2014) (concluding that ratification "will resolve a standing issue so long as [Plaintiff's] decision to sue in [her] own name represented an understandable mistake and not a strategic decision") (internal quotation marks and citation omitted); *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir. 1989) ("Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake[.]").  To the extent the 2006 Agreement is a present assignment of all right, title and interest to ASI's patent assets to Ms. Nelson, that was the result of an honest mistake.  Both Ms. Nelson and

Mr. Sturgeon have confirmed that they did not intend to assign any rights to the Patents-in-Suit personally to Ms. Nelson.  Nelson Dec. at ¶¶ 12–15, 19–22; Dkt. 305, Ex. E at ¶ 15. Further, neither Ms. Nelson, Mr. Sturgeon, nor ASI believed the 2006 Agreement represented a present assignment of the Patents-in-Suit to Ms. Nelson.  *Id.*  Mr. Sturgeon signed the 2012 Assignment to AIT on behalf of ASI, attesting during the relevant time, before any dispute arose, that ASI owned all right, title and interest in the Patents-in-Suit.  Dkt. 305, Ex. D at AIT000000975.  Had Ms. Nelson believed she was the owner of the Patents-in-Suit instead of ASI, she would have signed the 2012 Assignment in her personal capacity.  Nelson Dec. at ¶ 22.  In view of the close relationship between Ms. Nelson and Mr. Sturgeon and the alignment of their interests as members of both ASI and AIT, and in view of their intent that AIT own the Patents-in-Suit for purposes of asserting them against Salesforce, AIT submits that, at most, an honest mistake was made based on a misunderstanding of the 2006 Agreement.  *Id.* at ¶¶ 11–19, 21; Dkt. 305, Ex. E at ¶¶ 2–3, 7, 14–15, 17–18.  At a minimum, the law of present assignment language is complex, and AIT hopes the Court will recognize that Ms. Nelson, Mr. Sturgeon, ASI, and AIT all believed in good faith that AIT owned the Patents-in-Suit and any unintended consequences were the result of a mistake in understanding and/or drafting error.

"[E]quitable principles should apply in assessing the applicability of Rule 17(a) and the court must consider the prejudice to both parties and the public policy interest in litigating suits on their merits." *Liberty Mutual Ins. Group v. Panelized Structures, Inc.*, No. 10-CV-01951-MMD, 2013 WL 760343, *3 (D. Nev. Feb. 26, 2013) (quotation marks omitted) (recognizing primary purpose of Rule 17(a) is to "avoid injustice").  Here, there is no prejudice to Salesforce because all claims that Salesforce has been defending against will remain identical, as will Salesforce's counterclaims. Further, when considering this equitable determination, the "more time and expense spent in litigation increases the weight of the policy favoring decisions on the merits." *Id.*  The failure to provide relief under Fed. R. Civ. P. 17(a) here would be particularly inequitable, as it would merely delay the resolution of AIT's claims and result in waste.  Two years ago, Judge Jones found that further delays would be "unconscionable" given the long pendency of this action.  Dkt. 391 at 5–7.  Over the last 12 years, the parties have completed fact and expert discovery, Salesforce's case dispositive summary judgment motions have been denied, and the parties have completed numerous proceedings before the

PLAINTIFF'S MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

USPTO and the Federal Circuit.  Salesforce spent nearly $7 million in attorney fees in the time following the Court's issuance of its claim construction order and its first entry of judgment. Dkt. 450.01 at 16.  Similarly, this Court, the USPTO, and the Federal Circuit have all spent considerable time and resources on this case.  Consistent with the goals of Rule 1 of the Federal Rules of Civil Procedure, the requested relief ensures that the efforts and expenses of all parties involved are not wasted.  Fed. R. Civ. P. 1 (specifying that interpretation of the rules should be done to secure the "just, ***speedy, and inexpensive determination*** of every action.") (emphasis added).

As this Court has explained, where a "litigation has been ongoing for more than two years and the parties have expended significant resources" the "policy considerations favoring a decision on the merits weigh heavily in favor" of relief under Fed. R. Civ. P. 17(a).  *Liberty Mutual*, 2013 WL 760343, at *5 (addressing substitution).  Other courts are in accord.  As recently explained in *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*:

> This Court is not inclined to reject Defendants' argument on formalist grounds when doing so would be dispositive of the infringement claim and would likely result in that claim being asserted in an entirely new lawsuit, which would be, quite frankly, a waste of the Court's and parties' time and resources given that the claim has been nearly fully litigated in this action. Application of Rule 17 here would favor the rule's purpose to avoid injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought, and is the pragmatic outcome.

No. 18-CV-11386 (VSB) (KHP), 2023 WL 7135236, at *8 (S.D.N.Y. Oct. 30, 2023).  In particular, in the context of patent disputes, where questions of ownership can often be difficult, courts apply Rule 17(a)(3) to rectify constitutional standing defects and avoid the waste associated with a dismissal without prejudice. *See CPI Card Group, Inc. v. Multi Packing Solutions, Inc.*, No. 16-CV-02536-MEH, 2018 WL 3429197, *3–9 (D. Colo. 2018) (where infringement action had been pending for over a year with the parties having engaged in discovery, and where the plaintiff learned a subsidiary still owned the patent and had mistakenly misidentified the plaintiff, granting the subsidiary leave to join the suit under Rule 17(a) and finding this cured constitutional standing defect); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 774 (S.D.N.Y. 2011) (allowing relief under Fed. R. Civ. P. 17(a) in the face of a constitutional standing challenge in a patent case because it "is the wiser answer to the problem of expediting trials and avoiding unnecessary delay and expense of requiring an action

to be started anew where a substitution is desired though the subject matter of the actions remains identical …. The alternative to allowing substitution here would be dismissal without prejudice …. [Plaintiff] could then file suit in its own name and the parties would soon be back in the same place"); *002152706 Ontario Ltd. v. Changer & Dresser, Inc.*, No. 1:18-CV-01228-ACA, 2019 WL 339177, at *3–4 (N.D. Ala. Jan. 28, 2019) (noting, in allowing relief under Fed. R. Civ. P. 17(a) to name proper patent owner, "[t]hat this litigation has advanced substantively through discovery and claim construction briefing supports the conclusion that substitution in this case is merely a retitling of the plaintiff to correct a misnomer.").[1]

Finally, AIT respectfully submits that the timing of AIT's request under Rule 17(a) is one of a practical nature, rather than to gain a tactical advantage. The Court issued its order dismissing the case without prejudice after determining Ms. Nelson to be the owner of all right, title and interest to the Patents-in-Suit last month, on March 28, 2025. Dkt. 471 at 9. In its 2022 moving papers, Salesforce urged both that LFRT owned the Patents-in-Suit and, in the alternative, Ms. Nelson owned the Patents-in-Suit. Dkt. 281 at 1–2. With Ms. Nelson unable to testify, and Salesforce offering arguments in the alternative, it was unclear what, if any, relief under Fed. R. Civ. P. 17(a)(3) was available to AIT until the Court issued its recent ruling. Indeed, when the Court granted judgment in Salesforce's favor on issues unrelated to Salesforce's then-pending motion to dismiss for lack of subject matter jurisdiction, the Court denied the motion to dismiss as moot. Dkt. 408 at 47. Notably, Salesforce did not object to the Court's denial of its motion to dismiss as moot and readily accepted the Court's grant of judgment in its favor. On appeal to the Federal Circuit, Salesforce urged this Court's grant of summary judgment should be affirmed against AIT and did not raise constitutional standing. Salesforce only revived its constitutional standing argument upon the resumption of this case after the appeal. At all times before

---

[1] AIT notes that the patent cases cited above concern party substitution and/or joinder. However, as detailed herein, Ms. Nelson has ratified this action, ratified the 2012 Assignment of the Patents-in-Suit from ASI to AIT, and confirmed she discarded any rights she may have had regarding the Patents-in-Suit upon that assignment. As such, AIT does not believe adding Ms. Nelson as a party is necessary for standing purposes. However, if the Court deems it necessary for the action to proceed under Rule 17(a)(3) with Ms. Nelson as a party, AIT respectfully requests that Ms. Nelson be given the opportunity to seek joinder.

1    the Court issued its decision on Salesforce's motion to dismiss, AIT reasonably believed that it owned

2    the Patents-in-Suit via the assignments of record at the USPTO, and AIT has now promptly requested

3    relief under Rule 17(a)(3) less than a month after the Court issued its determination that Ms. Nelson

4    had actually been assigned the Patents-in-Suit by the 2006 Agreement.

5         In view of the foregoing, when the equities are considered as a whole, AIT submits that relief

6    is warranted under Rule 17(a)(3).

7         **2.    The Court Should Reform the 2006 Agreement to Reflect the Parties' Intent**

8         In addition, AIT respectfully requests reformation of the 2006 Agreement under California law

9    in order to align the Agreement with the parties' true intent. The Federal Circuit has recognized that

10   through reformation a court may correct a mistake in a contract that conflicted with the intent of the

11   parties and thereby find constitutional standing. *Schwendimann v. Arkwright Advanced Coating, Inc.*,

12   959 F.3d 1065, 1072–75 (Fed. Cir. 2020) (applying Minnesota law regarding reformation).

13   Reformation of the 2006 Agreement to reflect the parties' actual intent will allow the action to proceed

14   and avoid the waste of resources detailed above.

15        The Court determined the 2006 Agreement clause stating "all right, title, interest, and liability

16   … set forth in the April 24, 2002 Agreement shall transfer in whole to Nelson" represented a present

17   assignment of the ASI Assets.  However, as discussed above, the parties did not intend to transfer

18   ownership of ASI's patents to Ms. Nelson. Nelson Dec. at ¶¶ 12–15, 19–22; Dkt. 305, Ex. E at ¶ 15.

19         The 2006 Agreement is governed by California law. Dkt. 281, Ex. 16 at ¶ 16.  California law

20   provides that a court can reform a contract that does not reflect the intent of the parties. In particular:

21         When, through fraud or a mutual mistake of the parties, or a mistake of one party, which
          the other at the time knew or suspected, a written contract does not truly express the
22        intention of the parties, it may be revised on the application of a party aggrieved, so as
          to express that intention, so far as it can be done without prejudice to rights acquired by
23        third persons, in good faith and for value.
24
     Civil Code § 3399; *see also NWHW Holdings, Inc. v. National Union Fire Insurance Company of*

25   *Pittsburgh, P.A.*, No. 22-CV-01030-CJC, 2023 WL 9375862, *10 (C.D. Cal. Dec. 22, 2023); *Hess v.*

26   *Ford Motor Co.*, 27 Cal. 4th 516, 524–525 (2002).  In determining whether a mutual mistake has

27   occurred, a court should consider extrinsic evidence, "because the court must divine the true intentions

28

of the contracting parties and determine whether the written agreement accurately represents those intentions." *NWHW Holdings*, 2023 WL 9375862, at *11 (quoting *Hess*, 27 Cal. 4th at 525).

As detailed above, the parties, including Ms. Nelson and Mr. Sturgeon for ASI, did not intend for the 2006 Agreement to operate as a present assignment of all ASI Assets to Ms. Nelson. *See* Section II.A.1 (citing Nelson Dec. at ¶¶ 12–15, 19–22; Dkt. 305, Ex. E at ¶ 15). To the extent that the 2006 Agreement operated to presently transfer ASI's right, title and interest to the Patents-in-Suit to Ms. Nelson, such assignment was due to a drafting error and was inconsistent with the parties' actual intent. *See* Nelson Dec. at ¶¶ 12–15, 19–22; Dkt. 305, Ex. E at ¶ 15. Accordingly, AIT requests reformation of the agreement consistent with the parties' intent.

AIT proposes that Paragraph 1 of the 2006 Agreement be reformed to read as follows, with proposed additions shown in bold:[2]

> That the April 24, 2002 Agreement is hereby sold to Nelson by the Parties (exclusive of Nelson) without reservation of any provision of the April 24, 2002 Agreement. The waiver of reservation of any provision shall be irrevocable, complete and total; all right, title, interest, and liability (including financial liability) set forth in the April 24, 2002 Agreement shall transfer in whole to Nelson. Further, Nelson shall have the sole and exclusive right to modify, terminate or otherwise discard Sections A, B and C of the April 24, 2002 Agreement. **For clarity, ASI shall retain ownership of the ASI Assets subject to Ms. Nelson's rights to modify, terminate or otherwise discard Section A of the April 24, 2002 Agreement.**

Salesforce faces no prejudice from the requested reformation. Salesforce had no role in the agreements at issue, and its only role is as a defendant in this litigation. It did not rely on the 2006 Agreement to acquire any rights in the ASI Assets. Following execution of the 2006 Agreement the rights to the Patents-in-Suit were either owned by ASI, a company owned in the majority by Ms. Nelson, or Ms. Nelson herself. Each of the other entities agreed that the ASI Assets were owned by ASI, and that Ms. Nelson could terminate or discard the relevant sections of the 2002 Letter Agreement as it pertained to ASI's Assets thereby leaving them at ASI. Salesforce loses no substantive defenses

---

[2] Should the Court disagree with this specific language, AIT is amenable to any reformation that is consistent with the conduct and intent of Ms. Nelson and ASI as detailed herein.

in view of the requested reformation and can claim no unfair surprise as a result of reinstating AIT's claims, of which it has been on notice since 2013.

With the requested reformation, there can be no dispute that the 2006 Agreement was not a present assignment of the ASI Assets to Ms. Nelson. In such circumstances, the 2012 Assignment from ASI to AIT is not rendered null and void and constitutional standing exists, so that AIT can proceed with all title and interest to the Patents-in-Suit.

Lastly, with respect to the timing of AIT's request, contract reformation, like the relief requested under Fed. R. Civ. P. 17(a)(3), is equitable in nature. As such, AIT incorporates by reference the discussion concerning the timing of its request in Section II.A.1.

**B.    AIT Respectfully Requests Reconsideration of the Court's Determination that AIT Lacks Standing**

AIT respectfully requests reconsideration of the Court's order based on Ms. Nelson's declaration. Ms. Nelson is over 80 years old. As Ms. Nelson explains, when the parties originally briefed Salesforce's motion to dismiss in 2022, she was ill with medical complications and her doctor advised her that it would not be in her best medical interest to testify. Nelson Dec. at ¶ 3. She is now able to testify. Given the Court's finding that Ms. Nelson owned the Patents-in-Suit as a result of the 2006 Agreement, AIT hopes the Court will consider Ms. Nelson's testimony.

In addition, the parties' arguments regarding interpretation of the 2006 Agreement were limited to a few short pages, with each party relying on extrinsic evidence to support its respective interpretation. *See* Dkt. 281 at 13–15, Dkt. 305 at 17–23, Dkt. 332 at 9–12. In particular, AIT requests the Court reconsider its finding that the 2006 Agreement so clearly represents a present assignment of the Patents-in-Suit that the intent and conduct of the parties is irrelevant. AIT respectfully submits that the finding was clear error that results in manifest injustice in light of the plain language of the 2006 Agreement itself.

**1.    Relevant Legal Standards**

**a.    Motions to Reconsider**

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to

reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citation omitted). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). AIT understands that "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments," *Brown v. Kinross Gold*, *U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005), and presents evidence and argument that in fairness should be considered.

### b.    Burdens of Proof

Based on the assignments recorded with the USPTO, AIT is the owner of record of all rights, title and interest to the Patents-in-Suit.  Dkt. 471 at 2; Dkt. 305, Ex. D. That is not in dispute. In such circumstances, the party challenging standing, here Salesforce, bears the burden of proof.  *SiRF Technology, Inc. v. International Trade Com'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010) ("The recording of an assignment with the PTO is not a determination as to the validity of the assignment. However, we think that it creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment.") (citation omitted); *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 458 Fed. Appx. 910, 912 (Fed. Cir. 2012) (same).

Further, the proper standard of proof in opposing a Rule 12(b)(1) motion is the same as for summary judgment.  Dkt. 305 at 8.  The Court's opinion did not address the summary judgment standard and instead found as a factual matter that AIT had failed to establish Ms. Nelson's consent to the 2012 Assignment to AIT.  Dkt. 471 at 8.

### 2.    AIT Respectfully Requests Reconsideration Based on Ms. Nelson's Consent to the 2012 Assignment

The 2006 Agreement grants Ms. Nelson "the sole and exclusive right to modify, terminate or otherwise discard Section[] A" of the 2002 Letter Agreement.  Dkt. 281, Ex. 16 (2006 Agreement) at ¶ 1. In opposing Salesforce's motion, AIT urged that ASI's retention of the Patents-in-Suit following the 2006 Agreement was consistent with Ms. Nelson's rights with respect to Section A.  Dkt. 305 at 20–22.

The Court placed the burden of proof on AIT and found AIT failed to meet its burden. *See* Dkt. 471 at 8 ("Plaintiff does not offer Nelson's declaration, or any admissible evidence, to show that Nelson … authorized ASI to transfer the Patents-in-Suit to AIT."). The Court found no evidence Ms. Nelson modified, terminated or otherwise discarded Section A and no evidence Ms. Nelson "authorized ASI to transfer the Patents-in-Suit to AIT." *Id*. AIT respectfully requests reconsideration in view of Ms. Nelson's declaration and in view of the proper burden of proof on Salesforce.

As Ms. Nelson explains in her declaration, she is one of two members of AIT along with Mr. Sturgeon. Nelson Dec. at ¶ 11. Ms. Nelson has confirmed that Mr. Sturgeon had the authority to execute the 2012 Assignment on behalf of ASI and transfer all rights to the Patents-in-Suit to AIT. *Id*. at ¶ 22; *see also id.* at ¶¶ 14–16, 18, 21. In addition, to avoid any doubt, Ms. Nelson has formally ratified the 2012 Assignment, confirming her agreement to be bound by its terms in 2012 and today. *Id*. at ¶ 23. Simply put, Ms. Nelson was aware that ASI was transferring the Patents-in-Suit to AIT and agreed to that transfer. Indeed, Ms. Nelson wanted AIT to have all right, title and interest to the Patents via the 2012 Assignment, and Mr. Sturgeon was tasked with ensuring that AIT received the Patents-in-Suit so they could be asserted in litigation against Salesforce. *Id*. at ¶¶ 14–15.

By agreeing to ASI's assignment to AIT, Ms. Nelson discarded any rights she may have had under the 2002 Letter Agreement, as she was entitled to do under the 2006 Agreement. *Id*. at ¶¶ 14–15, 18–19, 23. To avoid any doubt, Ms. Nelson has confirmed that she discarded any rights to the Patents-in-Suit she may have had that were inconsistent with the 2012 Assignment. *Id*. at ¶ 23.

Based on the foregoing, AIT respectfully requests reconsideration of the issue of whether Ms. Nelson authorized Mr. Sturgeon to execute the 2012 Assignment. Indeed, it was Salesforce, not AIT, who properly bore the burden of proof on that issue. *SiRF Technology,* 601 F.3d 1319 at 1327–28 ("The recording of an assignment with the PTO is not a determination as to the validity of the assignment. However, we think that it creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment."); *see Dow Chem.*, 458 Fed.Appx. at 912. With knowledge of Ms. Nelson's illness, Salesforce relied solely on speculation in reply urging that ASI's assignment to AIT may not have been authorized by Mr. Nelson. Dkt. 332 at 11. Salesforce's speculation alone was insufficient to meet its burden and invited clear error in the

face of Mr. Sturgeon's declaration based on his personal knowledge. Regardless, Ms. Nelson is now able to testify, and AIT respectfully requests consideration of her declaration which evidences her approval of the 2012 Assignment and discarding of her rights at the relevant time.

### 3. AIT Requests the Court Reconsider Its Finding that the 2006 Agreement Is a Present Assignment

#### a. The "Shall Transfer" Sentence Is Not a Present Assignment of the Patents-in-Suit

The November 2006 Agreement states:

> [T]he April 24, 2002 Agreement is *hereby sold to Nelson by the Parties* (exclusive of Nelson) without reservation of any provision of the April 24, 2002 Agreement. The waiver of reservation of any provision shall be irrevocable, complete and total; *all right, title, interest, and liability* (including financial liability) *set forth* in the April 24, 2002 Agreement *shall transfer* in whole to Nelson. Further, Nelson *shall have* the *sole and exclusive right to modify, terminate or otherwise discard* Sections A, B and C of the April 24, 2002 Agreement.

Dkt. 281, Ex. 16 at 1 (emphasis added).

The first sentence above is the only sentence written in the present tense. It states that the 2002 Letter Agreement is "hereby sold" to Ms. Nelson. It was not disputed that the 2002 Letter Agreement was not a present assignment of the ASI Assets. *See* Dkt. 471 at 2. Consistently, the Court did not find the "hereby" sentence selling the 2002 Letter Agreement acted as a present assignment of the Patents-in-Suit. *See id* at 5. Instead, the Court found the second sentence, which states that the right, title, interest, and liability "set forth in" the 2002 Letter Agreement "shall transfer" to Ms. Nelson, operates as a present assignment. *Id*.

The Court did not address why the "shall transfer" language itself represented a clear and unmistakable present assignment. Dkt. 471 at 5. The Federal Circuit, as well as other courts, routinely find contract provisions using the future tense, such as "shall transfer," are not present assignments because they require a transfer at some future date. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010) ("shall purchase and accept … all of the right, title, and interests"); *Gellman v. Telular Corp.*, 449 F. App'x 941, 944–45 (Fed. Cir. 2011) ("shall be and remain the property of"); *Sycamore IP Holdings, LLC*, v. AT&T Corp., et al., No. 2:16-cv-588, 2018 WL 929691, at *4–5 (E.D. Tex. Feb. 16, 2018) (Bryson, C.J.) ("shall, as a condition of employment with the

University, assign all rights, title, and interest"); *Kaist IP US LLC v. Samsung Electronics Co., Ltd.*, No. 2:16-CV-01314-JRG, 2018 WL 10498168, *4–8 (E.D. Tex. Sept. 6, 2018) (finding the agreements and the "use of 'shall' implies a requirement of some future action"). Accordingly, the "shall transfer" sentence is not clearly a present transfer or assignment and at the very minimum, the "shall transfer" sentence can reasonably be read to require future action.

The parties to the 2006 Agreement knew how to use present language, such as "hereby," when they wanted to indicate a present act. As discussed above, "hereby" appears in the sentence immediately preceding the "shall transfer" language. And obviously, "shall transfer" is not a synonym for "hereby." As such, under ordinary principals of contract interpretation, "hereby" and "shall transfer" should not be construed identically. *See Alameda Cnty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*, 213 Cal.App.4th 1163, 152 Cal. Rptr. 3d 845, 862 (2013) (relying on rule specifying "[i]t must be held, in the absence of any expression in the contract to the contrary that words which are not synonyms were never intended to be so used"); *see also* 14A Cal. Jur. 3d (2008) Contracts, § 222, p. 54.

Separately, the Court found that the Patents-in-Suit were "ASI Assets" and thereby part of the "right" and/or "title" "set forth" in the 2002 Letter Agreement. Yet, the "shall transfer" sentence does not mention the ASI Assets.[3] Instead, it states that "all right, title, and interest set forth" in the 2002 Letter Agreement shall transfer to Ms. Nelson; not "all right, title, and interest [to assets as defined]" in the 2002 Letter Agreement. The actual rights "set forth" with respect to the ASI Assets in the 2002 Letter Agreement are not reflective of a ***present*** assignment to the Patents-in-Suit. Instead, the rights "set forth" regarding ASI Assets all require ***future*** action and are granted only contingent on ***future*** events. Dkt. 281, Ex. 17 at 1 ("ASI ***will transfer*** certain assets of ASI (the 'ASI Assets') to" HMB Partners, LLC), *id.* (HMB Partners, LLC "***will*** contribute" ASI Assets to International Internet Partners, LLC), *id.* (VerticalSuite, Inc. "will thereafter" receive an exclusive license to ASI Assets). Further, "title" to the Patents-in-Suit did not exist in 2006. U.S. Patent 7,356,482 issued on April 8, 2008 to ASI (consistent with assignments filed with the USPTO) and U.S. Patent 8,484,111 issued on

---

[3] Salesforce relied entirely on extrinsic evidence in urging the "set forth" clause encompassed the Patents-in-Suit. Dkt. 281 at 8.

1    July 9, 2013 to AIT (same). Dkt. 305, Ex. A at 1, Dkt. 305, Ex. B at 1. Put simply, the Court's opinion

2    expanded the "shall transfer" sentence such that it not only granted rights "set forth" in the 2002 Letter

3    Agreement but all rights to all "assets" and future "assets," *i.e.*, the Patents-in-Suit, regardless of

4    whether the rights to such assets were particularly "set forth" in either the 2002 Letter Agreement or

5    the 2006 Agreement.

6          **b.    The 2006 Agreement Should Be Construed Consistently with Ms. Nelson's Right to Modify, Terminate or Discard Section A of the 2002 Letter Agreement**

7

8          The Court's interpretation of the "shall transfer" sentence as a present assignment of the

9    Patents-in-Suit is further inconsistent with the remaining portions of the 2006 Agreement. The 2006

10   Agreement does not mention ASI Assets. The 2002 Letter Agreement defines ASI Assets only in

11   Section A. The 2006 Agreement provides Ms. Nelson "sole and exclusive right to modify, terminate

12   or otherwise discard" the clause defining ASI's Assets, *i.e.,* Section A. In other words, by its very

13   terms, the 2006 Agreement expressly permitted Ms. Nelson, following its execution, to terminate or

14   discard the provision defining ASI Assets, thereby leaving ASI Assets at ASI. She could, alternatively,

15   modify the provision specifying which assets should be transferred and how such assets would be

16   transferred by ASI. Dkt. 281, Ex. 17, Section A. Yet, based on the Court's interpretation, ASI had no

17   assets following the 2006 Agreement and Ms. Nelson had no right to have ASI retain its assets (absent

18   first transferring them back) or to have ASI transfer such assets.

19         Interpreting the "shall transfer" sentence as requiring a future act, instead of as a present

20   assignment, is consistent with Ms. Nelson's ability to modify, terminate or discard the provisions of

21   the 2002 Letter Agreement related to the ASI Assets. Where, as here, the "shall transfer" sentence can

22   be interpreted as requiring a future act and such interpretation would be consistent with Ms. Nelson's

23   right to modify and discard the provisions of Section A, it should be construed consistently. *See*

24   *Southern Pacific Land Co. v. Westlake Farms, Inc.*, 188 Cal. App. 3d 807, 822 (Ct. App. 1987) ("Even

25   where different parts of the instrument appear to be contradictory and inconsistent with each other, the

26   court will, if possible, harmonize the parts and construe the instrument in such way that all parts may

27   stand …").

28

PLAINTIFF'S MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION
- 15 -

Indeed, "[w]here general and specific provisions [of a contract] are inconsistent, the specific provision controls." *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 12 (2017); *see also* Code Civ. Proc., § 1859 ("[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."). Here, the more specific clause of the 2006 Agreement, and the one that is consistent with the parties' conduct, is the sentence that specifically references Section A of the 2002 Letter Agreement, the only section of either agreement defining ASI Assets.

Further, the 2006 Agreement does not identify a purported patent assignor, does not mention ASI Assets or any patents, and does not indicate that ASI was presently assigning any patent rights to Ms. Nelson. In contrast, the two sets of assignments of record at the USPTO concerning the Patents-in-Suit, from the inventors to ASI and from ASI to AIT, each used standard language of a present assignment of all patent rights from a specific assignor to a specific assignee, including rights to present and future applications and patents. In particular, the 2012 assignment from ASI to AIT specified that ASI "owns all right, title and interest in the Letters Patent … set forth below" and stated that "in consideration of One Dollar ($1.00) and other good and sufficient consideration … the Assignor [ASI] … does sell, assign, transfer, and set over unto the Assignee [AIT] … and assigns the entire right, title, and interest in and to … said patent(s) … [and] the right to recover damages … for prior infringements of said application(s) and said patent(s)." Dkt. 305, Ex. D at AIT000000974–975. The 1998 assignment from the inventors to ASI contains nearly identical language. *See id*. at AIT000000970.

When the 2002 Letter Agreement and the 2006 Agreement are considered together and in their entirety, the 2006 Agreement can reasonably be read as not being a present assignment of the ASI Assets, including patent ownership, to Ms. Nelson. Accordingly, AIT respectfully requests reconsideration of the Court's finding that the language of the 2006 Agreement could not be reasonably interpreted as requiring a future act.

**c.    The 2006 Agreement Was Not Intended to Presently Assign All Right, Title and Interest to the Patents-in-Suit to Ms. Nelson**

At the bare minimum, the conduct and intent of Ms. Nelson, ASI and AIT should be considered in determining whether the 2006 Agreement is clear and unambiguous. "[T]he test of admissibility of

extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is ***reasonably susceptible***." *Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (emphasis added) (quoting *City of Manhattan Beach v. Superior Court*, 13 Cal. 4th 232, 914 P.2d 160, 169 (1996)).  Based on California Law, the Ninth Circuit has instructed that "[t]he construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, ***when reasonable***, be adopted and enforced by the court." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 937 (9th Cir. 2002) (emphasis added) (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296–97, 466 P.2d 996 (1970)).

As detailed above, the intent of the parties was not for a present assignment of ASI assets to Ms. Nelson.  *See* Section II.A.  Mr. Sturgeon explained that he had never considered the possibility that Ms. Nelson was the owner of the Patents-in-Suit by virtue of the 2006 Agreement.  Dkt. 305, Ex. E at ¶ 16.  Ms. Nelson has likewise confirmed that she did not intend to acquire ownership of the Patents-in-Suit in 2006 and did not believe she was an owner in 2012.  Nelson Dec. at ¶¶ 12–15, 19–22.  She further has explained if she had intended or believed the 2006 Agreement actually assigned her the Patents-in-Suit in her individual capacity, she would have simply assigned any such rights directly to AIT.  *Id.* at ¶¶ 21–22.

AIT hopes the Court will reconsider its finding that the 2006 Agreement so clearly operates as a present transfer of the Patents-in-Suit to Ms. Nelson such that the intent and conduct of the parties should be ignored.  Indeed, where, as here, the 2006 Agreement can reasonably be interpreted as not being a present assignment of the Patents-in-Suit to Ms. Nelson, the conduct and actions of the parties before any dispute arose should control.  *U.S. Cellular*, 281 F.3d at 937–38 ("[W]hen the parties have acted upon that understanding before the dispute arose, a finding that the agreement should be construed as acted upon will not be disturbed by the reviewing tribunal.").

## III.    CONCLUSION

For the foregoing reasons, AIT respectfully requests that the Court modify its dismissal and/or reconsider its finding that AIT lacks constitutional standing.

1    Dated:  April 25, 2025                    *s/ Andrea Pacelli*

2                                              Michael A. Burke, Esq.
3                                              ROBISON, SHARP, SULLIVAN & BRUST
                                               (Resident Counsel)
4                                              71 Washington Street
                                               Reno, Nevada 89503
5
6                                              Michael DeVincenzo, Esq. (*pro hac vice*)
                                               Charles Wizenfeld, Esq. (*pro hac vice*)
7                                              Andrea Pacelli, Esq. (*pro hac vice*)
                                               KING & WOOD MALLESONS LLP
8                                              500 Fifth Ave., 50th Floor
                                               New York, New York 10110
9                                              Telephone: (212) 319-4755
                                               Email: michael.devincenzo@us.kwm.com
10                                             charles.wizenfeld@us.kwm.com
                                               andrea.pacelli@us.kwm.com
11
                                               Steven C. Sereboff, Esq. (*pro hac vice*)
12                                             SoCAL IP LAW GROUP LLP
                                               1332 Anacapa, Suite 201
13                                             Santa Barbara, CA 93101
                                               Telephone: (805) 230-1356
14                                             Email: ssereboff@socalip.com

15                                             *Attorneys for Plaintiff*
                                               *Applications in Internet Time, LLC*
16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2  The undersigned certifies that on April 25, 2025 I caused the foregoing **PLAINTIFF**

3  **APPLICATIONS IN INTERNET TIME, LLC'S MOTION FOR RELIEF FROM AND TO**

4  **RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE UNDER RULE**

5  **12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION** to be filed with the Clerk of

6  the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the

7  following counsel of record:

8

9  Leigh T. Goddard
   lgoddard@mcdonaldcarano.com
10
   Kevin P.B. Johnson
11  kevinjohnson@quinnemanuel.com

12  Ray R. Zado
   rayzado@quinnemanuel.com
13
   Sam S. Stake
14  samstake@quinnemanuel.com

15  *Attorneys for Defendant Salesforce, Inc.*

16

17

18  Dated: April 25, 2025                *s/ Andrea Pacelli*

19                                       Andrea Pacelli

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT
PREJUDICE UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION
- 19 -