Michael A. Burke, Esq. (NSB #11527)
ROBISON, SHARP, SULLIVAN & BRUST
71 Washington St.
Reno, NV 89503
Telephone: (775) 329-3151
Email: mburke@rssblaw.com

Michael DeVincenzo, Esq. (*pro hac vice*)
Charles Wizenfeld, Esq. (*pro hac vice*)
Andrea Pacelli, Esq. (*pro hac vice*)
KING & WOOD MALLESONS LLP
500 Fifth Ave., 50th Floor
New York, New York 10110
Telephone: (212) 319-4755
Email: michael.devincenzo@us.kwm.com
andrea.pacelli@us.kwm.com
charles.wizenfeld@us.kwm.com

Steven C. Sereboff, Esq. (*pro hac vice*)
SoCAL IP LAW GROUP LLP
1332 Anacapa, Suite 120
Santa Barbara, CA 93101
Telephone: (805) 230-1356
Email: ssereboff@socalip.com

*Attorneys for Plaintiff*
*Applications in Internet Time, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| APPLICATIONS IN INTERNET TIME, LLC,<br><br>         Plaintiff,<br><br>  v.<br><br>SALESFORCE, INC.,<br><br>         Defendant. | Civil Action No.: 3:13-CV-00628-MMD-CLB<br><br>**PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT .....................................................................................................1

    A.     The Court Has Jurisdiction and Discretion to Grant AIT Equitable Relief ...............1

        1.     Rules 59 and 60 Preserve the Court's Jurisdiction After Dismissal...............1

        2.     Equitable Relief Under Rule 17 and/or Contract Reformation Is Discretionary ................................................................................................3

    B.     The Court Should Grant AIT's Requested Equitable Relief ........................................5

        1.     Ratification Under Rule 17(a)(3) Is Proper ......................................................5

        2.     The Court Should Reform the 2006 Agreement to Reflect the Parties' Intent8

    C.     Reconsideration of the Court's Determination that AIT Lacks Standing ..................9

        1.     Ms. Nelson's Knowledge and Consent to the 2012 Assignment .................10

        2.     Salesforce Continues to Ignore the Plain Language of the 2006 Agreement 11

III.    CONCLUSION .................................................................................................12

1

## **TABLE OF AUTHORITIES**

2

3

**Page(s)**

4

**Cases**

5

6 *002152706 Ontario Ltd. v. Changer & Dresser, Inc.*,
   No. 1:18-CV-01228-ACA, 2019 WL 339177 (N.D. Ala. Jan. 28, 2019) ...............................3

7 *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   No. 03 MDL 1529 (LMM), 2009 WL 1490599 (S.D.N.Y. May 21, 2009) ......................6, 8
8

9 *In re Bard IVC Filters Prods. Liab. Litig.*,
   No. CV-15-01714-PHX-DGC, 2016 WL 3055112 (D. Ariz. May 31, 2016).........................6

10 *Borchert v. Quad Rsch., Inc.*,
    No. 14-cv-01578, 2015 WL 13917869 (C.D. Cal. Apr. 7, 2015)............................................5
11

12 *Brown v. Stroud*,
    No. C 08-02348 JSW, 2011 WL 13269709 (N.D. Cal. Oct. 3, 2011)....................................6
13

14 *Clift v. BNSF Ry. Co.*,
    No. 2:14-CV-00152-LRS, 2015 WL 4656151 (E.D. Wash. Aug. 5, 2015) ...........................6
15

16 *CPI Card Group, Inc. v. Multi Packaging Solutions, Inc.*,
    No. 16-CV-02536-MEH, 2018 WL 3429197 (D. Colo. July 16, 2018)..................................3

17 *Crown Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Chicago*,
    830 F. Supp. 1097 (N.D. Ill. 1993)........................................................................................6
18

19 *Diaz v. Vigil*,
    No. 1:03-cv-05108, 2007 WL 954339 (E.D. Cal. Mar. 29, 2007) .........................................2

20 *Doe v. Law Offices of Andrew Weiss*,
    No. EDCV 19-2119, 2020 WL 5983929 (C.D. Cal. Jul 30, 2020) .........................................1
21

22 *Dunmore v. United States*,
    358 F.3d 1107 (9th Cir. 2004) ................................................................................................8
23

24 *Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*,
    124 Fed. Appx. 732 (3d Cir. 2005) .....................................................................................3, 6

25 *Est. of Smart v. City of Wichita*,
    No. 14-2111-EFM, 2018 WL 534335 (D. Kan. Jan. 24, 2018)..............................................7
26

27 *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
    991 F.3d 370 (2d Cir. 2021) ...................................................................................................4

28

*Goodman v. United States*,
   298 F.3d 1048 (9th Cir. 2002) ........................................................................8

*Hess v. Edey*,
   689 F.2d 977 (11th Cir. 1982) .......................................................................4

*Hess v. Ford Motor Co.*,
   27 Cal. 4th 516 (2002) ..................................................................................9

*United States ex rel. Hoggett v. University of Phoenix*,
   863 F.3d 1105 (9th Cir. 2017) .......................................................................9

*iLOR, LLC v. Google, Inc.*,
   550 F.3d 1067 (Fed. Cir. 2008) .....................................................................2

*Intellectual Tech LLC v. Zebra Techs. Corp.*,
   101 F.4th 807 (Fed. Cir. 2024) ...............................................................5, 12

*Lans v. Digital Equipment Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001) .....................................................................3

*Liberty Mutual Ins. Group v. Panelized Structures, Inc.*,
   No. 10-CV-01951-MMD, 2013 WL 760343 (D. Nev. Feb. 26, 2013) ................4, 7

*Liu Hongwei v. Velocity V Ltd. P'ship*,
   No. 2:15-cv-05061-ODW (Ex), 2018 WL 1472502 (C.D. Cal. Mar. 26, 2018) ......7

*Malik v. State of California*,
   No. 2:23-cv-10912-KK-JC, 2024 WL 5423774 (C.D. Cal. Oct. 17, 2024) ...........2

*NWHW Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*,
   No. SACV 22-01030-CJC (KESX), 2023 WL 9375862 (C.D. Cal. Dec. 22, 2023) ......9

*Paradise Creations, Inc. v. UV Sales, Inc.*,
   315 F.3d 1304 (Fed. Cir. 2003) .....................................................................5

*Park B. Smith, Inc. v. CHF Indus. Inc.*,
   811 F. Supp. 2d 766 (S.D.N.Y. 2011) ...........................................................3

*Pasqualetti v. Galbraith*,
   200 Cal. App. 2d 378 (1962) ........................................................................9

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
   402 F.3d 1198 (Fed. Cir. 2005) .....................................................................5

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   959 F.3d 1065 (Fed. Cir. 2020) ...........................................................*passim*

*Sonntag v. Gurries*,
   No. 3:09-cv-00637, 2011 WL 3841090 (D. Nev. Aug. 26, 2011) ....................10

*Southwest eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*,
   No. 2:07-CV-311, 2009 WL 4730464 (E.D. Tex. Dec. 7, 2009) .................................... 4

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*,
   No. 18-CV-11386 (VSB) (KHP), 2023 WL 7135236 (S.D.N.Y. Oct. 30, 2023) ................ 3, 6

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000) .......................................................................... 11

*Sun Refining and Marketing Co. v. Goldstein Oil Co.*,
   801 F.2d 343 (8th Cir. 1986) ............................................................................... 2

*Tri-Star Electronics Intern., Inc. v. Preci-Dip Durtal SA*,
   No. 08-cv-4226, 2009 WL 8711025 (C.D. Cal. Feb. 19, 2009) .............................. 4, 8

*U.S. for Use & Benefit of Wulff v. CMA, Inc.*,
   890 F.2d 1070 (9th Cir. 1989) .............................................................................. 8

*Unwired Planet, LLC v. Google Inc.*,
   No. 3:12-CV-00504-MMD-VP, 2014 WL 301002 (D. Nev. Jan. 27, 2014) ................... 10

*Wages v. I.R.S.*,
   915 F.2d 1230 (9th Cir. 1990) .............................................................................. 2

*Wieburg v. GTE Southwest Inc.*,
   272 F.3d 302 (5th Cir. 2001) ................................................................................ 2

*Wilbur v. Locke*,
   423 F.3d 1101 (9th Cir. 2005) .............................................................................. 5

**Other Authorities**

Fed. R. App. P. 4 ..................................................................................................... 2

Fed. R. Civ. P. 7 ...................................................................................................... 9

Fed. R. Civ. P. 17 ........................................................................................... *passim*

## I.    INTRODUCTION

This Court has discretion to prevent the colossal waste of judicial and party resources that would result from the dismissal of this action, another appeal, and potentially an entirely new action. Salesforce's arguments to the contrary are wrong.  First, this Court retains jurisdiction to reconsider or alter its own judgment and the requested relief is permitted on a timely filed motion to reconsider or alter judgment.  Second, Salesforce wrongly argues that the remedies under Rule 17 and reformation are unavailable in patent cases due to Article III concerns.  Salesforce cites not one case indicating a court lacks discretion to grant that relief.  Instead, Salesforce misrepresents a case on point, *Schwendimann*, and falsely claims another case, *Intellectual Tech*, precludes the equitable relief sought by AIT, despite *Intellectual Tech* not even mentioning such relief.  When Salesforce's arguments directed to the Court's supposed lack of discretion are stripped away, the overwhelming equities—the extensive resources devoted to 12 years of litigation, millions of dollars spent by the parties, and the untold hours spent by this Court and others—strongly support granting the requested relief to allow a resolution of the case on its merits.

With respect to AIT's request for reconsideration of the Court's interpretation of the 2006 Agreement, Salesforce nowhere articulates: (1) how the three-sentence clause in the 2006 Agreement as a whole represents a present assignment of ASI's assets; or (2) how the 2006 Agreement could encompass all rights, title and interest to the Patents-in-Suit which had not issued, without resorting to extrinsic evidence.  Indeed, Salesforce does not dispute that reconsideration is warranted if Ms. Nelson's declaration is considered.  Salesforce invites clear error by requesting the Court to ignore AIT's reasonable interpretation as supported by the conduct and intent of the parties.

## II.    ARGUMENT

### A.    The Court Has Jurisdiction and Discretion to Grant AIT Equitable Relief

#### 1.    Rules 59 and 60 Preserve the Court's Jurisdiction After Dismissal

The Court has jurisdiction and discretion to alter, amend or reconsider its prior decision dismissing AIT's claims without prejudice. It is well settled that a district court retains authority to rule on a motion for relief from judgment, or to alter or amend a judgment, filed up to 28 days after entry of judgment. *Doe v. Law Offices of Andrew Weiss*, No. EDCV 19-2119, 2020 WL 5983929, *2

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

- 1 -

1    n.2 (C.D. Cal. Jul 30, 2020) (citing *Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061, 1064 (9th Cir.

2    2002)); *Malik v. State of California*, No. 2:23-cv-10912-KK-JC, 2024 WL 5423774, *2 (C.D. Cal.

3    Oct. 17, 2024) (collecting cases); *see also* Fed. R. App. P. 4(a)(4)(A)(iv), (A)(vi), (B)(i) ("If a party

4    files … [a motion] to alter or amend the judgment under Rule 59 … for relief under Rule 60 … [a]

5    notice [of appeal] becomes effective to appeal a judgment or order … when the order disposing of the

6    last such remaining motion is entered.").[1]  Here, Salesforce does not dispute AIT's motion is timely.

7         Moreover, Salesforce's opposition (Dkt. 479, "Opp.") ignores that it still has pending

8    counterclaims.  Dkt. 24 at 7–8.  This Court retains jurisdiction over such claims. *See iLOR, LLC v.*

9    *Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008) ("[N]either the decision nor the judgment gives

10   any indication that the district court intended to address or dismiss Google's counterclaims. Since the

11   district court ***would have clearly abused its discretion by sua sponte dismissing Google's***

12   ***counterclaims***, we decline to interpret the judgment to do so.") (emphasis added). Salesforce has not

13   sought dismissal and, instead, has simply speculated that the Court *sua sponte* dismissed its

14   counterclaims (Dkt. 478 at 4), despite that doing so would have been an abuse of discretion.  *iLOR*,

15   550 F.3d at 1072.

16        Salesforce baldly states that AIT's requested equitable relief cannot be granted after the entry

17   of judgment.  Opp. at 3.  That is demonstrably false and inconsistent with both Rules 59 and 60.  Indeed,

18   in *Sun Refining and Marketing Co. v. Goldstein Oil Co.*, where plaintiff "obtained ratification …

19   shortly after judgment was entered," and thereafter "moved to have the case reopened pursuant to Fed.

20   R. Civ. P. 52 and 59 based on the ratification," the Eighth Circuit concluded not only that the district

21   court could consider such ratification but that it erred by failing to "accept[] the ratification."  801 F.2d

22   343, 345 (8th Cir. 1986).  Other courts recognize the same.  *See, e.g., Wieburg v. GTE Southwest Inc.*,

23

24   _____

[1] Salesforce cites no case indicating this Court lacks jurisdiction to consider AIT's timely filed motion.
Opp. at 3. The cited authority simply recognizes that without subject matter jurisdiction a court cannot
"say[] anything on the ***merits*** of that subject matter."  *Wages v. I.R.S.*, 915 F.2d 1230, 1234–35 & 1234
n.5 (9th Cir. 1990).  That same authority recognizes "[a] jurisdictional dismissal is not a judgment on
the merits."  *Id.* at 1234. Here, AIT is seeking reconsideration of the jurisdictional dismissal, not a
finding with respect to the merits of patent infringement.  Similarly, in *Diaz v. Vigil*, the district
court recognized it retained jurisdiction over post judgment motions explaining "no further filings … will
be entertained ***_unless_ they are proper post-judgment motions***." No. 1:03-cv-05108, 2007 WL 954339,
*1 (E.D. Cal. Mar. 29, 2007) (emphasis added).

272 F.3d 302, 308–309 (5th Cir. 2001) (finding district court abused discretion in refusing to grant post-judgment motion to vacate and afford movant the opportunity to seek Rule 17(a) relief); *Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 124 Fed. Appx. 732, 734–735 (3d Cir. 2005) (finding abuse of discretion in denying movant an opportunity to obtain Rule 17(a) ratification sought in post judgment motion). Salesforce is simply wrong in its unsupported assertion that this Court lacks discretion to consider AIT's request for equitable relief from judgment.[2]

## 2. Equitable Relief Under Rule 17 and/or Contract Reformation Is Discretionary

The Federal Circuit and numerous district courts consistently have recognized a district court's discretion to grant relief under Fed. R. Civ. P. 17(a)(3) and the doctrine of contract reformation. In urging to the contrary, Salesforce misrepresents authority and otherwise fails to cite a single case finding the Court lacks discretion to grant the requested equitable relief.

A district court has discretion to grant relief under Fed. R. Civ. P. 17(a)(3) to allow the continuation of a patent action as if it was commenced by the proper party in the context of Article III standing. *See Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328–1329 (Fed. Cir. 2001) (finding district court did not abuse discretion in denying requested relief under Rule 17 where Plaintiff who lacked patent ownership had not demonstrated an honest mistake was made); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-CV-11386 (VSB) (KHP), 2023 WL 7135236, *6 (S.D.N.Y. Oct. 30, 2023) (granting substitution under Rule 17(a) despite no dispute the original party "lacked Article III standing to assert the counterclaim"); *CPI*, 2018 WL 3429197, at *3–9 (granting relief under Rule 17(a) despite Plaintiff not possessing ownership of asserted patents); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 774 (S.D.N.Y. 2011) (same); *002152706 Ontario Ltd. v. Changer & Dresser, Inc.*, No. 1:18-CV-01228-ACA, 2019 WL 339177, at *3–4 (N.D. Ala. Jan. 28, 2019) (same). Indeed, the relief granted under Rule 17(a)(3) allows the case to continue because it "relates back to the 'original[ ] commence[ment]' of the suit." Article III and Rule 17 are not applied differently in the

---

[2] Salesforce selectively quotes *CPI Card Group, Inc. v. Multi Packaging Solutions, Inc.* (Opp. at 3) but the case recognized that although it would "lose jurisdiction over all legal claims *if the patent owner is not joined*, *it has not yet lost jurisdiction to address the motion* …" No. 16-CV-02536-MEH, 2018 WL 3429197, *5 (D. Colo. July 16, 2018) (emphasis added). The court did not find it lacked discretion to consider Rule 17 on a post-judgment motion for reconsideration.

patent context than in other contexts.  *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 386, 389 (2d Cir. 2021) ("Article III is satisfied … [i]f th[e] party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action" and finding it "nonsensical" to interpret Rule 17 and Article III otherwise); *Hess v. Edey*, 689 F.2d 977, 981 (11th Cir. 1982) (finding under Article III "the suit need not be dismissed" because the "subsequent joinder or ratification … ***relates back to the time the suit was filed***"); *Liberty Mutual Ins. Group v. Panelized Structures, Inc.*, No. 10-CV-01951-MMD, 2013 WL 760343, *1 (D. Nev. Feb. 26, 2013) (allowing Rule 17 substitution of plaintiff with its subsidiary where original plaintiff "was not a party to the [disputed] contract, but rather its subsidiary").

Consistently, the Federal Circuit has expressly recognized that Article III standing does not preclude application of the doctrine of contract reformation because, like relief under Rule 17, contract reformation relates back in time.  In *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065 (Fed. Cir. 2020), due to a mistake, the plaintiff did not actually own the patents-in-suit on the day it filed the complaint.  *Id.* at 1069–70. On appeal, the Federal Circuit addressed whether a district court has discretion to grant relief under the doctrine of reformation.  The Court found "[w]hen a court reforms a contract, it simply assures that the written instrument properly reflects the parties' agreement. … ***The agreement was effective when made, not as of the date of the reformation.***" 959 F.3d at 1074 (emphasis added).  The Court found no Article III concerns despite the reformation occurring ***after*** the litigation began.  *Id*.  District courts have also recognized in the patent context that the Article III standing requirement does not preclude equitable relief under contract reformation.  *See Tri-Star Electronics Intern., Inc. v. Preci-Dip Durtal SA*, No. 08-cv-4226, 2009 WL 8711025, *3 (C.D. Cal. Feb. 19, 2009) (recognizing even if Article III standing did not exist at litigation inception "reformation is available in the case of a patent assignment where there is a mutual mistake"); *Southwest eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*, No. 2:07-CV-311, 2009 WL 4730464, at *4 (E.D. Tex. Dec. 7, 2009) (collecting cases correcting assignments and recognizing "[n]umerous courts have found that errors in an assignment do not necessarily preclude a finding of standing").

Salesforce argues that the Court has no discretion in the patent context because of recent Federal Circuit "binding precedent that precludes the relief AIT is seeking."  Opp. at 6 (relying on

*Intellectual Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807 (Fed. Cir. 2024)).  Yet, *Intellectual Tech* nowhere mentions the equitable remedies of Rule 17 and contract reformation.  Instead, the "only question" in that case was whether plaintiff demonstrated a "minimum of an injury in fact" and the Court found such injury existed.  101 F.4th at 813.  Relying on settled precedent, *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003), *Intellectual Tech* recognized that Article III standing must be present "at the initiation of suit."  101 F.4th at 814.  However, *Intellectual Tech* did not address the equitable relief AIT is now requesting, which undisputedly relates back in time.

Notably, Salesforce fails to cite any case holding that a district court lacks discretion to consider the requested equitable remedies due to Article III concerns.  With respect to Rule 17, other than erroneously declaring *Intellectual Tech* new law, Salesforce simply relies on dicta from cases that, like *Intellectual Tech*, do not even involve Rule 17.  *See Borchert v. Quad Rsch., Inc.*, No. 14-cv-01578, 2015 WL 13917869, at *4 (C.D. Cal. Apr. 7, 2015) (Rule 17 not mentioned); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (same); *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (same).  With respect to contract reformation, Salesforce blatantly mischaracterizes *Schwendimann* urging "constitutional standing was never in question."  Opp. at 8.  *Schwendimann* expressly distinguished contract reformation from the ordinary rule espoused in *Paradise Creations* and reiterated in *Intellectual Tech*, precisely because contract reformation is retroactive.  959 F.3d at 1074.

**B.    The Court Should Grant AIT's Requested Equitable Relief**

**1.    Ratification Under Rule 17(a)(3) Is Proper**

Salesforce does not dispute Ms. Nelson's ratification satisfies the requirements of Rule 17(a)(3) or that AIT presently owns all right, title and interest to the Patents-in-Suit.  Dkt. 476 ("Mot.") at 3–5; Nelson Dec. at ¶¶ 23–25 and Ex. D.  Instead, Salesforce argues that "Rule 17 cannot fix constitutional standing," Opp. at 4, and that "AIT's pleading error is not 'excusable.'" *Id*. at 6.  Salesforce's constitutional standing argument is wrong for the reasons detailed above. *See* Section II.A.2.  And, with respect to whether the alleged mistake is "excusable," Salesforce's cases do not remotely support denying relief based on the equities at issue in this long pending action.  In each of Salesforce's cases, the Court found the equities did not support relief because, among other things, the plaintiff or their

1  counsel knew that the case was brought in the name of an improper party, never disputed that defect,

2  and yet willfully disregarded it.  *See Brown v. Stroud*, No. C 08-02348 JSW, 2011 WL 13269709, *3

3  (N.D. Cal. Oct. 3, 2011) (plaintiff took inconsistent positions on ownership in parallel proceedings);

4  *Clift v. BNSF Ry. Co.*, No. 2:14-CV-00152-LRS, 2015 WL 4656151, *6 (E.D. Wash. Aug. 5, 2015)

5  (plaintiff sued in his own name despite being told by his attorney he should have disclosed the claim

6  in pending bankruptcy proceedings which deprived him of standing); *In re Bard IVC Filters Prods.*

7  *Liab. Litig.*, No. CV-15-01714-PHX-DGC, 2016 WL 3055112, *1–2 (D. Ariz. May 31, 2016) (counsel

8  filed an action in the name of a plaintiff he should have known was dead).  Unlike those plaintiffs, AIT

9  brought this action in good faith, with full belief that it was the true owner of the Patents-in-Suit, and

10  it had never alleged that Ms. Nelson was the owner of the Patents-in-Suit.  *See Spectrum*, 2023 WL

11  7135236, at *7 (acknowledging "mistake is plausible absent evidence of bad faith or intent to deceive,"

12  and allowing relief despite "a significant mistake that reflects a lack of diligence").

13        Moreover, Salesforce's complaint about the timing of AIT's motion does not overcome the

14  equities of allowing this case to continue.  Opp. at 7.  Before the Court determined just weeks ago that

15  the 2006 Agreement constituted a present assignment of the Patents-in-Suit to Ms. Nelson, at a

16  minimum AIT held a good faith belief that agreement was not a patent assignment.   In such

17  circumstances, Rule 17 did not require Ms. Nelson (who if AIT was correct had no interest in the

18  Patents-in-Suit) to immediately seek ratification upon the filing of Salesforce's motion to dismiss.

19  Indeed, "a party faced with a Rule 17(a) objection in a motion [need not] forthwith seek ratification,

20  joinder or substitution at that party's peril, even if the party takes a different view of the validity of the

21  objection; such a party is surely acting reasonably if it awaits the court's decision of the motion." *In*

22  *re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2009 WL 1490599,

23  at *3 (S.D.N.Y. May 21, 2009) (granting motion to substitute filed several weeks after dismissal of the

24  action for lack of standing); *see also Durabla*, 124 Fed. Appx. at 734 (finding it was abuse of discretion

25  to deny an opportunity to obtain Rule 17(a) ratification within "a reasonable time from the [district

26  court's] determination that [plaintiff] was not a real party in interest."); *Crown Life Ins. Co. v. Am.*

27  *Nat. Bank & Tr. Co. of Chicago*, 830 F. Supp. 1097, 1100 (N.D. Ill. 1993) (recognizing equities

28  permitted Rule 17 motion where moving party did not know whether substitution would be needed

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE
COURT'S DISMISSAL WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

1    earlier).  Salesforce's own delays in raising the standing issue belie its position that AIT was

2    unreasonable in not immediately recognizing the 2006 Agreement was a present assignment to the

3    Patents-in-Suit.  Salesforce raised no immediate ownership objection upon AIT's production of the

4    2006 Agreement in the normal course of discovery.[3]  Thereafter, Salesforce allowed the completion

5    of fact and expert discovery, requested a stay of the action (Dkt. 223), and ultimately agreed to dismiss

6    its standing motion upon entry of judgment in Salesforce's favor. At the Federal Circuit, Salesforce

7    did not dispute AIT's jurisdictional statement or otherwise advise the Federal Circuit of any standing

8    challenges on appeal. *See Applications in Internet Time, LLC v. Salesforce, Inc.*, No. 2024-1133, Dkt.

9    12 at xii; Dkt. 18 (Fed. Cir.).

10       When addressing Rule 17, Salesforce does not dispute that a Court "must consider the prejudice

11   to both parties and the public policy interest in litigating suits on their merits" or that the "more time

12   and expense spent in litigation increases the weight of the policy favoring decisions on the merits."

13   *Liberty Mutual*, 2013 WL 760343, at *3.  Indeed, Salesforce does not address the prejudice to either

14   party, the public policy interests in litigating suits on their merits, or the overwhelming waste of judicial

15   and party resources that would result if AIT was forced to litigate this case anew.  *See Mot.* at 5–7.

16   Here, the equities strongly favor grant of relief under Rule 17.  *Id.*  AIT has been litigating this case

17   since 2013.  The Patents-in-Suit expired in 2021, negatively impacting the remedies available in a new

18   action.  In contrast, Salesforce does not allege ***any*** prejudice would result from ratification.

19       Salesforce also does not allege that AIT's failure to name Ms. Nelson as a plaintiff was due to

20   "tactical maneuvering" or that AIT gained a "tactical advantage."  *Liu Hongwei v. Velocity V Ltd.*

21   *P'ship*, No. 2:15-cv-05061-ODW (Ex), 2018 WL 1472502, at *3–4 (C.D. Cal. Mar. 26, 2018).  Simply

22   put, nobody involved had anything to gain from naming AIT as a plaintiff rather than Ms. Nelson.

23   AIT is a small company wholly owned by Mr. Sturgeon and Ms. Nelson, who share close personal

24   bonds.  Nelson Dec. at ¶¶ 11, 16–17.  In this respect, the relationship between AIT, Ms. Nelson, and

25   Mr. Sturgeon is not unlike the family relationship found to justify ratification under Rule 17 in *Liu*

26   *Hongwei*, 2018 WL 1472502, at *4; *see also Est. of Smart v. City of Wichita,* No. 14-2111-EFM, 2018

27   _____

28   [3] The 2006 Agreement was produced in the ordinary course of discovery.  Salesforce's suggestion that
     counsel acted unethically by delaying its production is both false and not well taken. Opp. at 7.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE
COURT'S DISMISSAL WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

WL 534335, at *2–3 (D. Kan. Jan. 24, 2018) (granting Rule 17 ratification where action was mistakenly brought by decedent's parents as heirs rather than in their capacity as estate administrators); *Goodman v. United States*, 298 F.3d 1048, 1054 (9th Cir. 2002) (granting Rule 17 substitution where action was mistakenly brought by decedent's estate rather than relatives).

Lastly, Salesforce illogically argues that because Rule 17 can cure ***prudential*** standing, it "cannot fix ***constitutional*** standing." Opp. at 4 (emphasis added). Of course, Rule 17 can address issues of prudential standing. *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (discussing application of Rule 17 to cure lack of prudential standing). However, courts also consistently applied Rule 17 to address constitutional standing concerns in patent disputes. *See* Mot. at 6–7. Indeed, in the Rule 17 context, "[t]he factual analysis of the real party in interest issue is essentially the same [as Article III standing]." *Adelphia*, 2009 WL 1490599, at *3. Further, Salesforce's argument misrepresents the facts of this case. AIT is not "a party with no cause of action that *later* obtains a cause of action through assignment." Opp. at 6 (emphasis added). Instead, AIT has ***always*** asserted ownership of the Patents-in-Suit, and it was at best a drafting error that led to AIT's member, Ms. Nelson, being determined the nominal owner. That is a textbook example of "the salutary principle that an action should not be forfeited because of an honest mistake." *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir. 1989).

### 2. The Court Should Reform the 2006 Agreement to Reflect the Parties' Intent

It is undisputed that the 2006 Agreement is governed by California law, which provides the Court discretion to reform the 2006 Agreement. *See* Mot. at 8 (citing, e.g., Dkt. 281, Ex. 16 at ¶ 16; Cal. Civil Code § 3399). Further, Salesforce does not credibly dispute that Ms. Nelson and ASI did ***not*** intend the 2006 Agreement to effect transfer of ownership of the Patents-in-Suit from ASI to Ms. Nelson. Nelson Dec. at ¶¶ 12–15, 19–22; Dkt. 305, Ex. E at ¶ 15. Put simply, the transfer of ownership found by the Court was the result of a mutual mistake. *Id.* Salesforce does not allege any prejudice from correcting that mistake. Mot. at 9–10. Under these circumstances, reformation is proper to align the 2006 Agreement to the true intent of the parties. *See Schwendimann*, 959 F.3d at 1072–75 (affirming district court's reformation of patent assignment); *Tri-Star*, 2009 WL 8711025, at *3–4 (reforming patent assignment to reflect the correct corporate entity).

1    Salesforce protests that the proposed reformation "would ***reverse*** the meaning of the contract."

2    Opp. at 8.   But Salesforce never addresses the language of the contract as a whole.   Far from

3    "revers[ing]" the meaning of any phrase the additional language clarifies the agreement such that it is

4    consistent with the intent of the parties. Mot. at 9.   That is the very purpose of the doctrine of

5    reformation – to "transpose, reject, or supply words … to conform with the mutual understanding of

6    the parties at the time they entered into it …" *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002)

7    (alterations omitted).   Salesforce's unsupported objection to the use of extrinsic evidence to effect

8    reformation (Opp. at 8) is "without merit." *See Pasqualetti v. Galbraith*, 200 Cal. App. 2d 378, 381

9    (1962); *see Hess*, 27 Cal. 4th at 525 ("Extrinsic evidence is necessary because the court must divine

10    the true intentions of the contracting parties.").

11    Otherwise, Salesforce simply mischaracterizes authority with respect to contract reformation,

12    stating that in *Schwendimann*, "plaintiff's constitutional standing was never in question," because the

13    plaintiff was "the patentee in that case." Opp. at 8. As detailed above, in *Schwendimann*, the Federal

14    Circuit affirmed reformation an agreement to reflect the parties' intent, because the actual

15    assignment did not grant ownership of the patent-in-suit to plaintiff.  959 F.3d at 1072–75.  That is the

16    same issue here – the proposed reformation would recognize that ASI retained ownership in the ASI

17    Assets, following the 2006 Agreement, by aligning the 2006 Agreement with the parties' intent.

18    Further, Salesforce suggests that contract reformation is limited to "scrivener's errors and other

19    obvious mistakes."  Opp. at 8.  However, that is inconsistent with the cited case law.  *See NWHW*

20    *Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. SACV 22-01030-CJC (KESX),

21    2023 WL 9375862 at *10 (C.D. Cal. Dec. 22, 2023) (court reformed contract by inserting missing $1

22    million amount); *Hess*, 27 Cal. 4th at 523 (court reformed unintentionally broad release).

23    **C.    Reconsideration of the Court's Determination that AIT Lacks Standing**[4]

24

25    [4] Salesforce asserts that AIT's motion fails to "specify the rule … under which it seeks
26    reconsideration," citing to Rule 7.  Opp. at 9.  Yet, AIT's motion "state[s] with particularity the
grounds" of its motion (Fed. R. Civ. P. 7(b)(1)(B)), and Salesforce clearly understood such grounds.
27    *See* Opp. at 9–10.  Indeed, a "motion's 'nomenclature is not controlling' [and courts] 'construe [the
motion], however styled, to be the type proper for the relief requested.'" *United States ex rel. Hoggett*
28    *v. University of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017).

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE
COURT'S DISMISSAL WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

1

**1.    Ms. Nelson's Knowledge and Consent to the 2012 Assignment**

2

AIT has urged that Ms. Nelson approved the 2012 Assignment and discarded any rights

3    regarding the Patents-in-Suit by virtue of that assignment, and that Salesforce properly bore the burden

4    of proof with respect to this issue. Mot. at 11–12. Salesforce does not dispute Ms. Nelson's declaration

5    confirms AIT's ownership. Instead, Salesforce urges the Court should not consider Ms. Nelson's

6    declaration. With respect to burden, Salesforce fails to credibly dispute Federal Circuit authority

7    demonstrating Salesforce properly bears the burden of proof on these issues.[5] Mot. at 11.

8

First, Salesforce urges Ms. Nelson's declaration is offered for a "disqualifying purpose." Opp.

9    at 11. Yet, the *Sonntag v. Gurries* case Salesforce relies on concerned an evidentiary error related to

10    the failure to "prepare declarations to authenticate the evidence submitted." No. 3:09-cv-00637, 2011

11    WL 3841090, *3 (D. Nev. Aug. 26, 2011). Here, Ms. Nelson was unable to testify in 2022. *Sonntag*

12    does not "disqualify" the Court from considering the declaration of Ms. Nelson in these circumstances

13    as there was no tactical decision made in opposing Salesforce's motion.

14

Second, Salesforce argues Ms. Nelson's declaration is not "newly discovered." Opp. at 11–

15    12. Yet, Salesforce does not dispute that Ms. Nelson was unable to provide a declaration in response

16    to its motion until recently. *See Unwired Planet, LLC v. Google Inc.*, No. 3:12-CV-00504-MMD-VP,

17    2014 WL 301002, at *3 (D. Nev. Jan. 27, 2014) (Du, J.) (reconsideration is not time for a party to

18    "present facts that it ***could reasonably have asserted*** in its original motion" (emphasis added)). Indeed,

19    the case was closed during the appeal, and Salesforce's motion remained denied as moot until January

20    22, 2025. It would be inequitable to find Ms. Nelson should have provided a declaration immediately

21    upon resumption of the case. Given the importance of Ms. Nelson's testimony, her prior illness, and

22    the significant time and resources spent over the last 12 years, AIT respectfully requests the Court

23    consider Ms. Nelson's declaration and reconsider its finding dismissing AIT's claims. Mot. at 11–13.

24

Third, Salesforce argues the language of the 2006 Agreement "has not changed" and therefore

25    Ms. Nelson's declaration is not "newly discovered evidence." Opp. at 12–13. AIT has not urged that

26    the language of the 2006 Agreement changed, only that Ms. Nelson's physical condition has changed.

27

---

28

[5] In response, simply asserts that it is "AIT's burden to establish its own standing" ignoring the assignments evidencing AIT's ownership were filed with the USPTO. Opp. at 13 n.9.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE
COURT'S DISMISSAL WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

1    Lastly, Salesforce does not dispute that if Ms. Nelson's declaration is considered, and the

2    burden of proof is properly placed on Salesforce, the Court's findings regarding whether Ms. Nelson

3    consented to the 2012 Assignment require reconsideration.

4    **2.    Salesforce Continues to Ignore the Plain Language of the 2006 Agreement**

5    Salesforce continues to invite error by paying mere lip service to the actual language of the

6    2006 Agreement, while entirely failing to address its substance.

7    First, with respect to whether the "shall transfer" language represents a present assignment

8    (Mot. at Section II.B.3.a), Salesforce concedes that "shall transfer" could "signal future assignment,"

9    but argues the "mixture of present-tense and future-tense" *in this case* overcomes "the use of the word

10   'shall,'" relying on *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000).  Opp. at 16.

11   Importantly, Salesforce fails to compare the language in *Speedplay* to the 2006 Agreement in this case.

12   The agreement in *Speedplay* stated the original owner "hereby conveys, transfers and assigns" all right,

13   title and interest in the inventions to Speedplay and further that such inventions "shall belong" to

14   Speedplay.  211 F.3d at 1253.  The "hereby" phrase at issue in *Speedplay* unequivocally was a present

15   patent assignment and the "shall belong" language confirmed ownership was complete upon entry of

16   the agreement.  Here, in contrast, the "hereby" sentence in the 2006 Agreement is undisputedly not a

17   present patent assignment; it is an assignment of an agreement. Further, in this case, the sentences

18   following the "hereby" sentence provide that right, title and interest set forth in the 2002 Agreement

19   "shall transfer" to Ms. Nelson and the agreement, ***at the same time***, grants Ms. Nelson the right to

20   "modify" or "discard" the 2002 Agreement as it pertains to AIT's assets.  Mot. at 15. These material

21   differences matter *in this case*.  Yet, Salesforce ignores them.

22   Second, Salesforce does not dispute "shall transfer" and "hereby" are not synonyms.  As such,

23   Salesforce's suggestion that AIT's interpretation renders the "shall transfer" clause surplusage lacks

24   merit. Opp. at 16.  Regardless of whether the "shall transfer" clause is construed as requiring a future

25   act, as urged by AIT, the "shall transfer" clause is not "surplusage." The rights "set forth" in the 2002

26   Agreement are the same regardless of whether the "shall transfer" language requires a future act.

27   Third, AIT urged the Court erred by finding Ms. Nelson was granted all rights and title to all

28   "assets" and future "assets" (*i.e.*, the Patents-in-Suit) rather the rights and title "set forth" in the 2002

Letter Agreement.  Mot. at 14.  Salesforce does not address the issue other than to state AIT is "erroneous" because the Court found against AIT.  Opp. at 17.  Yet, Salesforce has never articulated how the 2006 Agreement transferred "title" to the Patents-in-Suit, which did not yet exist, to Ms. Nelson.  If ASI's title did not transfer to Ms. Nelson, then AIT has standing based on the 2012 assignment of title. *Intellectual Tech*, 101 F.4th at 815.

Fourth, Salesforce fails to address AIT's argument concerning Ms. Nelson's "sole and exclusive right to modify, terminate or otherwise discard" the very clause of the 2002 Letter Agreement defining ASI's Assets, *i.e.,* Section A.  Mot. at 15.  Salesforce does not dispute and has never disputed: (1) the Court's interpretation is inconsistent with Ms. Nelson's "sole and exclusive right" to modify or discard Section A of the 2002 Letter Agreement; and (2) interpreting the "shall transfer" sentence as requested by AIT would render the clauses consistent.  Mot. at 15–16.

Ultimately, Salesforce does not consider "the 2002 Letter Agreement and the 2006 Agreement … together and in their entirety." Mot. at 16.  When the agreements are so considered, the 2006 Agreement can reasonably be interpreted to a require future action such that Salesforce's request for the Court to ignore the parties' conduct and intent invites clear error. The conduct of the parties is undisputedly *only* consistent with AIT's interpretation of the agreement.  Mot. at 16–17. The intent of ASI and Ms. Nelson, as evidenced by Mr. Sturgeon's statements in 2012 (Dkt. 305, Ex. D at AIT000000975), Mr. Sturgeon's declaration, and Ms. Nelson's declaration is consistent with ASI's and Ms. Nelson's conduct.  Mot. at 16–17. Despite this, Salesforce asks the Court to only consider Salesforce's self-serving interpretation of Mr. Sturgeon's testimony from 2022 wrongly requesting unreasonable inferences its own favor.  Opp. at 17–18.

## III. CONCLUSION

For the foregoing reasons, AIT respectfully requests that the Court modify its dismissal and/or reconsider its finding that AIT lacks constitutional standing.

1   Dated:  May 16, 2025              *s/ Andrea Pacelli*

2                                     Michael A. Burke, Esq.

3                                     ROBISON, SHARP, SULLIVAN & BRUST
                                      (Resident Counsel)
4                                     71 Washington Street
                                      Reno, Nevada 89503
5
                                      Michael DeVincenzo, Esq. (*pro hac vice*)
6                                     Charles Wizenfeld, Esq. (*pro hac vice*)
                                      Andrea Pacelli, Esq. (*pro hac vice*)
7                                     KING & WOOD MALLESONS LLP
                                      500 Fifth Ave., 50th Floor
8                                     New York, New York 10110
                                      Telephone: (212) 319-4755
9                                     Email: michael.devincenzo@us.kwm.com
                                      charles.wizenfeld@us.kwm.com
10                                    andrea.pacelli@us.kwm.com

11                                    Steven C. Sereboff, Esq. (*pro hac vice*)
                                      SoCAL IP LAW GROUP LLP
12                                    1332 Anacapa, Suite 201
                                      Santa Barbara, CA 93101
13                                    Telephone: (805) 230-1356
                                      Email: ssereboff@socalip.com
14
                                      *Attorneys for Plaintiff*
15                                    *Applications in Internet Time, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 16, 2025 I caused the foregoing **PLAINTIFF APPLICATIONS IN INTERNET TIME, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AND TO RECONSIDER THE COURT'S DISMISSAL WITHOUT PREJUDICE UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION** to be filed with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Leigh T. Goddard
lgoddard@mcdonaldcarano.com

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com

Ray R. Zado
rayzado@quinnemanuel.com

Sam S. Stake
samstake@quinnemanuel.com

*Attorneys for Defendant Salesforce, Inc.*

Dated: May 16, 2025                    *s/ Andrea Pacelli*
                                        Andrea Pacelli